1  DENNIS J. HERRERA, City Attorney
   CHERYL ADAMS, State Bar #164194
2  Chief Trial Deputy
   PETER J. KEITH, State Bar #206482
3  RENÉE L. ERICKSON, State Bar #304983
   Deputy City Attorneys
4  1390 Market Street, 6th Floor
   San Francisco, California 94102-5408
5  Telephone:    (415) 554-3908 [Keith]
   Telephone:    (415) 554-3853 [Erickson]
6  Facsimile:    (415) 554-3837
   E-Mail:       peter.keith@sfgov.org
7  E-Mail:       renee.erickson@sfgov.org

8  Attorneys for Defendants
   CITY AND COUNTY OF SAN FRANCISCO,
9  MICHAEL ANDROVICH, MAUREEN D'AMICO,
   ROBERT DANIELE, FRANCIS HAGAN,
10 MICHAEL JOHNSON, KEVIN KNOBLE,
   CARLA LEE, ROBERT MCMILLAN,
11 SHAWN PHILLIPS, DANIEL SILVER,
   MICHAEL SLADE, and JAMES TRAIL

12

13                  UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15 JAMAL RASHID TRULOVE,                    Case No. 16-cv-00050-YGR

16         Plaintiff,                       **DEFENDANTS' RULE 12(b)(6) MOTION TO
                                            DISMISS**
17         vs.                              **(1) ALL CLAIMS AGAINST DEFENDANTS
                                            MICHAEL ANDROVICH, ROBERT DANIELE,**
18 THE CITY AND COUNTY OF SAN               **FRANCIS HAGAN, KEVIN KNOBLE,**
   FRANCISCO, ET AL.,                       **ROBERT MCMILLAN, SHAWN PHILLIPS,**
19                                          **JAMES TRAIL, DANIEL SILVER, MICHAEL**
           Defendants.                      **SLADE, AND THE CITY AND COUNTY OF**
20                                          **SAN FRANCISCO;**
                                            **(2) STATE LAW CLAIMS AGAINST**
21                                          **DEFENDANTS MAUREEN D'AMICO,**
                                            **MICHAEL JOHNSON, AND CARLA LEE**
22
                                            Hearing Date:    July 26, 2016
23                                          Time:            2:00 p.m.
                                            Judge:           Hon. Yvonne Gonzalez
24                                                           Rogers
                                            Place:           Courtroom 1 - 4th Floor
25                                                           1301 Clay Street
                                                             Oakland, CA 94612
26
                                            Trial Date:      Not set.
27

28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

NOTICE OF MOTION ........................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 2

INTRODUCTION .................................................................................................................. 2

BACKGROUND .................................................................................................................... 3

ARGUMENT .......................................................................................................................... 8

I.     Governing law................................................................................................... 8

     A.     Plaintiff must plead non-conclusory factual allegations. ............................ 8

     B.     Plaintiff must plead personal conduct by each defendant that violated Plaintiff's constitutional rights. ........................................................................ 9

     C.     Plaintiff must plead specific facts to overcome qualified immunity. .......... 9

II.     All claims against Officers Androvich, Hagan, Knoble, McMillan, Phillips, Silver, and Trail must be dismissed, because the facts pled do not show that these seven officers personally engaged in any action that violated a clearly established constitutional right. ....................................................................... 9

     A.     Plaintiff fails to state a *Devereaux* "fabrication of evidence" claim against these seven officers (Count I). ....................................................... 9

          1.     No facts are pled to show that any of these seven officers made any misrepresentation of the strengths and circumstances of Ms. Lualemaga's and Ms. Dickerson's identifications. ........................ 10

          2.     No facts are pled to show that any of these seven officers engaged in interview techniques that were clearly established to be so coercive that officers should have known they would yield false information. ................................................................... 11

               a.     Three of the officers – Knoble, Phillips, and Silver – are not alleged to have tried to coerce anyone. ........................ 11

               b.     Plaintiff cannot state a *Devereaux* claim against Trail, Androvich, and McMillan based on a "possibl[e]" July 24 meeting with Ms. Lualemaga. ........................................... 11

               c.     Plaintiff cannot state a *Devereaux* claim against Hagan and McMillan based on their interview with Ms. Dickerson. ...................................................................... 12

     B.     Plaintiff fails to state facts to support a *Brady* suppression claim against these seven officers (Counts I & IV). ....................................................... 13

          1.     Four of the officers – Hagan, Knoble, Phillips, and Silver – are not alleged to have been involved in any of the conversations that Plaintiff claims were suppressed. ................................................. 14

1

2

2.    Plaintiff cannot state a *Brady* claim against the other three officers – McMillan, Androvich, and Trail – based on a "possibl[e]" July 24 conversation with Ms. Lualemaga. ...............15

C.    Plaintiff fails to plead facts to support a malicious prosecution claim against these seven officers (Count II)........................................................16

D.    Plaintiff's conclusory allegations of a conspiracy are insufficient to keep these seven officers in the case (Count III)..................................................16

III.    All claims against Sergeant Daniele and Lieutenant Slade must be dismissed, because Plaintiff has pled only boilerplate allegations of supervisory liability (Count V). .............................................................................................................18

IV.    All of Plaintiff's state law claims must be dismissed under Government Code section 821.6 "malicious prosecution" immunity (Counts VI, VII). .....................20

V.    San Francisco's duty to indemnify its employees and pay a judgment against them does not give rise to a cause of action in favor of the Plaintiff (Count VIII). .................................................................................................................21

CONCLUSION...................................................................................................................22

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Amylou R. v. County of Riverside*
  28 Cal. App. 4th 1205 (1994) ........................................................20, 21

*Asgari v. City of Los Angeles*
  15 Cal. 4th 744 (1997) ........................................................................21

*Ashcroft v. al-Kidd*
  563 U.S. 731 (2011)..............................................................................9

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009)...........................................8, 9, 11, 15, 16, 17, 18, 19

*Baughman v. State of California*
  38 Cal. App. 4th 182 (1995) ...............................................................21

*Beaman v. Freesmeyer*
  776 F.3d 500 (7th Cir. 2015) ...............................................................18

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007)..............................................................8, 11, 15, 17

*Blankenhorn v. City of Orange*
  485 F.3d 463 (9th Cir. 2007) ...............................................................16

*Bradford v. Scherschigt*
  803 F.3d 382 (9th Cir. 2015) ...............................................................10

*Brady v. Maryland*
  373 U.S. 83 (1963)...........................................................14, 15, 16, 18, 19

*Burns v. County of King*
  883 F.2d 819 (9th Cir. 1989) ...............................................................17

*Chuman v. Wright*
  76 F.3d 292 (9th Cir. 1996) ...................................................................9

*Ciambriello v. County of Nassau*
  292 F.3d 307 (2nd Cir. 2002) ...............................................................17

*Ciampi v. City of Palo Alto*
  790 F. Supp. 2d 1077 (N.D. Cal. 2011) ................................................21

*City and County of San Francisco v. Sheehan*
  135 S. Ct. 1765 (2015)..........................................................................9

*County of Los Angeles v. Superior Court (West)*
  181 Cal. App. 4th 218 (2009) ..............................................................20

*County of Sacramento v. Lewis*
   523 U.S. 833 (1998)................................................................14

*Cunningham v. City of Wenatchee*
   345 F.3d 802 (9th Cir. 2003) ...............................................13

*Devereaux v. Abbey*
   263 F.3d 1070 (9th Cir. 2001) ..........................2, 9, 10, 11, 12, 13, 19

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*
   751 F.3d 990 (9th Cir. 2014) ...........................................8, 15

*Franklin v. Fox*
   312 F.3d 423 (9th Cir. 2002) ...............................................17

*Gausvik v. Perez*
   345 F.3d 813 (9th Cir. 2003) ...............................................12

*Gilbrook v. City of Westminster*
   177 F.3d 839 (9th Cir. 1999) ...............................................17

*Gillan v. City of San Marino*
   147 Cal. App. 4th 1033 (2007) ...........................................20

*Hansen v. Black*
   885 F.2d 642 (9th Cir. 1989) ...............................................19

*Jones v. Williams*
   297 F.3d 930 (9th Cir. 2002) .................................................9

*Kemmerer v. County of Fresno*
   200 Cal. App. 3d 1426 (1988) ...........................................21

*Lacey v. Maricopa County*
   693 F.3d 896 (9th Cir. 2012) ...............................................16

*Morales v. City of New York*
   752 F.3d 234 (2d Cir. 2014) ...............................................17

*Motley v. Parks*
   432 F.3d 1072 (9th Cir. 2005) .................................................9

*Padilla v. Yoo*
   678 F.3d 748 (9th Cir. 2012) .................................................9

*Piper v. Rasheed*
   2011 WL 3495984 (N.D. Cal. Aug. 9, 2011) .........................14

*Randle v. City and County of San Francisco*
   186 Cal. App. 3d 449 (1986) ...........................................20

*Redman v. County of San Diego*
   942 F.2d 1435 (9th Cir. 1991) ....................................................................19

*Reichle v. Howards*
   132 S. Ct. 2088 (2012) ...............................................................................9

*Rosales-Martinez v. Palmer*
   753 F.3d 890 (9th Cir. 2014) ......................................................................3

*Seagrave v. Lake County*
   1995 WL 251282 (N.D. Cal. 1995) ............................................................14

*Smith v. Almada*
   640 F.3d 931 (9th Cir. 2011) ......................................................................16

*Starr v. Baca*
   652 F.3d 1202 (9th Cir. 2011) ....................................................................19

*Taylor v. List*
   880 F.2d 1040 (9th Cir. 1989) .............................................................9, 10, 14

*Tennison v. City and County of San Francisco*
   570 F.3d 1078 (9th Cir. 2008) ...........................................................2, 14, 15

*U.S. v. King*
   687 F.3d 1189 (9th Cir. 2012) ....................................................................9

*Williams v. Horvath*
   16 Cal. 3d 834 (1976) ................................................................................22

*Woodrum v. Woodward County*
   866 F.2d 1121 (9th Cir. 1989) ....................................................................17

**Federal Statutes**
42 U.S.C. § 1983 ......................................................1, 2, 8, 9, 10, 14, 16, 17, 18, 19

**State Statutes & Codes**
California Civil Code section 52.1 .................................................................3, 20

California Government Code section 815.2 ...........................................................20

California Government Code section 821.6 .............................................1, 3, 20, 21

California Government Code section 825 ................................................1, 3, 21, 22

**Rules**
Federal Rule of Civil Procedure 12(b)(6) ..............................................................1, 2

Deft. Motion to Dismiss
Case No.   **16-cv-00050-YGR**

v

n:\lit\li2016\160675\01103926.doc

**NOTICE OF MOTION**

Please take notice that on July 26, 2016, at 2:00 p.m., or as soon thereafter as this matter can be heard, before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1 of the United States District Court, 4th Floor, 1301 Clay Street, Oakland, Defendants City and County of San Francisco, Michael Androvich, Maureen D'Amico, Robert Daniele, Francis Hagan, Michael Johnson, Kevin Knoble, Carla Lee, Robert McMillan, Shawn Phillips, Daniel Silver, Michael Slade, and James Trail ("Defendants") will and hereby do move for dismissal of the First Amended Complaint and each of the claims therein as follows, under Federal Rule of Civil Procedure 12(b)(6):

(1)    The Court should dismiss from the case nine of the twelve individual defendants – Michael Androvich, Robert Daniele, Francis Hagan, Kevin Knoble, Robert McMillan, Shawn Phillips, Daniel Silver, Michael Slade, and James Trail.  The First Amended Complaint lacks sufficient allegations of nonconclusory facts to plausibly conclude that any of these nine defendants personally violated Plaintiff's clearly established constitutional rights under 42 U.S.C. § 1983 – the only claim asserted against them (Counts I-V) – in connection with the criminal prosecution and conviction of Plaintiff.

(2)    The Court should dismiss Plaintiff's state law claims against the three remaining individual defendants – Maureen D'Amico, Michael Johnson, and Carla Lee (Count VI).  They have absolute immunity from Plaintiff's state law claim, because California Government Code section 821.6 immunizes public employees and entities from liability for claims of misconduct in connection with an investigation and prosecution, including claims of constitutional misconduct.

(3)    The Court should dismiss from the case the City and County of San Francisco, because it is absolutely immune from Plaintiff's state law claim under California Government Code section 821.6 (Count VII); and as a matter of law California Government Code section 825 does not give rise to a cause of action against the City and County of San Francisco (Count VIII).

This motion to dismiss is based on this Notice of Motion and Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the file in this case, the arguments of counsel at hearing, and such further matters that may be presented to the Court.

Deft. Motion to Dismiss
Case No.   **16-cv-00050-YGR**

1

n:\lit\li2016\160675\01103926.doc

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

In 2010, a San Francisco Superior Court jury convicted Plaintiff Jamal Trulove of murder.  His conviction was reversed on appeal, on grounds of ineffective assistance of counsel.  The California Court of Appeal held that Plaintiff's criminal counsel should have objected to the prosecutor's closing arguments.  When the People re-tried Plaintiff in 2015, a different jury could not find guilt beyond a reasonable doubt, and acquitted.

The Court of Appeal placed responsibility for the 2010 conviction squarely on Plaintiff's criminal counsel (and indirectly on the prosecutor).  But in this suit, Plaintiff chose not to blame his prosecutors (who enjoy absolute immunity), or his former counsel (whose pocket may not be very deep).  Instead, Plaintiff blames San Francisco police officers and investigators (who are backed as a matter of law with a deep pocket funded by San Francisco taxpayers).  Having won his appeal for an entirely different reason, Plaintiff now asserts that his conviction occurred because the police deprived him of a fair trial – by failing to disclose exculpatory evidence to the prosecutor in violation of *Tennison v. City and County of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2008), and by coercing witnesses to give false statements against him in violation of *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

But Plaintiff has not limited his suit to the two veteran homicide inspectors who put together the case against him – Maureen D'Amico and Michael Johnson – or to the patrol officer, Carla Lee, who Plaintiff alleges was present during an undisclosed alleged exchange between a "John Doe" officer and a key witness against Plaintiff.  To be sure, Plaintiff did sue them.  But he also sued nine other San Francisco police officers and inspectors who happened to have participated in this homicide investigation – from the officer who took photographs of possible getaway cars (Kevin Knoble), to the officer who brought in potential witnesses for questioning (Shawn Phillips).

The Court should dismiss these nine additional individual defendants under Rule 12(b)(6).  The reason is simple: Plaintiff's allegations are too conclusory or too implausible to state a section 1983 claim against any of these nine peripheral defendants.  Some of these nine defendants did nothing at all relative to the evidence that Plaintiff claims was suppressed or fabricated.  Other defendants are

alleged to have had some interaction with the witnesses against Plaintiff – but the allegations against these defendants are too conclusory or innocuous to support a claim that they caused a violation of Plaintiff's clearly established constitutional rights.  Still other defendants – supervisors – are alleged to be liable simply because they were on duty when an alleged violation occurred.  Plaintiff fails to state a claim against any of these nine defendants, and they should all be dismissed from the case.

Further, the Court should dismiss of all of the California law claims made by Plaintiff. Plaintiff makes claims under California Civil Code section 52.1 against the remaining three individual defendants – Inspector D'Amico, Inspector Johnson, and Officer Lee – and the City and County of San Francisco (which is sued only under California law).  But all of the defendants are absolutely immune from Plaintiff's claims, under California Government Code section 821.6.  Further, Plaintiff cannot sue the City under Government Code section 825; that statute simply establishes an obligation on the part of San Francisco toward its employees to pay judgments against them under certain circumstances; it does not create a free-standing right of action for plaintiffs.

Dismissal of these nine individual defendants and the City and County of San Francisco – as well as the state law claims against the remaining three individual defendants – is proper under the law.  Not only that, dismissal will result in the benefit of focusing discovery, summary judgment, and any trial on the three individual defendants whose conduct is central to Plaintiff's constitutional claims.  Plaintiff has alleged such a catalog of federal claims against these three defendants that, while holes could be poked in particular claims against them even at the pleading stage, it would be more efficient just to rebut Plaintiff's claims based on a full evidentiary record on summary judgment.  But dismissal of the nine individual defendants will ensure that they receive early protection from the unnecessary and heavy burdens of discovery and litigation, consistent with the purpose of qualified immunity.

## BACKGROUND

The following facts are taken from the allegations of the FAC and from judicially noticeable court records and documents referenced in the FAC.  *See Rosales-Martinez v. Palmer*, 753 F.3d 890, 894-895 (9th Cir. 2014) (taking judicial notice, in a wrongful conviction action, of court records and documents incorporated or summarized in the complaint).

On July 23, 2007, Seu Kuka was killed in San Francisco's Sunnydale housing projects. FAC ¶ 27. Although there were as many as 25 people present at the scene of the crime, only one witness came forward: Priscilla Lualemaga. *Id.* ¶ 29. She was transported to Ingleside Police Station by Defendant San Francisco Police Officer Carla Lee and Defendant Officer Shawn Phillips. *Id.* ¶ 30. At the station, they placed Ms. Lualemaga in a room used by officers to write reports. While she waited there, she looked at a bulletin board with photos of individuals who had been arrested in the Ingleside District. *Id.* ¶¶ 30-31.

Later, the veteran inspectors assigned to this homicide, Defendant Inspector Michael Johnson and Defendant Inspector Maureen D'Amico, returned from the crime scene to meet with Ms. Lualemaga. FAC ¶ 31. In the early hours of July 24, they conducted a recorded interview in a private room. *Id.* ¶¶ 38-39. Ms. Lualemaga told the inspectors that she saw Mr. Kuka chasing a young man. Another man stepped in front of Mr. Kuka, and Mr. Kuka knocked him over. That man got up. Then he shot Mr. Kuka several times. *Id.* ¶¶ 41-42.

As for the identity of the young man being chased, Ms. Lualemaga recognized him from the Sunnydale housing projects; in fact, she had also seen his photo on the bulletin board where she waited. FAC ¶ 32. His name was Joshua Bradley. *Id.* ¶ 52. As for the shooter, Ms. Lualemaga could not remember his name. But she recognized him, too. She had seen the shooter around Sunnydale; he hung around with Mr. Bradley, and they were often together in a distinctive blue car.

Later that night, Plaintiff alleges, an unidentified plainclothes police officer ("John Doe #1") questioned Ms. Lualemaga about this gang murder – and did it in the middle of a public room in Ingleside Station, in the plain view of a young arrestee named Oliver Barcenas. According to Mr. Barcenas, "John Doe #1" pointed to a clipboard and asked Ms. Lualemaga, "Are you sure it wasn't Jamal Trulove?" Ms. Lualemaga responded, "No, I don't know." "John Doe #1" looked frustrated. Meanwhile, Officer Lee stood by. FAC ¶¶ 61-64.

The supervisors on duty at Ingleside Station that night were Defendant Sergeant Daniele and Defendant Lieutenant Michael Slade. FAC ¶¶ 58-59.

When it was daylight on July 24, Inspector Johnson and Inspector D'Amico continued the investigation. These lead inspectors obtained assistance and information from various defendant

Deft. Motion to Dismiss
Case No.  **16-cv-00050-YGR**

4

n:\lit\li2016\160675\01103926.doc

officers.  FAC ¶ 55.  As alleged by Plaintiff, Defendant Officer Knoble, Defendant Officer Androvich, and Defendant Inspector McMillan provided information to Inspector Johnson.  *Id.* ¶¶ 71, 78.  It was suggested by these three, and Defendant Officer Silver, that Inspector D'Amico and Inspector Johnson focus on Mr. Bradley's brother, the Plaintiff, as a suspect.  *Id.* ¶ 57.  Officer Silver, Officer Knoble, and Inspector McMillan had previously identified Mr. Bradley, the Plaintiff, and their other brother David Trulove as suspected gang members.  *Id.* ¶ 32.  Inspector Johnson and Inspector D'Amico directed Officer Knoble to take photos of vehicles at the crime scene.  *Id.* ¶ 55.

Later in the day on July 24, Plaintiff alleges, Officer Knoble, Officer Androvich, Inspector McMillan, and Inspector Johnson went to Ms. Lualemaga's building, right next to the scene of the murder she had just witnessed.  FAC ¶ 72.  There, they "possibly" had a conversation with Ms. Lualemaga.  *Id.* ¶ 132.  The facts about this "possibl[e]" conversation are not pled; Plaintiff just asserts, "Upon information and belief, the officers continued to exert direct pressure on Ms. Lualemaga to identify Mr. Trulove as the shooter at this meeting."  *Id.* ¶ 73.

At noon the next day – July 25 – Inspector D'Amico and Inspector Johnson drove out to meet Ms. Lualemaga at her work.  There, in a recorded interview, they showed her six photographs.  One photograph was of Mr. Bradley, three photographs were of people known to associate with Mr. Bradley (including Plaintiff), and two photographs were fillers.  Ms. Lualemaga identified Plaintiff as the shooter.  FAC ¶¶ 75-89.  But Plaintiff was not immediately arrested.  Instead, the investigation continued.

A couple of weeks after the homicide, patrol officers were conducting a routine traffic stop in the Ingleside.  They discovered Mr. Bradley – the person whom Ms. Lualemaga had identified as being chased by Mr. Kuka – was driving without a license.  He was accompanied by his (and Plaintiff's) brother, David Trulove.  Officer Phillips came to the scene.  Because the men were of interest to the pending murder investigation, Officer Phillips contacted the Gang Task Force, including Officer Silver.  Officer Phillips and another officer transported the brothers to Ingleside Station for interviews by Inspector D'Amico and Inspector Johnson.  FAC ¶ 91.  At the station, the brothers denied being at the homicide.  Mr. Bradley claimed he did not see or hear the homicide.  Mr. Bradley

also claimed he could not remember where he was at the time.  Arrest Warrant Affidavit at 118 (Request for Judicial Notice, Exh. A).

The inspectors then used a search warrant to obtain the brothers' cell phone records.  Those records showed multiple calls from Mr. Bradley's cell phone number around the time of the murder.  All of the calls from Mr. Bradley's phone were routed through a cell phone tower at the Cow Palace, only ten blocks from the scene of the homicide.  Two of the calls from Mr. Bradley's phone were made in the same minute as the 911 call reporting the homicide.  The very last call, lasting 20 seconds, was routed through the Cow Palace tower when it started.  But by the end of that 20-second call, it was being routed through another cell phone tower – showing that Joshua Bradley was moving during this brief call immediately after the gunshots.  Arrest Warrant Affidavit at 119-120.

Later, in June 2008, Defendant Officer Francis Hagan and Inspector McMillan of the Gang Task Force conducted a vehicle search in an area of the Hunter's Point neighborhood known for heavy narcotics trafficking.  In the car was cocaine and heroin.  One of the people in the car was Latisha Meadows-Dickerson.  She had two felonies on her record and was hiding a firearm for her husband.  She also had information about the murder of Mr. Kuka.  The officers arrested her husband for the weapon, but they did not arrest Ms. Dickerson.  Instead, they brought her in for an interview about the homicide.  FAC ¶¶ 96-99; Arrest Warrant Affidavit at 120.

Inspector Johnson, Inspector McMillan, and Officer Hagan conducted a recorded interview of Ms. Dickerson.  She said that she saw the murder happen, and that Plaintiff did it.  But Ms. Dickerson wrongly placed the murder in early evening when it was still light out.  When Inspector McMillan asked her about the timing again, she said it was "twilight."  Ms. Dickerson claimed to have been able to see the murder from a location where another witness, Mr. Vaovasa, denied seeing the murder.  FAC ¶¶ 100-107; Arrest Warrant Affidavit 120-122.

In August 2008, Inspector Johnson submitted a warrant affidavit for Plaintiff's arrest.  FAC ¶¶ 108-109.  The arrest warrant affidavit included information about the investigation, including Ms. Lualemaga's identification of Plaintiff and Mr. Bradley, Mr. Bradley's denial that he was at the scene, Mr. Bradley's cell phone records that placed him at the scene during the murder and moving away from the scene immediately afterwards, and Ms. Dickerson's identification of Plaintiff.  Arrest

1   Warrant Affidavit.  Plaintiff alleges that Inspector Johnson made a number of omissions from his

2   affidavit.  FAC ¶¶ 110-116.

3       Ms. Dickerson never ended up testifying at Plaintiff's preliminary hearing.  Nor did she testify

4   at Plaintiff's first trial, or re-trial.  FAC ¶ 117.

5       Plaintiff was arrested on October 27, 2008.  FAC ¶ 173.  He was promptly brought before a

6   magistrate on October 29, 2008.  Court Minutes, 10/29/08 (RJN Exh. B).

7       Plaintiff received his preliminary hearing on May 19, 2009.  FAC ¶ 133.  Ms. Lualemaga was

8   the only eyewitness to testify, and she identified Plaintiff as the murderer.  FAC ¶ 133.  The magistrate

9   found probable cause to hold Plaintiff over for trial.  Court Minutes, 5/19/09 (RJN Exh. C)  With Ms.

10  Lualemaga's testimony, Plaintiff was convicted on February 9, 2010.  FAC ¶ 139.

11      It was between Plaintiff's conviction and sentencing that Mr. Barcenas entered the picture.  He

12  and Plaintiff fortuitously met at San Francisco County Jail.  They got to talking and Mr. Barcenas told

13  Plaintiff his remarkable story about the "John Doe" officer with the clipboard asking a woman about a

14  "Trulove" in the middle of the police station, while a female uniformed officer stood by.  FAC ¶¶ 65,

15  143-155.  Mr. Barcenas executed a declaration to support Plaintiff's new trial motion.  Barcenas

16  Declaration (RJN Exh. D).  The trial judge called Mr. Barcenas to testify, and he was subject to cross-

17  examination by the prosecutor.  Having heard Mr. Barcenas, the trial judge denied the new trial

18  motion.  Court Minutes 7/29/10 (RJN Exh. E).

19      Plaintiff was sentenced on October 15, 2010.  FAC ¶ 140.

20      Plaintiff appealed.  The Court of Appeal initially upheld the conviction.  But on rehearing, the

21  Court of Appeal reversed on grounds of ineffective assistance of counsel.  Unpublished Opinion (RJN

22  Exh. F).  Plaintiff's criminal defense counsel had failed to object to the prosecutor's closing arguments

23  that – according to the Court of Appeal – unfairly suggested that Ms. Lualemaga's fear of testifying

24  was based on actual threats against her, rather than a generalized fear of retribution that led her to enter

25  the witness protection program.  The California Supreme Court denied review, and the remittitur

26  issued on April 21, 2014.  FAC ¶ 160.  All told, the appeal took just over 3 1/2 years.

27      The State elected to retry Plaintiff, notwithstanding Mr. Barcenas' testimony.  On retrial, Ms.

28  Lualemaga once again testified as the State's only eyewitness to the murder.  FAC ¶¶ 161-162.  Mr.

1  Barcenas did not testify.  Nevertheless, with new and competent defense attorneys, Plaintiff put on a

2  much better defense in the second trial.  It was enough to create reasonable doubt, and Plaintiff was

3  acquitted on March 11, 2015.  FAC ¶¶ 163-172.  Plaintiff filed this suit on January 5, 2016.

ARGUMENT

5  Plaintiff sued twelve individual defendants.  Nine of those defendants now move for dismissal

6  of all claims against them.  The factual allegations are insufficient to support Plaintiff's section 1983

7  claims against these nine defendants.  In addition, Plaintiff cannot proceed with his California law

8  claims against the other three individual defendants and the City and County of San Francisco, all of

9  whom have absolute immunity as a matter of California law.

**I.    Governing law.**

**A.    Plaintiff must plead non-conclusory factual allegations.**

12  A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to

13  state a claim upon which relief can be granted."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007).

14  In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court applied this standard in a civil rights

15  case involving qualified immunity, and explained the two-step inquiry that a court should follow.

16  First, a court should identify and disregard certain types of "allegations in the complaint that

17  are not entitled to the assumption of truth."  *Id.* at 680.  "A pleading that offers 'labels and

18  conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a

19  complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 678

20  (citation omitted) (quoting *Twombly*, 550 U.S. at 555, alteration in *Iqbal*).  Rather, a court should

21  consider only the "well-pleaded factual allegations, … assume their veracity and then determine

22  whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.

23  Second, a court should evaluate whether, based only on the well-pleaded facts, a defendant's

24  liability is not merely conceivable, but actually plausible.  Plaintiffs must make "factual allegations

25  that 'nudg[e] their claims across the line from conceivable to plausible.'"  *Eclectic Properties East,*

26  *LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at

27  570, alteration in original).  "A claim has facial plausibility when the plaintiff pleads factual content

28  that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

1  alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  This process "requires the reviewing court to draw
2  on its judicial experience and common sense." *Id.* at 679.

3  **B.    Plaintiff must plead personal conduct by each defendant that violated Plaintiff's constitutional rights.**

4  "Liability under section 1983 arises only upon a showing of personal participation by the
5  defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  There is no group liability for an
6  alleged constitutional violation.  *Jones v. Williams*, 297 F.3d 930, 934-35 (9th Cir. 2002).  Where
7  officers are working together, and one of them violates a constitutional right, liability cannot be
8  imposed on the other officers on the basis that they are engaged in a team effort.  *Chuman v. Wright*,
9  76 F.3d 292, 294-95 (9th Cir. 1996); *Motley v. Parks*, 432 F.3d 1072, 1082 (9th Cir. 2005) (en banc),
10 *overruled on other grounds in U.S. v. King*, 687 F.3d 1189 (9th Cir. 2012).

11 **C.    Plaintiff must plead specific facts to overcome qualified immunity.**

12 An officer has immunity from suit for constitutional violations unless the right at issue was
13 clearly established in the specific factual context confronting the officer, such that "every reasonable
14 official would have understood that what he is doing violates that right."  *Ashcroft v. al-Kidd*, 563 U.S.
15 731, 741 (2011) (quotation marks and citations omitted).  In *Reichle v. Howards*, 132 S. Ct. 2088,
16 2096 (2012), the Supreme Court explained that officials are entitled to immunity where it is "at least
17 arguable" that their actions were constitutional.  To put it another way, a legal proposition can only be
18 considered clearly established if it is "beyond debate" at the time of the incident.  *Padilla v. Yoo*, 678
19 F.3d 748, 750 (9th Cir. 2012) (quoting *Ashcroft*, 563 U.S. at 741).  The standard "gives government
20 officials breathing room to make reasonable but mistaken judgments."  *City and County of San*
21 *Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015).

22 **II.   All claims against Officers Androvich, Hagan, Knoble, McMillan, Phillips, Silver, and
23 Trail must be dismissed, because the facts pled do not show that these seven officers
       personally engaged in any action that violated a clearly established constitutional right.**

24 **A.    Plaintiff fails to state a *Devereaux* "fabrication of evidence" claim against these
       seven officers (Count I).**

25

26 In Count I of the FAC, Plaintiff alleges that all 12 defendants fabricated evidence against him.
27 FAC ¶¶ 218-220.  Plaintiff alleges that officers "misrepresented" the strength of Ms. Lualemaga's and

28

Ms. Dickerson's identifications. *Id.* ¶ 220.a. Further, officers allegedly coerced false statements from Ms. Lualemaga and Ms. Dickerson identifying Plaintiff as the murderer. *Id.* ¶ 220.b.

To prove a fabrication of evidence claim under *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001), the plaintiff must first identify what evidence was deliberately fabricated by the defendant. *Bradford v. Scherschigt*, 803 F.3d 382, 386 (9th Cir. 2015) ("Fundamentally, the plaintiff must first point to evidence he contends the government deliberately fabricated.").

If plaintiff can meet the first prong, the plaintiff must then prove that the defendant deliberately intended to fabricate. *Bradford*, 803 F.3d at 386 (two *Devereaux* prongs "are methods of proving one element – intent – of a claim that the government deliberately fabricated the evidence at issue"). The plaintiff may use one of two circumstantial methods to prove deliberate fabrication. The first is to demonstrate that the defendant continued his investigation of the plaintiff even though he knew or should have known that the plaintiff was innocent. *Devereaux*, 263 F.3d at 1076. The second is to demonstrate that the defendant used "investigative techniques that were so coercive and abusive that [he] knew or should have known that those techniques would yield false information." *Id.*

Here, Plaintiff has failed to state a *Devereaux* claim against any of these seven defendants.

### 1. No facts are pled to show that any of these seven officers made any misrepresentation of the strengths and circumstances of Ms. Lualemaga's and Ms. Dickerson's identifications.

Beginning with Plaintiff's first claim of "fabrication" – that officers "misrepresented the strength and circumstances" of Ms. Lualemaga's and Ms. Dickerson's identifications of Plaintiff, FAC ¶ 220.a. – these are conclusory allegations and should be disregarded.

Looking past those conclusory allegations, the only defendant whom Plaintiff alleges to have misrepresented the strength of these witness statements is Inspector Johnson. He is alleged to have done so in his arrest warrant affidavit. FAC ¶¶ 110-116. But Plaintiff does not allege any facts showing that any of the seven moving defendants made any misrepresentations to prosecutors about the strength of these identifications. "Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor*, 880 F.2d at 1045. Thus, on the first prong of *Devereaux* – identifying the fabricated evidence – Plaintiff fails to identify any misrepresentation by

any of these seven defendants. Thus, there is no basis for a *Devereaux* claim against them for misrepresentation of evidence.

> ### 2. No facts are pled to show that any of these seven officers engaged in interview techniques that were clearly established to be so coercive that officers should have known they would yield false information.

Turning to the other claim of "fabrication" – that officers coerced Ms. Lualemaga and Ms. Dickerson into identifying Plaintiff, FAC ¶ 220.b. – Plaintiff likewise fails to state a claim against any of these seven defendants.

> #### a. Three of the officers – Knoble, Phillips, and Silver – are not alleged to have tried to coerce anyone.

Plaintiff pleads no facts that Officer Knoble, Officer Phillips, or Officer Silver ever tried to coerce Ms. Lualemaga or Ms. Dickerson, at any time.

Nor is there any allegation that any of these defendants – or anyone else, for that matter – had conclusive proof that Plaintiff was *not* the murderer, such as video or forensic evidence that definitively excluded Plaintiff.

There is no basis for a *Devereaux* claim against these defendants.

> #### b. Plaintiff cannot state a *Devereaux* claim against Trail, Androvich, and McMillan based on a "possibl[e]" July 24 meeting with Ms. Lualemaga.

Plaintiff makes fabrication allegations based on a "possibl[e]" July 24 conversation with Lualemaga at her grandmother's home at 140 Blythedale (the location where Lualemaga witnessed the murder the night before). These allegations target Officer Trail, Officer Androvich, and Inspector McMillan. The FAC allegations, however, do not satisfy the *Iqbal/Twombly* pleading requirements.

Indeed, at the first *Iqbal* prong, Plaintiff has failed to plead non-conclusory facts to support his *Devereaux* fabrication claim. Plaintiff's threshold problem is his allegation that this July 24 conversation only "possibly" occurred – not that it actually occurred. FAC ¶ 132. Only actual conduct can violate the Constitution – not "possibl[e]" conduct. Not only that, Plaintiff makes only conclusory allegations – he does not have any well-pled factual allegations about this possible meeting. Plaintiff just asserts:

> 72. Inspector Johnson, Inspector McMillan, Officer Androvich, and Officer
> Trail went to Ms. Lualemaga's apartment building, 140 Blythedale Avenue, on

Deft. Motion to Dismiss
Case No. **16-cv-00050-YGR**

11

n:\lit\li2016\160675\01103926.doc

July 24, 2007 at approximately 5:00 p.m. Upon information and belief, Inspector D'Amico knew or was made aware of this meeting.

73. Upon information and belief, the officers continued to exert direct pressure on Ms. Lualemaga to identify Mr. Trulove as the shooter at this meeting.

But these are simply formulaic allegations of a *Devereaux* claim, an element of which is proof that a defendant used "investigative techniques that were so coercive and abusive that [he] knew or should have known that those techniques would yield false information." *Devereaux*, 263 F.3d at 1076. What the FAC lacks is facts about what forbidden techniques these officers actually used, which were clearly established to yield false information. This failure to plead facts is particularly significant when it comes to a *Devereaux* claim, because the test for establishing fabrication of evidence under *Devereaux* is a stringent one. *E.g., Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir. 2003) (upholding grant of summary judgment on fabrication of evidence claim). Indeed, *Devereaux* itself involved hours-long, suggestive interviews with young children regarding extreme claims of sexual abuse. And those interviews were held not to violate the *Devereaux* test. *Devereaux*, 263 F.3d at 1078. Plaintiff's conclusory allegations, devoid of any actual facts, cannot overcome the officers' qualified immunity.

        **c.**     **Plaintiff cannot state a *Devereaux* claim against Hagan and McMillan based on their interview with Ms. Dickerson.**

Plaintiff alleges that when Inspector Johnson, Officer Hagan, and Officer McMillan interviewed Ms. Dickerson, they violated *Devereaux* by using "investigative techniques that were so coercive and abusive that [they] knew or should have known that those techniques would yield false information." *Devereaux*, 263 F.3d at 1076. But Plaintiff's factual allegations about what happened during that interview fall far short of making out such a claim. The alleged coercion was that instead of charging Ms. Dickerson (a convicted felon) for a gun she was hiding during a traffic stop (they charged her husband instead), officers decided to interview her for information about Mr. Kuka's homicide. FAC ¶¶ 96-99. And the officers were alleged to have "engaged in suggestion" to help Ms. Dickerson match other known facts about the murder. *Id.* ¶¶ 101, 107.

Of course, these allegations would be grist for a cross-examination of Ms. Dickerson at trial (though she never ended up testifying against Plaintiff). But whether Ms. Dickerson could have been

Deft. Motion to Dismiss
Case No.  **16-cv-00050-YGR**

12

n:\lit\li2016\160675\01103926.doc

impeached at trial is an entirely different question from whether a violation of clearly established constitutional law occurred.  Under *Devereaux*, there is no constitutional right to have witnesses interviewed in a particular manner or to have an investigation carried out in a particular way. *Devereaux*, 263 F.3d at 1075.  After all, virtually any probing question from an officer to a witness about specific details could be attacked as "suggestive."  There was no clearly established law stating that these officers' "investigative techniques" with Ms. Dickerson "were so coercive and abusive that [they] knew or should have known that those techniques would yield false information." *Id.* at 1076. Indeed, a review of the allegedly "coerced" recorded statement shows no conduct that violated clearly established law.  Dickerson Statement (RJN, Exh. G).  Here, these officers came across a potential witness who was in a tough spot.  They exercised their discretion not to arrest her, and instead obtained information from her concerning an open murder investigation.  There is no clearly established law that such conduct violates *Devereaux*.  Indeed, if that kind of conduct were deemed to violate the Constitution (let alone clearly established constitutional law), then police officers could never build cases for serious crimes.  No witness with something to gain or lose, or facing a criminal charge, would ever be able to testify in a murder trial.  That cannot be the law.

Finally, to the extent that Ms. Dickerson's interview yielded information that conflicted with Ms. Lualemaga's testimony (or anyone else's testimony), that conflict cannot support Plaintiff's constitutional claim.  Inconsistencies among witness statements are not sufficient to state a fabrication of evidence claim. *See, e.g.*, *Cunningham v. City of Wenatchee*, 345 F.3d 802, 811-12 (9th Cir. 2003) (that victims did not corroborate one witness's statement was not sufficient to require the officer to cease investigation).

### B.   Plaintiff fails to state facts to support a *Brady* suppression claim against these seven officers (Counts I & IV).

In Counts I and IV of the FAC, Plaintiff alleges that all 12 defendants suppressed exculpatory and material evidence, in violation of Plaintiff's due process right to a fair trial (Count I) and right to avoid a lengthy pre-trial detention (Count IV).  FAC ¶¶ 218, 221-223, 240-242.  All 12 defendants are sued for concealing from prosecutors three alleged exchanges with witnesses: (1) the "John Doe" plainclothes officer with a clipboard allegedly questioning Ms. Lualemaga about Plaintiff in the

middle of the station, while Officer Lee stood there (as told by Mr. Barcenas); (2) the "possibl[e]" meeting at Ms. Lualemaga's home on July 24 with Inspector Johnson, Inspector McMillan, Officer Androvich, and Officer Trail; and (3) Mr. Vaovasa's statements to Inspector Johnson and Inspector D'Amico that he did not see the murder, even though Ms. Dickerson said she could see the murder from the same location.  FAC ¶ 221.

To make a suppression claim against a police investigator under *Brady v. Maryland*, 373 U.S. 83 (1963), a plaintiff must show that a police investigator was aware of evidence that was material and exculpatory, and did not make an adequate disclosure of that evidence to the prosecutor.  Further, a plaintiff must show that the police investigator acted with the requisite state of mind.  There must be proof of the officer's "deliberate indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence from prosecutors." *Tennison*, 570 F.3d at 1089.  This is akin to the standard imposed on government officials in the substantive due process context – liability arises if those officials engage in conduct that "shocks the conscience." *Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).  "Neither negligence nor gross negligence will constitute deliberate indifference." *Seagrave v. Lake County*, 1995 WL 251282, at *2 (N.D. Cal. 1995).  *Cf. Piper v. Rasheed*, 2011 WL 3495984, at *5 (N.D. Cal. Aug. 9, 2011) ("In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm.").

Here, Plaintiff has failed to state a *Brady* claim against any of these seven defendants.

### 1.  Four of the officers – Hagan, Knoble, Phillips, and Silver – are not alleged to have been involved in any of the conversations that Plaintiff claims were suppressed.

Turning first to Officer Hagan, Officer Knoble, Officer Phillips, and Officer Silver, none of these four officers are alleged to have been personally involved in the three allegedly suppressed meetings or statements.  They can have no liability.  "Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor*, 880 F.2d at 1045.

### 2. Plaintiff cannot state a *Brady* claim against the other three officers – McMillan, Androvich, and Trail – based on a "possibl[e]" July 24 conversation with Ms. Lualemaga.

As to the other three officers, Plaintiff alleges they were involved in only one of the three alleged suppressions: suppression of the "possibl[e]" July 24 conversation with Ms. Lualemaga at her home at 140 Blythedale.  The FAC, however, does not satisfy the *Iqbal*/*Twombly* pleading requirements to make out a *Brady* claim.  Indeed, the *Brady* claim fails at either of the *Iqbal* prongs.

To meet the first prong of *Iqbal*, Plaintiff must plead non-conclusory facts.  But just like with Plaintiff's fabrication claim, there is a threshold problem: Plaintiff alleges that the July 24 conversation only "possibly" occurred – not that it actually occurred.  FAC ¶ 132.  Only actual conduct can violate the Constitution – not "possibl[e]" conduct.  Indeed, the allegations by Plaintiff of "pressure" on Ms. Lualemaga are conclusory and reflect the too-tentative nature of this claim.  FAC ¶¶ 72-74.  At the first prong of *Iqbal*, the claims fails.

But even if Plaintiff alleged that this meeting *actually* occurred, *and* alleged something more specific than "pressure" from officers, the allegations would still not satisfy the second prong of *Iqbal*: plausibility.  Specifically, it is not plausible that any inaction by Officer Trail, Officer Androvich, and Inspector McMillan regarding disclosures about this (possible) meeting, occurred with the requisite improper motive on their part.  Plaintiff's claim requires a showing of "deliberate indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence from prosecutors." *Tennison*, 570 F.3d at 1089.  But when "considering plausibility" of such an allegedly improper motive, "courts must also consider an 'obvious alternative explanation' for defendant's behavior." *Eclectic Properties East, LLC*, 751 F.3d at 996 (quoting *Iqbal*, 556 U.S. at 682).  And here, there is an obvious alternative explanation for any inaction by these three officers.  Namely, they would naturally rely on the homicide investigator alleged to have been present at this (possible) meeting, Inspector Johnson, to take responsibility for any *Brady* obligations that might arise in the future as a consequence of such a meeting.  *Cf. Tennison*, 570 F.3d at 1078 (holding lead homicide investigators responsible for making disclosures to homicide prosecutor).  After all, this alleged meeting took place less than 24 hours after the homicide.  Criminal charges had not been filed – and would not be filed for over a year.  And without criminal charges, there is no *Brady* duty.  Reliance on Inspector Johnson to

monitor and address any *Brady* obligations that might later arise from this (possible) meeting would not be "deliberate indifference" or "reckless disregard for an accused rights or for the truth." Even if such reliance were negligent – which it would not be – a merely negligent nondisclosure does not state a constitutional claim.

For these reasons, this claim fails not only at the first prong of *Iqbal*, but also the second.

### C.    Plaintiff fails to plead facts to support a malicious prosecution claim against these seven officers (Count II).

In Count II – just like with Counts I and IV – Plaintiff alleges that all 12 individual defendants maliciously prosecuted him in violation of section 1983. As relevant to this motion, a criminal defendant may file a malicious prosecution action against "police officers and investigators – who wrongfully caused his prosecution." *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011). The plaintiff's allegations against a particular defendant must show that that defendant was "integrally involved in providing false statements to the prosecutor and thus in his allegedly malicious prosecution." *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007).

As already explained above, *supra* Section II.A.1., the only facts alleged by Plaintiff concerning false representations to prosecutors involve Johnson's arrest warrant affidavit. FAC ¶¶ 110-116. But there are no facts alleged to support the conclusion that any of these seven other officers were "integrally involved in providing false statements to the prosecutor and thus in [Plaintiff's] allegedly malicious prosecution." *Blankenhorn*, 485 F.3d at 482. The malicious prosecution claim against them should be dismissed.

### D.    Plaintiff's conclusory allegations of a conspiracy are insufficient to keep these seven officers in the case (Count III).

Plaintiff alleges that all of the individual defendants were engaged in a conspiracy to violate his constitutional rights. The Ninth Circuit has explained that "[c]onspiracy is not itself a constitutional tort under [section] 1983," and it "does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc). Rather, conspiracy allegations are simply a way to hold additional defendants liable for a constitutional tort committed by another.

A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage. *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999). A plaintiff need not show that each participant knew "the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002).

*Iqbal/Twombly* pleading rules apply to conspiracy claims. And conclusory allegations of conspiracy are not enough to support a section 1983 conspiracy claim. *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (per curiam). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive a plaintiff of his constitutional rights are properly dismissed." *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2nd Cir. 2002).

Not only that, concerted action alone does not establish a conspiracy. As *Twombly* explained, concerted action often occurs in the absence of any unlawful purpose. But a conspiracy is marked by the existence of an agreed-upon, unlawful purpose. Thus, a plaintiff must plead non-conclusory facts that make it plausible that the defendants undertook concerted action for an agreed-upon unlawful purpose. An "agreement or meeting of minds to violate [the plaintiff's] constitutional rights must be shown." *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989).

Plaintiff's conspiracy allegations do not satisfy the *Iqbal/Twombly* pleading standard. At the first prong of *Iqbal* analysis, Plaintiff's conclusory allegations of a conspiracy must be disregarded. FAC ¶ 236. And with those allegations set aside, the remaining facts pled do not provide a plausible basis for concluding that a conspiracy existed to violate Plaintiff's constitutional rights.

To be sure, it is plausible that these officers provided assistance to each other during the investigation of Mr. Kuka's murder. FAC ¶ 55. But an "allegation of cooperation" between different law enforcement officers "supports no inference that [a particular defendant] acted with an improper motive, and is not enough to subject him to § 1983 liability for civil conspiracy." *Morales v. City of New York*, 752 F.3d 234, 237 (2d Cir. 2014) (internal quotation marks omitted). Put differently, the cooperation of different police officers in an investigation does not make it plausible that a conspiracy

existed to violate a suspect's civil rights.  There is an obvious alternative explanation for the officers'

working in concert:  They are trying to solve a case.

Indeed, the actions of the seven officers here simply show an expected level of cooperation in a

homicide investigation.  See *supra* Background (describing facts alleged concerning the actions of

Officer Androvich, Officer Hagan, Officer Knoble, Inspector McMillan, Officer Phillips, Officer

Silver, and Officer Trail).  Their joint work on this homicide investigation – very little of which is

even alleged to amount to a constitutional violation – does not provide plausible support for the

existence of a conspiracy for the purpose of violating the Plaintiff's constitutional rights.  For a similar

reason, the Seventh Circuit rejected a conspiracy claim just like Plaintiff's.  In *Beaman v. Freesmeyer*,

776 F.3d 500 (7th Cir. 2015), the plaintiff argued "that because the defendants all did things that

helped to convict him, they must have *all* been involved in the suppression of the *Brady* material" by

*some* of the people involved in the prosecution.  *Id.* at 511 (emphasis added).  But the problem with

this argument was that "most of the actions the defendants took to convict Beaman that he claims are

evidence of the conspiracy were not at all *Brady* violations themselves."  *Id.* at 511-512.  Indeed, most

of the actions alleged to support a conspiracy in *Beaman* – like here – simply involved building a case.

Such assistance with an investigation is routine and expected – not evidence of a plausible conspiracy.

"This is the type of behavior that will be present in every criminal prosecution – valid pursuit of a

conviction."  *Id.* at 512.

For these reasons, Plaintiff's conspiracy allegations do not save his suit against these seven

officers.

### III.    All claims against Sergeant Daniele and Lieutenant Slade must be dismissed, because Plaintiff has pled only boilerplate allegations of supervisory liability (Count V).

In Count V, Plaintiff alleges that Sergeant Daniele and Lieutenant Slade have supervisory

liability under section 1983, because they were in charge of Ingleside Station when the unidentified

plainclothes investigator tried to persuade Ms. Lualemaga to identify Plaintiff, while Officer Lee stood

by.  The boilerplate facts pled by the Plaintiff, however, cannot support a supervisory liability claim.

*Iqbal*'s pleading requirements of course apply here – and they apply with particular force

because *Iqbal* itself involved the sufficiency of claims of supervisory liability in a section 1983 case.

As the Ninth Circuit explained in *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), a plaintiff alleging supervisory liability in a section 1983 action must plead nonconclusory facts that plausibly support a claim that a supervisor personally caused or committed a constitutional violation:

> A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right." *Redman [v. County of San Diego]*, 942 F.2d [1435,] at 1447 [(9th Cir. 1991)] (internal quotation marks omitted).

*Starr*, 652 F.3d at 1207. Here, Plaintiff's allegations do not state such a claim.

At the first prong of *Iqbal* analysis, all of Plaintiff's conclusory allegations of supervisory liability must be disregarded. FAC ¶¶ 58-59, 68-69, 245-252. After those conclusory allegations are disregarded, all that is left are Plaintiff's allegations that Lt. Slade and Sgt. Daniele were the responsible supervisors for Ingleside Station when the plainclothes officer spoke with Ms. Lualemaga in the middle of the police station. FAC ¶¶ 69, 155.

Moving to the second prong of *Iqbal* analysis, the question is whether these facts give rise to a plausible claim of personal liability for Lt. Slade and Sgt. Daniele. They do not. Plaintiff contends that Lt. Slade and Sgt. Daniele were "aware of," "condoned," and caused a violation of Plaintiff's constitutional rights. But this is not a plausible inference from these facts, for two reasons. First, just because Lt. Slade and Sgt. Daniele were on duty does not make it plausible to conclude that they were in the right place at the right time to overhear the exchange described in the FAC. The alleged exchange was brief: Plaintiff pled that "John Doe #1" pointed to a clipboard and asked Ms. Lualemaga, "Are you sure it wasn't Jamal Trulove?" Ms. Lualemaga responded, "I don't know." "John Doe #1" looked frustrated. Meanwhile, Officer Lee stood by. FAC ¶¶ 61-64, 148-151. Second, even if Lt. Slade or Sgt. Daniele observed this exchange, it is not plausible to conclude that every reasonable supervisor would have recognized that Plaintiff's *Brady* rights were being violated, or that evidence was being fabricated through coercive techniques that violated *Devereaux*. A single

probing question of a civilian, a noncommittal response, and a police officer's momentary frustration, does not and should not trigger constitutional alarm bells.

**IV.    All of Plaintiff's state law claims must be dismissed under Government Code section 821.6 "malicious prosecution" immunity (Counts VI, VII).**

In Counts VI and VII of the FAC, Plaintiff alleges a state law claim under California Civil Code section 52.1.  Plaintiff alleges he was "wrongly prosecuted, detained, and incarcerated" in violation of the Constitution, and that these violations were accompanied by threats, intimidation, or coercion.  FAC ¶¶ 253-256.  The claim is against Inspector D'Amico, Inspector Johnson, and Officer Lee, and against the City and County of San Francisco by virtue of respondeat superior.

However, as a matter of California law, this California law claim is barred by the absolute immunity of Government Code section 821.6.  Section 821.6 states in its entirety:

> A public employee is not liable for an injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.

Cal. Gov. Code § 821.6.  When a public employee is immune from liability under section 821.6, the public entity employer is also immune.  Cal. Gov. Code § 815.2; *Amylou R. v. County of Riverside*, 28 Cal. App. 4th 1205, 1208-1209 (1994).

While the language of this statute has led to it being called "malicious prosecution immunity," this immunity is not limited to claims of malicious prosecution – it "extends to other causes of action arising from conduct protected under the statute."  *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1048 (2007).  The immunity applies regardless of the legal theory used to challenge a defendant's conduct during an investigation or prosecution.  *See, e.g.*, *Amylou R.*, 28 Cal. App. 4th at 1212 (immunity for negligent conduct during investigation).

Thus, section 821.6 bars liability for Civil Code section 52.1 claims like Plaintiff's – claims premised on constitutional defects in an investigation and prosecution.  *County of Los Angeles v. Superior Court (West)*, 181 Cal. App. 4th 218, 230-231 (2009) (immunity barred Civil Code section 52.1 claim).  Indeed, section 821.6 immunity has been held specifically to bar claims based on improper suppression of exculpatory evidence by police officers – like Plaintiff's claim here.  *Randle v. City and County of San Francisco*, 186 Cal. App. 3d 449, 457 (1986) (holding that section 821.6

immunity applied where "the act which forms the basis of appellant's case is the suppression of evidence, either by the prosecutor or by the police officer in failing to bring the report to the prosecutor's attention"); *Ciampi v. City of Palo Alto*, 790 F. Supp. 2d 1077, 1109 (N.D. Cal. 2011).

These decisions are consistent with California law holding that the immunity under section 821.6 is absolute and far-reaching. Courts have explained that the California Legislature enacted section 821.6 in order to "free[] investigative officers from the fear of retaliation for errors they commit in the line of duty." *Baughman v. State of California*, 38 Cal. App. 4th 182, 193 (1995). In enacting such a broad immunity, the Legislature balanced the need for impartial and vigorous enforcement of the laws against the need for a civil damages remedy for misguided enforcement – and resolved that balance in favor of immunity. *Amylou R.*, 28 Cal. App. 4th at 1212-1213. Thus, this immunity applies whether officials allegedly "acted negligently, maliciously or without probable cause in carrying out their duties." *Baughman*, 38 Cal. App. 4th at 192. The immunity is broad, applying not just to legally trained prosecutors but to any public employee, including police officers, involved in instituting or prosecuting investigations or proceedings. *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 756-757 (1997). And the immunity is not limited to formal prosecution; the immunity "extends to actions taken in preparation for formal proceedings. Because investigation is an 'essential step' toward institution of formal proceedings, it 'is also cloaked with immunity.'" *Amylou R.*, 28 Cal. App. 4th at 1209-1210 (quoting *Kemmerer v. County of Fresno*, 200 Cal. App. 3d 1426, 1436-1437 (1988)).

This immunity bars Plaintiff's state law claim.

**V.   San Francisco's duty to indemnify its employees and pay a judgment against them does not give rise to a cause of action in favor of the Plaintiff (Count VIII).**

Count VIII of Plaintiff's FAC purports to state a cause of action against San Francisco under section 825 of the California Government Code. But Count VIII does not state a claim.

Section 825 establishes certain obligations on the part of a California public entity to defend and indemnify its current and former employees for liabilities arising in the course and scope of their employment. This includes an obligation of the public entity, under most circumstances, to pay for judgments for compensatory damages or for settlements in suits against its public employees.

San Francisco does not quarrel with the proposition that section 825 governs its obligations in case of a judgment or settlement involving the individually named defendants in this action.  But section 825 does not create a free-standing cause of action in favor of any plaintiff, including the Plaintiff here.  As the California Supreme Court explained, "indemnity [under section 825] does not provide additional rights to plaintiffs. It is the defendant and not the plaintiff who is given a separate cause of action for reimbursement under Government Code section 825. The plaintiff in a tort claim against a governmental employee appears to be merely a potential and incidental beneficiary of the indemnification provisions." *Williams v. Horvath*, 16 Cal. 3d 834, 845 (1976).

Therefore, to the extent that Plaintiff purports to state a claim against the City and County of San Francisco under Count VIII, Plaintiff cannot do so.

## CONCLUSION

The Court should dismiss all claims against Defendants Androvich, Daniele, Hagan, Knoble, McMillan, Phillips, Silver, Slade, Trail, and the City and County of San Francisco.  Further, the Court should dismiss the California law claims against Defendants D'Amico, Johnson, and Lee.

Dated:  May 6, 2016

DENNIS J. HERRERA
City Attorney
CHERYL ADAMS
Chief Trial Deputy
PETER J. KEITH
Deputy City Attorney

By: */s/  Peter J. Keith*
PETER J. KEITH

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
MICHAEL ANDROVICH, MAUREEN D'AMICO,
ROBERT DANIELE, FRANCIS HAGAN,
MICHAEL JOHNSON, KEVIN KNOBLE,
CARLA LEE, ROBERT MCMILLAN,
SHAWN PHILLIPS, DANIEL SILVER,
MICHAEL SLADE, and JAMES TRAIL