DENNIS J. HERRERA, City Attorney
CHERYL ADAMS, State Bar #164194
Chief Trial Deputy
PETER J. KEITH, State Bar #2086482
RENÉE L. ERICKSON, State Bar #304983
Deputy City Attorneys
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-3908 [Keith]
Telephone:     (415) 554-3853 [Erickson]
Facsimile:      (415) 554-3837
E-Mail:         peter.keith@sfgov.org
E-Mail:         renee.erickson@sfgov.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
MICHAEL ANDROVICH, MAUREEN D'AMICO,
ROBERT DANIELE, FRANCIS HAGAN,
MICHAEL JOHNSON, KEVIN KNOBLE,
CARLA LEE, ROBERT MCMILLAN,
SHAWN PHILLIPS, DANIEL SILVER,
MICHAEL SLADE, and JAMES TRAIL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMAL RASHID TRULOVE,<br><br>        Plaintiff,<br><br>    vs.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO, ET AL.,<br><br>        Defendants. | Case No. 16-cv-00050-YGR<br><br>**DEFENDANTS' REPLY IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS (1) ALL CLAIMS AGAINST DEFENDANTS MICHAEL ANDROVICH, ROBERT DANIELE, FRANCIS HAGAN, KEVIN KNOBLE, ROBERT MCMILLAN, SHAWN PHILLIPS, JAMES TRAIL, DANIEL SILVER, MICHAEL SLADE, AND THE CITY AND COUNTY OF SAN FRANCISCO; (2) STATE LAW CLAIMS AGAINST DEFENDANTS MAUREEN D'AMICO, MICHAEL JOHNSON, AND CARLA LEE**<br><br>Hearing Date:    July 26, 2016<br>Time:             2:00 p.m.<br>Judge:            Hon. Yvonne Gonzalez Rogers<br>Place:            Courtroom 1 - 4th Floor<br>                  1301 Clay Street, Oakland<br><br>Trial Date:       Not set. |

1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... iii

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 1

    I.    Officers Androvich, Hagan, Knoble, McMillan, Phillips, Silver, and Trail must be dismissed from the case, because the facts pled do not show that these seven officers personally engaged in any action that violated a clearly established constitutional right. ...................................................................................... 1

        A.    Plaintiff fails to state a *Devereaux* "fabrication of evidence" claim against these seven officers (Count I) ............................................. 1

            1.    Plaintiff concedes that none of these seven officers misrepresented the strengths and circumstances of witness identifications (FAC ¶ 220.a.). ..................................... 1

            2.    Plaintiff fails to identify any factual allegations in the FAC that Knoble, Phillips, or Silver fabricated any evidence (FAC ¶ 220.b.). ......................................................... 2

            3.    Plaintiff's *Devereaux* claim against Trail, Androvich, and McMillan, based on a "possibl[e]" July 24 meeting with Ms. Lualemaga, is mere boilerplate and cannot survive a motion to dismiss. ....................................................................... 3

            4.    Plaintiff cannot state a *Devereaux* claim against Hagan and McMillan based on their interview with Ms. Dickerson. ............... 4

        B.    Plaintiff fails to state facts to support a *Brady* suppression claim against these seven officers (Counts I & IV). ......................................... 7

            1.    Plaintiff fails to identify any facts in the FAC showing Knoble, Phillips, Silver, or Hagan were involved in any allegedly suppressed conversation. .............................................. 7

            2.    Plaintiff cannot state a *Brady* claim against McMillan, Androvich, and Trail, based on a "possibl[e]" July 24 conversation with Ms. Lualemaga. ........................................ 7

        C.    Plaintiff fails to plead facts to support a malicious prosecution claim against these seven officers (Count II) ............................................. 10

        D.    Plaintiff's conclusory conspiracy claim must be dismissed (Count III). .... 11

    II.    All claims against Sergeant Daniele and Lieutenant Slade must be dismissed, because Plaintiff has pled only boilerplate allegations of supervisory liability (Count V). ..................................................................................... 12

    III.    Section 821.6 immunity completely bars Plaintiff's state law claims (Counts V, VI). ......................................................................................... 13

Reply MPA iso Motion to Dismiss
Case No. 16-cv-00050-YGR
i
n:\lit\li2016\160675\01113295.doc

IV.   San Francisco's duty to individual Defendants to pay a future judgment or settlement against them, does not give Plaintiff a right to sue San Francisco (Count VIII). ..................................................................................................15

CONCLUSION..................................................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aceves v. Allstate Ins. Co.*
   68 F.3d 1160 (9th Cir. 1995) ...................................................................15

*Asgari v. City of Los Angeles*
   15 Cal. 4th 744 (1997) ..........................................................................14

*Ashcroft v. al-Kidd*
   563 U.S. 731 (2011)...............................................................................6

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009)..........................................1, 2, 3, 4, 7, 8, 9, 10, 11, 12

*Awabdy v. City of Adelanto*
   368 F.3d 1062 (9th Cir. 2004) .................................................................10

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007)..............................................1, 2, 3, 4, 7, 8, 10, 11

*Blankenhorn v. City of Orange*
   485 F.3d 463 (9th Cir. 2007) ...................................................................10

*Boyd v. Benton County*
   374 F.3d 773 (9th Cir. 2004) ...................................................................11

*Brady v. Maryland*
   373 U.S. 83 (1963)...........................................................................7, 8, 13

*Brown v. Arizona*
   No. CV-09-2272, 2010 WL 396387 (D. Arizona Jan. 28, 2010) ...........................15

*Chuman v. Wright*
   76 F.3d 292 (9th Cir. 1996) ....................................................................11

*City & County of San Francisco v. Sheehan*
   135 S. Ct. 1765 (2015)............................................................................6

*Devereaux v. Abbey*
   263 F.3d 1070 (9th Cir. 2001) ........................................1, 2, 3, 4, 5, 6, 7, 9

*Dinius v. Perdock*
   2012 WL 1925666 (N.D. Cal. May 24, 2012) ...............................................14

*Galbraith v. County of Santa Clara*
   307 F.3d 1119 (9th Cir. 2002) .................................................................10

*Gausvik v. Perez*
   345 F.3d 813 (9th Cir. 2003) .................................................................3, 7

*Gillan v. City of San Marino*
　　147 Cal. App. 4th 1033 (2007) ....................................................................13, 14

*Gressett v. Contra Costa County*
　　No. C12-3798-EMC, 2013 WL 2156278 (N.D. Cal. May 17, 2013) ...................................5, 11

*Hamby v. Hammond*
　　--- F.3d. ---, No. 15-35283, 2016 WL 1730532 (9th Cir. May 2, 2016).....................................6

*Harris v. Roderick*
　　126 F.3d 1189 (9th Cir. 1997) ......................................................................10

*Homedics, Inc. v. Valley Forge Ins. Co.*
　　315 F.3d 1135 (9th Cir. 2003) ......................................................................15

*Jones v. Williams*
　　297 F.3d 930 (9th Cir. 2002) .......................................................................11

*Knievel v. ESPN*
　　393 F.3d 1068 (9th Cir. 2005) .......................................................................5

*Monell v. Department of Social Services*
　　436 U.S. 658 (1978)................................................................................15

*Reichle v. Howards*
　　132 S. Ct. 2088 (2012).............................................................................6

*Robinson v. Sappington*
　　351 F.3d 317 (7th Cir. 2003) .......................................................................15

*Starr v. Baca*
　　652 F.3d 1202 (9th Cir. 2011) ......................................................................13

*Steidl v. Fermon*
　　494 F.3d 623 (7th Cir. 2012) ........................................................................8

*Sullivan v. County of Los Angeles*
　　117 Cal.Rptr. 241 (1974) ........................................................................13, 14

*Tennison v. City and County of San Francisco*
　　570 F.3d 1078 (9th Cir. 2008). .....................................................................8

*Thomas v. Dillard*
　　818 F.3d 864 (9th Cir. 2016) ........................................................................6

*Tuker v. City of Richmond*
　　2012 WL 2571314 (N.D. Cal July 12, 2012)..........................................................14

*U.S. v. Ritchie*
　　342 F.3d 903 (9th Cir. 2003) ........................................................................5

*Wallace v. Kato*
    549 U.S. 384 (2007) ........................................................................14

*Wheat v. Lee*
    No. C-12-6299 EMC, 2013 WL 2285174 (N.D. Cal. May 23, 2013) .......................................14

*Whitlock v. Brueggemann*
    682 F.3d 567 (7th Cir. 2012) .........................................................................9

*Williams v. Horvath*
    16 Cal.3d 834 (1976) ......................................................................15

*Wright v. City of Santa Cruz*
    No. 13-CV-01230-LHK, 2014 WL 217089 (N.D. Cal. Jan. 17, 2014) ..................................2, 3

*Yadin Co., Inc. v. City of Peoria*
    No. CV-06-1317-PHX-PGR, 2008 WL 906730 (D. Ariz. Mar. 25, 2008) ..............................10

**Rules**

Federal Rules of Civil Procedure 19(a)(1)(A) ......................................................15

Federal Rules of Civil Procedure 19(a)(1)(B) ......................................................15

**State Statutes & Codes**

California Government Code section 821.6 ....................................................1, 13, 14

California Government Code section 825 ......................................................1, 15

California Government Code section 911.2(a) ....................................................14

California Government Code section 945.3 ....................................................14

California Government Code section 945.4 ....................................................14

California Government Code section 945.6 ....................................................14

**INTRODUCTION**

Today – after the Supreme Court decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) – a plaintiff cannot defeat a motion to dismiss simply by pointing to boilerplate allegations in a pleading.  Rather, *Iqbal* and *Twombly* mandate a two-step process: first, the Court disregards all conclusory or boilerplate allegations; and second, the Court assesses whether the remaining well-pled facts make it plausible to conclude that a given defendant is liable.  While Plaintiff's opposition pays lip service to this mandate – citing *Iqbal* once and *Twombly* not at all – Plaintiff ultimately falls back on his boilerplate.  But the law does not allow Plaintiff to use boilerplate to haul into court nine individual defendants who do not belong here.  Dismissal is proper.

And Plaintiff cannot pursue his state law claims against San Francisco and the three remaining individual defendants, D'Amico, Johnson, and Lee.  Government Code section 821.6 confers immunity from any state law claim, like Plaintiff's, whose factual basis is a wrongful prosecution or investigation.  And Government Code section 825 does not give Plaintiff a right to sue San Francisco. San Francisco should be dismissed, as should the state law claims against D'Amico, Johnson, and Lee.

**ARGUMENT**

**I.    Officers Androvich, Hagan, Knoble, McMillan, Phillips, Silver, and Trail must be dismissed from the case, because the facts pled do not show that these seven officers personally engaged in any action that violated a clearly established constitutional right.**

**A.    Plaintiff fails to state a *Devereaux* "fabrication of evidence" claim against these seven officers (Count I)**

In Count I of the FAC, Plaintiff alleges that the Defendants fabricated evidence against him, making them liable under *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001). FAC ¶¶ 218-220.  But the FAC does not support such a claim against these seven officers.  Doc. 50 at 15-19.

**1.    Plaintiff concedes that none of these seven officers misrepresented the strengths and circumstances of witness identifications (FAC ¶ 220.a.).**

The first ground for Plaintiff's *Devereaux* claim is that officers fabricated evidence when they "misrepresented" the strength of Ms. Lualemaga's and Ms. Dickerson's identifications.  FAC ¶ 220.a. But, as the opening brief explained, Doc. 50 at 16-17, the *only* defendant whom Plaintiff alleges to have misrepresented the strength of these witness statements is Inspector Johnson, when he wrote the arrest warrant affidavit.  FAC ¶¶ 110-116.  Plaintiff does not argue otherwise.  Doc. 59 at 20-22.

**2.    Plaintiff fails to identify any factual allegations in the FAC that Knoble, Phillips, or Silver fabricated any evidence (FAC ¶ 220.b.).**

The second ground for Plaintiff's *Devereaux* claim is that the Defendants fabricated evidence by coercing false identifications of him from Ms. Lualemaga and Ms. Dickerson.  FAC ¶ 220.b.  But as to Officer Knoble, Officer Phillips, and Officer Silver, Plaintiff has a problem: namely, Plaintiff did not plead that any of *them* obtained an identification of Plaintiff from Ms. Lualemaga or Ms. Dickerson.  Rather, *other* Defendants were alleged to have been involved.  FAC ¶¶ 66-67, 72-73, 96-107.

Defendants explained this pleading problem in the opening brief.  Doc. 50 at 17.  Plaintiff has two responses, but both are underwhelming.  First, Plaintiff points to his allegation that "Defendants" pressured these two witnesses.  Doc. 59 at 20 (citing FAC ¶ 220.b.).  But under *Iqbal*/*Twombly*, this conclusory allegation must be disregarded.  Second, Plaintiff points to his allegations at FAC ¶¶ 60-67.  Doc. 59 at 18.  But those allegations are against Officer Lee, the "John Doe" inspector, Inspector D'Amico, and Inspector Johnson – none of whom are moving for dismissal of this claim.  What Plaintiff relies on – buried in these paragraphs – are two generic references to unspecified "officers," FAC ¶¶ 60, 66, and a boilerplate allegation that unidentified "officers" "improperly suggested, pressured, and/or coerced Ms. Lualemaga to identify Mr. Trulove as the shooter."  FAC ¶ 66.  Of course, nowhere does the FAC plead which "officers" "coerced" Ms. Lualemaga, or what these "officers" did that rose to the level of coercion that would be so serious as to violate *Devereaux*.  Bare claims that unidentified officers engaged in unexplained "coercion" are conclusory allegations that carry no weight under *Iqbal* and *Twombly*.  By Plaintiff's reasoning, his generic allegations against "SFPD officers" would also support suing every one of the dozens of officers who responded to Mr. Kuka's murder.

Not only that, Plaintiff argues that if he lacks well-pled facts to support a *Devereaux* claim against Officer Knoble, Officer Phillips, or Officer Silver, he is entitled to discovery to get more facts.  Doc. 59 at 21.  But when defendants raise qualified immunity, it is not enough for the plaintiff to rest on his conclusory allegations in the hope that discovery might provide real facts to support a suit against them.  Indeed, that is what *Iqbal* held.  Conclusory allegations are not a free pass to conduct invasive, costly, and disruptive discovery.  Plaintiff's argument for discovery is not aided by *Wright v. City of Santa Cruz*, No. 13-CV-01230-LHK, 2014 WL 217089 (N.D. Cal. Jan. 17, 2014) (cited Doc. 59 at 21-22).  In *Wright*,

criminal charges were filed against the plaintiff but then dismissed shortly thereafter based on mistaken identity.  Because the plaintiff never learned which investigators were responsible for bringing charges against her, she sued only the City of Santa Cruz – and could go forward with her viable constitutional claim against that city.  Here, by contrast, Plaintiff has sued individual defendants, and the issue before the Court is whether Plaintiff can state a claim against *them* under *Iqbal* pleading standards.  Not only that, Plaintiff went through the entire criminal prosecution process twice, giving him discovery of detailed information about the investigation into his guilt, as well at the right to subpoena and examine witnesses against him.  The detailed information that Plaintiff already has is evident from many of the FAC's allegations against D'Amico, Johnson, and Lee.  If Plaintiff does not have enough to sue the moving Defendants, it is not for lack of discovery.

### 3.    Plaintiff's *Devereaux* claim against Trail, Androvich, and McMillan, based on a "possibl[e]" July 24 meeting with Ms. Lualemaga, is mere boilerplate and cannot survive a motion to dismiss.

Plaintiff alleges that at a "possibl[e]" meeting on July 24 at 5pm, Trail, Androvich, McMillan and Johnson put "pressure" on Ms. Lualemaga to name Plaintiff as the shooter.  But given the extreme degree of coercion required to make out a *Devereaux* claim, a bare accusation that officers "exert[ed] direct pressure" on a witness amounts to a mere boilerplate recitation of the elements of a *Devereaux* claim.  As the opening brief explained, this allegation does not get past the first step of *Iqbal*/*Twombly* analysis.  Doc. 50 at 17-18.  After all, officers do not violate the Constitution whenever they pressure or use overbearing tactics on a witness.  *Devereaux*, 263 F.3d at 1075; *Gausvik v. Perez*, 345 F.3d 813, 816-817 (9th Cir. 2003).  Not only that, Plaintiff admitted that this meeting only "possibly" occurred.  FAC ¶ 132.  This evidences the conclusory, tenuous nature of this allegation.  Doc. 50 at 17-18.

In response, Plaintiff simply rests on his conclusory allegations and claims an entitlement to go forth with discovery based on the *Wright* decision.  Doc. 59 at 16-17.  For the reasons just discussed, the *Wright* argument is a non-starter.  Relatedly, Plaintiff argues it is too burdensome to require him to plead facts.  But that argument simply ignores *Iqbal*/*Twombly*, and the qualified immunity defense – under which officers may be sued only on a showing that their conduct violated clearly established law.

Furthermore, Plaintiff has a weak explanation for his use of the word "possibly" in the FAC.  The FAC uses that word as follows:

132. On July 25, 2007—after an unrecorded phone call with officers, a conversation at her work, and possibly after a conversation the evening before at her grandmother's home—when presented with the same photograph of Jamal Trulove that she had not identified on July 23-24, 2007, Ms. Lualemaga stated that Jamal Trulove, "looked like the guy that could have shot Seu."

Plaintiff's opposition offers the following tortured explanation for what this means: "Plaintiff alleges that it was possible Lualemaga was also shown Plaintiff's photo at that meeting, in addition to seeing his photo at other times. (¶132)." Doc. 59 at 18 n.5. But this does not make any sense. Paragraph 132 cannot be a list of the "other times" when Ms. Lualemaga saw (or possibly saw) a photograph of Plaintiff. After all, this list of "other times" includes a telephone call – and a photograph cannot be seen over the phone. The only logical conclusion to draw is that paragraph 132 means exactly what it reads to mean: that Plaintiff alleges only a possibility that any such conversation occurred.

In any case, this motion does not turn on Plaintiff's telling use of the word "possibly." Even without this verbal slip, Plaintiff's conclusory allegations would still be inadequate under *Iqbal/Twombly*. Plaintiff's use of the word "possibly" is just further confirmation that the FAC lacks facts to support this *Devereaux* claim against Trail, Androvich, and McMillan.

### 4. Plaintiff cannot state a *Devereaux* claim against Hagan and McMillan based on their interview with Ms. Dickerson.

The opening brief explained why the FAC does not state a *Devereaux* claim against Officer Hagan and Inspector McMillan, based on their interview with Ms. Dickerson on June 18, 2008. During the interview, Ms. Dickerson told them (and Inspector Johnson) that she saw Plaintiff shoot Mr. Kuka. Plaintiff alleged that this statement was obtained by unconstitutional coercion, because instead of officers' charging Ms. Dickerson (a convicted felon) for a gun she was hiding during a traffic stop (they charged her husband instead), officers decided to interview her for information about Mr. Kuka's homicide. FAC ¶¶ 96-99. And the officers were alleged to have "engaged in suggestion" to help Ms. Dickerson match other known facts about the murder. *Id.* ¶¶ 101, 107. Defendants explained that these alleged interview techniques did not violate clearly established constitutional law, given the very high *Devereaux* standard. Doc. 50 at 18-19. To support this argument, Defendants attached a copy of Ms. Dickerson's recorded statement. Doc. 51-7.

1    Apart from objecting to the Court's consideration of Ms. Dickerson's recorded statement,

2  Plaintiff simply repeats the facts stated in the FAC.  Doc. 59 at 21.[1]  But these facts simply do not state

3  a claim for a violation of clearly established law.  Contrary to Plaintiff's argument, Doc. 59 at 22 n.7,

4  the qualified immunity question in this case is not whether there is a clearly established right not to be

5  convicted based on government-fabricated evidence.  It would be one thing if an officer fabricated

6  evidence in the form of, say, planting a weapon on Plaintiff or concocting physical evidence that

7  connected Plaintiff to the murder.  Of course it is clearly established that this cannot be done.

8    But Plaintiff's fabrication claim is different: Plaintiff contends that officers used improper

9  interview techniques that coerced a witness into giving false testimony.  The *Devereaux* decision

10  explained in great detail what evidence is required to make out that kind of fabrication claim, and the

11  standard is stringent.  That stringent standard is what makes it impossible to conclude, on these facts,

12  that officers engaged in coercive conduct that was clearly established to violate the Constitution.  The

13  Ninth Circuit recently explained what "clearly established" requires:

14    The Supreme Court has repeatedly emphasized that, to determine whether a
      given right was "clearly established" at the relevant time, the key question is
15    whether the defendants should have known that their specific actions were
      unconstitutional given the specific facts under review.  We flesh out this
16    standard at some length, in no small part because our circuit has been repeatedly
      chastised for conducting the clearly established inquiry at too high a level of
17    generality.

18    To be clearly established, a right must be sufficiently clear that every
      reasonable official would have understood that what he is doing violates that
19    right.  Although a plaintiff need not find a case directly on point, existing
      precedent must have placed the constitutional question beyond debate.  That is,
20    existing precedent must have placed beyond debate the unconstitutionality of
      the officials' actions, as those actions unfolded in the specific context of the

21

22    [1] Plaintiff objects to consideration of Ms. Dickerson's recorded statement, because the truth of
    her identification of Plaintiff is disputed.  Doc. 59 at 16, 17 n.3, 21.  Of course it is, but Plaintiff's
23  objection misses the point.  Defendants did not include Ms. Dickerson's recorded statement to
    persuade the Court that Ms. Dickerson saw Plaintiff commit the murder.  Rather, the recorded
24  statement is included so the Court can see what the Defendant officers and Ms. Dickerson said during
    the interview, and assess whether the interview techniques used by the Defendant officers were so
25  coercive as to be clearly unconstitutional, as Plaintiff contends.  It is proper under the "incorporation
    by reference doctrine" to take judicial notice and consider a recorded statement like this on a motion to
26  dismiss, where the Plaintiff has described and referenced the recorded statement in his pleading, FAC
    ¶¶ 100-105.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076-1077 (9th Cir. 2005).  And it is proper to do
27  so in a case where officers are alleged to have falsified evidence.  Indeed, in a case involving a similar
    claim, the district court reviewed an allegedly misleading arrest warrant affidavit to determine whether
28  it supported a constitutional claim.  *Gressett v. Contra Costa County*, No. C12-3798-EMC, 2013 WL
    2156278, at *8 (N.D. Cal. May 17, 2013) (citing *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

> case at hand.  Hence, a plaintiff must prove that precedent on the books at the
> time the officials acted would have made clear to them that their actions
> violated the Constitution.

*Hamby v. Hammond*, --- F.3d. ---, No. 15-35283, 2016 WL 1730532, at *3 (9th Cir. May 2, 2016)

(quotation marks, ellipses, brackets, and citations omitted) (citing and quoting *Taylor v. Barkes*, 135 S.

Ct. 2042 (2015), *City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765 (2015), *Reichle v.*

*Howards*, 132 S. Ct. 2088 (2012), and *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)).

Here, then, the question is whether precedent on the books in 2008 would have clearly

established that the specific interview techniques allegedly used by these officers with Ms. Dickerson

were so coercive or suggestive that they violated the Due Process Clause.  And Plaintiff cites no

authority from 2008 (or even now) that could meet the "demanding standard" for overcoming

qualified immunity, *Thomas v. Dillard*, 818 F.3d 864, 887 (9th Cir. 2016), *as amended* (May 5, 2016).

Finally, Plaintiff misunderstands *Devereaux* in arguing that officers knew or should have

known Plaintiff was innocent because there was not enough good evidence to inculpate the Plaintiff.

Doc. 59 at n.6.  But Defendants' knowledge about the shortcomings in the inculpatory evidence,

alleged in the FAC, is not the same thing as evidence establishing Plaintiff was innocent.  And the

FAC nowhere alleges that any Defendant had such evidence.  A review of *Devereaux* shows that the

kind of shortcomings in the inculpatory evidence alleged in the FAC – inconsistencies with other

evidence, and recalcitrant, uncertain, or unreliable witnesses – do not compel officers to conclude that

a potential perpetrator is innocent and cease all investigation.  *See, e.g.*, *Devereaux*, 263 F.3d at 1077

(police investigators "must be permitted to exercise some discretion in deciding when to accept initial

denials at face value and when to reject them (or withhold judgment on them) and proceed further");

*id.* at 1081 (explaining it would be error to infer "deliberate fabrication from the fact that an

investigator discounted a witness's statement and pressed on" with an investigation).

Indeed, the existence of inculpatory evidence, even if conflicting, meant the Defendants were

entitled to believe in Plaintiff's guilt.  After all, this is not a case where investigators had nothing on

Plaintiff.  Ms. Lualemaga identified Plaintiff as the shooter less than 48 hours after the murder.  FAC ¶

86.  Not only that, just hours after the murder, Ms. Lualemaga told investigators she saw Mr. Kuka

chasing Joshua Bradley.  FAC ¶¶ 41, 47.  That, of course, would have supplied a motive for Plaintiff

to shoot Mr. Kuka: Joshua Bradley was Plaintiff's brother, FAC ¶ 32, and Plaintiff would have wanted to protect his brother from Mr. Kuka. This was more than adequate to support officers in not concluding that Plaintiff was innocent. After all, in *Gausvik*, the Ninth Circuit rejected an argument that an investigator should have known the plaintiff was innocent, even where the investigator had misrepresented facts in his affidavit and exaggerated the strength of the case against the plaintiff. The mere existence of accusations was enough to defeat the *Devereaux* claim. *Gausvik*, 345 F.3d at 817.

**B.**    **Plaintiff fails to state facts to support a *Brady* suppression claim against these seven officers (Counts I & IV).**

Here, Plaintiff alleges that Defendants caused a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), by concealing from prosecutors three alleged exchanges between police officers and witnesses: (1) the "John Doe" plainclothes officer with a clipboard allegedly questioning Ms. Lualemaga about Plaintiff in the middle of the station, while Lee stood there; (2) the "possibl[e]" meeting at Ms. Lualemaga's home on July 24 with Johnson, McMillan, Androvich, and Trail; and (3) Mr. Vaovasa's statements to Johnson and D'Amico that he did not see the murder, even though Ms. Dickerson said she could see the murder from the same location. FAC ¶ 221. Plaintiff's opposition faults Defendants for not "address[ing] the majority of Plaintiff's allegations of suppression of evidence." Doc. 59 at 22. But the majority of Plaintiff's suppression allegations are against D'Amico, Johnson, and Lee. The moving Defendants have little to do with these claims. That is why they filed this motion.

**1.**    **Plaintiff fails to identify any facts in the FAC showing Knoble, Phillips, Silver, or Hagan were involved in any allegedly suppressed conversation.**

In the opening brief, Defendants pointed out Plaintiff did not allege that any of these conversations involved Officer Knoble, Officer Phillips, Officer Silver, or Officer Hagan. Doc. 50 at 20. In opposition, Plaintiff does not contend otherwise – his brief addresses suppression claims against other officers. Doc. 59 at 22-23. Given Plaintiff's silent concession, Officers Knoble, Phillips, Silver, and Hagan must be dismissed.

**2.**    **Plaintiff cannot state a *Brady* claim against McMillan, Androvich, and Trail, based on a "possibl[e]" July 24 conversation with Ms. Lualemaga.**

In the opening brief, Defendants explained that the *Brady* allegations against McMillan, Androvich, and Trail failed at both prongs of *Iqbal/Twombly*. Doc. 50 at 21-22.

At the first prong, as already discussed above, allegations about a "possibl[e]" conversation in which unspecified "pressure" was placed on Ms. Lualemaga to identify Plaintiff, are too vague and conclusory to be given any weight.

But even supposing that a hypothetical conversation could be considered *Brady* material, this claim would fail at the second prong of *Iqbal*/*Twombly*.  That is because of the exacting intent requirement for a *Brady* claim: it is not enough for a police officer or investigator to carelessly fail to disclose material exculpatory evidence.  Rather, an officer must act with either the purpose of hiding material exculpatory evidence from a criminal defendant, or with deliberate indifference – with the knowledge and conscious disregard of the fact that his inaction will keep that helpful evidence from a criminal defendant.  *Tennison v. City and County of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2008).  And if *Iqbal* teaches anything, it is that it is not enough for a plaintiff to just file a complaint stating that a section 1983 defendant acted with bad intent.  Those are conclusory allegations that must be disregarded.  Rather, the well-pled facts must supply direct evidence of bad intent or indirect evidence from which bad intent can be plausibly inferred.

Under *Iqbal*, it is not enough for Plaintiff to have just *pled* that Inspector McMillan, Officer Androvich, and Officer Trail acted intentionally or with deliberate indifference when, after Inspector Johnson brought the case to the prosecutor more than a year later, they did not make a point to seek out the prosecutor to inform him or her about the July 24 conversation with Ms. Lualemaga.  As Defendants explained in the opening brief, a plausible explanation for their inaction was that they expected Inspector Johnson – who was also present – to make any necessary disclosures about this conversation, if charges ever ended up being filed in the case.  Defendants' argument is not, as Plaintiff would have it, based on a legal claim that only lead homicide inspectors can have *Brady* obligations.  Doc. 59 at 23.  Rather, this argument is about what is plausible – and it is plausible that officers simply expect each other to do their jobs.  Contrary to Plaintiff, *Tennison* (and the language in *Steidl v. Fermon*, 494 F.3d 623 (7th Cir. 2012) quoted in *Tennison*) did not hold that officers who provide assistance early in a homicide investigation cannot plausibly rely on the lead investigator to make the necessary disclosures at some point in the indeterminate future when charges are filed, Doc. 59 at 23.  Rather, those cases were simply discussing whether *Brady* obligations were clearly

1    established for purposes of qualified immunity.

2        Plaintiff's counter-explanation is that an intent to deliberately withhold information about this

3    conversation can be plausibly inferred from McMillan, Androvich, and Trail's desire to conceal their

4    own misconduct.  Doc. 59 at 22.  But this is not plausible.  To begin with – what misconduct?  As

5    already discussed above, Section I.A.3., under *Devereaux* pressuring a witness to identify a perpetrator

6    does not even come close to constitutional misconduct.  It would be a different scenario if Plaintiff

7    pled that officers beat or threatened Ms. Lualemaga's life to extract an identification of Plaintiff – that

8    is misconduct, and it would be plausible to infer a desire to intentionally suppress it.  But nothing like

9    that is alleged here.  There is no constitutional misconduct to hide by McMillan, Androvich, and Trail.

10       And Plaintiff's string citation to FAC ¶¶ 66, 73-74, 107, 146-151 does not help his plausibility

11   argument.  Doc. 59 at 22.  Those paragraphs do not build a case for McMillan, Androvich, and Trail

12   acting with bad intent.  Beginning with FAC ¶¶ 73-74, these cursorily allege the July 24 5pm

13   conversation itself – but as just discussed, no misconduct occurred in that alleged conversation.

14   Turning to FAC ¶ 66 and ¶¶ 146-151, all of these paragraphs refer to the "John Doe" conversation the

15   night of the murder – but that conversation did not involve any of these three officers.  Finally, FAC ¶

16   107 references the conversation with Dickerson that occurred a year later, which involved McMillan

17   but not Androvich or Trail.  But the Dickerson conversation hardly makes a plausible case for

18   McMillan acting deliberately to suppress a conversation involving coercion of a witness.  After all, the

19   Dickerson conversation – coercive or not – *was* disclosed.  FAC ¶ 109.

20       This is not a case where there are competing plausible claims regarding intent.  Plaintiff simply

21   has not pled facts to support any plausible claim of bad intent.  Under these circumstances, the Court

22   should not hesitate to decide this issue on a motion to dismiss.  Contrary to Plaintiff, a common-sense,

23   reasonable argument from the facts is proper on a motion to dismiss.  Doc. 59 at 22.  After all, in

24   *Iqbal*, the Supreme Court explained that a motion to dismiss "requires the reviewing court to draw on

25   its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  The case cited by Plaintiff,

26   *Whitlock v. Brueggemann*, 682 F.3d 567, 589 (7th Cir. 2012) says nothing to the contrary.  Common

27   sense still works.  The claims against McMillan, Androvich, and Trail should be dismissed.

28

### C. Plaintiff fails to plead facts to support a malicious prosecution claim against these seven officers (Count II).

In the opening brief, Defendants explained how a plaintiff claiming malicious prosecution must allege facts showing that each defendant was himself "integrally involved in providing false statements to the prosecutor and thus in his allegedly malicious prosecution." *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007). Doc. 50 at 22.

Plaintiff contends that under this standard, if an officer engages in any constitutional misconduct during an investigation, he can be held liable for a later malicious prosecution even if he never gives a false statement to the prosecutor. Doc. 59 at 24. But even supposing Plaintiff were right, there was no constitutional misconduct by any of these seven defendants, as discussed above.

But more to the point, constitutional misconduct at some point in an investigation is not sufficient to state a malicious prosecution claim. To be sued for malicious prosecution, an officer must also be "actively instrumental in causing the initiation of legal proceedings." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067-68 (9th Cir. 2004). And all of the cases cited by Plaintiff, Doc. 59 at 24, comport with this rule – they involve defendants who were sued for malicious prosecution for their *own* false statements (written or oral) *to prosecutors*. In *Awabdy*, the plaintiff alleged that city employees made false statements to the DA that he embezzled funds. In *Harris v. Roderick*, 126 F.3d 1189, 1198 (9th Cir. 1997), the officers allegedly gave false testimony in official reports, and lied to the grand jury and to the trial jury. And in *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002), the county coroner was alleged to have falsified an autopsy report given to the prosecutor. Not only that, Plaintiff cannot rely on *Galbraith*'s relaxed pleading standard, Doc. 59 at 24, which is not good law after *Twombly* and *Iqbal*. *See Yadin Co., Inc. v. City of Peoria*, No. CV-06-1317-PHX-PGR, 2008 WL 906730, at *4 (D. Ariz. Mar. 25, 2008) (recognizing abrogation of *Galbraith* by *Twombly*). (Finally, Plaintiff's parenthetical description of *Galbraith*'s holding is wrong. Plaintiff appears to have mistaken a lengthy block quotation from another Ninth Circuit decision – discussing the evidentiary presumption of prosecutorial independence – for *Galbraith*'s holding. *Galbraith*, 307 F.3d at 1126.) Here, however, none of the seven moving Defendants made a false statement to the prosecutor or actively instigated the prosecution. They cannot be sued for malicious prosecution.

1

### D.    Plaintiff's conclusory conspiracy claim must be dismissed (Count III).

2

3    Contrary to Plaintiff, Doc. 59 at 25, the FAC does not contain *facts* about which Defendants

4    conspired with a plausible purpose of violating his civil rights, how they conspired, or how a

5    conspiracy caused a deprivation of civil rights.  Instead, Plaintiff pled bare conclusions – which must

6    be ignored under *Iqbal* and *Twombly*.[2]

7    The only fact pled here regarding concerted action by (some of) the moving Defendants was to

8    suggest Plaintiff as a suspect.  But there is no civil right not be considered as a suspect in a homicide

9    investigation.  And there is no civil right not to have one police officer provide information to another.

10    What is missing from the FAC is any well-pled fact that would make it plausible that the moving

11    defendants suggested Plaintiff as a suspect for the *purpose* of denying Plaintiff's civil rights.  This is

12    not a case where long-standing grudges or political payback would supply a ready plausible motive for

13    a conspiracy to frame a plaintiff, like *Gressett v. Contra Costa County*, No. C-12-3798 EMC, 2013

14    WL 2156278, at *16 (N.D. Cal. May 17, 2013).[3]  But here, a motive to deny civil rights cannot be

15    inferred from the facts that Plaintiff was known to the moving Defendants, suspected as a gang

16    member from a young age, and had a criminal record, Doc. 59 at 26.  Rather, these facts – along with

17    the fact that the man Mr. Kuka was chasing was *Plaintiff's brother* – explain why Plaintiff was a

18    suspect.  Giving this information to the lead homicide investigators is what is expected of police

19    officers.  Plaintiff cannot plausibly infer a purpose to violate civil rights from this routine police work.

20    ───────────────

21    [2] Similarly, Plaintiff's "integral participation" argument, Doc. 59 at 17-20, impermissibly relies on the same conclusory statements.  Moreover, Plaintiff misunderstands the "integral participation" doctrine.  Unlike a conspiracy claim, which expands liability to include officers who were not present for a violation, the "integral participation" doctrine limits liability – even foreclosing liability for officers who were actually present. *Chuman v. Wright*, 76 F.3d 292, 294-95 (9th Cir. 1996) (search claim; "team effort" instruction rejected).  The "integral participation" cases cited by Plaintiff involve officers who were present and whose liability was conditioned on personal participation in the constitutional violation. *Jones v. Williams*, 297 F.3d 930, 934-936 (9th Cir. 2002) (search claim; rejecting proposed jury instruction that would have made officers liable based on presence during an unconstitutional search); *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004) (search claim; allowing for "integral participation" liability where all officers conducting the search agreed to deploy a flash-bang grenade that could amount to excessive force).

26    [3] Indeed, in *Gressett*, the court held that a conspiracy was plausible *only* as to the group of defendants who had this motive.  The court held a conspiracy to be *implausible* as to other groups of defendants who lacked that motive – drilling down to the level of whether a proper motive was pled for each individual.  2013 WL 2156278, at *16-17.  And the court dismissed those conspiracy claims under *Iqbal*/*Twombly*.  Thus, *Gressett* undermines Plaintiff's argument more than it supports it.

1    Nevertheless, Plaintiff persists in arguing a conspiracy to fabricate evidence against him – an

2    argument that Plaintiff purports to base on the facts pled in the FAC.  Plaintiff argues:  "Plaintiff

3    makes specific allegations that early on in the investigation, Defendants decided to focus on Plaintiff

4    Trulove, and then, when no witnesses came forward and they could not get a positive identification of

5    Plaintiff as the shooter, they acted in concert to fabricate Lualemaga and Meadows-Dickerson's

6    identifications."  Doc. 59 at 25.  The problem with this argument is that the "facts" Plaintiff argues in

7    the opposition brief to support a conspiracy don't match the facts he pled in the FAC.

8        To begin with, Plaintiff's argument is based on timing: that Defendants must have had it in for

9    Plaintiff, because they decided to focus on Plaintiff *before* any witness came forward with information

10   about the homicide.  But Plaintiff's argument *reverses* the actual timing of the events pled in the FAC.

11   The FAC states that Ms. Lualemaga came forth with information *immediately* on the night of the

12   homicide, and told officers she saw the shooting.  FAC ¶ 29.  Not only that, Ms. Lualemaga

13   immediately identified Joshua Bradley as the person Seu Kuka was chasing right before he got shot.

14   FAC ¶¶ 45, 47, 52.  During the chase, she explained, a man blocked Mr. Kuka.  The man got knocked

15   down, and then he got up and shot Mr. Kuka.  FAC ¶¶ 41-42.  That night, Ms. Lualemaga told

16   Inspector D'Amico that she thought she could pick the shooter out of a photo line-up.  FAC ¶ 50.

17   However, it was only *after* all of this happened that any of the moving Defendants are alleged to have

18   suggested that Plaintiff should be considered as a suspect.  FAC ¶¶ 57, 78.  And Plaintiff was a

19   perfectly logical suggestion – Plaintiff was Mr. Bradley's brother and would have a motive to protect

20   him.  So Plaintiff's timing argument founders on the facts Plaintiff himself pled.  Likewise, Plaintiff's

21   claim that the investigation got stuck, prompting a conspiracy, does not match the FAC.  The

22   investigation was not stuck.  Less than 48 hours after the homicide, Ms. Lualemaga picked Plaintiff

23   out of the photo line-up shown to her by Inspector D'Amico and Inspector Johnson.  FAC ¶¶ 79-86.

24   **II.    All claims against Sergeant Daniele and Lieutenant Slade must be dismissed, because
         Plaintiff has pled only boilerplate allegations of supervisory liability (Count V).**

25       Just like the section 1983 claims at issue in *Iqbal*, Plaintiff's supervisory liability claims

26   against Sgt. Daniele and Lt. Slade are mere boilerplate.  Doc. 50 at 24-26.  It is entirely implausible to

27   conclude that just because they were on duty, they must have observed the brief "John Doe"

28

conversation and concluded that a clear constitutional violation was occurring.

Plaintiff has two arguments for going forward against Sgt. Daniele and Lt. Slade, but neither one is persuasive.  First, Plaintiff relies on *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), to argue that these supervisors had "constructive" knowledge of misconduct and therefore could be held liable even though they were not aware of and did not personally participate in any misconduct.  But *Starr* involved allegations of specific past incidents that put Sheriff Baca on notice of the need to exercise his authority as Sheriff to better train and discipline his deputies.  Here, however, there are no such allegations that Sgt. Daniele and Lt. Slade were on notice of rampant, specific *Brady* violations and extremely coercive witness interviews on the watch they supervised.

Second, Plaintiff argues that his supervisory liability allegations are not boilerplate, because they are based on SFPD's expectations of supervisors.  But this does not make it any more plausible that Sgt. Daniele and Lt. Slade would have known about the "John Doe" conversation.  Just because an organization directs its supervisors to be omniscient, does not make omniscience plausible.

## III.   Section 821.6 immunity completely bars Plaintiff's state law claims (Counts V, VI).

Contrary to Plaintiff, Doc. 59 at 28-29, Government Code section 821.6 immunity applies to any state law claim whose factual basis is that officers engaged in misconduct during an investigation or prosecution.  The immunity is not limited to the express tort of malicious prosecution.  *See, e.g.*, *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1048 (2007).  As outlined in the opening brief, Doc. 50 at 26-27, legions of California court decisions have held that artful pleading cannot defeat this immunity – it applies to any legal claim, including Plaintiff's Civil Code section 52.1 claim.

Plaintiff's reliance on *Sullivan v. County of Los Angeles*, 117 Cal.Rptr. 241 (1974), is misplaced.  That case concerned a California false imprisonment claim against an arresting officer (in California, the tort of false arrest is technically called false imprisonment).  *Sullivan* held only that section 821.6 immunity does not extend to a false imprisonment claim against an arresting officer; rather, section 821.6 immunity applies to claims of misconduct related to investigation and prosecution.  *Id.* at 246-47.  And under California law, a false imprisonment claim against an arresting officer is limited to the time between the arrest and when the arrestee is brought before a magistrate judge; section 821.6 immunity bars any claim for subsequent imprisonment.  *Asgari v. City of Los*

*Angeles*, 15 Cal. 4th 744, 757-58 (1997).  While *Sullivan* and *Asgari* preserve liability for a California false imprisonment claim for this brief span of time, they do not – contrary to Plaintiff – limit section 821.6 to express claims of malicious prosecution.

Indeed, since *Sullivan*, California courts have interpreted section 821.6 to immunize officers from *any* legal claim based on alleged misconduct surrounding a prosecution and investigation – while also allowing a false imprisonment claim based on the initial arrest.  *Gillan*, 147 Cal. App. 4th at 1048; *see also Wheat v. Lee*, No. C-12-6299 EMC, 2013 WL 2285174, at *9 (N.D. Cal. May 23, 2013) (disagreeing with a contrary unpublished federal district court ruling,[4] and explaining "it appears that no California state court has yet to read *Sullivan* as limiting the scope of § 821.6 immunity to malicious prosecution actions [and] to nothing else. Instead, *Sullivan* only appears to hold § 821.6 immunity does not apply to false imprisonment claims.").

Section 821.6 plainly applies to Plaintiff's claim that D'Amico, Johnson, and Lee suppressed evidence and coerced witnesses during the murder investigation, which resulted in Plaintiff being "wrongly prosecuted, detained, and incarcerated for over six years."  FAC ¶ 256.  As for Plaintiff's two days in custody after his October 27, 2008 arrest, amendment to add a false imprisonment claim would be futile, because any such claim accrued when Plaintiff was brought before a magistrate on October 29, 2008, Doc. 51-2, and it is now time-barred.[5]

---

[4] Plaintiff cites several unpublished district court decisions concerning section 821.6, most of which are irrelevant because they involve false arrest claims.  The only two decisions that do not involve false arrest claims are *Tuker v. City of Richmond*, 2012 WL 2571314, at *4-5 (N.D. Cal July 12, 2012), and *Dinius v. Perdock*, 2012 WL 1925666, at *9 (N.D. Cal. May 24, 2012). Defendants, like Judge Chen in *Wheat, supra,* respectfully disagree with Judge James' analysis in these cases.

[5] The accrual rule for a California false arrest/false imprisonment claim is the same as the federal accrual rule under *Wallace v. Kato*, 549 U.S. 384, 389-391 (2007).  Namely, the false imprisonment arising from the false arrest ends when the arrested person is brought before a magistrate.  *Asgari*, 15 Cal.4th 744 at 758.  Thus, Plaintiff's claim for false arrest accrued when he was brought before a magistrate on October 29, 2008. Doc. 51-2.  Plaintiff then had 6 months to file a Government Claim.  Further, he had at most two years from that date to file suit (subject to tolling provisions applicable to the lawsuit but not to the Government Claim).  Cal. Gov. Code §§ 911.2(a); 945.4; 945.6.  Both time bars apply here – the claim bar and the statute of limitations for filing suit. First, Plaintiff did not plead that he filed a claim for his false arrest within six months of October 29, 2008 (and he cannot fairly amend to plead he did).  Second, the statute of limitations for Plaintiff to file suit on a state-law false arrest claim ran before Plaintiff filed this suit.  Under California's tolling and extension provisions (which apply to filing suit but not to the Government Claim), Gov. Code §§ 945.3, 945.6, Plaintiff had six months after his March 11, 2015 acquittal to file suit on a state law false arrest claim.  But he did not file suit until January 5, 2016 – more than six months later.

**IV.    San Francisco's duty to individual Defendants to pay a future judgment or settlement against them, does not give Plaintiff a right to sue San Francisco (Count VIII).**

Section 825 of the Government Code requires San Francisco to defend and indemnify its employees; it does not create a private right of action for Plaintiff.  As the California Supreme Court has explained, "indemnity does not provide additional rights to plaintiffs.  It is the defendant and not the plaintiff who is given a separate cause of action for reimbursement under Government Code section 825." *Williams v. Horvath*, 16 Cal.3d 834, 845 (1976).  Plaintiff takes issue with this case because the Court's reasoning was dicta.  Doc. 59 at 29.  But federal courts must follow the reasoned dicta of the California Supreme Court when applying California law.  *See Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1141 (9th Cir. 2003); *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1164 (9th Cir. 1995).  And no court has ever held that section 825 creates a free-standing cause of action for plaintiffs to sue California municipalities for a section 1983 violation by a municipal employee, and thereby bypass *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Nor is the City a necessary party to this action, as Plaintiff contends, Doc. 59 at 30.  Assuming the plaintiff is successful, the Court can award complete relief against the individual defendants.  Fed. R. Civ. Pro. 19(a)(1)(A).  The City does not lack the ability to protect its interests; the City is conducting the defense here.  Fed. R. Civ. Pro. 19(a)(1)(B).  Moreover, Plaintiff is mistaken to rely on *Brown v. Arizona*, No. CV-09-2272, 2010 WL 396387 (D. Arizona Jan. 28, 2010) and *Robinson v. Sappington*, 351 F.3d 317 (7th Cir. 2003).  Both were employment cases involving whether the plaintiff was exclusively a state employee (versus a "joint employee"), such that the county could be dismissed.  Most importantly, neither case involved interpretation of California law.

## CONCLUSION

The Court should dismiss Defendants Androvich, Daniele, Hagan, Knoble, McMillan, Phillips, Silver, Slade, Trail, and San Francisco from the case.  The Court should also dismiss the California law claims against D'Amico, Johnson, and Lee.

Dated:  June 17, 2016                        DENNIS J. HERRERA
                                             City Attorney

                                      By: _/s/ Peter J. Keith_
                                             PETER J. KEITH, Deputy City Attorney
                                             Attorneys for Defendants