PAGES 1 - 45

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMAL RASHID TRULOVE,           )
                                )
           PLAINTIFF,           )   NO. C-16-0050 YGR
                                )
  VS.                           )   MONDAY, AUGUST 29, 2016
                                )
THE CITY AND COUNTY OF          )   OAKLAND, CALIFORNIA
SAN FRANCISCO, ET AL.,          )
                                )
                                )   INITIAL CASE MANAGEMENT
           DEFENDANTS.          )         CONFERENCE
_____  )    MOTION TO DISMISS


        BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE

          **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:**          NEUFELD, SCHECK & BRUSTIN, LLP
                           99 HUDSON STREET, 8TH FLOOR
                           NEW YORK, NEW YORK 10013
                    BY:  NICK BRUSTIN, ESQUIRE

                           ALEX REISMAN, ESQUIRE
                           P.O. BOX 10
                           BRISBANE, CALIFORNIA 94005


                           KATE L. CHATFIELD, ESQUIRE
                           2130 FULTON STREET, KN211
                           SAN FRANCISCO, CALIFORNIA 94117


                    (APPEARANCES CONTINUED)


  **REPORTED BY:**          DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                           OFFICIAL COURT REPORTER

     TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

1

2        **FOR DEFENDANT:**              OFFICE OF THE CITY ATTORNEY
                                         1390 MARKET STREET, 6TH FLOOR
3                                        SAN FRANCISCO, CALIFONRIA 94102
                                 BY:   PETER J. KEITH, DEPUTY CITY ATTORNEY
4                                      RENEE ERICKSON, DEPUTY CITY ATTORNEY

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | <u>MONDAY, AUGUST 29, 2016</u>                    <u>1:00 P.M.</u> |
| 2 | P R O C E E D I N G S |
| 3 | **THE CLERK:**  YOU MAY BE SEATED. |
| 4 | CALLING ACTION 16-0050 TRULOVE VERSUS SAN FRANCISCO, ET |
| 5 | AL. |
| 6 | COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES. |
| 7 | **MR. KEITH:**  GOOD AFTERNOON, YOUR HONOR.  PETER KEITH |
| 8 | AND RENEE ERICKSON -- |
| 9 | **THE COURT:**  I ALWAYS START WITH PLAINTIFF. |
| 10 | **MR. KEITH:**  OH, I'M SORRY. |
| 11 | **THE COURT:**  THAT'S ALL RIGHT.  JUST GET USED TO IT. |
| 12 | **MR. BRUSTIN:**  GOOD AFTERNOON, YOUR HONOR.  NICK |
| 13 | BRUSTIN, NEUFELD, SCHECK & BRUSTIN FOR THE PLAINTIFF JAMAL |
| 14 | TRULOVE. |
| 15 | **MR. KEITH:**  AND, YOUR HONOR, PETER KEITH -- I'M |
| 16 | SORRY. |
| 17 | **MR. REISMAN:**  GOOD AFTERNOON, YOUR HONOR.  ALEX |
| 18 | REISMAN ALSO APPEARING FOR THE PLAINTIFF. |
| 19 | **THE COURT:**  OKAY. |
| 20 | **MS. CHATFIELD:**  GOOD AFTERNOON, YOUR HONOR.  KATE |
| 21 | CHATFIELD ALSO APPEARING FOR THE PLAINTIFF JAMAL TRULOVE. |
| 22 | **THE COURT:**  ALL RIGHT.  NOW YOU, MR. KEITH. |
| 23 | **MR. KEITH:**  OF COURSE, YOUR HONOR. |
| 24 | PETER KEITH, DEPUTY CITY ATTORNEY FOR THE DEFENDANTS.  AND |
| 25 | ALSO MY COLLEAGUE RENEE ERICKSON ALSO DEPUTY CITY ATTORNEY. |

```
1            THE COURT:  OKAY.  WE HAVE A LOT TO DO TODAY.  THIS

2    IS ON BOTH FOR MOTION PRACTICE AND A CASE MANAGEMENT

3    CONFERENCE.

4        MY MEMORY IS THAT I KEPT THIS ON CALENDAR BECAUSE THERE

5    WAS A YOUNG LAWYER WHO WAS GOING TO ARGUE IT.  IS THAT THE

6    CASE?  IS THAT THIS CASE?

7            MR. BRUSTIN:  THERE WAS, YOUR HONOR, AND

8    UNFORTUNATELY OR FORTUNATELY FOR HER, SHE HAS LEFT TO START

9    HER CLERKSHIP WITH JUDGE PARKER IN THE SECOND CIRCUIT.

10           THE COURT:  OKAY.

11           MR. BRUSTIN:  YOU ARE STUCK WITH ME.

12           THE COURT:  THAT'S ALL RIGHT.  LET'S GO THROUGH THE

13   MOTION FIRST.  I USUALLY HAVE COUNSEL FOR BOTH SIDES UP HERE

14   BECAUSE I GO BACK AND FORTH.

15       I CAN TELL YOU THAT ABSENT BRILLIANCE IN ARGUING TODAY,

16   THE MOTION WILL BE GRANTED IN PART AND DENIED IN PART.  WE GET

17   A LOT OF THESE COMPLAINTS.  AND ULTIMATELY IT'S MY CALL TO

18   DECIDE WHETHER I THINK THERE'S ENOUGH THERE OR NOT.

19       MY PRIMARY QUESTION WITH RESPECT TO A NUMBER OF THESE

20   WHERE I AM GOING TO GRANT THE MOTION, AND IT'S FOCUSED ON A

21   SELECT GROUP OF INDIVIDUALS, MY QUESTION IS GOING TO BE FOR

22   YOU, MR. BRUSTIN -- DID I SAY THAT RIGHT?

23           MR. BRUSTIN:  BRUSTIN.  THANK YOU, YOUR HONOR.

24           THE COURT:  BRUSTIN.

25       IS WHETHER OR NOT YOU CAN AMEND AT THIS JUNCTURE, WHETHER
```

```
1    THERE'S ANYTHING ELSE OUT THERE IN TERMS OF FACTS THAT YOU

2    DIDN'T PUT IN THE COMPLAINT.  IF NOT, THEN I WILL GRANT THE

3    MOTION WITHOUT PREJUDICE TO FILING A MOTION TO AMEND LATER IF

4    YOU GET ANYTHING ELSE.

5        THE REALITY IS, WITH THESE KINDS OF CASES, THEY WILL NEVER

6    GO TO TRIAL WITHOUT A SUMMARY JUDGMENT MOTION AND IT'S MY JOB

7    TO SIMPLIFY IT NOW.  AND IF IT NEEDS TO EXPAND LATER, WE CAN

8    DO THAT IF THERE'S ANYTHING THERE, BUT IF NOT, IT'S GOING TO

9    ELIMINATE A LOT OF MOTION PRACTICE AT A LATER JUNCTURE.  SO

10   THAT'S GOING TO BE THE FOCUS OF THE MOTION -- OF THE MOTION

11   ARGUMENT.

12       ALL RIGHT.  SO LET'S START WITH CLAIMS RELATED TO

13   FABRICATION.  THE ELEMENTS THAT WOULD HAVE TO BE PROVEN TO

14   SUSTAIN A CLAIM ARE THAT THERE'S A SPECIFIC IDENTIFICATION OF

15   EVIDENCE ALLEGED TO HAVE BEEN FABRICATED AND FACTS TO SHOW

16   THAT THE FABRICATION WAS DELIBERATE.

17       SO WITH RESPECT TO OFFICERS TRAIL, ANDROVICH, AND

18   INSPECTOR MCMILLAN, I AM INCLINED TO FIND THAT THERE IS

19   SUFFICIENT EVIDENCE ALLEGED WITH RESPECT TO THOSE TWO

20   ELEMENTS.  THAT IS, THEY MET WITH -- AND, AGAIN, I DON'T KNOW

21   THAT I AM SAYING THIS RIGHT.  LUA -- HOW DO YOU PRONOUNCE HER

22   NAME?

23            MR. BRUSTIN:  I BELIEVE IT'S LUALEMAKA (SIC).

24            THE COURT:  LUALEMAKA (SIC).  OKAY.

25            MR. BRUSTIN:  LUALEMAGA, I APOLOGIZE, YOUR HONOR.
```

1          **THE COURT:**  THAT THEY PRESSURED HER IN THIS

2     UNRECORDED CONVERSATION.

3          AND WITH RESPECT TO BOTH MCMILLAN AND HAGAN, THERE ARE

4     ALLEGATIONS INDICATING THAT HE COERCED DICKERSON TO SAY THAT

5     THE SHOOTER WHAT TRULOVE, ENTICING HER WITH AN INCENTIVE TO

6     AVOID A THIRD STRIKE CHARGE FOR HER COCAINE AND THE

7     SEMIAUTOMATIC FOUND ON HER, AND SUGGESTING ANSWERS IN RESPONSE

8     TO THEIR INQUIRY.

9          BUT WITH RESPECT TO OFFICERS KNOBLE, SILVER, AND PHILLIPS,

10    THERE REALLY ISN'T MUCH OF ANYTHING.  PHILLIPS IS ONLY ALLEGED

11    TO HAVE TAKEN LUALEMAGA -- I WILL SPELL IT FOR THE COURT

12    REPORTER -- L-U-A-L-E-M-A-G-A -- INTO THE POLICE STATION AND

13    TO SOMEHOW HAVE ASSISTED BUT WITHOUT ANY OTHER REAL

14    ALLEGATIONS.

15         KNOBLE AND SILVER AND, AGAIN, I AM NOT SURE I AM

16    PRONOUNCING THAT RIGHT, KNOBLE MAYBE AND SILVER.

17         **MR. KEITH:**  KNOBLE IS CORRECT, YOUR HONOR.

18         **THE COURT:**  K-N-O-B-L-E.  KNOBLE TOOK PHOTOGRAPHS AT

19    THE SCENE AND SILVER PARTICIPATED IN A TRAFFIC STOP.

20         SO COMMENTS.  WE'LL START WITH YOU, MR. BRUSTIN.

21         **MR. BRUSTIN:**  SURE, YOUR HONOR.  LET ME START WITH

22    OFFICER PHILLIPS BECAUSE I THINK OFFICER PHILLIPS IS ARGUABLY

23    THE MOST INVOLVED OF THE THREE.

24         OFFICER PHILLIPS IS OFFICER LEE'S PARTNER.  AND OFFICER

25    LEE, AS YOU MAY RECALL, IS THE OFFICER WHO IS DIRECTLY

1    INVOLVED IN THE MOST SERIOUS MISCONDUCT AND THE MOST -- WITH

2    THE MOST DIRECT EVIDENCE; THE INAPPROPRIATE ATTEMPT TO

3    INFLUENCE MS. LUALEMAGA IN THE PRECINCT ON THE FIRST NIGHT.

4       WE KNOW THAT OFFICER PHILLIPS IS WORKING WITH HER THAT

5    EVENING.  AT THIS POINT WE DON'T KNOW WHETHER HE'S IN THE

6    PRECINCT WITH HER.  IT'S POSSIBLE THAT HE IS THE JOHN DOE

7    OFFICER THAT WAS WITH OFFICER LEE WHEN THEY IMPROPERLY TRIED

8    TO INFLUENCE THE WITNESS THAT NIGHT.  OFFICER PHILLIPS . . .

9    THERE'S NO QUESTION WE ARE ABLE TO ALLEGE THAT OFFICER

10   PHILLIPS BROUGHT THE WITNESS TO THE PRECINCT, SO HE WAS THERE

11   AT SOME POINT THAT NIGHT.

12      SO OUR POSITION FOR HIM WOULD BE THAT GIVEN THE

13   EXTRAORDINARILY SERIOUS NATURE OF THE ALLEGATIONS AGAINST HIS

14   PARTNER THAT NIGHT, THE FACT THAT THEY WERE PARTNERS, I THINK

15   AT A PLEADING STAGE IT'S CERTAINLY PLAUSIBLE TO ALLEGE THAT HE

16   IS AN INTEGRAL PARTICIPANT IN AT LEAST KNOWING ABOUT THAT

17   IMPROPER CONDUCT FROM HIS PARTNER THAT NIGHT.

18      AT THIS POINT WE HAVE TRIED TO BE CIRCUMSPECT IN HOW WE

19   PLEAD THIS.  WE DON'T WANT TO PLEAD THINGS THAT WE DON'T KNOW

20   YET.  BUT THEY ARE PARTNERS.  SHE'S ALLEGED TO HAVE BEEN

21   INVOLVED IN THE MOST SERIOUS MISCONDUCT IN THE CASE.  IT'S

22   NOTORIOUS IN THAT IT'S DONE IN THE MIDDLE OF THE PRECINCT WITH

23   OTHER OFFICERS AROUND.  WE BELIEVE AT THE PLEADING STAGE, AT

24   LEAST, THAT SHOULD BE ENOUGH TO KEEP OFFICER PHILLIPS IN.

25      IF IT TURNS OUT THAT WE CAN'T CONNECT IT AND HE DOESN'T

```
1    BELIEVE LONG THERE, WE DON'T WANT TO GO TO TRIAL AGAINST HIM

2    OR ANYONE THAT IS NOT A PROPER DEFENDANT.  BUT WHERE . . .

3    GIVEN THE ALLEGATIONS AGAINST OFFICER LEE WE DO THINK IT'S

4    APPROPRIATE.

5              THE COURT:  OKAY.  ANY COMMENTS WITH RESPECT TO

6    KNOBLE AND SILVER, AND CAN YOU AMEND, OR IS THAT ALL YOU HAVE?

7              MR. BRUSTIN:  FOR OFFICER KNOBLE AND SILVER, THE MOST

8    IMPORTANT ALLEGATIONS -- FIRST OF ALL, THEY ARE WORKING WITH

9    MCMILLAN WHO'S MUCH MORE INVOLVED.  HE'S INVOLVED -- HE'S

10   CLEARLY INVOLVED IN THE CORE ALLEGATIONS BOTH AGAINST

11   MS. LUALEMAGA AND ALSO WITH MS. DICKERSON.  THEY ARE PART OF

12   THE GANG TASK FORCE WORKING WITH OFFICER MCMILLAN, AND THEY

13   ARE THE SOURCE OF MR. TRULOVE AS A SUSPECT.

14        AND AS WE PLED, THAT'S -- THAT WAS THE BASIS FOR

15   ATTEMPTING TO INFLUENCE THE WITNESS IN THE PRECINCT ON THE

16   23RD AND THEREAFTER.  SO IT LOOKS LIKE, AND WE HAVE PLED THIS,

17   THAT THEY HAVE A REASON TO BELIEVE IT'S HIM, THEY PROVIDED

18   THAT INFORMATION, THEY ARE GIVING INFORMATION THAT NIGHT.

19        WE DO NOT HAVE MUCH MORE FOR THEIR DIRECT INVOLVEMENT AT

20   THIS POINT THAT WE COULD PLEAD.

21              THE COURT:  RESPONSE.

22              MR. KEITH:  YES, YOUR HONOR.  I WILL BEGIN WITH

23   OFFICER PHILLIPS.

24        SO THE ALLEGED INCIDENT THAT PLAINTIFF IS SUGGESTING THAT

25   HE CAN BE TIED TO IS THIS JOHN DOE CONVERSATION IN THE STATION
```

```
1    WHICH THE COMPLAINT ALLEGES INVOLVED AN OLDER PLAIN CLOTHES

2    OFFICER AS WELL AS -- WHO WAS IDENTIFIED SIMPLY AS JOHN DOE AS

3    WELL AS A FEMALE UNIFORMED OFFICER WHO HAS BEEN SUED AS

4    OFFICER LEE.

5         I'VE BEEN LOOKING THROUGH THE COMPLAINT TO SEE WHETHER

6    IT'S ALLEGED OR NOT THAT SHAWN PHILLIPS WAS UNIFORMED OR PLAIN

7    CLOTHES OFFICER.  I HAPPEN TO KNOW HE WAS A UNIFORMED OFFICER

8    BUT I DON'T KNOW WHETHER THE COMPLAINT SAYS SO.

9         SO REALLY I THINK THE ONLY READ ON WHICH PLAINTIFFS CAN

10   PUT HIS INVOLVEMENT IS THE FACT THAT HE WAS PARTNERED WITH

11   OFFICER LEE THAT NIGHT.  I DON'T THINK THAT'S ENOUGH TO

12   SUGGEST THAT HE CONSPIRED TO ENGAGE IN A CONSTITUTIONAL

13   VIOLATION.

14        WHAT WE HAVE HERE IS BASICALLY A THREE-SENTENCE SNATCH

15   FROM AN EXCHANGE THAT HAPPENED IN THE MIDDLE OF THE POLICE

16   STATION WHERE OFFICER LEE WAS STANDING THERE SILENTLY WHILE

17   JOHN DOE SPOKE WITH THE ALLEGED WITNESS.  AND THAT DOESN'T

18   SHOW ANY INVOLVEMENT OF OFFICER PHILLIPS.

19        WITH REGARD TO KNOBLE AND SILVER, I MEAN THIS IS A

20   HOMICIDE, YOUR HONOR, WHERE HOMICIDE INVESTIGATORS ARE

21   NATURALLY GOING TO CANVASS TO FIND OUT WHO ARE THE PLAYERS,

22   WHO MIGHT KNOW THIS PERSON WHO WAS BEING CHASED, WHO WAS

23   IDENTIFIED AS JOSHUA BRADLEY.  THE FACT THAT TWO OFFICERS

24   SUGGESTED MR. BRADLEY'S BROTHER AS SOMEONE ASSOCIATED WITH HIM

25   TO ME ISN'T -- THERE'S NO CLAIM THAT THAT CAN BE TAKEN AS
```

```
1    NEFARIOUS, AND IT CERTAINLY ISN'T A CONSTITUTIONAL VIOLATION

2    TO SUGGEST SOMEONE AS A POSSIBLE SUSPECT IN AN INVESTIGATION.

3              THE COURT:  ANY RESPONSE.

4         MR. BRUSTIN:  AS TO OFFICER PHILLIPS, YOUR HONOR,

5    THERE'S ANOTHER POINT I NEGLECTED TO MENTION WHICH I THINK IS

6    QUITE IMPORTANT.

7         SO LATER ON IN THE INVESTIGATION, OFFICER PHILLIPS CALLED

8    OFFICER SILVER -- AND THIS IS ON AUGUST 9TH, SO MONTHS INTO

9    THE INVESTIGATION -- WHEN MR. TRULOVE'S BROTHERS WERE STOPPED.

10        SO IT'S IMPORTANT BECAUSE IT'S CLEAR THAT MR. -- OFFICER

11   PHILLIPS REMAINS INVOLVED IN THE CASE LONG AFTER THE FIRST

12   NIGHT.  STAYS INVOLVED MONTHS LATER.  SEEMS TO BE IN THE KNOW

13   AND IN THE LOOP, AND I THINK THAT GIVES FURTHER SUPPORT THAT

14   AT A MINIMUM HE WOULD HAVE KNOWLEDGE ABOUT WHAT HIS PARTNER

15   WAS DOING IN TERMS OF THE KEY INVESTIGATIVE ACTIVITIES IN THIS

16   HIGH PROFILE MAJOR CASE, FOR THEM CERTAINLY.

17            THE COURT:  OKAY.  LET'S MOVE ON.

18        BUT JUST TO BE CLEAR, YOU DON'T HAVE ANYTHING ELSE WITH

19   RESPECT TO KNOBLE AND SILVER THAT YOU COULD ALLEGE; IS THAT

20   RIGHT, AT THIS POINT?

21            MR. BRUSTIN:  YOUR HONOR, I THINK -- ONE OF THE

22   THINGS WE'VE RECEIVED MORE RECENTLY, AND I THINK WE COULD MAKE

23   STRONGER ALLEGATIONS ABOUT OTHER SUSPECTS EARLY ON THAT WE

24   COULD PROPERLY PLEAD WERE LIKELY KNOWN BY THE GANG TASK FORCE

25   MEMBERS IN THE INITIAL DAYS OF THE INVESTIGATION.
```

1     **THE COURT:**  BUT TO WHAT IMPORT?  THAT IS, AS

2  MR. KEITH HAS INDICATED, YOU ARE IN THE EARLY STAGES OF A

3  HOMICIDE INVESTIGATION.  YOU'RE GETTING LISTS, PEOPLE ARE

4  GETTING LISTS OF ALL, YOU KNOW, POTENTIAL SUSPECTS.  SO WHAT?

5     SO HOW -- AND I DON'T MEAN "SO WHAT" IN A DEROGATORY WAY.

6  I MEAN TO WHAT EFFECT?

7     **MR. BRUSTIN:**  I UNDERSTAND.

8     I THINK AT THIS POINT WE WILL BE -- WE WOULD BE ABLE TO

9  PLEAD MUCH MORE SPECIFICALLY THAN THAT; THAT THERE ARE

10  SUSPECT -- A SUSPECT OR SUSPECTS THAT THEY HAD REASON TO

11  BELIEVE ACTUALLY COMMITTED THIS CRIME.

12     IT WOULD GO BOTH TO THE PRONG OF THE *DEVEREAUX* CLAIM THAT

13  THEY KNEW MR. TRULOVE WAS INNOCENT AND CONTINUED TO

14  INVESTIGATE.

15     **THE COURT:**  KNOBLE AND SILVER SPECIFICALLY?

16     **MR. BRUSTIN:**  I THINK WE WOULD BE ABLE TO PLEAD

17  PROPERLY NOW, AS MEMBERS OF THE GANG TASK FORCE, THEY WOULD

18  HAVE THAT KNOWLEDGE.

19     **THE COURT:**  ALL RIGHT.  I'M ASKING A SEPARATE

20  QUESTION.

21     FIRST OF ALL, I DON'T KNOW HOW BIG THE TASK FORCE WAS AT

22  THAT POINT IN TIME AND I DON'T KNOW HOW IT OPERATES.  SO ARE

23  YOU SAYING THEY ARE THE ONLY MEMBERS OF THE TASK FORCE AND

24  THEY WERE THE ONLY PEOPLE WHO WOULD HAVE THIS INFORMATION?

25     **MR. BRUSTIN:**  NO.

1          **THE COURT:**  OR ARE YOU SAYING THAT THE TASK FORCE

2     GENERALLY HAS IT?  AND IF IT GENERALLY HAS IT, WHAT ARE YOU

3     GOING TO BE ABLE TO PLEAD IN TERMS OF WHAT THAT TASK FORCE IS,

4     WHO WAS IN IT?

5          I MEAN, THERE HAS TO BE SOMETHING MORE THAN THE TASK

6     FORCE.

7          **MR. BRUSTIN:**  I UNDERSTAND.

8          WHAT WE COULD -- I BELIEVE WHAT WE COULD PLEAD NOW IS THAT

9     THESE WERE THE MEMBERS OF THE TASK FORCE CERTAINLY WITH

10    KNOWLEDGE OF GANG ACTIVITY IN THIS AREA.  THEY WERE INVOLVED

11    IN THIS CASE FROM DAY ONE, AND THAT THEY HAD KNOWLEDGE OF

12    OTHER MORE LIKELY SUSPECTS FROM DAY ONE, AND WERE INVOLVED IN

13    THAT PROCESS, WHICH I THINK WOULD CERTAINLY GO TO THE

14    *DEVEREAUX* CLAIM AND IT GOES TO MOTIVE.

15         WE'VE RECEIVED MORE INFORMATION ON THAT SINCE THE

16    PLEADINGS WERE FILED.

17         **THE COURT:**  ALL RIGHT.  LET'S MOVE TO THE CLAIMS

18    UNDER *BRADY* AND *TATUM*.  THIS IS COUNTS I AND IV.

19         **MR. BRUSTIN:**  YOUR HONOR, I APOLOGIZE.  CAN I ADD ONE

20    MORE SMALL POINT AS TO SILVER?  I THINK I MENTIONED THIS, BUT

21    IT MAY NOT HAVE BEEN CLEAR.

22         SILVER, WHO'S ON THE TASK FORCE, WAS THE OFFICER WHO WAS

23    CALLED AND CAME IN MONTHS LATER INTO THE INVESTIGATION TO

24    INTERVIEW MR. TRULOVE'S BROTHERS.  SO HE WAS INVOLVED NOT JUST

25    IN THE FIRST DAYS, BUT GOING FORWARD IN THE INTERVIEWS WITH

1    MR. TRULOVE'S BROTHERS AS WELL.  AND HE WAS THE PERSON THEY

2    CALLED.

3        SO HE'S CLEARLY IN THE LOOP, HE'S CLEARLY IN THE KNOW, AND

4    CLEARLY INVOLVED IN THIS, IN THIS INVESTIGATION.  AGAIN, WHICH

5    I THINK MAKES IT PLAUSIBLE THAT HE IS AN INTEGRAL PARTICIPANT.

6        **THE COURT:**  WHAT IS THE GANG THAT WAS AT ISSUE?  THAT

7    HE'S ALLEGED TO HAVE BEEN A PART OF?  I MEAN CERTAIN OF THESE

8    TASK FORCE HAVE SPECIALTIES IN TERMS OF THE GANGS THAT THEY

9    FOCUS ON.

10       **MR. BRUSTIN:**  A NUMBER OF GANGS, BUT ONE GANG WAS THE

11   UP THE HILL GANG.

12       **THE COURT:**  I DIDN'T HEAR YOU.

13       **MR. BRUSTIN:**  UP THE HILL.

14       **THE COURT:**  OKAY.  MOVING TO COUNTS I AND IV.

15       AGAIN, HERE, WITH RESPECT TO ALLEGATIONS THAT ARE

16   REQUIRED, THERE HAVE TO BE ALLEGATIONS THAT THE -- THAT A

17   DEFENDANT AND/OR EACH DEFENDANT WHO IS CHARGED OR WHOSE CLAIM

18   IS BROUGHT AGAINST WAS AWARE THAT EVIDENCE WAS MATERIAL AND

19   EXCULPATORY; THAT THEY DIDN'T DISCLOSE THAT TO THE

20   PROSECUTION, AND THAT THEY DIDN'T -- THEY ACTED, I SHOULD SAY,

21   WITH DELIBERATE INDIFFERENCE OR RECKLESS DISREGARD FOR THE

22   ACCUSED'S RIGHTS.

23       HERE THERE'S VERY LITTLE REGARDING THE PERSONAL

24   INVOLVEMENT OF HAGAN, KNOBLE, PHILLIPS, OR SILVER AGAIN.  SO

25   WITH RESPECT TO THOSE, IS THERE ANYTHING THAT YOU CAN DO TO

1    AMEND?

2         **MR. BRUSTIN:**  I DON'T BELIEVE SO AT THIS POINT, YOUR

3    HONOR.  BUT I THINK IT'S -- AS WITH THE *DEVEREAUX* CLAIMS, I

4    THINK THE LAW IS CLEAR THAT THEY DON'T HAVE TO BE THE PARTY

5    THAT FAILS TO DISCLOSE THE EVIDENCE.  I THINK IT'S SUFFICIENT

6    IF THEY ARE SUFFICIENTLY INVOLVED IN THE MISCONDUCT, KNOWLEDGE

7    OF THE MISCONDUCT AND TAKE NO ACTION TO STOP IT.

8         AND I THINK -- I AGREE BARELY, BUT I THINK WE HAVE BEEN

9    ABLE TO PLEAD THAT THEY ARE A PART OF ENOUGH OF THE

10   INTERACTIONS WHERE WE ARE ALLEGING MISCONDUCT TO HAVE THAT

11   KNOWLEDGE.

12        **THE COURT:**  OKAY.  RESPONSE.

13        **MR. KEITH:**  YOUR HONOR, I THINK THAT, AGAIN, THERE'S

14   NO -- NONE OF THESE FOUR OFFICERS THAT WE HAVE IDENTIFIED,

15   HAGAN, KNOBLE, PHILLIPS, AND SILVER ARE ALLEGED TO HAVE

16   PARTICIPATED IN ANY OF THE WITNESS MEETINGS ARE ALLEGED TO BE

17   MATERIAL AND EXCULPATORY.  I DON'T SEE HOW THEY COULD HAVE

18   COMMITTED A *BRADY* VIOLATION IF THEY WEREN'T AT ALL INVOLVED IN

19   THE THING THAT IS ALLEGED TO -- NOT TO HAVE BEEN DISCLOSED.

20        WITH REGARD TO THEIR GENERAL INVOLVEMENT IN THE HOMICIDE

21   INVESTIGATION, I WOULD SAY IT'S THE SAME RESPONSE THAT WE HAD

22   WITH REGARD TO THE COERCION CLAIM.  THIS IS A HOMICIDE

23   INVESTIGATION.  NATURALLY, IF THERE'S A PERSON OF INTEREST

24   KNOWN TO THEM, THEY ARE GOING TO WANT TO BRING THEM IN FOR AN

25   INTERVIEW TO MEET WITH THE HOMICIDE INVESTIGATORS.  THERE'S

1    NOTHING UNCONSTITUTIONAL ABOUT THAT.  THERE'S NO REASON TO

2    INFER AN UNCONSTITUTIONAL MOTIVE OR INTENT FROM SIMPLY GETTING

3    A WITNESS IN TO BE INTERVIEWED.

4         **THE COURT:**  ANY RESPONSE?

5         **MR. BRUSTIN:**  ONLY, YOUR HONOR, THAT ESPECIALLY FOR

6    DEFENDANT SILVER, WE'RE TALKING ABOUT A MONTH AND A HALF INTO

7    THE INVESTIGATION WHEN HOMICIDE DETECTIVES ARE RUNNING THE

8    SHOW.  THE BROTHERS ARE PICKED UP, AND IT'S SILVER FROM THE

9    GANG TASK FORCE WHO IS CALLED IN TO BE PART OF THE INTERVIEW.

10        SO IT APPEARS THAT THERE'S A LEVEL OF INVOLVEMENT IN THE

11   GANG TASK FORCE HERE BEGINNING ON DAY ONE AND CONTINUING

12   THROUGHOUT THE CASE THAT IS IMPORTANT --

13        **THE COURT:**  WHAT DO YOU MEAN THAT SILVER WAS PART OF

14   THE INTERVIEW?  I DON'T KNOW WHAT YOU MEAN BY THAT

15   SPECIFICALLY.

16        **MR. BRUSTIN:**  WHAT WE HAVE PLED IS THAT WHEN OFFICER

17   PHILLIPS PICKED UP MR. TRULOVE'S BROTHER, OFFICE SILVER WAS

18   CALLED TO BE PART OF THAT INTERVIEW.

19        **THE COURT:**  BUT DID HE --

20        **MR. KEITH:**  YOUR HONOR, I CAN CLARIFY SOMETHING ABOUT

21   WHAT'S PLED.

22        IF WE LOOK AT PARAGRAPH 91 OF THE COMPLAINT, THAT'S WHERE

23   OFFICER SILVER'S INVOLVEMENT IS PLED.  IT'S ESSENTIALLY THAT

24   OFFICER PHILLIPS WAS AT A TRAFFIC STOP, HE REALIZED THESE WERE

25   JOSHUA BRADLEY WHO, AGAIN, HAD BEEN IDENTIFIED AS THE PERSON

1    BEING CHASED BY THE HOMICIDE VICTIM ON THE NIGHT OF.  AND THE

2    OTHER PERSON IN THE CAR WAS DAVID TRULOVE, ALSO A BROTHER OF

3    JOSHUA BRADLEY AND HAPPENS TO BE A BROTHER OF THE PLAINTIFF.

4        SO OFFICER PHILLIPS REALIZED THAT CERTAINLY MR. BRADLEY IS

5    OF INTEREST IN THE HOMICIDE INVESTIGATION.  HE CALLED SILVER.

6    THEY CALLED JOHNSON AND D'AMICO.  AND JOHNSON AND D'AMICO

7    CONDUCTED AN INTERVIEW OF DAVID TRULOVE AND JOSHUA BRADLEY.

8        I DON'T BELIEVE THAT THERE'S ANY INVOLVEMENT PLED BY

9    OFFICER SILVER WITH REGARD TO THAT INTERVIEW, BUT I HAVE TO

10   SAY THERE IS NO ALLEGATION THAT THERE WAS ANYTHING IN THE

11   INTERVIEW OF THE BROTHERS THAT WAS NOT DISCLOSED OR THAT

12   AMOUNTED TO COERCION TO FABRICATE EVIDENCE.  THIS IS JUST A

13   ROUTINE STEP IN THE INVESTIGATION.  AND THERE'S NOT EVEN ANY

14   ALLEGATION OF UNCONSTITUTIONALITY WITH REGARD TO THE TWO LEAD

15   INVESTIGATORS.

16        THE COURT:  LET ME JUST RECAP WHAT I UNDERSTAND TO BE

17   THE VIOLATIONS AT ISSUE.

18        ONE WAS AN EXCHANGE AT THE POLICE STATION INVOLVING LEE,

19   JOHN DOE NO. 1, AND LUALEMAGA AS WAS OBSERVED BY BARC --

20        MR. KEITH:  BARCENAS.

21        THE COURT:  I'M GOING TO HAVE TO GET A CHEAT SHEET ON

22   THESE NAMES IF IT GOES TO TRIAL.

23        ANY INVOLVEMENT WITH RESPECT TO SILVER ON THAT?

24        MR. BRUSTIN:  ONLY IN THAT HE IS ONE OF THE -- WE'VE

25   PLED THAT HE IS ONE OF THE FOUR MEMBERS OF THE GANG TASK FORCE

```
 1    WHO PROVIDED MR. TRULOVE AS A SUSPECT FOR THEM TO USE.

 2            THE COURT:  WAS SILVER AT THE INTERVIEW -- OR WAS

 3    SILVER PRESENT WHEN THIS EXCHANGE HAPPENED?

 4            MR. BRUSTIN:  UNLESS HE'S A JOHN DOE, WHICH HE MAY

 5    BE, WE HAVE NOT BEEN ABLE TO PLEAD THAT.

 6            THE COURT:  ALL RIGHT.

 7        THE SECOND IS A MEETING BETWEEN LUALEMAGA, JOHNSON,

 8    MCMILLAN, ANDROVICH, AND TRAIL.  SILVER IS NOT THERE EITHER,

 9    RIGHT, AT THAT MEETING?

10            MR. BRUSTIN:  NOT THAT WE KNOW OF.

11            THE COURT:  THE THIRD IS THE STATEMENT OF WITNESS

12    VAOVASA OR VAOVASA TO JOHNSON AND D'AMICO.  WAS SILVER PRESENT

13    WITH RESPECT TO THAT?

14            MR. BRUSTIN:  NOT THAT WE KNOW OF.

15            THE COURT:  OKAY.  ARE THERE ANY OTHER SPECIFIC

16    VIOLATIONS THAT FORM THE BASIS OF THOSE CLAIMS?

17            MR. BRUSTIN:  NO, YOUR HONOR.

18        THE REASON WE NAMED HIM AND, AGAIN, THE REASON WE THINK

19    HE'S VIABLE BARELY IS THAT HE IS SUFFICIENTLY INVOLVED IN THIS

20    HIGH PROFILE INVESTIGATION TO HAVE KNOWLEDGE OF WHAT'S

21    HAPPENING GIVEN HIS INVOLVEMENT WITH MCMILLAN IN PARTICULAR.

22            THE COURT:  THAT'S FINE.  I JUST WANT TO BE CLEAR

23    BECAUSE YOU USE THE WORDS THAT HE WAS "PART OF THE INTERVIEW".

24    THOSE WERE YOUR WORDS.

25        NOW, "PART OF THE INTERVIEW" TO ME MEANS THAT THE PERSON
```

```
1     IS ACTUALLY THERE.

2            MR. BRUSTIN:  YEAH.

3            THE COURT:  OBVIOUSLY "PART OF THE INTERVIEW" TO YOU

4     DOESN'T MEAN THAT, IT JUST MEANS THAT HE'S GENERALLY IN THIS

5     AURA OF PEOPLE WHO ARE INVOLVED IN THIS SITUATION.

6            MR. BRUSTIN:  MY NOTES SAY "PART OF THE INTERVIEW".

7     I COULD BE WRONG.  IT MAY JUST BE -- THIS IS A DIFFERENT

8     INTERVIEW -- THIS IS OF THE TRULOVE BROTHERS.

9            THE COURT:  BUT THAT PARTICULAR INTERVIEW ISN'T --

10    DOESN'T FORM THE BASIS FOR THE BRADY OR TATUM CLAIMS.

11           MR. BRUSTIN:  IT DOES NOT.

12           THE COURT:  SO THAT'S WHAT I AM FOCUSED ON, IS ONLY

13    THAT.

14           MR. BRUSTIN:  FAIR ENOUGH.  I'M NOT -- IF I -- IF I

15    WAS SUGGESTING I WAS RAISING IT FOR THAT REASON, I'M NOT.  I'M

16    NOT SUGGESTING THERE WAS SPECIFIC MISCONDUCT THERE.  I RAISED

17    IT FOR FURTHER INVOLVEMENT IN THE INVESTIGATION AND ISSUE OF

18    KNOWLEDGE.

19           THE COURT:  ALL RIGHT.  ANYTHING ELSE WITH RESPECT TO

20    THOSE INDIVIDUALS?

21           MR. BRUSTIN:  NO, YOUR HONOR.

22       THE ONLY THING I WOULD ASK IN RESPONSE TO YOUR QUESTION

23    ABOUT WHETHER OR NOT WE COULD AMEND FOR ANY OF THEM, WE WOULD

24    LIKE THE OPPORTUNITY, IF THE COURT WOULD PERMIT IT -- WE HAVE

25    GOTTEN A BUNCH OF NEW DOCUMENTS VERY RECENTLY -- JUST TO MAKE
```

1    SURE THAT THERE AREN'T -- THERE ISN'T OTHER INFORMATION IN

2    THERE THAT WOULD ALLOW US TO PLEAD MORE SUBSTANTIAL.

3            **THE COURT:**  WELL, WHAT I WILL CONSIDER DOING THEN IS

4    MAKING SURE YOU HAVE GUIDANCE.  BECAUSE WHAT I DON'T WANT TO

5    DO IS HAVE A SECOND ROUND OF 12(B)(6) MOTIONS WHEN IT IS CLEAR

6    THAT YOU KNOW, YOU'VE GOT YOUR PERSPECTIVE AND THAT'S PERHAPS

7    NOT GOOD ENOUGH.  I DON'T WANT TO GO THROUGH THIS YET AGAIN.

8        ALL RIGHT?

9            **MR. BRUSTIN:**  I THINK I UNDERSTAND, YOUR HONOR, WHAT

10   YOU ARE LOOKING FOR.

11           **THE COURT:**  OKAY.  LET'S MOVE TO THE MALICIOUS

12   PROSECUTION.

13       AND PERHAPS, AGAIN, IT'S THE SAME THING.  SAME THREE

14   DEFENDANTS; SO KNOBLE, PHILLIPS, AND SILVER.  AND I CAN -- IS

15   THERE ANYTHING DIFFERENT IN THE ARGUMENTS WITH RESPECT TO

16   THOSE THREE?

17           **MR. BRUSTIN:**  NO, YOUR HONOR.

18           **THE COURT:**  OKAY.

19           **MR. BRUSTIN:**  NOT FOR THAT CLAIM.

20           **THE COURT:**  AND WHAT ABOUT THE CONSPIRACY CLAIM,

21   ANYTHING DIFFERENT?

22           **MR. BRUSTIN:**  WELL, THE ONLY THING I THINK THAT'S

23   DIFFERENT, YOUR HONOR, AS A LEGAL MATTER IS THAT I THINK IT IS

24   FOR THE QUESTIONABLE DEFENDANTS, IT'S THE MOST LIKELY CLAIM

25   THAT SHOULD STAY IN.  AND I THINK THE ISSUE WE ARE TALKING

1    ABOUT WITH KNOWLEDGE AND PARTICIPATION IN THE INVESTIGATION

2    GENERALLY, YOU KNOW, I THINK --

3        **THE COURT:**  BUT YOU HAVE TO, AT LEAST WITH RESPECT TO

4    CONSPIRACY, WHILE IT IS TRUE THAT A CO-CONSPIRATOR NEED NOT

5    KNOW ALL OF THE DETAILS OF ANY PARTICULAR PLAN, THERE DOES

6    HAVE TO BE AN ALLEGATION THAT THEY SHARED THE COMMON OBJECTIVE

7    OF THE CONSPIRACY, AND THE ABILITY TO ARGUE THAT THE MORE

8    ATTENUATED A PERSON BECOMES, BECOMES MUCH MORE DIFFICULT.  SO

9    WHAT WAS THE COMMON OBJECTIVE?

10        I DON'T THINK I SAW -- WHAT, BY THE WAY, IS THERE A THEORY

11    IN TERMS OF MOTIVE OTHER THAN -- OR WAS IT JUST TO CLOSE THE

12    CASE?  I MEAN, WHAT IS -- WHAT IS THE -- I'M CURIOUS WHAT YOUR

13    VIEW IS ON THAT.

14        **MR. BRUSTIN:**  I THINK THERE'S A NUMBER OF THEORIES.

15    WE DON'T HAVE TO PLEAD THAT OBVIOUSLY.

16        **THE COURT:**  OBVIOUSLY.

17        **MR. BRUSTIN:**  CLOSING THE CASE, INABILITY TO GET

18    PEOPLE TO TALK AND SAY WHAT THEY ACTUALLY SAW.  BUT LARGELY

19    THE INABILITY TO CLOSE THE CASE WITH THE PEOPLE THAT THEY KNEW

20    OR SHOULD HAVE KNOWN COMMITTED THE CRIME.

21        AND POTENTIALLY A MOTIVE TO ENSURE THAT SOMEBODY WHO IS

22    INVOLVED IS HELD ACCOUNTABLE, AND PERHAPS HAVING SOME EVEN

23    MORE SPECIFIC MOTIVES AGAINST MR. TRULOVE.

24        WE DID NOT PLEAD ALL THAT BUT A LOT OF MOTIVE EVIDENCE, I

25    THINK, WILL COME UP.

1          **MR. KEITH:** YOUR HONOR, WITH REGARD TO THAT, I THINK

2     WITH EVERY HOMICIDE INVESTIGATION THERE'S A MOTIVE TO SEE IF

3     YOU CAN FIND THE SUSPECT. IF THAT'S ALL IT TAKES, THEN WE

4     BETTER NOT BRING ANY MOTION TO DISMISS IN CASES LIKE THIS.

5          I THINK THAT IT'S -- AS THESE OTHER CASES THAT WE HAVE

6     CITED HAVE SAID, WHEN YOU HAVE A HOMICIDE INVESTIGATION, THE

7     GOAL OF CONCERTED ACTIVITY IS THE HOMICIDE INVESTIGATION.

8     IT'S TO BUILD A CASE.

9          AND TO SAY THAT THAT CONSTITUTES A MOTIVE TO VIOLATE

10    SOMEONE'S CONSTITUTIONAL RIGHTS IS JUST -- THAT'S TOO BIG OF A

11    LOGICAL INFERENCE TO DRAW. IT WOULD BE ONE THING IF THERE WAS

12    SOMETHING ELSE HERE, BUT THAT IS CERTAINLY ALL THAT'S PLED NOW

13    IN THE COMPLAINT.

14          **THE COURT:** RESPONSE.

15          **MR. BRUSTIN:** I THINK I MISSPOKE OR MAYBE I DIDN'T.

16    WHAT I AM SAYING IS, THEY KNEW OR SHOULD HAVE KNOWN WHO

17    THE ACTUAL PERPETRATOR WAS AND WERE UNABLE TO PROVE IT AND

18    WENT AFTER MR. TRULOVE.

19          **MR. KEITH:** I'M SURE MY CLIENTS WISH THAT THEY HAD

20    THAT LEVEL OF ASSISTANCE DURING THE INVESTIGATION ITSELF, YOUR

21    HONOR. I MEAN I JUST . . .

22          **THE COURT:** WHAT'S INTERESTING IS, I CAN UNDERSTAND

23    THE ARGUMENT WITH THE KNEW. THAT IS, IF YOU KNOW WHO THE

24    PERPETRATOR IS AND YOU STILL GO AFTER SOMEONE ELSE, IT'S

25    OBVIOUSLY A PROBLEM. RIGHT?

1        SHOULD HAVE KNOWN -- WELL, I DON'T KNOW WHAT YOU MEAN BY

2        "SHOULD HAVE KNOWN".  INVESTIGATORS INVESTIGATE TO ULTIMATELY

3        KNOW, BUT THEY SHOULD HAVE KNOWN WHO THE KILLER WAS?

4             **MR. BRUSTIN:**  WELL --

5             **THE COURT:**  AND, THEREFORE, BECAUSE THEY DIDN'T KNOW

6        WHO THE KILLER WAS, THERE'S A CONSPIRACY IF THEY GET THE WRONG

7        PERSON?

8        I'M HAVING TROUBLE FOLLOWING THE ARGUMENT WITH RESPECT TO

9        A CONSPIRACY CLAIM UNLESS . . . CERTAINLY NOT WITH RESPECT TO

10       THE FIRST PART OF IT, BUT WITH RESPECT TO THE SECOND PART OF

11       IT.

12            **MR. BRUSTIN:**  I THINK IT'S ACTUALLY PRETTY TYPICAL.

13       WHAT WE ARE TALKING ABOUT HERE IS DEFENDANTS, INCLUDING

14       THE DEFENDANTS THAT YOU HAVE CONCERNS ABOUT REMAINING IN THE

15       CASE WHO WERE MEMBERS OF THE GANG TASK FORCE, WHO HAD VERY,

16       VERY VIABLE SUSPECTS, WERE NOT ABLE TO GET WITNESSES TO COME

17       FORWARD --

18            **THE COURT:**  IS THAT A CONSPIRACY OR IS THAT JUST

19       INADEQUATE POLICING?

20            **MR. BRUSTIN:**  SURE.  IT STARTS AS INADEQUATE

21       POLICING.

22            **THE COURT:**  SO WHEN DOES IT CROSS THE LINE?

23            **MR. BRUSTIN:**  WHEN YOU FABRICATE EVIDENCE AGAINST

24       SOMEBODY ELSE.

25            **THE COURT:**  OKAY.  BUT WE HAVE A FABRICATION COUNT.

```
1    SO IF THE CONSPIRACY IS TO FABRICATE, IF THAT'S WHAT YOU'RE

2    ARGUING, THEN YOU HAVE TO BE ABLE TO ALLEGE THAT THESE THREE

3    INDIVIDUALS HAD AS THEIR OBJECTIVE THE GOAL OF FABRICATION.

4          MR. BRUSTIN:  I THINK WHAT WE HAVE TO ALLEGE UNDER

5    THE LAW IS THAT THE INDIVIDUALS HAD KNOWLEDGE OF THE

6    FABRICATION AND FAILED TO DO ANYTHING TO REMEDY IT.  I THINK

7    THAT WOULD BE SUFFICIENT FOR THE -- FOR ALL PRONGS OF THE

8    CONSPIRACY CLAIM.

9      IF THEY HAD KNOWLEDGE THAT THERE WAS FABRICATING OF THE

10   EVIDENCE BEING USED BY OFFICERS THEY WERE WORKING WITH AND

11   THEY FAILED TO COME FORWARD AND FIX IT, I THINK THAT'S

12   SUFFICIENT FOR A CONSPIRACY TO FABRICATE.

13         THE COURT:  RESPONSE.

14         MR. BRUSTIN:  AT LEAST FOR A MOTION TO DISMISS.

15         MR. KEITH:  YOUR HONOR, THAT'S THE FIRST TIME I EVER

16   HEARD THAT KIND OF A THEORY IN A CONSPIRACY CASE.

17         THE COURT:  MAYBE IT'S BECAUSE IT'S THE FIRST TIME

18   WE'VE HAD ARGUMENT UNLESS THE TWO OF YOU ARGUE OVER THE PHONE.

19   I DON'T KNOW.

20     OKAY.  GO AHEAD.  NOW YOU'VE HEARD IT, RESPOND.

21         MR. KEITH:  YOUR HONOR, A CONSPIRACY HAS TO HAVE THE

22   PURPOSE OF DENYING SOMEONE THEIR CONSTITUTIONAL RIGHTS.  SO I

23   GUESS I'M TRYING TO HYPOTHESIZE A CONVERSATION BETWEEN ONE

24   OFFICER AND ANOTHER:  I'M TRYING TO PIN THE MURDER ON THIS GUY

25   WHO I KNOW IS INNOCENT.
```

1        OH, OKAY.

2        AND THEN THE OFFICER DOESN'T DO ANYTHING?  THE OFFICER WHO

3    HEARS THAT REMARK DOESN'T DO ANYTHING?

4        I MEAN, I DON'T SEE AN ACT.  I JUST SEE INACTION IN THAT

5    SCENARIO.  THAT MAY BE WHY I AM HAVING A PROBLEM WITH THAT

6    BECAUSE USUALLY WITH A CONSPIRACY YOU HAVE AN ACT IN

7    FURTHERANCE OF THE CONSPIRACY.

8             **THE COURT:**  RIGHT.

9             **MR. KEITH:**  -- WHEREAS INACTION ISN'T -- IT'S NOT AN

10   ACT.

11            **THE COURT:**  SO WHAT LAW IS THERE THAT SUPPORTS YOUR

12   THEORY THAT THERE IS AN AFFIRMATIVE OBLIGATION TO ACT TO

13   UNDERMINE OR DERAIL THE CONSPIRACY AT ISSUE?

14            **MR. BRUSTIN:**  I DON'T KNOW IF WE CITED THOSE CASES

15   HERE.  I THINK WE CAN.  AND WE CERTAINLY CAN SUBMIT THEM TO

16   YOU.  I KNOW THEY ARE OUT THERE.  I DON'T KNOW IF THEY

17   SPECIFICALLY RELATE TO CONSPIRACY OR OTHER TYPES OF CIVIL

18   RIGHTS THEORIES.

19        I BELIEVE THERE IS CONSPIRACY LAW SUGGESTING THAT IF THERE

20   ARE OFFICERS WHO ARE AWARE OF FABRICATED EVIDENCE IN AN

21   INVESTIGATION THAT THEY ARE INVOLVED IN AND FAIL TO CORRECT

22   IT, I THINK IT'S FRANKLY COMMON SENSE.  ANY OFFICER WHO KNOWS

23   THAT FABRICATED EVIDENCE IS BEING USED IN CONNECTION WITH THE

24   PROSECUTION HAS AN OBLIGATION TO REPORT IT.

25        I DO THINK, THOUGH, WE COULD FIND CASES THAT SAY JUST

1    THAT.

2         **MR. KEITH:**  YOUR HONOR, THEN THE PLAINTIFFS WOULD

3    HAVE TO BE ABLE TO PLEAD IN GOOD FAITH THAT THAT COMMUNICATION

4    IN FACT HAPPENED.  I MEAN I THOUGHT -- I MEAN THEY KNOW WHAT

5    THEY CAN PLEAD IN GOOD FAITH.  I DON'T KNOW WHAT THEY CAN

6    PLEAD IN GOOD FAITH IN THAT REGARD.

7         **MR. BRUSTIN:**  WHAT WE CAN PLEAD NOW, YOUR HONOR, IS

8    AN INFERENCE OF KNOWLEDGE, A PLAUSIBLE INFERENCE OF KNOWLEDGE,

9    WHICH IS ALL WE CAN DO AT THIS STAGE.

10       AND THERE'S NO QUESTION THAT IF WE CAN'T SHOW IN DISCOVERY

11   THAT THESE DEFENDANTS -- EVIDENCE THAT THESE DEFENDANTS KNEW

12   ABOUT THE FABRICATIONS, WE ARE NOT GOING TO KEEP THEM.

13        **THE COURT:**  LET'S SAY THIS:  I WOULD LIKE TO SEE THE

14   LAW BECAUSE I DON'T HAVE IT RIGHT NOW.  AND CERTAINLY WHAT I

15   THINK ABOUT IN THESE CASES AS EARLY AS THIS IS WHAT I HAVE TO

16   TRY IF THE CASE GOES TO TRIAL AND WHAT I HAVE TO INSTRUCT THE

17   JURY ON.  AND IF YOU CAN'T GIVE ME LAW NOW, LIKELIHOOD THAT

18   YOU WILL GIVE ME LAW IN A YEAR, ESPECIALLY AFTER SUMMARY

19   JUDGMENT, IS PRETTY LOW.

20       SO I WOULD LIKE TO KNOW NOW.  HOW MUCH TIME WILL IT TAKE

21   TO GET THE CASES?

22        **MR. BRUSTIN:**  CAN WE HAVE --

23        **THE COURT:**  A WEEK?

24        **MR. BRUSTIN:**  IT'S A BAD TIME OF YEAR.  WOULD IT BE

25   POSSIBLE GIVEN END OF AUGUST, WE HAVE TWO?  WOULD THAT BE

```
 1    POSSIBLE, YOUR HONOR?

 2              THE COURT:  I DON'T WANT ARGUMENT, I JUST WANT CASES.

 3    SO THREE PAGES MAX.

 4              MR. BRUSTIN:  SURE.

 5              THE COURT:  THEN YOU CAN RESPOND.

 6              MR. KEITH:  OKAY, YOUR HONOR.  SINCE THE COURT

 7    DOESN'T WANT ARGUMENT, I WOULD JUST ADD THAT WITH REGARD TO

 8    THE CLAIM OF THE INFERENCE THE PLAINTIFF IS SUGGESTING COULD

 9    BE DRAWN HERE, WE COME BACK TO THE SAME PROBLEM.  THE SAME

10    CONCERTED EFFORT HAPPENS IN EVERY HOMICIDE INVESTIGATION.

11              THE COURT:  ALL RIGHT.  YOUR ARGUMENT IS NOTED ON

12    THAT POINT.

13              MR. KEITH:  AND, YOUR HONOR, OUR RESPONSE WILL BE DUE

14    A WEEK AFTER THAT?

15              THE COURT:  SO IT'S THE 29TH.  ALL RIGHT.  SO THE

16    12TH.  AND THEN A RESPONSE ON THE 19TH.

17         AGAIN, NO MORE THAN THREE PAGES.  JUST LOOKING FOR THE

18    CASES.

19         LET'S MOVE AHEAD THEN TO THE SUPERVISORY LIABILITY.  ARE

20    THERE ANY ALLEGATIONS, ADDITIONAL ALLEGATIONS POSSIBLE

21    REGARDING SERGEANT DANIELE AND LIEUTENANT SLADE'S KNOWLEDGE OR

22    AWARENESS OF THE CONSTITUTIONAL VIOLATIONS GIVING RISE TO THIS

23    CLAIM?

24              MR. BRUSTIN:  NO, YOUR HONOR, NOT AT THIS POINT.  I

25    THINK WITH THE SUPERVISORS, IN PARTICULAR, WE ARE AT AN
```

1    ESPECIALLY DIFFICULT DISADVANTAGE AT THIS STAGE.  WHAT WE DO

2    KNOW IS WHAT THEIR RESPONSIBILITIES ARE, AND WE PLED THOSE

3    WITH AS MUCH PARTICULARITY AS WE CAN.

4        BUT, NO, WE DON'T HAVE ANY MORE INFORMATION ABOUT THEIR

5    ACTUAL PARTICIPATION.

6            **THE COURT:**  OKAY.

7        WITH RESPECT TO THE CLAIMS UNDER 52.1, I TAKE IT, I JUST

8    WANT TO CONFIRM THAT YOUR CONTENTION THAT THE DEFENDANTS ARE

9    LIABLE UNDER GOVERNMENT CODE SECTION 815.2, THAT ONLY GOES TO

10   THE BANE ACT, THAT DOESN'T GO TO THE OTHER CLAIMS WE'VE JUST

11   DISCUSSED, RIGHT?

12           **MR. BRUSTIN:**  YES, YOUR HONOR.

13           **THE COURT:**  OKAY.

14       SO THEN THE NEXT QUESTION IS HOW DO YOU REALLY GET PASSED

15   THE IMMUNITY ISSUES?  I MEAN IT DOES SEEM TO ME THAT THE

16   GRAVAMEN OF THIS ENTIRE COMPLAINT AND WHAT WE HAVE BEEN

17   TALKING ABOUT IS MALICIOUS PROSECUTION BASED UPON FABRICATION.

18           **MR. BRUSTIN:**  THERE'S NO QUESTION, YOUR HONOR, THAT

19   THEY'RE SIMILAR CLAIMS.  OUR READING OF THE FEDERAL CASES, AND

20   I THINK THOSE CASES GOVERN HERE, ARE THAT THEY ARE

21   SPECIFICALLY EXCLUDING THE SPECIFIC TORT OF MALICIOUS

22   PROSECUTION, WHICH IS NOT WHAT WE ARE CLAIMING UNDER STATE

23   LAW.  IT'S A SEPARATE CLAIM.  THERE'S AN ADDED REQUIREMENT OF

24   COERCIVE CONDUCT.  IT'S NOT A MALICIOUS PROSECUTION CLAIM.

25           DOES IT LOOK LIKE A MALICIOUS PROSECUTION CLAIM?  YES.

```
 1    BUT THE CASES ARE -- THE FEDERAL CASES ARE VERY SPECIFIC.  THE
 2    GOVERNMENT IS VERY SPECIFIC THAT THE ONLY EXCLUSION IS FOR THE
 3    TORT OF MALICIOUS PROSECUTION.
 4         THE COURT:  RESPONSE.
 5         MR. KEITH:  WELL, YOUR HONOR, THERE IS ACTUALLY IN
 6    ADDITION TO GARMON, THERE'S THREE OTHER RELEVANT FEDERAL CASES
 7    ALL OF WHICH ARE CITED IN THE SUPPLEMENTAL BRIEF WE FILED WITH
 8    THE COURT'S PERMISSION, DOCUMENT 68.
 9        THOSE CASES, COUSINS VERSUS LOCKYER AND . . . LET ME NOTE
10    THE OTHER DECISION.  AND MARTINEZ VERSUS CITY OF LOS ANGELES
11    TALK ABOUT THE IMMUNITY BEING APPLIED TO CLAIMS THAT ARE QUOTE
12    "AKIN TO MALICIOUS PROSECUTION" END QUOTE.
13        AND THEN THE NINTH CIRCUIT'S DECISION IN THE POPPELL
14    VERSUS CITY OF SAN DIEGO CASE, WHICH IS ALSO CITED IN THE SAME
15    BRIEFS, SPECIFICALLY DISMISSED A CLAIM THAT A PLAINTIFF
16    BROUGHT UNDER 52.1 ON THE THEORY THAT, ESSENTIALLY, IF YOU ARE
17    THE ONE BEING PROSECUTED AND YOU WANT TO SUE THE PEOPLE WHO
18    DID THAT TO YOU, THIS IMMUNITY APPLIES REGARDLESS OF LEGAL
19    THEORY.
20        I THINK IN THAT REGARD THE GARMON CASE IS DISTINGUISHABLE
21    BECAUSE THERE YOU HAVE A PLAINTIFF WHO ISN'T SUING FOR
22    MALICIOUS PROSECUTION.  SHE'S A WITNESS WHO IS SUING FOR
23    INVASION OF HER OWN PRIVACY, AND SO THAT IS NOT A CLAIM THAT
24    IS AKIN TO MALICIOUS PROSECUTION.  SO THAT'S THE DISTINCTION
25    THAT WE WOULD DRAW BASED ON THE NINTH CIRCUIT LAW.
```

```
1            THE COURT:  ANY RESPONSE?

2            MR. BRUSTIN:  ONLY I THINK THAT THAT'S OVERSTATING

3    WHAT THOSE OTHER -- I THINK GARMON IS RIGHT ON POINT.  IT

4    MAKES IT VERY CLEAR HOW NARROW THE STATUTE SHOULD BE READ.

5        AND IT IS A DIFFERENT CLAIM THAN MALICIOUS PROSECUTION

6    WITH DIFFERENT ELEMENTS AND WE THINK GARMON CONTROLS.

7            THE COURT:  AND THEN THE FINAL ISSUE IS COUNT VIII.

8    IT DOESN'T LOOK LIKE GOVERNMENT CODE SECTION 825(A) GIVES YOU

9    A PRIVATE RIGHT OF ACTION.

10           MR. BRUSTIN:  YOUR HONOR, I THINK THE WAY WE READ IT

11   WAS IT'S JUST NOT CLEAR.  AND IT'S NOT CLEAR UNDER THE LAW,

12   AND WE DO HAVE SOME AUTHORITY FOR A SIMILAR STATUTE.

13       THE ONLY CASE WE COULD FIND ON POINT IS A CASE -- I THINK

14   THERE'S ONE IN ARIZONA AND WE FOUND ONE IN CHICAGO, ONE IN THE

15   SEVENTH CIRCUIT SUGGESTING THAT THERE COULD BE --

16           THE COURT:  THOSE ARE INTERPRETING CALIFORNIA LAW?

17           MR. BRUSTIN:  NO, NOT INTERPRETING CALIFORNIA LAW,

18   BUT A SIMILAR STATUTE, SIMILAR INDEMNIFICATION STATUTE.

19           THE COURT:  NONE OF THAT IS -- OKAY.  DO YOU HAVE

20   ANYTHING ELSE?

21           MR. BRUSTIN:  NO.

22           THE COURT:  OKAY.

23       ANY RESPONSE?

24           MR. KEITH:  WE'LL SUBMIT ON THE BRIEFS ON THAT ISSUE,

25   YOUR HONOR.
```

```
 1           THE COURT:  ALL RIGHT.  OKAY.  I'LL GET A

 2   COMPREHENSIVE ORDER OUT SHORTLY WITH RESPECT TO THE MOTION.

 3      LET'S TALK ABOUT A SCHEDULE.

 4           MR. KEITH:  YOUR HONOR, WITH REGARD TO THE ORDER THE

 5   COURT REFERRED TO, IS THAT GOING TO BE BEFORE THE COURT GETS A

 6   SUPPLEMENTAL BRIEFING ON THE CONSPIRACY CLAIM?

 7           THE COURT:  NO, I WILL PROBABLY WAIT.

 8           MR. KEITH:  OKAY.

 9           THE COURT:  I WOULD GET IT OUT SOONER, BUT I WOULD

10   LIKE TO HAVE THAT LAW.

11      OKAY.  LET ME PULL UP MY NOTES.  IT LOOKS LIKE YOU'RE

12   ALREADY ENGAGED IN SOME DISCOVERY, SOME DISCLOSURES.  IS THAT

13   RIGHT?

14           MR. KEITH:  YES, YOUR HONOR.

15           THE COURT:  A TRIAL DATE IN LATE 2017 IS FINE WITH ME

16   BUT I AM GOING TO MOVE IT UP A COUPLE OF WEEKS FROM YOUR

17   REQUEST UNLESS THERE'S SOMETHING I AM MISSING.  IN PART

18   BECAUSE I WOULD PREFER TO GET THIS DONE BEFORE THE HOLIDAYS AS

19   OPPOSED TO AFTER.  IT ALWAYS CAUSES PROBLEMS WITH JURIES.

20           MR. KEITH:  YOUR HONOR, I DO HAVE ONE SCHEDULING

21   ISSUE WITH THAT, WHICH IS INSPECTOR D'AMICO, WHO WE KNOW WILL

22   BE IN THE CASE AND ONE OF THE MAIN PARTIES, IS ALREADY

23   PLANNING ON BEING OUT OF THE COUNTRY.  I HAVE TO CHECK THE

24   EXACT DATES.  THEY ARE IN MY NOTES, BUT I BELIEVE UP UNTIL

25   OCTOBER 27TH SO WE DO HAVE SOME LIMITATION ON HOW FAR BACK WE
```

1    CAN MOVE IT AND HER STILL BEING ABLE TO BE PRESENT.

2         **THE COURT:**  OCTOBER 30TH THEN.

3         THE TRIAL DATE IS OCTOBER 30TH.  I'LL SET ASIDE FOR NOW

4    FOUR OF MY WEEKS FOR THE TRIAL.

5         THAT MEANS THAT YOUR, YOUR TRIAL READINESS CONFERENCE WILL

6    BE OCTOBER 13TH, FRIDAY.  I AM NOT SUPERSTITIOUS SO YOU WILL

7    HAVE TO BE HERE.

8         PRETRIAL STATEMENTS ARE DUE -- AND YOU WILL GET A

9    COMPREHENSIVE ORDER WITH ALL THESE DATES.

10        YOUR PRETRIAL STATEMENTS THEN ARE DUE SEPTEMBER 29TH WHICH

11   IS TWO WEEKS BEFORE THE CONFERENCE.  CONFERENCES ARE AT NINE

12   A.M.

13        COMPLIANCE; SO YOU WILL BE PUT ON A COMPLIANCE CALENDAR

14   THE WEEK PRIOR, 9/22, AND ALL YOU ARE ORDERED TO DO IS THE

15   WEEK PRIOR TO THAT, ON THE 15TH, YOU HAVE TO FILE A JOINT

16   STATEMENT.  AND IT SAYS THAT YOU'VE READ MY STANDING ORDER ON

17   TRIALS, EVERYTHING IS PROCEEDING AS PLANNED.  BECAUSE I DO NOT

18   WANT YOU TO SHOW UP LATER AND SAY, OH, WE DIDN'T KNOW, WE

19   DISAGREED, OR WE HAD PROBLEMS.  ALL OF THAT HAS TO GET TEED UP

20   ON THE EARLY SIDE.

21        WITH A SEPTEMBER 15TH -- WELL, LET'S SEE.  YOU WILL HAVE

22   HAD TO EXCHANGE DOCUMENTS, ET CETERA, BY MID-SEPTEMBER IN

23   TERMS -- IN ORDER IT MEET MY DEADLINES.  SO I WILL NEED TO

24   HEAR DISPOSITIVE MOTIONS BY JULY 11TH.  I CAN PUSH THAT BACK A

25   LITTLE BIT.

1          **MR. KEITH:**  WHEN YOU SAY "BACK", YOUR HONOR, YOU MEAN

2    FORWARD?

3          **THE COURT:**  YES, FORWARD.  I CAN DO THAT ON THE 18TH.

4      ALL RIGHT.  SO THAT MEANS YOU HAVE TO FILE DISPOSITIVE

5    MOTIONS IN JUNE.  THAT INCLUDES *DAUBERT* MOTIONS.

6      THESE ARE THE DATES I CARE ABOUT.  I DON'T CARE ABOUT THE

7    OTHERS, BUT IN LIGHT OF THE FACT THAT YOU'VE GOT TO FILE ALL

8    THIS STUFF BY JUNE, HERE ARE THE QUESTIONS:

9      WHEN DO YOU WANT YOUR DISCOVERY CUTOFFS TO BE?  AND DO YOU

10   WANT EXPERT AND FACT DISCOVERY TO BE AT THE SAME TIME OR NOT?

11         **MR. KEITH:**  YOUR HONOR, I AM TRYING TO DO THE MATH TO

12   FIGURE OUT WHEN OUR JUNE MOTIONS WILL BE FILED.

13         **THE COURT:**  IF IT'S JULY -- IT'S FIVE WEEKS PRIOR.

14         **MR. KEITH:**  RIGHT.  YOUR HONOR, I AM GOING TO BE IN

15   PROBABLY THE TAIL END OF A BIG POLICE SHOOTING TRIAL AT THAT

16   TIME.

17         **THE COURT:**  SO YOU ARE GOING TO NEED SOME HELP FROM

18   SOMEONE WHO IS NOT IN TRIAL.

19         **MR. KEITH:**  I THINK THAT'S TRUE.  IS THERE ANY WAY WE

20   CAN MOVE THE HEARING DATE OUT TO JULY 25TH THAT CAN BUY ME

21   JUST A LITTLE BIT OF TIME?

22         **THE COURT:**  I CAN DO THAT BUT JUST UNDERSTAND YOU ARE

23   GIVING ME LESS TIME TO GIVE YOU AN ORDER THAT WILL GIVE YOU

24   GUIDANCE.

25         **MR. KEITH:**  YES.

1          **THE COURT:**  THAT'S FINE BUT YOU KIND OF DO THAT AT

2    YOUR OWN PERIL.

3          **MR. KEITH:**  YES.  YOUR HONOR, IT'S MY INCLINATION TO

4    TRY AND IF POSSIBLE, FILE THE MOTION EARLIER THAN THE DEADLINE

5    IN EVERY CASE.  I JUST THINK WITH THAT POSSIBLE TRIAL

6    SCHEDULE, I THINK I WOULD LIKE TO HAVE THAT EXTRA WEEK.

7          **THE COURT:**  OKAY.  7/25 IS FINE.

8          **MR. BRUSTIN:**  YOUR HONOR, THE ONLY THING I AM

9    WONDERING, AS WE ARE PUSHING THESE DEADLINES, WE CAN MEET THEM

10   IF WE NEED TO.  WOULD IT MAKE SENSE TO CONSIDER HAVING THE

11   TRIAL AFTER CHRISTMAS?

12         **THE COURT:**  NO.  I DON'T LET CASES SIT ON MY DOCKET

13   FOR THAT LONG.  AND YOU NEVER KNOW WHAT'S GOING TO HAPPEN.  I

14   COULD GET . . . YOU KNOW, I COULD GET MOTIONS FOR IMMUNITY

15   THOSE ARE INTERLOCUTORY ORDERS.

16      THIS THING IS GOING TO GET -- LOOK, IT'S NOT AS IF THE

17   FACTS AREN'T KNOWN, RIGHT?  THAT IS, THERE'S A SET OF

18   DOCUMENTS.  I MEAN THIS HAPPENED YEARS AGO.  THIS ISN'T, YOU

19   KNOW, IT'S NOT A PATENT CASE WHERE YOU'VE GOT EXPERTS WHO ARE

20   GOING TO BE OPINING ON NEW AND DIFFERENT TECHNOLOGIES OR

21   THINGS LIKE THAT.

22      YOU HAVE YOUR DATES NOW.  IF IT MEANS YOU HAVE TO BE

23   AGGRESSIVE, THEN BE AGGRESSIVE AND YOU GET THINGS DONE SOONER

24   RATHER THAN LATER.  BUT I'M NOT GOING TO HAVE IT SIT ON HERE.

25         **MR. BRUSTIN:**  WE ARE FINE WITH THAT, YOUR HONOR.

1    THERE ARE SOME, SOME SLIGHTLY UNUSUAL EXPERT ISSUES HERE.  I

2    THINK THERE ARE SOME PRETTY COMPLICATED EXPERTS HERE.  THERE

3    ARE GOING TO BE A NUMBER OF LIABILITY EXPERTS RELATING TO

4    INNOCENCE AND POLICE PRACTICES, MORE THAN IN THE TYPICAL -- IN

5    MY EXPERIENCE, MORE THAN THE TYPICAL WRONGFUL CONVICTION CASE.

6         **THE COURT:**  WELL, THEN, I WOULD SUGGEST THAT YOU GET

7    THOSE THINGS DISCLOSED SOONER RATHER THAN LATER BECAUSE IF WE

8    ARE DOING SIGNIFICANT *DAUBERT* MOTIONS ON EXPERTS --

9         **MR. BRUSTIN:**  RIGHT.

10        **THE COURT:**  -- YOU'RE GOING TO WANT TO KNOW THAT

11   SOONER RATHER THAN LATER.

12        **MR. KEITH:**  NOW, YOUR HONOR, WHEN THE COURT REFERS TO

13   *DAUBERT* MOTIONS, I TAKE IT THESE ARE MORE ALONG THE LINES OF

14   MOTIONS IN LIMINE THAN DISPOSITIVE MOTIONS?

15        **THE COURT:**  NO.  *DAUBERT* MOTIONS ARE MOTIONS THAT

16   CHALLENGE THE ADEQUACY OF THE EXPERT.  AND THEY ARE USUALLY TO

17   STRIKE ALL OR PORTIONS OF AN EXPERT'S TESTIMONY.

18        **MR. KEITH:**  RIGHT.

19        **THE COURT:**  AND MOTIONS IN LIMINE FREQUENTLY ARE

20   MISUSED.  AND SO THE WAY I TRY CASES, ALL OF THOSE ISSUES GET

21   RESOLVED IN ADVANCE.

22        **MR. KEITH:**  JUST TO BE CLEAR, WE COLD STILL BRING A

23   *DAUBERT* MOTION EVEN IF IT'S NOT GOING TO DISPOSE OF ONE OF THE

24   CAUSES OF ACTION IN THE CASE.

25        **THE COURT:**  IT IS SEPARATE AND DISTINCT FROM A MOTION

```
 1    FOR SUMMARY JUDGMENT.

 2             MR. KEITH:  OKAY.  BUT WE DO THAT ON THE SAME TIME AS

 3    A MOTION FOR SUMMARY JUDGMENT?

 4             THE COURT:  YES.  BECAUSE IN MY VIEW THEY ARE

 5    IMPORTANT MOTIONS THAT TAKE A SIGNIFICANT AMOUNT OF TIME AND

 6    SOMETIMES IMPACT ONE'S ASSESSMENT OF WHETHER OR NOT YOU SHOULD

 7    BE GOING TO TRIAL.  AND WE CAN TALK ABOUT THOSE MOTIONS HERE

 8    IN A MINUTE.

 9             MR. BRUSTIN:  YOUR HONOR, WE CAN CERTAINLY A NUMBER

10    OF THESE EXPERTS WE CAN CERTAINLY DO A LOT OF THE WORK EARLY.

11    FRANKLY WE HAVE DONE A LOT OF WORK FOR SOME.

12         THERE ARE CERTAIN EXPERTS, CERTAIN POLICE EXPERTS THAT ARE

13    GOING TO REQUIRE KNOWING AT LEAST THE VAST MAJORITY OF THE

14    DISCOVERY BEFORE --

15             THE COURT:  RIGHT.  AND I DON'T DISAGREE WITH THAT.

16         I'M JUST TELLING YOU AND NOW YOU KNOW HE'S GOING TO BE IN

17    TRIAL THAT THESE ISSUES ARE GOING TO HAVE TO GET TEED UP.  AND

18    THAT'S WHY I'M VERY EXPLICIT THAT *DAUBERT* MOTIONS HAVE TO BE

19    BROUGHT ON THE SAME TIMETABLE AT THE LATEST BY THE SUMMARY

20    JUDGMENT.

21         IF YOU CAN GET THEM TEED UP SOONER, THAT'S FINE, I DON'T

22    CARE.  BUT IN MY VIEW THEY ARE SIGNIFICANT MOTIONS.

23         ALL RIGHT.  SO I NEED DATES.  WHEN IS EXPERT DISCOVERY

24    CUTOFF GOING TO HAPPEN?  WHEN THE -- IT SOUNDS TO ME LIKE YOU

25    NEED YOUR NONEXPERT DISCOVERY CUTOFF TO HAPPEN SOONER THAN THE
```

1  EXPERT DISCOVERY CUTOFF IF YOUR EXPERTS ARE GOING TO BE

2  DIGESTING YOUR NONEXPERT INFORMATION.

3      **MR. KEITH:**  I THINK IF WE MOVED EVERY DATE BACK ONE

4  MONTH THAT COULD DO IT.  CLOSING FACT DISCOVERY, EXPERT

5  DISCLOSURES, REBUTTAL DISCLOSURES, AND THEN CLOSE OF EXPERT

6  DISCOVERY.

7      IF WE MOVED ALL THOSE DATES BACK ONE MONTH, I THINK THAT

8  WOULD ALLOW FOR US TO BRING THOSE MOTIONS.

9      **MR. BRUSTIN:**  I THINK MOVING THE CLOSE OF FACT

10  DISCOVERY TO MARCH OF NEXT YEAR IS REALLY A TIGHT DEADLINE.  I

11  THINK, YOU KNOW, WE'VE ALREADY WORKED COOPERATIVELY.  I THINK

12  WE WILL CONTINUE TO.  THERE ARE A NUMBER -- A LOT OF

13  WITNESSES, A LOT OF DEFENDANTS.  EVEN IF THEY ARE NOT

14  DEFENDANTS, THEY ARE WITNESSES, A NUMBER OF THIRD-PARTY

15  WITNESSES.

16      I THINK THAT WOULD BE -- WE COULD DO IT, BUT I THINK IT

17  WOULD BE A VERY TOUGH SCHEDULE TO MEET, AND IT MIGHT AFFECT

18  OUR ABILITY TO PREPARE THE CASE PROPERLY.

19      **THE COURT:**  WE'RE STILL IN AUGUST.  YOU HAVE A LOT OF

20  TIME.  NOW, ALBEIT AT THE END OF AUGUST.

21      OKAY.  YOU SUGGESTED APRIL 21ST.  IF WE LOOK AT A

22  NONEXPERT CUTOFF ON APRIL 1ST, YOU COULD DISCLOSE YOUR

23  EXPERTS -- AND THIS DOESN'T MEAN YOU CAN'T DISCLOSE THEM

24  SOONER.

25      **MR. BRUSTIN:**  RIGHT.

1    I WOULD PREFER, YOUR HONOR, TO KEEP THE FACT DISCOVERY

2    OPEN AND WE WORK COOPERATIVELY TO TRY AND GET AS MUCH

3    DISCOVERY AS WE NEED FOR THE EXPERTS TO MEET THE DEADLINE.

4    BUT I WOULD LIKE THE OPTION OF KEEPING THE FACT DISCOVERY OPEN

5    UNTIL APRIL 21ST IF WE COULD.

6          **MR. KEITH:**  YOUR HONOR, I DON'T SEE IF A WITNESS IS

7    THAT IMPORTANT WE'VE GOT TO TAKE THEIR DEPO.  I THINK WE NEED

8    IT BEFORE WE DO EXPERT DISCLOSURES.

9          **THE COURT:**  RIGHT, BUT YOU ALSO NEED TO -- OKAY.

10    LET'S JUST -- ARE YOU GOING TO BE PREPARED TO DISCLOSE

11    YOUR EXPERTS -- LET ME ASK THIS:

12    YOU COULD HAVE EXPERT DISCOVERY CUTOFF BY MAY 19TH.

13    THAT'S ONE MONTH.  AND, AGAIN, THAT DOESN'T MEAN YOU CAN'T DO

14    ANY OF THIS IN ADVANCE.

15    SO IF YOU HAVE -- IF YOU DISCLOSE YOUR EXPERTS -- WHAT I

16    USUALLY DO IS, IT'S USUALLY A MONTH TURNAROUND HERE.  SO SAY

17    APRIL 14TH, WITH REBUTTALS APRIL 28TH.  AND THAT GIVES YOU A

18    FEW WEEKS TO TAKE DEPOS.  THEN THAT WILL GIVE YOU, YOU KNOW, A

19    MONTH TO GET YOUR DISPOSITIVE MOTIONS ON FILE TO THE EXTENT

20    THAT YOU HAVEN'T DONE IT ALREADY.

21          **MR. KEITH:**  AND, YOUR HONOR, WHERE WOULD THAT -- DID

22    THE COURT HAVE A SUGGESTION ON WHEN EXCERPT DISCOVERY WOULD

23    CLOSE?

24          **THE COURT:**  5/19.

25          **MR. KEITH:**  OKAY.  THANK YOU.

1          **THE COURT:**  DOES THAT WORK?

2          **MR. BRUSTIN:**  YOUR HONOR, WOULD YOU CONSIDER -- I

3    AGREE THAT EXPERT DISCOVERY IS IMPORTANT FOR SUMMARY JUDGMENT,

4    BUT I DON'T THINK IT'S GOING TO BE DISPOSITIVE IN THIS CASE

5    FOR ANY EXPERT.

6       WOULD YOU CONSIDER HAVING THE *DAUBERT* MOTIONS SLIGHTLY

7    LATER THAN THE SUMMARY JUDGMENT MOTIONS?

8          **THE COURT:**  PROBABLY NOT BECAUSE WHAT I TEND TO DO IS

9    . . . IT IS INEFFICIENT FOR ME TO PICK UP A CASE AND DEAL WITH

10   SUMMARY JUDGMENT AND THEN A MONTH OR TWO LATER I AM DEALING

11   WITH DAUBERTS.  I DEAL WITH THE CASE IN ITS TOTALITY.  SO IF

12   I'M GOING TO GET INTO THE NITTY-GRITTY OF YOUR CASE, I'M GOING

13   TO BE DOING IT ALL AT ONCE.

14         **MR. BRUSTIN:**  UNDERSTOOD.

15         **THE COURT:**  SO THE PROPOSAL TO KEEP NONEXPERT

16   DISCOVERY OPEN UNTIL 4/21 IS RIGHT THERE IN BETWEEN THE

17   DISCLOSURE OF THE EXPERTS.  AND, AGAIN, IT DOESN'T -- IT WILL

18   ALLOW YOU FLEXIBILITY TO DO ANYTHING THAT'S LAST MINUTE.

19      SO, IS THAT FINE WITH YOU?

20         **MR. KEITH:**  YOUR HONOR, I WOULD BE WILLING TO MOVE

21   FACT DISCOVERY UP TO EVEN APRIL 7TH.  I THINK WE NEED ALL

22   THOSE DEPOS IN BEFORE OUR EXPERTS COMMIT TO A POSITION.

23      RIGHT NOW WE'VE SUGGESTED APRIL 1ST.  IF WE MOVED IT TO

24   APRIL 7TH OR 8TH -- AGAIN, I AM NOT SURE WHICH DAY OF THE WEEK

25   WE'RE LOOKING AT HERE, APRIL 7TH IS A FRIDAY.

1        APRIL 1ST IS ACTUALLY A SATURDAY.  IF WE MOVED CLOSE OF

2   FACT DISCOVERY TO APRIL 7TH I WOULD BE WILLING TO DO THAT TO

3   GIVE PLAINTIFFS MORE TIME.  I THINK IT IS CRUCIAL TO HAVE THE

4   EXPERT DISCLOSURES AFTER THE CLOSE OF FACT DISCOVERY.

5             **THE COURT:**  ALL RIGHT.  APRIL 7TH.

6        I WILL DEAL WITH AMENDMENTS TO THE PLEADINGS IN MY ORDER.

7        I UNDERSTAND YOU ARE GOING TO SEE JUDGE SPERO AGAIN IN

8   OCTOBER?

9             **MR. BRUSTIN:**  YES, YOUR HONOR.

10            **MR. KEITH:**  YES.  FOR THE FIRST TIME.  WE HAD A

11  TELECONFERENCE.

12            **THE COURT:**  SO THAT WILL STAY WITH JUDGE SPERO AND HE

13  WILL KEEP YOUR CASE FOR SETTLEMENT PURPOSES THROUGHOUT.

14       WHAT I WILL DO THEN IS PUT YOU BACK ON MY CALENDAR.  LET'S

15  SAY FEBRUARY, JUST TO CHECK IN WITH YOU, SEE WHERE YOUR CASE

16  IS HEADED, AND SEE IF I'M REALLY GOING TO TRIAL OR NOT.

17       I CAN SEE YOU FEBRUARY 13TH AT TWO P.M.

18       SO A REMINDER:  YOU ARE REQUIRED UNDER THE RULES TO ALWAYS

19  FILE A CASE MANAGEMENT STATEMENT SEVEN DAYS PRIOR TO YOUR CASE

20  MANAGEMENT CONFERENCE.  SO IT'S NOT JUST THE INITIAL TIME LIKE

21  YOU'VE DONE NOW, BUT AT EACH SUBSEQUENT CONFERENCE YOU NEED TO

22  UPDATE ME.  YOU DON'T HAVE TO REPEAT EVERYTHING YOU SAID.

23       THE WHOLE POINT IS I LIKE TO KNOW WHAT'S GOING ON IN MY

24  CASES, SO GIVE ME AN UPDATE.  LET ME KNOW HOW THINGS ARE.

25       I PREP MY CALENDAR A WEEK IN ADVANCE.  SO I READ THOSE ON

1    TUESDAY FOR THE FOLLOWING MONDAY.  I MAY READ IT AND DECIDE I

2    DON'T NEED TO SEE YOU, IN WHICH CASE I HAVE MY UPDATE, AND I

3    WILL TAKE YOU OFF CALENDAR.  ALL RIGHT?

4        IF YOU NEED TO SEE ME OR IF THERE ARE SPECIFIC ISSUES, I'M

5    VERY -- IT'S VERY EASY TO GET ON MY CMC CALENDAR.  JUST ASK.

6    ALSO, IN THOSE STATEMENTS, IF THERE ARE ISSUES TO DISCUSS,

7    MAKE SURE YOU IDENTIFY THEM.

8        LET'S TALK ABOUT EXPERTS FOR A FEW MINUTES.  I HAVE SOME

9    OTHER CASES HERE THAT ARE HERE FOR THE CMC CONFERENCES.  MAKE

10   SURE YOU'RE PAYING ATTENTION.

11       WITH RESPECT TO EXPERTS, YOU MUST DO THE FOLLOWING.  AND

12   MAKE SURE THAT YOU'VE READ MY STANDING ORDER.  BUT LET ME

13   EXPLAIN TO YOU WHY I DO THINGS.  HOPEFULLY THAT WILL HELP YOU

14   TO REMEMBER TO DO THEM.

15       TWO THINGS WITH RESPECT TO EXPERTS.  ONE IS THAT THE

16   REPORTS MUST BE NUMBERED.  EVERY SINGLE PARAGRAPH MUST BE

17   NUMBERED.

18       I DO THAT BECAUSE WHEN I GET YOUR *DAUBERT* MOTION TO STRIKE

19   OPINIONS, I WANT TO KNOW PRECISELY BY PARAGRAPH NUMBER AND/OR

20   SENTENCE WHAT IT IS YOU SEEK TO STRIKE.  I AM NOT GOING TO SIT

21   THERE AND TRY TO READ YOUR MIND.

22       WHAT HELPS IS THAT THE EXPERTS SHOULD HAVE A SUMMARY OF

23   THEIR OPINION; THAT IS, I SHOULD BE ABLE TO SEE IN A COUPLE OF

24   PAGES THE 15, 20, 25 OPINIONS THEY HAVE.  IT IS MY OPINION

25   THAT X.  I WANT A SUMMARY.  AND THEN THE REPORT PROVIDES THE

1    FOUNDATION FOR EACH OF THE OPINIONS ASSERTED.  ALL RIGHT?  SO

2    MAKE SURE YOUR EXPERTS ARE DOING THAT.

3        SECOND, IF YOUR EXPERTS ARE GOING TO OPINE ON DAMAGES --

4    LET ME JUST ASK:  ARE THEY GOING TO OPINE ON DAMAGES OR NOT?

5        **MR. BRUSTIN:**  YES, YOUR HONOR.

6        **THE COURT:**  OKAY.  IT IS NOT ALWAYS THE CASE IN A

7    1983 ACTION THAT YOU HAVE EXPERTS OPINING ON DAMAGES.

8        SO I WILL GIVE YOU THIS CAUTIONARY NOTE:  DO NOT

9    OVERREACH.  BECAUSE IF YOU OVERREACH TO TEST WHETHER YOU THINK

10   I'M GOING TO ALLOW THAT PERSON TO OPINE ON THAT TOPIC, I'M NOT

11   GOING TO GIVE YOU A SECOND BITE AT THE APPLE, AND YOU MAY FIND

12   YOURSELF WITHOUT AN EXPERT TO TALK ABOUT A SPECIFIC DAMAGES

13   NUMBER.

14       SO WHY DO I DO THAT?  I WANT LAWYERS TO SERVE AS A

15   REASONABLE CHECK ON THEIR EXPERTS.  I AM NOT HERE TO SAY -- TO

16   GET A MOTION AND THEN YOU COME IN WITH SOME OUTRAGEOUS NUMBER

17   FROM AN EXPERT THAT HAS NO BASIS IN FACT AND THAT IS PURELY

18   SPECULATIVE, TO SAY, NO, THAT'S TOO MUCH FOR THEN YOU TO GO

19   BACK AND SAY, OKAY, WE'LL JUST LOWER IT.  YOU DO NOT GET A

20   SECOND BITE.

21       **MR. BRUSTIN:**  WE DON'T INTEND, YOUR HONOR, TO HAVE AN

22   EXPERT THAT'S GOING TO OPINE ABOUT NUMBERS OR ANYTHING LIKE

23   THAT.  I'M TALKING ABOUT A PSYCHIATRIC EXPERT THINGS LIKE THAT

24   THAT WILL TALK ABOUT EXPERT ISSUES.  WE DON'T WANT TO

25   OVERREACH EITHER BECAUSE IT'S NOT GOING TO WORK IN FRONT OF A

1    JURY.

2              **THE COURT:**  AND THAT'S FINE.  I'M JUST TELLING YOU I

3    GET -- ESPECIALLY IN PATENT CASES IT'S ACTUALLY MORE OF AN

4    ISSUE.  BECAUSE THE LAW IN PATENT CASES WITH RESPECT TO

5    DAMAGES IS STILL VERY UNSETTLED.

6        WHAT HAPPENS IS, WE WILL GET *DAUBERT* MOTIONS, AND SOME

7    JUDGES WILL STRIKE IT, AND THEN THE EXPERT GOES BACK AND GIVES

8    ANOTHER NUMBER, AND THEN WE GET ANOTHER ROUND.

9        I'M NOT GOING TO DO THAT.  YOU GET ONE BITE AT IT.  THAT'S

10   MY ONLY POINT.  BUT IT MAY NOT BE APPLICABLE HERE ANYHOW.

11   THIS IS REALLY A NUMBERS' ISSUE.

12       OKAY.  ANY QUESTIONS YOU ALL HAVE?

13             **MR. BRUSTIN:**  I DON'T BELIEVE SO, YOUR HONOR.

14             **MR. KEITH:**  YOUR HONOR, THERE IS ONE ISSUE WHICH IS

15   KIND OF A PROBLEM, I'M GOING TO SAY, THAT WE IDENTIFIED AND WE

16   APPRECIATE THE COURT'S INVOLVEMENT IN THE SOLUTION.

17       THAT IS THAT MANY OF THE RECORDS THAT THE DEFENDANTS HAVE

18   RELATED TO THIS INVESTIGATION ARE JUVENILE CRIMINAL RECORDS.

19   WE ARE NOT ALLOWED TO DISCLOSE THOSE TO PEOPLE OTHER THAN THE

20   JUVENILE SUBJECT WITHOUT A COURT ORDER.  AND, OF COURSE, I

21   KNOW THE COURT CAN ISSUE VARIOUS ORDERS JUST BY STIPULATION,

22   BUT HERE WE'VE GOT SOME THIRD-PARTY RIGHTS INVOLVED, THE

23   RIGHTS OF THOSE WHO WERE JUVENILES.

24       SO I WANTED TO ASK THE COURT IF THE COURT THOUGHT THAT

25   BEFORE PRODUCING THOSE RECORDS WE NEEDED TO PROVIDE NOTICE TO

```
 1    THE JUVENILES, ESSENTIALLY, TO OBJECT TO PRODUCTION OF THOSE

 2    RECORDS SUBJECT TO A PROTECTIVE ORDER.

 3          THE COURT:  YOU KNOW, I HAVEN'T RESEARCHED THAT SO I

 4    DON'T KNOW IF IT IS REQUIRED BY LAW.

 5       I CERTAINLY THINK THAT PROTECTIVE ORDERS CAN BE CRAFTED.

 6          MR. KEITH:  WE DO HAVE ONE THE COURT HAS ENDORSED IN

 7    THE CASE.  THE EXISTENCE OF A PROTECTIVE ORDER ISN'T A

 8    PROBLEM.  I'M SPEAKING MORE OF A PROCEDURE FOR THESE THIRD

 9    PARTIES WHO ARE AREN'T REPRESENTED BY -- SOME MAY BE, I'M NOT

10    SURE.  PLAINTIFFS' COUNSEL MAY REPRESENT --

11          MR. BRUSTIN:  WE DON'T REPRESENT ANYBODY, BUT WE

12    CERTAINLY HAVE BEEN IN CONTACT WITH PEOPLE.

13       I THINK THERE MAY BE SOME DISPUTE, AND I THINK WE SHOULD

14    TRY TO WORK THIS OUT YOURSELVES BEFORE BRINGING IT TO THE

15    COURT, ABOUT THE SCOPE OF JUVENILE RECORDS THAT SHOULD BE

16    PRODUCED AT ALL AND HOW THEY CAN LEAD TO RELEVANT EVIDENCE.

17       I THINK WE SHOULD DO THE RESEARCH AND TRY AND FIGURE OUT

18    WHAT MAKES SENSE IN TERMS OF --

19          THE COURT:  AND IT MAY BE, AND TYPICALLY I KEEP

20    DISCOVERY DISPUTES BECAUSE I RESOLVE THEM, YOU SHOULD KNOW,

21    PRETTY QUICKLY AND WITHOUT MUCH ANALYSIS.

22       THAT IS, I LIKE TO KNOW WHAT PEOPLE ARE DOING, IF THEY'RE

23    MISBEHAVING OR NOT MISBEHAVING.  AND I WILL GIVE YOU ANSWERS,

24    BUT YOU AREN'T GOING TO GET BIG ORDERS BECAUSE MY BIG ORDERS

25    ARE ISSUED IN OTHER CONTEXTS.
```

1    THIS KIND OF THING THOUGH WHERE IT MAY REQUIRE, YOU KNOW,

2    FOR INSTANCE LIKE ATTORNEY-CLIENT DISPUTES OVER WHETHER

3    DOCUMENTS MEET THE PRIVILEGE OR NOT; THOSE THINGS I REFER OUT

4    TO MAGISTRATE JUDGES TO DEAL WITH.  THIS MIGHT BE THAT KIND OF

5    CIRCUMSTANCE BECAUSE IT MIGHT REQUIRE SOME MAGISTRATE JUDGE TO

6    ACTUALLY LOOK AT WHAT YOU ARE ATTEMPTING TO DISCLOSE OR NOT

7    WANTING TO -- OR RESOLVE THOSE KINDS OF DISPUTES.

8        SO IF THAT'S THE CASE, YOU KNOW, TEE IT UP.  I THINK WE

9    ALL -- EVEN THE MAGISTRATE JUDGES USE DISCOVERY LETTERS TO TRY

10   TO PUSH THINGS THROUGH QUICKLY.  THAT MIGHT BE SOMETHING THAT

11   I HAVE SOMEONE ELSE MANAGE AND HELP YOU GET THROUGH THAT

12   QUICKLY.

13       **MR. KEITH:**  JUST TO BE CLEAR, YOUR HONOR, WE DON'T

14   HAVE A PROBLEM WITH PRODUCING THOSE.  WE JUST WANT THE

15   PROTECTION OF A COURT ORDER BECAUSE STATE LAW DOES NOT ALLOW

16   US TO PRODUCE THOSE.  THAT'S THE THING.  IT'S NOT THAT WE WANT

17   TO WITHHOLD THEM.  WE JUST WANT TO MAKE SURE THAT WHATEVER

18   PROCEDURE THE COURT THINKS SHOULD BE FOLLOWED IS.  AND

19   NORMALLY ONE WOULD GO DOWN TO CRIMINAL COURT TO DO THESE

20   BECAUSE THAT'S WHERE IT COMES UP.

21       **THE COURT:**  WE ARE NOT GOING TO DO IT WITHOUT HAVING

22   SOME BRIEFING ON WHETHER OR NOT IT SHOULD BE DONE.

23       **MR. KEITH:**  OKAY.

24       **MR. BRUSTIN:**  WE'LL GET ON IT.

25       **THE COURT:**  OTHER ISSUES?

1        **MR. BRUSTIN:**  NO, YOUR HONOR.

2        **MR. KEITH:**  NO, YOUR HONOR.

3        **THE COURT:**  ALL RIGHT.  COUNSEL, THANK YOU VERY MUCH.

4        **MR. BRUSTIN:**  THANK YOU.

5        **MR. KEITH:**  THANK YOU.

6            (PROCEEDINGS CONCLUDED AT 2:09 P.M.)

7

8

9                    CERTIFICATE OF REPORTER

10           I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

11    UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

12    CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

13    RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

14

15

16           DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

17            THURSDAY, SEPTEMBER 15, 2016

18

19

20

21

22

23

24

25