**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JAMAL RASHID TRULOVE,**<br><br>  Plaintiff,<br><br>  vs.<br><br>**THE CITY AND COUNTY OF SAN FRANCISCO,** *et al.*<br><br>  Defendants. | Case No.: 16-050-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>RE: DKT. NO. 50 |

Plaintiff Jamal Trulove ("Trulove") brings this action against defendants Michael Androvich, Maureen D'Amico, Robert Daniele, Francis J. Hagen, Michael E Johnson, Carla Lee, Robert T McMillan, Kevin Noble, Shawn Phillips, Daniel Silver, Michael Slade, James Trail, and the City and County San Francisco ("the City") (collectively, "Defendants") for malicious prosecution. In his First Amended Complaint ("FAC") filed April 8, 2016 (Dkt. No. 43), Trulove alleges eight claims: Counts I-V under 42 U.S.C. section 1983 for violation of his Fourth and Fourteenth Amendment rights based upon allegations of fabrication and suppression of evidence; Count VI for violation of the California Bane Act, California Civil Code section 52.1 (against defendants D'Amico, Johnson, and Lee); Count VII for *respondeat superior* liability under California Government Code section 815.2 against the City; and Count VIII under California Government Code section 825.

In 2010, a San Francisco Superior Court jury convicted Trulove of the July 23, 2007 murder of Seu Kuka. He was sentenced to a term of 50 years to life in prison. At the time of Trulove's arrest, over a year after the date of the murder, the affidavit in support of his arrest warrant relied on two witness statements: (1) the statement of Priscilla Lualemaga ("Lualemaga"), obtained days after the murder; and (2) the statement of Latisha Meadows-Dickerson ("Dickerson"), obtained some nine months later. Trulove alleges that, at trial, the prosecution offered no physical or forensic evidence, but only the testimony of Lualemaga.

Trulove's conviction was reversed on appeal, on grounds of ineffective assistance of counsel. The California Court of Appeal held that Trulove's criminal counsel should have objected to the prosecutor's closing arguments. When Trulove was re-tried in 2015, a different jury could not find guilt beyond a reasonable doubt, and acquitted him. Trulove spent six years in prison prior to his acquittal.

Trulove brings the instant action alleging that the police conduct here violated his Constitutional rights to due process and to a fair trial by fabricating false evidence of his guilt and suppressing exculpatory evidence of his innocence.

Defendants have filed a Motion to Dismiss on the grounds that:

(1) the Section 1983 claims for denial of due process, malicious prosecution and conspiracy based upon fabrication and suppression: (a) as against individual police officer defendants Officer Androvich, Officer Hagan, Officer Knoble, Inspector McMillan, Officer Phillips, Officer Trail, and Officer Silver (collectively "the Moving Officers") allege insufficient facts to state a claim that they personally violated Trulove's clearly established constitutional rights; and (b) as against Sergeant Daniele and Lieutenant Slade fail to allege a sufficient basis to impose liability on them as supervisors;

(2) the California Civil Code section 52.1 ("Bane Act") claim against defendants Inspector D'Amico, Inspector Johnson, and Officer Lee must be dismissed based on absolute immunity under California Government Code section 821.6 for claims of misconduct in connection with an investigation and prosecution; and

(3) the City is absolutely immune from liability on the state law claims under California Government Code under section 821.6, and cannot be sued under California Government Code section 825.

Having carefully considered the papers submitted[1] and the pleadings in this action,[2] and for the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the Motion to Dismiss with leave to amend.

---

[1] The Court directed the parties to submit supplemental briefs of no more than three pages each on the issue of conspiracy arising from participation in an investigation. Plaintiff submitted his three-page brief. Defendants objected and moved to strike the brief as beyond the scope permitted

## I.    SUMMARY OF ALLEGATIONS

Trulove alleges that, shortly before 11:00 p.m. on July 23, 2007, Seu Kuka was shot and killed on a sidewalk in front of 140 Blythedale Avenue in San Francisco's Sunnydale housing projects. (FAC ¶ 27.) Although there were as many as 25 people present at the scene of the crime, only one witness came forward: Priscilla Lualemaga. (*Id.* ¶ 29.) She was transported to Ingleside Police Station by defendants Lee and Phillips. (*Id.* ¶ 30.) They placed Lualemaga in a room for two hours, and Lee directed her to look over a bulletin board of photos of suspected gang members, including a photo of Trulove. (*Id.* ¶¶ 30-32.) Later, sometime around 1:00 a.m., the lead investigators on the homicide, defendants Johnson and D'Amico, conducted an interview of Lualemaga. (*Id.* ¶ 29.) Lualemaga stated that she recognized a photograph of David Trulove (plaintiff Jamal Trulove's brother) on the bulletin board, but did not identify or recognize plaintiff. (*Id.* ¶¶ 36-37.) Lualemaga reported that she saw, from her second story window at 140 Blythedale, Kuka chasing one man and being shot by another man. (*Id.* ¶¶ 41–42.) Lualemaga told the inspectors that she "didn't really get a good look at the shooter" as the fight and shooting happened "so fast." (*Id.* ¶ 48.) Lualemaga then returned with the inspectors to the bulletin board and stated that the man Kuka was chasing was Joshua Bradley. (*Id.* ¶¶ 45–46, 52.). Despite the fact that Joshua's photograph was immediately below Trulove's on the bulletin board, she again did not identify Jamal

---

by the Court. The motion to strike is **DENIED**. While the Court requested authorities rather than argument, the brief is within the page limit and the argument is minimal. The Court notes that defendants' response provided no contrary authorities, was less than a page total, and submitted the motion on its original papers.

[2] Citing *Rosales-Martinez v. Palmer*, 753 F.3d 890 (9th Cir. 2014), defendants seek judicial notice of several documents in connection with their motion, including the affidavit used to obtain the arrest warrant, trial minutes, a declaration of counsel in support of a new trial motion, and a transcript of a witness statement in the underlying criminal case against plaintiff, along with a copy of the unpublished decision of the California Court of Appeal reversing his conviction. (Request for Judicial Notice ["RJN"], Dkt. No. 51.) Plaintiff objects to the RJN as improperly seeking to introduce evidence outside the pleadings for the truth of the matters stated therein. The Court finds that, other than the unpublished decision, the documents are not appropriate matters for consideration in connection with a 12(b)(6) motion. Particularly with respect to the Dickerson statement, Defendants' offer of the statement to show that the interview techniques here did not rise to the level of a Constitutional violation goes far beyond simply comparing the alleged contents of the actual document to the contents as alleged in the FAC. The RJN is therefore **GRANTED** as to Exhibit F only, and is otherwise **DENIED**.

3

Trulove as someone involved in the Kuka shooting or present that night, nor did she indicate in any way that she recognized him as associated with Joshua Bradley. (*Id.* ¶¶ 34, 47, 53.)

Trulove alleges later that night an unidentified plainclothes police officer ("John Doe #1") also questioned Lualemaga about the murder in the presence of a third party, Oliver Barcenas, who had been brought to the station and handcuffed to a bench near the officers. (FAC ¶¶ 46, 152.) According Barcenas, with Officer Lee standing by, John Doe #1 pointed to a clipboard and asked Lualemaga, "Are you sure it wasn't Jamal Trulove?" to which Lualemaga responded, "No, I don't know," and John Doe #1 appeared frustrated. (*Id.* ¶¶ 61-64.)

Sometime in the early morning hours of July 24, 2007, defendants Johnson and D'Amico drove Lualemaga home. (FAC ¶ 70.). Later that day, defendant Johnson went back to Lualemaga's home, along with defendants McMillan, Androvich and Trail and, in an unrecorded and undisclosed conversation, exerted pressure on Lualemaga to identify Trulove as the shooter. (*Id.* ¶¶ 72-74.)

On July 25, 2007, defendants Johnson and D'Amico met Lualemaga at her work and showed her a photograph line-up in their car. (*Id.* ¶¶ 79, 80.) They recorded some, but not all, of their conversation with Lualemaga. (*Id.* ¶ 82.) Though they had four photograph line-ups using the standard procedure, they showed Lualemaga a different, improperly suggestive line-up, which used the same photo of Trulove as had been posted on the bulletin board, and depicted him in orange, jail-issued clothing, among other things. (*Id.* ¶¶ 76–78, 80, 81.) Despite not having recognized him less than 48 hours before, Lualemaga now stated that "he looks like the person that could have shot Seu" and "the shooter, I want to say it's him." (*Id.* ¶ 86.) Despite this identification, Trulove alleges that Lualemaga's statements about the shooting were inconsistent with the physical evidence about the direction from which the shots were fired. (FAC ¶¶ 164, 168.)

Nearly ten months later, with the investigation still pending, defendants Hagan and McMillan were conducting surveillance of a known drug trafficking area in San Francisco in June 2008. (*Id.* ¶¶ 96–97.) They saw Latisha Meadows-Dickerson was in the passenger seat of a car in the area. (*Id*.) When police arrived at the car, Dickerson stuffed a loaded firearm into her pants. (*Id.*) At the time, Dickerson had two prior convictions for serious felonies. (*Id.* ¶ 98.) Instead of charging Dickerson with a crime that would have been her "third strike," defendants Hagan and McMillan asked her if

4

she had any information for them. (*Id*. ¶ 99.) Dickerson told them that she had seen Kuka's murder. (*Id.* ¶ 99.) Trulove alleges that, because officers knew Dickerson's statement was inconsistent with the facts known about the shooting (*i.e.*, Dickerson said it occurred around 5:00 or 6:00 p.m. and was "still light outside," though it occurred near 11:00 p.m.), they engaged in suggestion to attempt to alter her statement in the unrecorded portions of her interview. (*Id.* ¶¶ 100-107.) Dickerson also claimed a third man, Tumo Vaovasa, had witnessed the shooting. (*Id.* ¶ 103.) However, defendants Johnson and D'Amico had interviewed Vaovasa months earlier because Vaovasa was a friend of the victim and wanted to assist in the investigation. (*Id.* ¶ 104.)  Not only did Vaovasa deny witnessing the shooting, he also told the inspectors that, from where he and Dickerson were, they could not see the shooting. (*Id.*) Trulove alleges that, knowing that Dickerson's account of the homicide was completely contradicted by credible information from Vaovasa, defendants Johnson and D'Amico determined to conceal Vaovasa's statement. (*Id.* ¶¶ 104, 116, 221.)

Trulove alleges that, defendant Johnson made a number of misrepresentations and omissions in his arrest warrant affidavit in August 2008, including omitting the above weaknesses in the witnesses' identification of Trulove, and concealing information about Vaovasa and Barcenas. Based on Johnson's affidavit, Trulove was arrested on October 27, 2008, and the prosecution against him proceeded. At Trulove's preliminary hearing and trial, the prosecution based its entire case on Lualemaga's identification of him as the shooter. (FAC ¶ 133.) Lualemaga further testified that she did not initially tell police that Trulove was the shooter because she was afraid of having to testify. (*Id.* ¶ 137.) Trulove alleges that this explanation of fear was only to hide Defendants' misconduct. (*Id.* ¶ 138.) The prosecution never called Dickerson to testify at any proceeding against Trulove. (*Id*. ¶ 117.)

## II.   APPLICABLE STANDARD

Defendants move to dismiss under Rule 12(b)(6). A motion under Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. To avoid a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*")). Although a pleading does not require "detailed

factual allegations," plaintiffs must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Iqbal*, 556 U.S. at 679. "[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Further, the "factual allegations . . . must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id*.

### III.  DISCUSSION

The FAC names twelve individual police officers/inspectors and the City. Defendants move to dismiss nine of those twelve individuals, conceding that the facts alleged against D'Amico, Johnson, and Lee are sufficient to state plausible claims as a pleading matter. However, Defendants contend the allegations against the remaining individual officers are too conclusory and vague to support Trulove's section 1983 claims. Defendants further contend that Trulove's state law claims against D'Amico, Johnson, Lee and the City, are barred.

The Court looks first to the Section 1983 claims. Section 1983 creates a right of action against individuals acting under color of state law who violate federal constitutional or statutory rights, and thus establishes "a method for vindicating federal rights elsewhere conferred." *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014), *cert. denied,* 135 S. Ct. 2312 (2015) (quoting *Hall v. City of L.A.,* 697 F.3d 1059, 1068 (9th Cir. 2012)). Here, Trulove alleges violation of his Fourth and Fourteenth Amendment rights based upon allegations of fabrication, suppression of evidence, and malicious prosecution, as well as a conspiracy to violate those rights. The Court considers each claim in turn.

####   A.     Section 1983 Fabrication of Evidence Claim Under *Devereaux* (Count I)

Defendants seek to dismiss all claims against individual police officer defendants Officer Androvich, Sergeant Daniele, Officer Hagan, Officer Knoble, Inspector McMillan, Officer Phillips, Officer Trail, Officer Silver, and Lieutenant Slade on the grounds that there are insufficient factual

6

allegations to conclude that they personally violated Trulove's clearly established constitutional rights under Section 1983. To state a claim, Trulove must make plausible allegations both that he was deprived of a constitutional right, and that the right was clearly established such that it would be clear to a reasonable officer that their conduct was unlawful in the situation they confronted, in order to overcome qualified immunity. *See Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

To state a plausible claim for deliberate fabrication of evidence under *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001), the plaintiff must: (1) identify the evidence alleged to have been fabricated; and (2) state facts to show that the fabrication was deliberate. *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015). Deliberate fabrication can be shown directly, such as by proving that the defendant reported information known to be false. *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111–12 (9th Cir. 2010) (evidence that defendant deliberately misquoted and misrepresented witness statements in a child abuse report created triable issue of fact on fabrication claim). Deliberate fabrication can also be shown by circumstantial evidence that defendants either: (1) continued an investigation of the plaintiff "even though [they] knew or should have known that [he] was innocent;" or (2) "used investigative techniques that were so coercive and abusive that [they] knew or should have known that those techniques would yield false information." *Bradford*, 803 F.3d at 386 (*quoting Devereaux*, 263 F.3d at 1076). "These methods are not themselves independent causes of action. Rather, they are methods of proving one element—intent—of a claim that the government deliberately fabricated the evidence at issue." *Id.*

Here, as to the first part of the *Devereaux* test, Trulove alleges that Defendants fabricated Lualemaga and Dickerson's identifications of Trulove as the shooter. (FAC ¶ 220.) As to the deliberateness prong of the test, Trulove alleges:

(1) direct evidence of deliberate misrepresentation of witness statements by: misrepresenting the strength and circumstances of the witness statements; failing to disclose that Lualemaga had not identified Trulove on two prior occasions when shown his photograph; and neglecting to acknowledge inconsistencies in Dickerson's statement indicating that she stated the wrong location and wrong time of day for the shooting. (FAC ¶ 220(a).)

(2) circumstantial proof of deliberateness in that Defendants used investigative techniques that were so suggestive or coercive that they knew or should have known that they would yield false information. (FAC ¶ 220(b).)

Defendants' motion does not seek to dismiss the fabrication claim as to other officers, such as Lee and Johnson, as to whom it is alleged there is direct evidence of their deliberate misrepresentation of witness statements. Thus, the Court focuses on whether Trulove's allegations state a plausible claim that the Moving Officers here acted deliberately because they used suggestive or coercive techniques in obtaining the witness statements that they knew or should have known would yield false information. The Court has reviewed the allegations as to each moving defendant and finds the allegations sufficient to state a plausible claim of deliberate fabrication as to some individuals, but not others.

Officers Trail and Androvich and Inspector McMillan are alleged to have met with Lualemaga the day after the shooting at her home, and to have pressured her in that conversation to identify Trulove as the shooter, in an unrecorded conversation. (FAC ¶¶ 72-74.) Inspector McMillan and Officer Hagen are alleged to have coerced Dickerson to say that the shooter was Trulove, enticing her with the incentive of avoiding a "third strike" for the cocaine, heroin, and stolen 9 mm semi-automatic firearm they found on her, and overtly suggesting that she answer questions in a way that would make her testimony consistent with known information (*i.e.*, "It was dark. Was it not? Was it dark?"). (FAC ¶¶ 96-107.) These allegations, along with the more generalized assertion that these defendants acted at the direction of the lead investigators and in active assistance of the investigation, are sufficient to state a plausible claim of deliberate fabrication against them. *Cf. Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013) (sufficient evidence of coercive interviewing to send fabrication claim to the jury where suspect testified that detectives threatened to charge him with murder if he did not provide information, that officers knew suspect was high on crack at the time of his identification, and told suspect he was not allowed to say they had showed him certain materials). Defendants are correct that aggressive questioning tactics alone do not establish a Constitutional violation. *See Devereaux*, 263 F.3d at 1075, *Gausvik v. Perez*, 345 F.3d 813, 816-817 (9th Cir. 2003). The allegations here are sufficient

8

to state a claim of conduct so coercive that the officers knew they were likely to yield false information, and that the officers knew or should have known that the right being violated was "clearly established." *Devereaux*, 263 F.3d at 1074-75 (that "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government" is "virtually self-evident").  The motion to dismiss the fabrication claim against Inspector McMillan and Officers Trail, Androvich, and Hagen is **DENIED**.

However, the non-conclusory allegations against Officers Knoble, Silver, and Phillips are not sufficient to state a fabrication claim against them.  Officer Phillips is alleged to have brought Lualemaga to the Ingleside Police Station on the night of the murder, and to have assisted in the investigation.  It is only Officer Lee who is alleged to have directed Lualemaga to examine the photographs on the bulletin board that night while she waited to be interviewed, and to have participated in questioning in an attempt to coerce or pressure Lualemaga to identify Trulove as the shooter.  (*See* FAC ¶¶ 30, 61-67.)

Similarly, the only particular factual allegations against Officers Knoble and Silver are that Knoble took photographs at the crime scene, Silver participated in a later traffic stop and interrogation of Trulove's brothers, and that they both, as members of a gang task force, suggested Trulove should be investigated in connection with the murder.  None of these allegations supports an inference that Knoble or Silver were engaged in coercive investigative techniques that they knew would yield false information.  Further, although Trulove alleges on information and belief that "Officers Lee and John Doe #1 *and others*" engaged in coercive questioning of Lualemaga the night of the shooting (FAC ¶ 66, emphasis supplied), this general allegation is insufficient to state a claim that Knoble, Silver, or Phillips were so engaged.

Trulove also contends that all nine officers are liable because they were aware of the others' misconduct (FAC ¶ 56), making them "integral participants" and not "mere bystanders" to the deliberate fabrication.  The Ninth Circuit has held that even if an individual's conduct does not itself rise to the level of a constitutional violation, the individual may still be liable for the violation if they were an "integral participant." *Boyd v. Benton Cty.*, 374 F.3d 773, 780 (9th Cir. 2004).  Even

9

so, the Ninth Circuit has rejected a theory that "when the deprivation of the rights is the result of a 'team effort,' all members of the 'team' may be held liable" since it would lump all defendants together and allow liability to attach to "a mere bystander" who had "no role in the unlawful conduct." *Chuman v. Wright*, 76 F.3d 292, 294-295 (9th Cir. 1996). Thus, an integral participant must play some individual role rather than simply being part of, for example, an investigative team. In *Boyd*, the court described such participation as encompassing circumstances where an officer stood at the door of an apartment, armed with his gun, while other officers entered to conduct an unlawful search, or where one officer stood behind another officer as he threw a "flash-bang device" into a suspect's apartment. *Boyd*, 374 F.3d at 780. Unlike *Boyd* or the unpublished decisions cited by Trulove—cases where a group of officers acted in concert at the scene of a single incident—here the alleged conduct of Knoble, Silver, and Phillips is too distant from the "scene" of the alleged coercive questioning to find that they were "integral participants" in obtaining coerced statements from Lualemaga or Dickerson.

Without more, the allegations against these three officers do not state a plausible claim. Thus, the motion to dismiss the fabrication claim as to Knoble, Silver, and Phillips is **GRANTED WITH LEAVE TO AMEND**. If he is unable to allege additional facts at this time, Trulove may seek leave to amend if further discovery reveals additional conduct that would give rise to liability for deliberate fabrication by these or other officers. *See Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980) ("[W]here the identity of alleged defendants will not be known prior to the filing of a complaint ... the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds").

### B. Section 1983 Suppression of Evidence Claims Under *Brady* and *Tatum* (Counts I and IV)

In Count I, Trulove alleges that all defendants violated his Constitutional rights to a fair trial *Brady v. Maryland*, 373 U.S. 83 (1963) by concealing from prosecutors: (1) the exchange at Ingleside Police Station the night of the murder involving Officer Lee, Officer John Doe #1 and

Lualemaga, as observed by Barcenas; (2) the meeting between Lualemaga, Inspector Johnson, Inspector McMillan, Officer Androvich, and Officer Trail at her home the day after the murder and her questioning at Ingleside Station well past midnight; (3) the statement of witness Vaovasa to Inspector Johnson and Inspector D'Amico that contradicted Dickerson's statement about the murder and identification of Trulove.  In Count IV, Trulove also alleges these same facts support a claim for violation of his due process rights by concealing or failing to turn over exculpatory evidence leading to prolonged detention.  *Tatum v. Moody*, 768 F.3d 806, 814–16 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2312 (2015) (regardless of whether *Brady* covers a claim for failure to disclose exculpatory evidence in the absence of a charge going to trial, there is still a 14th Amendment denial of due process claim when such failure to disclose results in a prolonged detention).

In order to state a claim for violation of his Constitutional rights by suppression of evidence, under *Brady* and *Tatum*, plaintiff must allege that defendants were aware of evidence that was material and exculpatory; did not make an adequate disclosure of that evidence to the prosecutor; and did so with "deliberate indifference to or reckless disregard for an accused's rights or for the truth." *Tennison v. City & Cty. of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009).  Plaintiff must also allege that the inadequate disclosure prejudiced him.  *Smith v. Almada*, 640 F.3d 931, 939 (9th Cir. 2011) (citing *Strickler v. Greene,* 527 U.S. 263, 281–82 (1999)).

Defendants argue that Officers Hagan, Knoble, Phillips, and Silver cannot be liable because they are not alleged to have been personally involved in obtaining any of the alleged statements.  Trulove does not assert otherwise in his opposition to the motion.  The Court, based on its review of the FAC and the lack of opposition, **GRANTS** the motion to dismiss the suppression claims against Hagen, Knoble, Phillips, and Silver **WITH LEAVE TO AMEND.**

As to Officers Trail and Androvich and Inspector McMillan, Defendants contend that the allegations concerning their unrecorded, undisclosed meeting with Lualemaga the day after the shooting do not show that these officers' failure to disclose the meeting was culpable.  They contend that Inspector Johnson, the lead homicide investigator, was also present and they reasonably could have relied on him to take responsibility for any *Brady* obligations that might arise as a consequence of the meeting.  None of the authorities cited by Defendants suggest that a police officer is excused

11

from his *Brady* responsibilities by the fact that he is not the lead investigator. Nor does Defendants' reframing of the argument in reply—that a claim these officers had *Brady* obligations is not plausible under the circumstances alleged—persuade the Court that the claim must be dismissed.

Defendants' citation to *Tennison* does not persuade. In *Tennison*, the Ninth Circuit held that the decision to disclose or withhold exculpatory evidence is subject to a reckless indifference standard, such that a San Francisco Police Department inspector who heard the recording of a confession given to another officer, but failed to disclose it, could be found liable for his reckless disregard for the civil rights of the accused and for the truth. *Tennison*, 570 F.3d at 1089-90.

The motion to dismiss the suppression of evidence claims as to Officers Trail and Androvich, and Inspector McMillan is therefore **DENIED**.[3]

### C.     Section 1983 Malicious Prosecution (Count II)

A claim for malicious prosecution may be stated not only against prosecutors but also police officers and investigators who wrongfully caused the plaintiff's prosecution, such as by knowingly providing misinformation, concealing exculpatory evidence, or otherwise engaging in wrongful conduct that was "actively instrumental in causing the initiation of legal proceedings." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004); *see also Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1126 (9th Cir. 2002)  (coroner's reckless or intentional falsification of an autopsy report that plays a material role in the false arrest and prosecution of an individual can support a claim for malicious prosecution against him); *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011) (citing *Galbraith*, malicious prosecution action may be stated against police officers and investigators wrongfully caused prosecution). A claim for malicious prosecution requires that the plaintiff show he was prosecuted with malice, without probable cause, and for the purpose of denying him a specific constitutional right. *Awabdy*, 368 F.3d at 1066. "Among the ways that a

---

[3]  Defendants contend that Plaintiff's allegations are equivocal because the FAC alleges that the conversation the day after the shooting only "possibly" took place. (FAC ¶ 132.) Plaintiff states that paragraph 132 refers to the possibility that Lualemaga was shown plaintiff's photograph at the earlier meeting, not any uncertainty about whether the meeting occurred. While the allegations could have been clearer in this regard, they are sufficient to put Defendants on notice of plaintiff's allegations that the meeting between Inspector Johnson, Inspector McMillan, Officer Androvich, and Officer Trail at 140 Blythedale Avenue, on July 24, 2007, at approximately 5:00 p.m. (*See* FAC ¶¶ 71-74.)

plaintiff can rebut a *prima facie* finding of probable cause is by showing that the criminal prosecution was induced by…fabricated evidence, or other wrongful conduct undertaken in bad faith." *Id.* at 1067; *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 483-84 (9th Cir. 2007) (evidence that officers gave false statements about defendant's gang affiliation and his "combative stance" in arrest reports relied upon by prosecutor in filing charges could establish their "integral participation" for malicious prosecution liability).

Defendants contend that the only allegations of false representations to prosecutors involve defendant Johnson's arrest warrant affidavit, and that there are no allegations to support a malicious prosecution claim as to Hagan, Knoble, Phillips, Silver, Trail, Androvich, and McMillan.[4] Defendants argue that the FAC does not allege facts to show that these officers were integrally involved in providing false statements.

To the contrary, and as stated above, the allegations here are sufficient to state claims that at least some of the individual defendants—Trail, Androvich, McMillan and Hagen—acted to fabricate or suppress evidence, conduct which was instrumental in causing the initiation of a murder prosecution against Trulove. The motion to dismiss the malicious prosecution claim is therefore **GRANTED WITH LEAVE TO AMEND** as to defendants Knoble, Phillips, and Silver, and **DENIED** as to defendants Trail, Androvich, McMillan, and Hagen.

**D.    Section 1983 Conspiracy (Count III)**

"A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) (internal quotation omitted). A plaintiff need not allege that each participant knew "the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). "Whether defendants were involved in an unlawful conspiracy is generally a factual issue and should be resolved by the jury, so long as there is a possibility that the

---

[4] The Motion argues that there are "no facts alleged to support the conclusion that any of these *seven* other officers" were involved. (Motion at 16:16-17, emphasis supplied.) The Court understands this argument to include the individual Moving Officers *other than* Daniele and Slade, who are only addressed in the 1983 supervisory liability section of the motion.

13

jury can infer from the circumstances (that the alleged conspirators) had a meeting of the minds and thus reached a understanding to achieve the conspiracy's objectives." *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1301–02 (9th Cir. 1999) (internal citations and quotations omitted).

In addition to the factual allegations summarized above, Trulove alleges that Defendants engaged in and facilitated acts in furtherance of a conspiracy, including acting in concert to: suggest, coerce, and fabricate witness identifications; conceal that the Lualemaga identification was tainted and given in exchange for a promise of payment of living expenses; and fail to document the conversations with Lualemaga that would have shown she was pressured to identify Trulove. (FAC ¶ 237.) Defendants argue that Trulove's allegations of conspiracy, particularly of concerted action to violate his Constitutional rights, are too conclusory. Defendants contend that the officers' cooperation with one another only plausibly shows that the officers were working together to solve a case, not to deprive Trulove of his constitutional rights.

Trulove has alleged active participation by defendants Trail, Androvich, McMillan, and Hagen, along with the non-moving police defendants, in deprivation of Trulove's rights based on fabrication and suppression of evidence. Trulove alleged that these officers acted together, at the direction of defendants Johnson and D'Amico, and based on a suspicion of Trulove's gang affiliation. (FAC ¶¶ 32, 55-57.) Trulove offers specific factual allegations that these defendants: (1) acted in concert to fabricate Lualemaga's identification of Trulove, using pressure and faulty line-up tactics, along with promises of compensation; (2) participated in the fabrication of an even less reliable statement from Dickerson; and (3) acted to conceal details and contradictory evidence that would have undermined those identifications. (FAC ¶¶ 220-222, 237.) These allegations are sufficient, at the pleading stage, to state a claim for conspiracy against Trail, Androvich, McMillan, and Hagen, and the motion to dismiss the conspiracy count against them is **DENIED**.

The non-conclusory allegations against Knoble, Silver, and Phillips, on the other hand, are not sufficient to give rise to an inference that they were aware of the fabrication or suppression in which the other officers are alleged to have taken an active role. Certainly, there are circumstances under which a person may be liable as a co-conspirator if they acted in concert with others and knew or should have known that their actions contributed to a constitutional violation. *See*

14

*Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1303 (9th Cir. 1999) (circumstantial evidence, including the fact that city police officers had worked closely in planning and conducting investigation with FBI agents who used misleading information to obtain search warrants, along evidence police officers contributed misinformation and publicized inaccurate information, was sufficient to create a triable issue about those officers' liability as co-conspirators); *Crowe v. Cty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (allegations that psychologist advised detectives and helped devise a tactical plan later implemented by officers in violation of defendant's constitutional rights was sufficient to plead a "tacit 'meeting of the minds'" for conspiracy liability); *Grega v. Pettengill*, 123 F. Supp. 3d 517, 542 (D. Vt. 2015) (prosecutor's role in conspiracy sufficiently alleged where his review of file and "intimate" involvement in investigation could give rise to inference that he knew or should have known that crime scene photograph falsely depicted the scene).[5]  But allegations that these officers were part of a gang task force, identified Trulove as a potential suspect, and assisted in the investigation, without more, do not give rise to an inference that they knew of and tacitly agreed to an unlawful objective.  The motion to dismiss is **GRANTED WITH LEAVE TO AMEND** as to Knoble, Silver, and Phillips on this claim as well.

### E.    Section 1983 Supervisory Liability Against Daniele and Slade (Count V)

Defendants do not dispute Trulove's allegations suffice against defendants Johnson and D'Amico in their roles as supervisors of the investigation.  Instead, Defendants argue the allegations against defendants Sergeant Daniele and Lieutenant Slade are not pleaded with sufficient particularity to establish supervisory liability under section 1983.

A plaintiff states a claim for supervisor under section 1983 if he alleges either: (1) the supervisor's personal involvement in the constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  *Starr*, 652 F.3d at 1207.  "The requisite causal connection can be established…by setting in motion a series of acts by others, or by knowingly refus[ing] to terminate a series of acts by others, which [the

---

[5] Trulove's argument and authorities to the effect that officers can be liable for conspiracy if they are aware of the unlawful conduct and fail to intervene does not address the pleading defect here: failure to allege that these defendants facts to support an inference that they were aware of the unlawful conduct.

15

supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207-08 (internal citations and quotations omitted).

Here, Trulove alleges that Slade and Daniele were the responsible supervisors for Ingleside Station on the night of the shooting, when Barcenas is alleged to have witnessed Officer John Doe #1 pressuring Lualemaga to identify Trulove, therefore is likely to have been aware of that conversation and of Lee and Phillips' suggestive questioning of Lualemaga with the photo board. Trulove also alleges that SFPD policy required these officers to monitor, direct, and evaluate officers, in addition to reviewing and signing off on their reports. Trulove contends that this states a plausible claim that Daniele and Slade would have known about improper conduct by John Doe #1, Lee, and Phillips on the night of the shooting, which suffices to state a claim that Daniele and Slade had personal or constructive knowledge of constitutional violations committed by their subordinates.

These allegations, without more, are not sufficient to allege a sufficient causal connection between conduct, or failure to act, by Daniele and Slade and the alleged constitutional violations here. Trulove does not allege facts indicating that Daniele and Slade were aware of potential constitutional violations that night, or that they reasonably should have been aware of such conduct under the circumstances other than the fact of their supervisory status. *See Chavez v. United States*, 683 F.3d 1102, 1110-11 (9th Cir. 2012) (conclusory allegations that supervisor had general responsibilities to review and approve subordinates' conduct did not support a conclusion that he knew or had reason to know about improper border stops). The motion to dismiss as to Daniele and Slade is therefore **GRANTED WITH LEAVE TO AMEND**.

### F. California Bane Act, Civil Code 52.1 Claim (Counts VI and VII)

In Counts VI and VII of the FAC, Trulove alleges a state law claim under California Civil Code section 52.1, commonly referred to as the Bane Act. Trulove alleges that D'Amico, Johnson, Lee and John Doe #1 interfered or attempted to interfere with his constitutional and legal right by use of threats, intimidation, or coercion of Lualemaga, and that the City is vicariously liable for that conduct under California Government Code section 815.2. (FAC ¶¶ 254, 255.) He alleges that as a result of those threats, he was "wrongly prosecuted, detained, and incarcerated" in violation of the Constitution, and that these violations were accompanied by threats, intimidation, or coercion. (FAC

¶ 256.) The claim is against Inspector D'Amico, Inspector Johnson, and Officer Lee, and against the City and County of San Francisco by virtue of *respondeat superior*.[6]

Defendants argue that this claim is barred by the absolute immunity of Government Code section 821.6. Section 821.6 states: "A public employee is not liable for an injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov. Code § 821.6. When a public employee is immune from liability under section 821.6, the public entity employer is also immune. Cal. Gov. Code § 815.2; *Amylou R. v. Cty. of Riverside*, 28 Cal. App. 4th 1205, 1208-1209 (1994).

Defendants contend that immunity under Government Code 821.6 is not limited to claims of malicious prosecution but also extends to other causes of action arising from conduct protected under the statute, citing several California appellate court decisions so holding. *See, e.g. Cty. of Los Angeles v. Superior Court (West)*, 181 Cal. App. 4th 218, 230-231 (2009) (immunity barred Civil Code section 52.1 claim). Trulove counters that the California Supreme Court has taken a "narrow interpretation of [section] 821.6's immunity, confining its reach to malicious prosecution actions." *Sullivan v. County of Los Angeles*, 12 Cal.3d 710, 721 (1974) (holding lower court improperly dismissed false imprisonment claim, which is not shielded by § 821.6 immunity).

"When interpreting state law, a federal court is bound by the decision of the highest state court." *Hewitt v. Joyner*, 940 F.2d 1561, 1565 (9th Cir. 1991); *see also Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001). The court "must determine what meaning the state's highest court would give the statute in question." *Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1026 (9th Cir. 2003). Taking into consideration the statute and its legislative history, the Ninth Circuit recently determined that "the California Supreme Court would adhere to *Sullivan* even though California Courts of Appeal have strayed from it." *Garmon v. Cty. of Los Angeles*, 828 F.3d

---

[6] The FAC is not clear as to whether Count VII's claim for the City's liability under Government Code 815.2 is meant to apply only the Bane Act claim or to all the foregoing claims. The Court construes it as alleged to apply only to the Bane Act. The City cannot be liable for section 1983 claims based solely on a *respondeat superior* theory, and the parties do not argue otherwise. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory") (emphasis in original).

17

837, 847 (9th Cir. July 5, 2016).  In *Garmon*, a witness brought a claim for injury to her privacy rights against a prosecutor for publicizing her private medical information in the course of her son's criminal trial. *Id.* at *1. The Ninth Circuit held that such a claim was not one for malicious prosecution, and therefore not subject to the immunity stated in section 821.6. *Id.* at *7.

Here, Trulove's claim is for a Bane Act violation based upon use of threats and coercion resulting in wrongful prosecution and detention.  While *Sullivan* controls, the claim here is still based upon malicious prosecution conduct, *i.e.*, fabrication and suppression of evidence in the course of an investigation.  Thus, the claim is one for "injury caused by [defendants'] instituting or prosecuting any judicial or administrative proceeding within the scope of [their] employment" as encompassed in section 821.6's grant of immunity.  Defendants' motion to dismiss the Bane Act claim is **GRANTED**.  Because leave to amend appears futile as a matter of law, no leave to amend is granted as to this claim.

### G. Duty to Indemnify Claim Against the City (Count VIII)

Finally, Defendants move to dismiss Count VIII of the FAC, which alleges a claim under California Government Code section 825(a).  Section 825(a) provides, in part:

> (a) Except as otherwise provided in this section, if an employee or former employee of a public entity requests the public entity to defend him or her against any claim or action against him or her for an injury arising out of an act or omission occurring within the scope of his or her employment as an employee of the public entity and the request is made in writing not less than 10 days before the day of trial, and the employee or former employee reasonably cooperates in good faith in the defense of the claim or action, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed.

Cal. Gov't Code § 825(a).

The City does not dispute that section 825 governs its obligations should any judgment or settlement involving the individually named defendants in this action be entered.  However, they argue that this section does not give rise to a separate claim by Trulove.  The Court agrees. "Indemnity does not provide additional rights to plaintiffs." *Williams v. Horvath*, 16 Cal. 3d 834,

845 (1976) (holding that public entities could be required to indemnify employees in section 1983 cases).  Section 825 gives a separate claim for indemnity to the defendant, not the plaintiff.  *Id.*[7]

Defendants' motion to dismiss Claim VIII is, therefore, **GRANTED**.  Because leave to amend appears futile as a matter of law, no leave to amend is granted as to this claim.

IV. **CONCLUSION**

Accordingly, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART** as follows:

(1) **Claim I** – Section 1983 based upon fabrication:

    as to defendants Knoble, Silver, and Phillips the motion is **GRANTED WITH LEAVE TO AMEND**,

    as to defendants Trail, Androvich, McMillan, and Hagen the motion is **DENIED**;

(2) **Claim I** – Section 1983 based upon *Brady* suppression; and **Claim IV** – Section 1983 based *Tatum* suppression:

    as to defendants Hagen, Knoble, Silver, and Phillips the motion is **GRANTED WITH LEAVE TO AMEND**,

    as to defendants Trail, Androvich, and McMillan the motion is **DENIED**;

(3) **Claim II**- Section 1983 malicious prosecution claim

    as to defendants Knoble, Silver, and Phillips the motion is **GRANTED WITH LEAVE TO AMEND**,

    as to defendants Trail, Androvich, McMillan, and Hagen the motion is **DENIED**;

(4) **Claim III** – Section 1983 Conspiracy:

    as to defendants Knoble, Silver, and Phillips the motion is **GRANTED WITH LEAVE TO AMEND**,

    as to defendants Trail, Androvich, McMillan, and Hagen the motion is **DENIED**;

(5) **Claim V** – Section 1983 supervisory liability as against defendants Daniele and Slade, the motion is **GRANTED WITH LEAVE TO AMEND**;

---

[7] Further, permitting a direct claim against the City based upon the conduct of its employees here would, in effect, result in *respondeat superior* liability of the City for a section 1983 claim, which that statute does not allow.  *See Monell*, *supra*.

(6) **Claim VI and VII** – California Bane Act liability: the motion is **GRANTED WITHOUT LEAVE TO AMEND**.

(7) **Claim VIII** – Cal. Government Code section 825 indemnity against the City: the motion is **GRANTED WITHOUT LEAVE TO AMEND**.

Plaintiff shall file an amended complaint within **fourteen** days of this Order. Defendants shall file a response to the operative complaint within **twenty-eight** days of this Order.

A case management conference is scheduled for **Monday, December 5, 2016 at 2:00 p.m.** in the United States Federal Courthouse in Oakland, California.

This terminates Docket No. 50.

**IT IS SO ORDERED**.

Dated: October 12, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**