DENNIS J. HERRERA, City Attorney
CHERYL ADAMS, State Bar #164194
Chief Trial Deputy
MARGARET W. BAUMGARTNER, State Bar #151762
RENÉE L. ROSENBLIT, State Bar #304983
KELLY COLLINS, State Bar #277988
Deputy City Attorneys
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-3859 [Baumgartner]
Telephone:     (415) 554-3853 [Rosenblit]
Telephone:     (415) 554-3914 [Collins]
Facsimile:     (415) 554-3837
E-Mail:     margaret.baumgartner@sfgov.org
E-Mail:     renee.erickson@sfgov.org
E-Mail:     kelly.collins@sfgov.org

Attorneys for Defendants
MAUREEN D'AMICO, JOHN EVANS, MICHAEL JOHNSON, CARLA LEE,
ROBERT MCMILLAN, and RONAN SHOULDICE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMAL RASHID TRULOVE,<br><br>        Plaintiff,<br><br>    vs.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO, ET AL.,<br><br>        Defendants. | Case No. 16-cv-00050-YGR<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY FROM PLAINTIFF'S EXPERT WITNESSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAME**<br><br>Hearing Date:     November 14, 2017<br>Time:          2:00 p.m.<br>Place:          Courtroom 1, 4th Floor<br>               1301 Clay Street<br>               Oakland, CA<br><br>Trial Date:     March 5, 2018 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

NOTICE ............................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 3

INTRODUCTION ................................................................................................................. 3

STATEMENT OF FACTS ................................................................................................... 3

    I.      The Murder and the Two Criminal Trials ............................................. 3

    II.     The Parties Disclosed Experts .............................................................. 5

ARGUMENT ........................................................................................................................ 5

    I.      Plaintiff's Experts Fail to Meet the Standard for Admissible Expert Testimony .... 5

    II.     The Court Should Exclude the Testimony of Kathy Pezdek Because Her Testimony About the Fallibility of Eyewitness Testimony Will Confuse the Jury Regarding the Issues it Must Decide in This Case ................................................. 6

        A.     The Court Should Exclude Pezdek's Testimony Regarding the Ability of the Eyewitness to Observe the Shooter .......................................... 6

        B.     The Court Should Exclude Pezdek's Expert Testimony That the Identification Procedures Introduced Suggestiveness Into the Process ....... 7

        C.     Pezdek Impermissibly Opines on an Ultimate Issue of Law Regarding Manipulation ........................................................................................ 8

        D.     Any Probative Value of Dr. Pezdek's Testimony is Outweighed by Prejudice and Risk of Confusion to the Jury ....................................... 8

    III.    The Court Should Exclude James Norris' Opinions Regarding the Location of the Shooter and the Victim Because it Lacks Necessary Foundations Facts .......... 9

        A.     Norris' Report and Testimony Reflect No Expert Analysis ..................... 9

        B.     The Court Should Exclude the Norris' Testimony Because His Opinions Lack Evidentiary Foundation ................................................................ 10

    IV.    The Court Should Exclude the Opinion Testimony of James Trainum ................ 11

        A.     Trainum is Not Qualified to Opine on California Policing Standards, and His Opinions are Unreliable, Irrelevant and Misleading .......................... 12

        B.     Trainum Is Not Qualified To Give An Opinion on California Policing Standards, and Should Be Barred From Testifying Under Federal Rule of Evidence 702. ................................................................................... 13

        C.     Trainum's Opinion That Defendant Officers Did Not Meet "Minimally Acceptable Police Practices" Is Unreliable and Inadmissible, Because It Is Not Based on Sufficient Facts or Data. .............................................. 14

        D.     Trainum's Testimony That Defendant Officers Did Not Meet "Minimally Acceptable Police Practices" is Irrelevant, and Should Be Excluded under Federal Rules of Evidence 702 and 401. ....................... 15

| | E. | Trainum's Opinion That Defendants Did Not Meet "Minimally Acceptable Police Practices" is Misleading, Confusing, and Unfairly Prejudicial, and His Testimony Should Be Excluded under Federal Rule of Evidence 403. ....................................................................16 |
|---|---|---|
| | F. | The Court Should Preclude Trainum From Giving Opinions on Forensic Evidence or Whether the Eyewitness Testimony is Consistent With the Forensic Evidence Because he is not Qualified ........................................17 |
| | G. | The Court Should Exclude Trainum's Opinion That the Officers Who Barcenas Testified Attempted to Coerce the Eyewitness Must Have Been Johnson and Lee ................................................................18 |
| | H. | Trainum Should Be Limited to the Opinions In His Report ....................19 |
| V. | | The Court Should Exclude Dan Kruger's 3d Modeling Illustrations and Testimony as Improper Rebuttal ....................................................................19 |
| | A. | Standard for Rebuttal Experts ..............................................................19 |
| | B. | Kruger's Illustrations of Melinek's Testimony is Not Rebuttal ...............19 |
| | C. | Plaintiff Could Have and Should Have Provided Illustrations of Melinek's Conclusions as Part of Her Expert Opinion ...........................20 |
| | D. | The Court Should Exclude Kruger's Statement that Fries Failed to Use a Proper Model as Unfounded ................................................................22 |
| | E. | The Court Should Exclude Kruger's Calculation of the Time it Took for the Shooter to Reach the Victim as It Lacks Foundation ..........................22 |
| VI. | | The Court Should Exclude Norris' Rebuttal Report Because It Contains No Basis for His Opinons ................................................................................22 |

CONCLUSION................................................................................................................23

# TABLE OF AUTHORITIES

**Federal Cases**

*Amos v. Makita U.S.A., Inc.*
  2011 WL 43092 (D. Nev. January 6, 2011)...........................................................21

*Berman v. Anchorage Police Dept*
  2006 WL 520016 (D. Alaska May 23, 2006) ......................................................18

*Blankenhorn v. City of Orange*
  485 F.3d 463 (9th Cir. 2007) .............................................................................17

*Brady v. Maryland*
  373 U.S. 83 (1963)..............................................................................................16

*Clear-View Technologies, Inc. v. Rasnick*
  2015 WL 3509384 (N.D. Cal. June 3, 2015) ......................................................21

*County of Sacramento v. Lewis*
  523 U.S. 833 (1998)............................................................................................16

*Dasho v. City of Fed. Way*
  101 F.Supp.3d 1025, 1035 (W.D. Wash. 2015)..................................................15

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
  509 U.S. 579 (1993)............................................................................................15

*Devereaux v. Abbey*
  263 F.3d 1070 (9th Cir. 2001) ...........................................................................16

*Hangarter v. Provident Life & Accident Ins. Co.*
  373 F.3d 998 (9th Cir. 2004) ...............................................................................5

*Highland Capital Mgmt., L.P. v. Schneider*
  379 F. Supp. 2d 461 (S.D.N.Y. 2005) ..................................................................9

*In re Apex Oil Co.*
  958 F.2d 243 (8th Cir. 1992) .............................................................................19

*In re Rezulin Prods. Liab. Litig.*
  309 F. Supp. 2d 531 (S.D.N.Y. 2004) ..................................................................9

*Joya v. City of Hayward*
  2010 WL 1460305 (N.D. Cal. April 7, 2010)......................................................14

*Laflamme v. Safeway, Inc.*
  2010 WL 3522378 (D. Nev. 2014) ................................................................19, 20

*Manson v. Brathwaite*
  432 U.S. 98 (1977)................................................................................................7

*Nationwide Transport Finance v. Cass Information Systems, Inc.*
    523 F.3d 1051 (9th Cir. 2008) ...............................................................5, 8

*Nunez v. Harper*
    2014 WL 979933 (D. Nev. 2014) .................................................................19

*Perry v. New Hampshire*
    565 U.S. 228 (2012).........................................................................................7

*Piper v. Rasheed*
    2011 WL 3495984 (N.D. Cal. Aug. 9, 2011) ...............................................16

*Schudel v. Gen. Elec. Co.*
    120 F.3d 991 (9th Cir. 1997) ........................................................................15

*Seagrave v. Lake County*
    1995 WL 251282 (N.D. Cal. 1995) ...............................................................16

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*
    73 F.3d 546 (5th Cir. 1996) ..........................................................................19

*Smith v. Wal-Mart Stores, Inc.*
    2012 WL 4051925 (D. Nev. 2012) ...........................................................19, 20

*Spencer v. Peters*
    857 F.3d 789 (9th Cir. 2017) ..........................................................................7

*Taylor v. Lemus*
    2015 WL 12698306 (C.D. Cal. June 17, 2015) .............................................14

*Tennison v. City and County of San Francisco*
    570 F.3d 1078 (2009)......................................................................................16

*Theoharis v. Rongen*
    2014 WL 3563386 (W.D. Wash. July 18, 2014) ...........................................19

*United States v. Finley*
    301 F.3d 1000 (9th Cir. 2002) ........................................................................5

*United States v. Hitt*
    981 F.2d 422 (9th Cir. 1992) ..........................................................................6

*United States v. Pacific Gas and Electric Co.*
    2016 WL 1640462 (N.D. Cal. 2016) ...............................................................9

**Rules**

Federal Rule Civil Procedure, Rule 26 ...............................................................11

Federal Rule of Evidence 403................................................................................17

Federal Rule of Evidence, Rule 403 ......................................................................6

Federal Rules of Evidence, Rule 702..............................................................5, 14, 15, 18

# NOTICE

PLEASE TAKE NOTICE that on November 14, 2017 at 2:00 p.m. in Courtroom 1, of the above-entitled Court located at 1301 Clay Street, Oakland, California, Defendants MAUREEN D'AMICO, JOHN EVANS, MICHAEL JOHNSON, CARLA LEE, ROBERT MCMILLAN, and RONAN SHOULDICE will and hereby do move the Court for an order excluding:

1.      The expert testimony of Dr. Pezdek:

      a.      regarding the ability of the primary eyewitness to observe plaintiff sufficiently to identify because her accuracy is not an issue to be decided in this case and such testimony will confuse the jury (¶¶ 12, 15, 18)

      b.      the suggestibility of eyewitness procedures unknown to the officers, as the only purpose for such testimony is to determine whether the officers intentionally fabricated an identification; (¶¶ 12, 15, 16, 18)

      c.      her testimony related to "manipulation" and "forcing" an identification because it is improper expert opinion regarding intent and will confuse and mislead the jury ( ¶ 18); and

      d.      her testimony is more prejudicial than probative.

2.      The expert testimony of James Norris regarding the location of the shooter based on the shell casings on the ground that his opinions lack a critical factual foundation as to the grip and arm position of the shooter (¶¶ 40-59);

3.      The expert testimony of James Trainum because:

      a.      he lacks knowledge of California policing standards and training, and therefore is not qualified to testify regarding the "minimally acceptable police practices" of these defendants (entire report)

      b.      his testimony regarding such practices is not relevant and will confuse the jury because intent, not negligence, is the standard here;

      c.      he lacks foundation for his opinion that the forensic evidence is inconsistent with the primary eyewitness testimony; and (Section I ¶¶119-123)

d.    he lacks an evidentiary foundation for his opinion that it was Michael Johnson and/or Carla Lee who attempted to coerce the eyewitness into identifying plaintiff as the murderer on the night of murder ( ¶¶ 71, 75, 76, 85-87, 93).

4.    The expert testimony of Dan Kruger and other expert testimony based on his work because:

a.    his testimony does not question the assumptions or methods of defendants' expert and therefore is not rebuttal;

b.    plaintiff was fully aware that his testimony and illustrations of Judy Melinek, plaintiff's expert pathologist, was an anticipated subject of plaintiff's case in chief;

c.    his opinion regarding defendants' expert's model of the victim lacks foundation; and

d.    his opinion regarding the running speed of the shooter lacks any foundation, and thus his calculation of the time it would take to travel from one spot to another lacks evidentiary foundation.

This motion is brought pursuant to Federal Rules of Evidence Sections 702 and 403, and is based on the motion, memorandum of points and authorities, and declaration filed herewith, and the files, pleadings and any oral argument.

Dated:  October 10, 2017

DENNIS J. HERRERA
City Attorney
CHERYL ADAMS
Chief Trial Deputy
MARGARET W. BAUMGARTNER
RENÉE L. ROSENBLIT
KELLY COLLINS
Deputy City Attorneys


By:_____*/s/ Margaret W. Baumgartner*____
MARGARET W. BAUMGARTNER

Attorneys for Defendants
MAUREEN D'AMICO, JOHN EVANS,
MICHAEL JOHNSON, CARLA LEE,
ROBERT MCMILLAN, and RONAN SHOULDICE

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Both plaintiff Jamal Trulove and defendants San Francisco police officers disclosed expert witnesses, along with their required reports, on a timely basis.  Three of the four liability experts initially disclosed by plaintiff (forensic pathologist Judy Melinek, criminologist James Norris, and eyewitness memory expert Kathy Pezdek) testified at his criminal trial.  Plaintiff also disclosed a police practices expert, James Trianum.  After defendants disclosed their reconstruction expert to illustrate the positions of the shooter and the victim based on the forensic evidence, plaintiff disclosed as rebuttal Dan Kruger, whose stated task was to "illustrate Dr. Melinek's conclusions."

At both of plaintiff's criminal trials, the jury had to decide whether plaintiff was, or was not, the murderer.  Here, the jury is not deciding that question.  Rather, the jury is deciding whether the defendant officers deliberately falsified evidence, or acted with deliberate indifference in failing to disclose material exculpatory or impeachment evidence.  Plaintiff's experts cannot testify as to the intent of the defendants, or what they should have disclosed to the prosecutor.  Their testimony is largely irrelevant, and will confuse the jury as to the issues to be decided here.

Additionally, some of the expert opinions lack factual foundation, or are not based on expert interpretation such that expert testimony will aid the jury.  Lastly, as to plaintiff's rebuttal expert, defendants move to exclude his illustrations because they are not proper rebuttal.

## STATEMENT OF FACTS

### I.    The Murder and the Two Criminal Trials

On July 23, 2007, Seu Kuka, a resident of the Sunnydale Housing Projects, was shot nine times in front of over 20 witnesses.  After two eyewitnesses identified plaintiff Jamal Trulove as the murderer, the Superior Court issued an arrest warrant.  In October, 2008, police located plaintiff in Seaside, California, and arrested him.  After a preliminary hearing, the court found sufficient evidence to hold him to answer for trial, and the District Attorney prosecuted him for murder.

The Police Department turned over its entire investigative file, and the District Attorney disclosed all of the evidence from that file and all subsequent information the District Attorney obtained to plaintiff's criminal defense team  This evidence included the identification procedures

Defendants' Daubert Motions
Case No. 16-cv-00050-YGR                    3         q:\images\trulove_jamal_160675\pacer\dauber motion 2017-10-
10\daubert motion redacted.docx

used with the two eyewitnesses, all of the evidence collected at the scene, including the location of all of the shell casings and the photos of Kuka's body taken the night of the murder, and the information concerning the witness relocation benefits given to the primary eyewitness. The District Attorney spoke numerous times with the primary eyewitness, Priscilla Lualamaga prior to the trial, and, despite the concerns related to the identification procedures, continued to believe the eyewitness' testimony that plaintiff killed Kuka.

A jury convicted plaintiff of the murder in 2010. After his conviction, but before his sentencing, two additional witnesses, who were previously unknown to the police or the District Attorney, came forward with additional information. One, Oliver Barcenas, who plaintiff had met in jail, came forward with information regarding an interaction in the police station on the night of the murder between the eyewitness and two unidentified officers. He claimed that the officers were trying to coerce the eyewitness into identifying him as the murderer. However, none of the defendants here knew plaintiff's name that evening, and never attempted to coerce the witness. The other witness stated that she had heard that someone else committed the murder, and that plaintiff could not have done so because he was with her. For good reasons, neither the District Attorney nor the Superior Court believed these witnesses, and denied plaintiff's motion for a new trial.

On appeal, the Court of Appeal rejected plaintiff's argument that the two new witnesses required a new trial, and adopted the Superior Court's conclusion that they had too many issues to be credible witnesses. The Court of Appeal, however, determined that plaintiff's criminal defense counsel provided ineffective assistance because he should have objected to a portion of the District Attorney's closing argument about threats to the eyewitness. The Court overturned the verdict, and remanded the case back to the trial court.

Even after the District Attorney obtained the information about the supposed coercion of the eyewitness, the District Attorney retried plaintiff for murder. At that trial, plaintiff did not call either of the two new witnesses in his defense. The jury nevertheless acquitted plaintiff.

After his acquittal, plaintiff sued various police officers who had been involved in the murder investigation or testified at trial. After various motions, the current complaint alleges that defendants each: (1) fabricated evidence that caused plaintiff to be arrested or prosecuted and convicted; (2)

failed to disclose material exculpatory or impeachment evidence to the prosecutor; and (3) caused plaintiff to be prosecuted without probable cause.

**II.      The Parties Disclosed Experts**

The parties disclosed experts in this matter on July 28, 2017.  Plaintiff disclosed five experts.  Three of plaintiff's experts, Judy Melinek, a pathologist, Kathy Pezdek, an eyewitness memory expert, and James Norris, a criminologist, testified at plaintiff's second criminal trial in 2015.  Plaintiff added two new experts, James Trainum, a police practices expert, and Dan Kriegler, a damages expert.  Defendants do not challenge Kriegler.

Defendants also disclosed experts, including a 3D modeling expert who used 3D scanning data and the forensic evidence to reconstruct the scene.  In response, plaintiff disclosed Dan Kruger, a 3D modeling expert, as a supposed rebuttal expert.  Kruger created 3D images of the scene at Melinek's direction in order to illustrate her prior opinions.

Defendants now move to exclude or limit the testimony of these experts.

ARGUMENT

**I.      Plaintiff's Experts Fail to Meet the Standard for Admissible Expert Testimony**

Expert testimony is governed by the Federal Rules of Evidence, Rule 702.  The Court should exclude expert opinion if the opinion is:

(1)      within the common knowledge of the layman;

(2)      not helpful for the trier of fact in understanding the evidence or to determining a fact in issue;

(3)      not based upon sufficient facts or data,

(4)      not based on reliable principles and methods, or

(5)      the witness has not applied principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; *see United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002).  Additionally, "an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law."  *See Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (emphasis in original) (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)).

In addition, under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992).

## II. The Court Should Exclude the Testimony of Kathy Pezdek Because Her Testimony About the Fallibility of Eyewitness Testimony Will Confuse the Jury Regarding the Issues it Must Decide in This Case

### A. The Court Should Exclude Pezdek's Testimony Regarding the Ability of the Eyewitness to Observe the Shooter

Plaintiff identified Kathy Pezdek as an expert he plans to offer in the field of eyewitness identification. Pezdek testified at plaintiff's second criminal trial on the issue of whether the jury should believe the eyewitness identification of plaintiff as the murderer. Defendants concede that Pezdek is an expert in the area of eyewitness memory. In this case, she provided a Rule 26 report signed on July 4, 2017 and defendants deposed her on August 4, 2017.



(Deposition of Dr. Kathy Pezdek [hereinafter "Pezked Depo"] 34:9-12). Defendants move to exclude her testimony on the grounds that her testimony will confuse and mislead the jury and she impermissibly opines on an ultimate issue of law.

But the accuracy of Lualemaga's identification of plaintiff as the murderer is not the question for the jury in this case – the District Attorney fully evaluated the issues related to observations prior to authorizing the arrest warrant and prosecuting plaintiff. It was also an issue for both the criminal juries.

Here, unlike the criminal trial, the jury will not be deciding whether Lualamaga actually saw plaintiff kill Kuka. The question is whether the police deliberately falsified her identification of him as the murderer. Defendants, the District Attorney, and one jury believed Lualamaga's testimony,

even after hearing about the issues with the lighting and timing that Pezdek relies on here. The police officer defendants reasonably believed that Lualamaga had sufficient opportunity to observe plaintiff shoot Kuka such that she could identify him. Plaintiff cannot hold defendants liable for their difference of opinion in that regard. Allowing Pezdek to given her expert opinion, an opinion that differs from the officers, the District Attorney, and one jury, will only confuse the jury by emphasizing an issue that is not before them. The Court should therefore exclude that portion of Pezkek's testimony.

**B.** **The Court Should Exclude Pezdek's Expert Testimony That the Identification Procedures Introduced Suggestiveness Into the Process**

All identification procedures are suggestive. *See Perry v. New Hampshire*, 565 U.S. 228, 244 (2012). The use of an identification procedures that may be suggestive is not a constitutional violations. *Manson v. Brathwaite*, 432 U.S. 98 (1977) (rejecting a per se exclusion of suggestive identification procedures and adopting a totality for the circumstances standard). Rather, it is only deliberate falsification that creates civil liability. *Spencer v. Peters*, 857 F.3d 789 (9th Cir. 2017).

A plaintiff may prove deliberate falsification circumstantially by proving that the defendants used identification procedures that are so "coercive or abusive" that defendants knew or were deliberately indifferent to the possibility that Lualamaga would falsely identify the murderer. *Id.* Thus, the questions at trial will revolve around the reasonableness of defendants' actions at the time of the investigation in light of their role as officers, not looking back a decade through the lens of an eyewitness memory expert. Pezdek's conclusion that the procedures introduced suggestibility could confuse the jury into believing that defendants had the same level of expertise regarding such procedures, which they did not. Whether a particular study regarding eyewitness testimony suggests that a particular procedure *could* result in a false identification does not address the issues the jury must therefore decide.

The Court should therefore preclude any testimony from Pezdek about the science behind suggestibility that was unknown to the officers.

**C.  Pezdek Impermissibly Opines on an Ultimate Issue of Law Regarding Manipulation**

Pezdek's report and testimony uses terms that improperly apply a motive to the defendants, which is the ultimate legal conclusion and impermissible



In this case, the jury will be tasked with making the determination as to whether Inspectors Johnson and D'Amico intended to obtain a false identification of plaintiff. It is likely that a jury would interpret Pezdek's opinion as a conclusion about the motivation or intent behind defendants' action. Pezdek opinion directly to that question is an impermissible opinion as to her legal conclusion or the ultimate issue of law. *See Nationwide Transport Finance*, 523 F.3d 1051, 1058 (9th Cir. 2008). As such, defendants request that the Court exclude her opinions and testimony in this regard.

**D.  Any Probative Value of Dr. Pezdek's Testimony is Outweighed by Prejudice and Risk of Confusion to the Jury**

Pezdek's testimony is more prejudicial than probative. The jury must decide whether Inspectors Johnson and D'Amico intended to obtain an identification of plaintiff. In doing so, the jury will hear about what occurred with regard to the identification procedures through testimony of the officers and civilians involved, and will have before them the San Francisco Police Department's policies and procedures. Pezdek was in no way involved in the homicide investigation that gives rise to plaintiff's claims.

The minimal probative value of Pezdek's testimony with regards to the question of inconsistencies with Department policies and procedures will be presented through the testimony of those involved in the investigation and the policies and procedures themselves. The jury can then decide what weight, if any, to give such evidence in making its ultimate determinations as to whether the defendants intentionally used procedures that were so coercive or abusive as to provide a false identification.

Pezdek's opinion is extremely prejudicial to defendants because it ██████████████████████████████████████████████████████████. This analysis confuses the issues in the case and will very likely confuse the jury. Her opinion makes the ultimate legal conclusion that ████████████████████████████████████████████████████████████████████████████████████ Pezdek's opinion prejudices defendants by opining on an ultimate question of law. Due to the extremely prejudicial, confusing nature of Pezdek's opinions, with minimal probative value, if any, the Court should exclude her opinions and testimony.

**III.    The Court Should Exclude James Norris' Opinions Regarding the Location of the Shooter and the Victim Because it Lacks Necessary Foundations Facts**

**A.    Norris' Report and Testimony Reflect No Expert Analysis**

"It is certainly true that expert testimony that 'simply rehash[es] otherwise admissible evidence about which [the expert] has no personal knowledge…is inadmissible." *United States v. Pacific Gas and Electric Co.,* 2016 WL 1640462 *2 (N.D. Cal. 2016) (*citing Highland Capital Mgmt., L.P. v. Schneider,* 379 F. Supp. 2d 461, 468-469 (S.D.N.Y. 2005)). "Such evidence is more 'properly presented through percipient witnesses and documentary evidence.'" *Id.* (citing *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004)). "'[E]xperts should not be permitted to supplant the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence.'" *Id.* (quoting *In re Rezulin Prods.*, 309 F. Supp. 2d at 541).

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Norris does not have original opinions or thoughts expressed in his report or testimony. Everything he opines about is stated through other witnesses in this case. Therefore, the most appropriate manner of presenting such evidence it through those witnesses and documents, not through Norris. The Court should therefore excluded this cumulative testimony and his entire report.

**B.** **The Court Should Exclude the Norris' Testimony Because His Opinions Lack Evidentiary Foundation**

The question of where the shooter stood is not the ultimate question here – the question is whether the homicide inspectors deliberately falsified the eyewitness's identification of plaintiff as the murderer. Additionally, plaintiff asserts that the crime scene investigators' failure to disclose a 2001 memo of an informal study regarding the resting place of shell casing from a 9mm shot while holding it in a normal police stance was a "deliberate indifference" violation of *Brady*. It appears that plaintiff is arguing that the inspectors could not have reasonably believed the eyewitness testimony because the shell casings told a definitive story contrary to her testimony, so as to support his argument regarding their bad intent.

Defendants do not disagree with primary factual basis of Norris' opinion Even defendants' reconstruction expert generally agrees with that statement. But that fact says nothing about the location of the shooter if *there is no evidence regarding the arm and grip position of the person shooting the gun* No evidence supports that conclusion. No witness testified about the shooter's grip or arm position. Thus, Norris' has insufficient facts to support his expert testimony Rather, Norris' bases his opinion about the location of the shooter on speculation.

Defendants' expert provided an analysis of the arm position of the shooter based on his analysis of the bullet trajectories and the final resting place of the victim.

[REDACTED]

Thus, Norris cannot now be allowed to provide an opinion about the shell casing evidence in rebuttal to defendants' expert on this issue. Fed. Rule Civ. Proc. 26.

Norris' opinions also lack additional necessary foundation. Because the firearm was never found, he could not do ejection pattern tests, and his opinion is based on his expectations. (Norris Dep. 141:17-142:9). Also, Norris could not provide any writings to substantiate the results of the experiments he testified he personally conducted regarding analysis of shell casings and shell casing distribution. (Norris Depo. 52:17-53:2). [REDACTED]

Moreover, Norris's opinions do not assist the jury in deciding any relevant dispute regarding the evidence here. His expert opinion about one potential conclusion that could be drawn from the location of the shell casings (if he had the additional critical data related to the grip and arm position of the shooter) simply highlights the fact that the defendants in this case could not, without further information, make any conclusions regarding the reliability of the eyewitness testimony. When even experts disagree about the meaning of forensic evidence, as a matter of law a police officer cannot be held liable for believing one possibility over another. Thus unlike in the criminal case where the jury had to decide whether plaintiff killed Kuka, Norris' ultimate opinion has no relevance to the facts or issues the jury must decide. The Court should therefore exclude the entirety of Norris' report.

## IV. The Court Should Exclude the Opinion Testimony of James Trainum

Plaintiff's expert James Trainum, a retired District of Columbia Metropolitan Police Department officer, purports to have expertise in the investigation of homicides, and [REDACTED]



The Court should exclude Trainum's testimony. Trainum is not qualified to opine about California policing standards, and his only opinion ████████████████████████ is irrelevant and misleading. The standard in this Section 1983 case is not whether defendants followed police protocol (or were negligent) in their investigation, but whether defendants intentionally fabricated evidence or were deliberately indifferent with respect to providing the prosecutor with material and exculpatory evidence in violation of the 14th Amendment. Further, Trainum is not qualified to give an opinion on forensic evidence, including whether such evidence is consistent with eye-witness testimony or other evidence. Finally, Trainum has not offered any opinions with respect to Defendants Shouldice, Evans, or Lee, or about whether defendants had sufficient information to reasonably bring the case to the District Attorney's office to make an independent decision regarding probable cause, and thus should be precluded from offering any such opinions at trial.

### A. Trainum is Not Qualified to Opine on California Policing Standards, and His Opinions are Unreliable, Irrelevant and Misleading

Plaintiff asked Trainum

The Court should exclude Trainum's testimony.  First, Trainum is not qualified to opine about whether defendants met, or did not meet, California policing standards.

Trainum's opinions are irrelevant, because they are not based on the relevant policing standards or the controlling constitutional standards.  Fourth, the probative value of his testimony is substantially outweighed by the risk of confusing and misleading the jury.  Introducing "expert" testimony, ███████████████████████████████████████████ will confuse and mislead the jury, and the Court should exclude it.

**B.      Trainum Is Not Qualified To Give An Opinion on California Policing Standards, and Should Be Barred From Testifying Under Federal Rule of Evidence 702.**

Defendants' Daubert Motions
Case No. 16-cv-00050-YGR

q:\images\trulove_jamal_160675\pacer\dauber motion 2017-10-10\daubert motion redacted.docx



In short, Mr. Trainum lacks sufficient expertise in California policing standards, and is not qualified to give opinions about whether investigators met those standards. The Court should exclude his entire report and testimony under Federal Rule of Evidence 702.

###    C.    Trainum's Opinion That Defendant Officers Did Not Meet "Minimally Acceptable Police Practices" Is Unreliable and Inadmissible, Because It Is Not Based on Sufficient Facts or Data.

As explained above, Trainum ████████████████████████████████████████ ████████████████████████████████████████████████████████ Thus, his opinion is not based on sufficient facts or data, and the Court should exclude it as unreliable.

Federal Rule of Evidence 702 requires that an expert's testimony be "based upon sufficient facts or data." Courts have held that, where police practices experts fail to review the relevant police policies, their opinions are not based on sufficient facts or data and are inadmissible under Rule 702. For example, in *Joya v. City of Hayward*, 2010 WL 1460305, at *3 (N.D. Cal. April 7, 2010), the Court held that there was no factual basis for the opinion of plaintiff's police practices expert, and excluded the opinion, because "there is no indication in [plaintiff's expert's] report that he ever reviewed Police Department policies." *See also Taylor v. Lemus*, 2015 WL 12698306, at *7 (C.D. Cal. June 17, 2015) (holding that the expert's opinion was not based on sufficient facts or data, and was therefore inadmissible under Rule 702, where the expert did not review the relevant police department policies). Similarly, here, the Court should exclude Trainum's opinion that the defendants did not meet policing standards because his opinion are not based on a review or understanding of California policing standards.

**D.** **Trainum's Testimony That Defendant Officers Did Not Meet "Minimally Acceptable Police Practices" is Irrelevant, and Should Be Excluded under Federal Rules of Evidence 702 and 401.**

Trainum's testimony is also irrelevant. Expert testimony is only admissible if it is both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589-91 (1993). "Relevancy requires that the testimony logically advance a material aspect of the party's case." *Dasho v. City of Fed. Way*, 101 F.Supp.3d 1025, 1035 (W.D. Wash. 2015). "[T]he court's determination of relevance must consider the applicable substantive standard [of proof]." *Id.* (quoting *Schudel v. Gen. Elec. Co.*, 120 F.3d 991, 996 (9th Cir. 1997) (alteration in original).) Further, Rule 702 requires that the expert's opinion "help the trier of fact to understand the evidence or to determine a fact in issue."

Here, Trainum's opinion is not relevant or helpful. Although courts often permit police practice experts to testify about "industry standards," such testimony still must be relevant. *See id.*; Fed. R. Evid. 702, 401.

Trainum's testimony will not assist the jury in understanding relevant police practices (even as general background), or whether the officers deviated from those practices, because his opinions are not based on any specialized knowledge of California policing standards

Moreover, the issue for the jury is whether, based on a preponderance of the evidence, the defendant police officers *intentionally* fabricated evidence, or took some action that *shocks the conscious* with respect to suppressing evidence, or caused plaintiff to be prosecuted without probable cause. Trainum does not address these constitutional standards at all.

In *Dasho v. City of Federal Way*, 101 F.Supp.3d at 1035, the Court compared the expert's testimony with the substantive standards for proving excessive force, and excluded the police practices expert's opinion as irrelevant and inadmissible because it merely suggested that force

could have been excessive.  Similarly, here, the Court should exclude Trainum's testimony as

irrelevant, because it is not based on the applicable constitutional standards.

E.    **Trainum's Opinion That Defendants Did Not Meet "Minimally Acceptable Police Practices" is Misleading, Confusing, and Unfairly Prejudicial, and His Testimony Should Be Excluded under Federal Rule of Evidence 403.**

Even if Trainum's testimony was relevant, which it is not, the minimal probative value is

substantially outweighed by the risk of confusing and misleading the jury ███████████

█████████████████████████████████████████████████████████████████████████

████████████████████████████████████████         The question is whether the defendants

violated the Constitution.  Presenting the jury with "expert" testimony about a standard lesser than that

required by the Constitution risks seriously confusing and misleading the jury.

Plaintiff brings constitutional claims for fabrication of evidence, suppression of evidence, and

malicious prosecution.  All three claims require plaintiff to prove the requisite state of mind.  For

fabrication of evidence, plaintiff must prove that the defendant deliberately intended to fabricate

evidence, either by proving that the defendant continued his investigation of plaintiff even though he

knew or should have known that the plaintiff was innocent, or that the defendant used "investigative

techniques that were so coercive and abusive that [he] knew or should have known that those

techniques would yield false information."  *Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001);

*Bradford v. Scherschigt*, 803 F.3d 382, 386 (9th Cir. 2015) (two *Devereaux* prongs "are methods of

proving one element – intent – of a claim that the government deliberately fabricated the evidence at

issue").  For his *Brady* claim, plaintiff must prove that the defendant acted with "deliberate

indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence

from prosecutors."  *Tennison v. City and County of San Francisco*, 570 F.3d 1078, 1089 (2009).  This

is akin to the standard imposed on government officials in the substantive due process context –

liability arises if those officials engage in conduct that "shocks the conscience."  *Id.* (quoting *County

of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).  "Neither negligence nor gross negligence will

constitute deliberate indifference."  *Seagrave v. Lake County*, 1995 WL 251282, at *2 (N.D. Cal.

1995).  *Cf. Piper v. Rasheed*, 2011 WL 3495984, at *5 (N.D. Cal. Aug. 9, 2011) ("In order for

deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on

the part of the defendant and resulting harm.").  Finally, for malicious prosecution, plaintiff must prove that the defendant was "integrally involved in providing false statements to the prosecutor and thus in his allegedly malicious prosecution." *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007).

Here, Trainum's opinions are not tethered to these constitutional standards.

 Negligence is not the standard, and introducing expert testimony akin to a negligence analysis will confuse and mislead the jury.  The Court should exclude his opinion.

Because any probative value is substantially outweighed by the risk of confusion to the jury, the Court should exclude his testimony under Federal Rule of Evidence 403.

**F.      The Court Should Preclude Trainum From Giving Opinions on Forensic Evidence or Whether the Eyewitness Testimony is Consistent With the Forensic Evidence Because he is not Qualified**



Trainum lacks knowledge, skill, expertise, and training in forensic evidence, he is not qualified to give an expert opinion on these subjects, and plaintiff's counsel stated that he would not be providing expert testimony regarding shell casings. The Court should exclude Section I of his report and any testimony on forensic evidence, ███████████████████████████, under Federal Rule of Evidence 702.

**G.      The Court Should Exclude Trainum's Opinion That the Officers Who Barcenas Testified Attempted to Coerce the Eyewitness Must Have Been Johnson and Lee**

Plaintiff alleges, based on a statement by Oliver Barcenas, that two unnamed officers walked the eyewitness through the police station on the night of the murder and improperly suggested plaintiff as the shooter. To date, plaintiff has failed to identify the two officers ██████████████

Trainum's testimony is not based on sufficient facts or data, and he does not bring any specialized knowledge about this subject to assist the jury. Further, Trainum should not be permitted to opine on the credibility of witnesses. *See Berman v. Anchorage Police Dept,* 2006 WL 520016, at *4 (D. Alaska May 23, 2006). This is a better task for the jury. *Id.* The Court should exclude the portions of his report listed above and his testimony under Federal Rule of Evidence 702.

**H. Trainium Should Be Limited to the Opinions In His Report**

[redacted]

The Court should preclude him from offering any such opinions at trial.

**V. The Court Should Exclude Dan Kruger's 3d Modeling Illustrations and Testimony as Improper Rebuttal**

**A. Standard for Rebuttal Experts**

For rebuttal expert, that expert's opinion must be limited to the same subject matter as the initial expert, and should be limited to challenging the "assumptions and methods" used by the original expert to arrive at opinions, or to address "new, unforseen facts" brought out by the opposing side's experts. *Laflamme v. Safeway, Inc.*, 2010 WL 3522378 (D. Nev. 2014); *Nunez v. Harper*, 2014 WL 979933 (D. Nev. 2014). If the purpose of expert testimony is "to contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one." *Smith v. Wal-Mart Stores, Inc.*, 2012 WL 4051925 (D. Nev. 2012), citing *In re Apex Oil Co.*, 958 F.2d 243, 245 (8th Cir. 1992). "The date for disclosure of experts is not intended to provide an extension of the deadline by which a party may deliver the lion's share of its expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 571 (5th Cir. 1996). And, "a statement that an expert's opinions have not changed is not rebuttal." *Theoharis v. Rongen*, 2014 WL 3563386 (W.D. Wash. July 18, 2014).

**B. Kruger's Illustrations of Melinek's Testimony is Not Rebuttal**

At the expert disclosure deadline, defendants disclosed as an expert Craig Fries, who used the forensic data to reconstruct the shooting. Plaintiff then disclosed their own 3d modeling expert, Dan Kruger, as a supposed rebuttal expert. Kruger provided no opinion regarding Fries' assumptions or methods, but rather created a 3d model using Fries' scan data, and placed the images of the shooter and victim in locations solely at the direction of plaintiff's other experts, Melinek and Norris.

In her rebuttal report, Melinek made no mention of additional illustrations of her opinions.

[redacted]

[BLACK REDACTED BOX]

Moreover, the Court should exclude Kruger's illustrations of Melinek's testimony because it does not challenge Fries' assumptions or methods. (Kruger Depo. 117:3-18.) See *LaFlamme*, 2010 WL 3522378 at * 3 (allowing testimony from rebuttal expert only because it questioned assumptions and methods used by opposing expert). [BLACK REDACTED] Thus, his testimony is not rebuttal.

## C. Plaintiff Could Have and Should Have Provided Illustrations of Melinek's Conclusions as Part of Her Expert Opinion

Kruger's work relates to an expected and anticipated portion of this case, and plaintiff should not be permitted to add a new basis for the opinions of their pathology expert, Melinek, as supposed rebuttal. *See Smith*, 2012 WL 4051925 at * 2 (excluding doctor disclosed as rebuttal expert). What the casings and the bullet trajectories can show about the location of the shooter and the victim in this case has been an issue since plaintiff's first trial. Before his 2010 murder trial, plaintiff's criminal defense counsel sought and obtained funds to hire an expert to discuss crime scene analysis, including expert testimony concerning the meaning of the location of the shell casings found at the scene. Plaintiff's counsel decided not to call the expert at trial. He also did not cross examine the crime scene investigator, Defendant John Evans, concerning his view of what could be determined by that evidence. Plaintiff's counsel also argued in closing that the location of the shell casings found at the scene showed that the shooter could not have been in the locations identified by the eyewitness. The jury convicted plaintiff of the murder.

At the second trial, plaintiff again had Melinek testify about the bullet trajectories, and her opinions regarding the locations of the shooter and the victim. This time, he called his criminologist, Norris to testify about his opinion about what the shell casing evidence meant about the positions of the victim and the shooter. Together, they opined that the shooter must have been coming from a different direction than testified to by the eyewitness.

In response, the District Attorney's office called Officer Evans and also called defendant San Francisco Police Inspector Ronan Shouldice to testify as to the inconclusive nature of the meaning of the final resting place of the shell casing. (Ronan Shouldice did not even review the materials related to this matter.) The second jury acquitted plaintiff.

Plaintiff has alleged from the beginning of this case that the eyewitness testimony about how the shooting occurred must be inaccurate because the forensic evidence proves that shooter and victim were not in the positions testified to by the eyewitness. Besides the testimony of plaintiff and his two brothers, it is the only evidence that they present that could be exculpatory. Plaintiff presented evidence on these issues during his criminal trial, and identified the same two experts he called to discuss their opinions on the meaning of the forensic evidence in this case. If plaintiff believed that illustrating their opinions through 3d modeling would be a useful tool, he could have, and should have, hired a 3d modeling expert before the disclosure of his experts.[1] He did not. Instead, after defendants disclosed their expert, plaintiff obtained through discovery the laser scan data that he used. Rather than using the data to challenge the assumptions or methods of defendants' expert, plaintiff impermissibly used the scan data paid for by defendants to provide their own illustrations of their previously disclosed experts' opinions.

This is exactly the type of response to expert disclosures courts exclude as beyond proper rebuttal testimony. *See, e.g., Amos v. Makita U.S.A., Inc.*, 2011 WL 43092 (D. Nev. January 6, 2011) (the court excluded the opinion of a supposed rebuttal expert regarding the cause of a fire because such causation was an expected and anticipated part of the plaintiff's case in chief*); see also Clear-View Technologies, Inc. v. Rasnick*, 2015 WL 3509384 (N.D. Cal. June 3, 2015) (excluding rebuttal expert on whether product worked as claimed because issue was an anticipated part of plaintiff's claim). This Court should exclude all of Kruger's report, and particularly Kruger's illustrations, as well as Melinek's rebuttal based on that report.

---

[1] In fact, plaintiff's police practices expert testified that his opinion would change if the forensic data could support the position of the shooter and the victim as testified to by the eyewitness, further highlighting the critical nature of this testimony to plaintiff's case. (Trainum Depo. 181:12-182:10)

**D.** **The Court Should Exclude Kruger's Statement that Fries Failed to Use a Proper Model as Unfounded**

Kruger has no basis for this statement –

The Court should therefore strike paragraph seven of Kruger's report, and exlude any related testimony.

**E.** **The Court Should Exclude Kruger's Calculation of the Time it Took for the Shooter to Reach the Victim as It Lacks Foundation**

The Court should therefore exclude paragraph 7 in Kruger's report and any related testimony.

**VI.** **The Court Should Exclude Norris' Rebuttal Report Because It Contains No Basis for His Opinons**

Plaintiff's expert criminologist, James Norris, also provided a rebuttal report, in which he stated only He provided no basis for that disagreement, nor did he provide any additional opinions. The Court should therefore strike his report in its entirety.

## CONCLUSION

For the foregoing reasons, defendants request the Court exclude the testimony and opinions of plaintiff's experts.


Dated:  October 10, 2017

                              DENNIS J. HERRERA
                              City Attorney
                              CHERYL ADAMS
                              Chief Trial Deputy
                              MARGARET W. BAUMGARTNER
                              RENÉE L. ROSENBLIT
                              KELLY COLLINS
                              Deputy City Attorneys


                    By:   */s/ Margaret W. Baumgartner*
                              MARGARET W. BAUMGARTNER

                              Attorneys for Defendants
                              MAUREEN D'AMICO, JOHN EVANS,
                              MICHAEL JOHNSON, CARLA LEE,
                              ROBERT MCMILLAN, and RONAN SHOULDICE