1   Nick J. Brustin, NY Bar No. 2844405
      Email:  nick@nsbcivilrights.com
2   Anna Benvenutti Hoffmann, NY Bar No. 4412011
      Email:  anna@nsbcivilrights.com
3   Meghna Philip, NY Bar No. 5527148
      Email: meghna@nsbcivilrights.com
4   NEUFELD, SCHECK AND BRUSTIN, LLP
    99 Hudson Street, 8th Floor
5   New York, NY 10013
    Telephone: (212) 965-9081
6   Facsimile: (212) 965-9084

7   Kate Chatfield, State Bar No. 245403
      Email:  klchatfield@usfca.edu
      Telephone: 415-422-4385
8   Alex Reisman, State Bar No. 45813
      Email: areisman@msn.com
9     Telephone: 415-608-0240
10  P.O. Box 10
    Brisbane, CA 94005
11
    Attorneys for Plaintiff
12  JAMAL RASHID TRULOVE

13  DENNIS J. HERRERA, City Attorney
    CHERYL ADAMS, State Bar #164194
14  Chief Trial Deputy
    MARGARET W. BAUMGARTNER, State Bar #151762
15  RENÉE L. ROSENBLIT, State Bar #304983
    KELLY COLLINS, State Bar #277988
16  Deputy City Attorneys
    1390 Market Street, 6th Floor
17  San Francisco, California 94102-5408
    Telephone: (415) 554-3859 [Baumgartner]
18  Telephone: (415) 554-3853 [Rosenblit]
    Telephone: (415) 554-3914 [Collins]
19  Facsimile: (415) 554-3837
    E-Mail: margaret.baumgartner@sfgov.org
20  E-Mail: renee.rosenblit@sfgov.org
    E-Mail: kelly.collins@sfgov.org
21
    Attorneys for Defendants
22  MAUREEN D'AMICO, JOHN EVANS,
    MICHAEL JOHNSON, CARLA LEE,
23  ROBERT MCMILLAN and RONAN SHOULDICE

24  JOINT PROPOSED JURY INSTRUCTIONS
    Case No. 16-cv-00050-YGR                                    Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

JAMAL RASHID TRULOVE,
        Plaintiff,
                vs.
THE CITY AND COUNTY OF SAN
FRANCISCO, ET AL,
        Defendants.

Case No.  16-cv-00050-YGR (SK)

**JOINT PROPOSED JURY
INSTRUCTIONS WITH ARGUMENT**

**Plaintiff's Instruction No. 1 (Overview and Section 1983 Claim Introductory Instruction)**

The claims in this case arise out of the prosecution and conviction of Plaintiff Jamal Trulove for the 2007 murder of Seu Kuka.

Mr. Trulove was charged with the Kuka murder on October 29, 2008. He was convicted on February 9, 2010. On October 15, 2010, he was sentenced to 50 years-to-life in prison. He spent over six years imprisoned.

The California Court of Appeal ultimately reversed Mr. Trulove's conviction. At his retrial in March 2015, the jury acquitted Mr. Trulove of all charges against him.

Mr. Trulove now brings this suit alleging that Defendants Inspectors Maureen D'Amico, Michael Johnson, Robert McMillian, and Ronan Shouldice, and Sgt. Carla Hurley and Officer John Evans have violated his constitutional rights, causing his wrongful imprisonment.

Mr. Trulove's brings his claims under a federal statute, 42 U.S.C. § 1983, which protects the civil rights of all people within the United States. Specifically, § 1983 permits an individual to sue a government official who violates his or her constitutional rights. Mr. Trulove claims that while Defendants were acting as San Francisco Police Department officers, they deprived him of

1  his rights to due process, to a fair trial, and to not be wrongly prosecuted. Defendants deny these

2  claims.

3     **Sources:** *See* Ninth Circuit Model Civil Jury Instructions, Sections 9.1-9.2, *available at*

4     http://www3.ce9.uscourts.gov/jury-

5     instructions/sites/default/files/WPD/Civil_Instructions_2017_7.pdf ; Long v. Cnty. of

6     L.A., 442 F.3d 1178, 1185 (9th Cir. 2006) ("To state a claim under § 1983, a plaintiff

7     must allege two essential elements: (1) that a right secured by the Constitution or laws of

8     the United States was violated, and (2) that the alleged violation was committed by a

9     person acting under the color of State law.") (citing West v. Atkins, 487, U.S. 42, 48

10     (1988)). In order to be individually liable under § 1983, an individual must personally

11     participate in an alleged rights deprivation. Avalos v. Baca, 596 F.3d 583, 587 (9th Cir.

12     2010).

13     **Defendants' Objection:** An overview of claims should be a neutral, non-argumentative

14  statement regarding the legal positions of the parties.  Defendants' statement also uses the active,

15  rather than the passive, voice, which more accurately describes the source of liability as to these

16  defendants.  The statement provided by defendants states simply what plaintiff claims, and the

17  names of the parties.  Plaintiff's statement, on the other hand, includes facts designed to sway the

18  jury, such as the length of his sentence and time of imprisonment, which arguments relate to

19  damages.  The fact of his conviction already is included in the overview.

20     Moreover, if the court includes additional facts other than the conviction, reversal and

21  new trial, the court should include the basis that the Court of Appeal overturned the verdict:

22  ineffective assistance of counsel.  Otherwise, the fact of the reversal implies that the Appellate

23  Court based its decision on the same claims as plaintiff brings here, which is not correct.

24

JOINT PROPOSED JURY INSTRUCTIONS

1    Additionally, plaintiff's overview uses the phrase "due process" and "fair trial"

2    separately, yet excludes the actual constitutional provisions at issue in this case:  The 14th

3    Amendment's right to substantive due process, the right to procedural due process, and the 4th

4    Amendment right against unreasonable searches and seizures.  Whether or not the trial was "fair"

5    is a Fifth Amendment right, and plaintiff do not bring a fair trial claim here.

6    To the extent that the court is inclined to set forth plaintiff claims in more detail, the court

7    should instruct the jury that the claims are:  a 14th Amendment substantive due process claim, a

8    14th Amendment procedural due process claim, and a 4th Amendment malicious prosecution

9    claim.

10   Lastly, the instructions should be consistent with regard to reference to the parties.  Either

11   they should consistently reference "plaintiff" and "defendants" or they should reference the

12   parties by name.

13

14

15

16

17

18

19

20

21

22

23

24

JOINT PROPOSED JURY INSTRUCTIONS

**Defendants' Instruction No. 2 (Overview and Section 1983 Claim Introductory Instruction)**

Plaintiff Jamal Trulove's claims arise out of his prosecution and conviction for the 2007 murder of Seu Kuka.  In October 2010, a jury convicted him of the murder.  In 2013, the Court of Appeal granted him a new trial.  At his retrial in March 2015, a jury acquitted him of all charges against him.

Plaintiff claims that defendants Inspectors Maureen D'Amico, Michael Johnson, Robert McMillian, and Ronan Shouldice, and Sgt. Carla Hurley and Officer John Evans all violated his constitutional rights causing him to be wrongfully imprisoned.  Defendants deny these claims.

The plaintiff brings his claims under the federal statute, 42 U.S.C. § 1983, which provides that any person or persons who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

Plaintiff makes three separate constitutional claims, two under the 14th Amendment and one under the 4th Amendment, as explained in later instructions.

**Source:** Ninth Circuit Model Jury Instruction

**Plaintiff's Objection**: In general, Plaintiff's following proposed instructions attempt to communicate to the jury, in the clearest and plainest terms possible, the findings it must make as based on the governing law. Plaintiff seeks to eliminate concepts and terminology that are immaterial to the issues before the jury, and would be extraneous or confusing to laypeople. Defendants' proposed instructions are littered with such language. Defendants have also used their jury instruction objections as a preview of their summary judgment arguments. Plaintiff understood the Court's order requesting joint submissions of jury instructions to pertain to the elements of each of the jury charges in this case. Plaintiff does not understand this filing to be the

proper forum to litigate arguments going to the merits of his claim, or whether the facts alleged in this case meet the threshold for these claims. Plaintiff therefore does not respond to Defendants' substantive arguments regarding, for example, absolute immunity, statutes of limitation, and whether Plaintiff has sufficiently made out particular claims. However, Plaintiff in no way concedes any of these points. If we misunderstood the Court's request, we would be happy to provide additional briefing on these issues.

Plaintiff objects to Defendants' overview instruction on the basis that its description of Section 1983 claims uses unnecessarily legalistic language, which will confuse the jury. Plaintiff wishes to refer to Defendants' actions as violative of his constitutional rights, which is simpler and easier to understand than a "depriv[ation]…of any rights, privileges, or immunities secured by the Constitution or laws of the United States."

Furthermore, Plaintiff wishes to remove unnecessary references to elements which are not in dispute. It is not in dispute that Defendants in this case were acting under color of state law. The term "under color of state law" may also misleadingly imply, to a layperson, that the defendant had to have been acting lawfully. Therefore, Plaintiff has not included this element in his proposed instruction.

Finally, identifying the constitutional amendments to which Plaintiff's claims pertain is not necessary for the jury to decide the elements of a Section 1983 claim, and will be confusing to the jury. Plaintiff has explained his alleged constitutional violations in terms of their impact on his due process rights and his ability to obtain a fair trial, because this language is more accessible and meaningful to the jury than references to constitutional amendments. This is both reasonable and a correct statement of the law. Violating an individual's due process rights through a Brady violation or a fabrication of evidence can cause them to be deprived of a fair

JOINT PROPOSED JURY INSTRUCTIONS

1  trial, and the Ninth Circuit has used the language of a "fair trial" in describing <u>Brady</u> and

2  fabrication claims. <u>See, e.g.</u> <u>Atkins v. County of Riverside</u>, 151 Fed. Appx. 501, 503-04 ("The

3  prosecution's failure to disclose material evidence favorable to the accused can violate the

4  accused's due process right to a fair trial.").

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  JOINT PROPOSED JURY INSTRUCTIONS

**Plaintiff's Instruction No. 3 (Overview of Specific Claims and Intent Standard)**

In this case, Mr. Trulove alleges that Defendants violated his constitutional rights in several ways. First, Mr. Trulove claims that Defendants Johnson, D'Amico, Evans, Shouldice, and McMillan, violated his right to due process and a fair trial by fabricating evidence against him.

Second, Mr. Trulove claims that Defendants Johnson, D'Amico, McMillan, and Lee violated his rights to due process and a fair trial by intentionally conducting unduly suggestive identification procedures that resulted in a false identification of Mr. Trulove.

Third, Mr. Trulove claims that Defendants Johnson, D'Amico, Evans, Shouldice, McMillan, and Lee suppressed exculpatory, or favorable, evidence, thereby depriving him of a fair trial.

Fourth, Mr. Trulove also brings a separate claim that Defendants Johnson, D'Amico, Evans, Shouldice, McMillan, and Lee, failed to disclose certain highly significant exculpatory evidence which led to Mr. Trulove's prolonged pretrial detention.

Fifth, Mr. Trulove claims that Defendants Johnson, D'Amico, Evans, Shouldice, McMillan, and Lee maliciously caused claims to be prosecuted against him.

Sixth, Mr. Trulove claims that Defendants Johnson, D'Amico, Evans, Shouldice, McMillan, and Lee, conspired together to violate Mr. Trulove's constitutional rights to due process and a fair trial.

Seventh, Mr. Trulove claims that Defendants Johnson and D'Amico, as supervisors, are responsible for misconduct by SFPD Defendant Officers that they either directed or knew about and failed to correct.

For each of Mr. Trulove's claims, he must show that the Defendants acted with at least deliberate indifference or reckless disregard for Mr. Trulove's rights. Deliberate indifference is a conscious choice to disregard the consequences of one's acts or omissions. Reckless disregard is a complete indifference to the plaintiff's rights, or action in the face of a perceived risk that the plaintiff's rights will be violated. Mr. Trulove does not need to show that Defendants intended to cause him harm or even that they knew harm would result.

**Sources:** <u>Rosales-Martinez v. Palmer</u>, 753 F.3d 890, 897 (9th Cir. 2014) ("A § 1983 plaintiff must show that police officers acted with deliberate indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence from prosecutors." (citing <u>Tennison v. City and County of San Francisco</u>, 570 F.3d 1078, 1089 (9th Cir. 2009)); <u>Gantt v. City of Los Angeles</u>, 717 F.3d 702, 707-09 (9th Cir. 2013) (approving jury instruction: "Deliberate indifference is the conscious or reckless disregard of the consequences of one's acts or omissions. It entails something more than negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." (internal citations omitted)); <u>Tatum v. Moody</u>, 768 F.3d 806, 821 (9th Cir. 2014) ("The jury here received an instruction fully consistent with the holding in <u>Gantt</u>… The instructions…[defined] 'deliberate indifference' as 'a conscious choice to disregard the consequences of one's acts or omissions,' and 'reckless disregard' as 'complete indifference to the plaintiff's rights' or action 'in the face of a perceived risk' that the plaintiff's rights will be violated.")

**Defendants' Objection:** Plaintiff's instruction setting forth his specific claims fails entirely to state the constitutional provisions that apply.  Plaintiff's summary fails to include all

1   of the elements of his claims, and this incomplete summary of the claim could confuse the jury.

2   For example, plaintiff states that he claims that he sues certain defendants for "intentionally

3   conducting unduly suggestive identification procedures" while the standard is actually that of a

4   14th Amendment substantive due process claim (egregious conduct that shocks the conscience),

5   which could include utilizing identification procedures that are so abusive or coercive that the

6   defendants intentionally or in reckless disregard of the possibility of a false identification.

7   *Spencer v. Peters*, 857 F.3d 789, 801 (9th Cir. 2017) (discussing requirement of "shocks the

8   conscience" standard for fabrication of evidence claim), citing *Crowe v. County of San Diego*,

9   608 F.3d 406, 432–37 (9th Cir. 2010) (differentiating 4th Amendment and 14th Amendment

10  claims); *Gantt v. City of L.A.*, 717 F.3d 702, 707 (9th Cir. 2013).

11       Plaintiff also misstates the standard for supervisory liability.  It is not sufficient to find

12  defendants liable just because they knew about and failed to correct the behavior of other

13  officers.  They must also prove that defendants actually supervised those other officers, had the

14  opportunity to correct the behavior, and that such failure to correct caused the constitutional

15  harm.  *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)

16       Plaintiff also states that he brings a "separate" claim under *Tatum v. Moody,* 768 F.3d 806

17  (9th Cir. 2014).  Again, this is not a "separate" constitutional claim, but rather a means of

18  proving a substantive due process claim under the 14th Amendment.  *See Tatum*, 768 F.3d at 820

19  (setting forth "shocks the conscience" standard).

20       Also, by using the phrase "due process and a fair trial" plaintiff implies that these are

21  separate claims and would include a Fifth Amendment claim.  The instruction should accurately

22  convey to the jury the constitutional claims at issue: A 14th Amendment substantive due process

23

24  JOINT PROPOSED JURY INSTRUCTIONS

claim, a 14th Amendment procedural due process claim, and a 4th Amendment malicious prosecution claim.

This statement also fails to include the requirement that plaintiff prove causation as to each defendant.  For example, Ronan Shouldice had no involvement in this matter until the day before, or a few days before, the second trial.  To the extent that the jury finds that Ronan Shouldice should have turned over his 2001 memo regarding his informal shell casing study, his obligation would not arise until then.

Defendants include a separate instruction defining deliberate indifference, defining it as "the conscious or reckless disregard of the consequences of one's acts or omissions."  This is the definition used by the Ninth Circuit Model Jury Instruction for fabrication of evidence.  It is the first sentence in the instruction explicitly approved by the Ninth Circuit for a fabrication of evidence claim.  The instruction approved by the Ninth Circuit read in its totality:  "Deliberate indifference is the conscious or reckless disregard of the consequences of one's acts or omissions. It entails something more than negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Gantt v. County of Los Angeles,* 717 F.3d 702, 707 (9th Cir. 2013).

Plaintiff's definition, which he includes in this introductory instruction, implies that there are two different standards, one for deliberate indifference and one for reckless disregard.  But there is only one standard:  that of deliberate indifference, which courts state includes the idea of "reckless disregard."  See *Gantt,* 717 F.3d at 707 (there is only one standard for a 14th Amendment claim, which is conduct that shocks the conscience, which can be satisfied with conduct that is deliberately indifferent to constitutional rights); *Tennison v. City and County of*

*San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009) (interchanging "reckless indifference" with "reckless disregard.")

Plaintiff cites to *Tatum v. Moody*, 768 F.3d 806, 821 (9th Cir. 2014) as a basis for their proposed instruction.  But *Tatum* was not a jury instruction case, unlike *Gantt*, and does not specifically analyze the language regarding deliberate indifference.

Lastly, plaintiff includes in their instruction the argument that "Mr. Trulove does not need to show that Defendants intended to cause him harm, or even that they knew harm would result."  This sentence does not define deliberate indifference, and is merely argument not a necessary description of the standard.  If the Court is inclined to include what is not deliberate indifference, the Court should also then include the second sentence of the instruction approved in *Gantt*, that "It entails something more than negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."

**Agreed[1] Instruction No. 4 (Causation)**

> To find any defendant liable, plaintiff must prove by a preponderance of the evidence that that particular defendants' acts or failure to act was a substantial factor in depriving plaintiff of his particular rights under the United States Constitution, as explained in later instructions.[2]  A substantial factor is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor.  It does not have to be the only cause of the harm.

> Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

> **Sources:** CACI 430, *Drumgold v. Callahan*, 707 F.3d 28, 49-51 (1st Cir. 2013), Ninth Circuit Model Jury Instruction 9.3, Section 1983 Claim Against Defendant in Individual Capacity

---

[1] Plaintiff agrees with Defendants on this instruction, but proposes referring to Mr. Trulove by name, rather than as "plaintiff".

**Plaintiff's Instruction No. 5 (General Introduction to Constitutional Claims)**

I will now instruct you on the law for Mr. Trulove's claims that Defendants violated his rights to due process and a fair trial. Mr. Trulove has asserted a number of theories of how Defendants violated these rights. He need not prove all of these theories. If you find that Mr. Trulove has proven any one of these theories, then he has established that his rights were violated, and you must determine the amount of damages he receives, as I will describe to you in the instruction on damages.

**Defendant's Objection:** This instruction is duplicative of the introductory overview of claims instruction, and deletes the language the Ninth Circuit Model Instructions include that plaintiff must prove each element.  Also, it implies to the jury that the damages under any of plaintiff's theories of liability are the same, but those damages depend on the particular harm.

To the extent that the court is inclined to give an introductory instruction, it should be included in the overview instruction, not as a separate instruction.

Also, as argued earlier, plaintiff misstates the actual claim and the source of his rights. He sues for violations of the 14th and 4th Amendment, not for "due process and a fair trial."

**Plaintiff's Instruction No. 6 (Fabrication of Evidence Claim)**

First, I will address Mr. Trulove's claim that he was denied a fair trial because Defendants deliberately fabricated evidence.

Specifically, he alleges that Defendants Johnson, D'Amico and McMillan falsely reported that Priscilla Lualemaga and Latisha Meadows-Dickerson positively identified Mr. Trulove as the shooter prior to his arrest. Mr. Trulove also alleges that Defendants Johnson, D'Amico and McMillan falsely reported that Ms. Meadows-Dickerson had provided certain non-public details about the shooting that corroborated her account, when in fact Defendants gave that information to her. Finally, Mr. Trulove alleges that Defendants Johnson, D'Amico, Evans and Shouldice falsely reported that the location of the shell casings found at the scene of the shooting was consistent with the description of the shooting given by Ms. Lualemaga and Ms. Meadows-Dickerson.[3]

To prove his fabrication of evidence claim, Mr. Trulove must prove: (1) that the defendant deliberately fabricated evidence, and (2) the deliberate fabrication caused his imprisonment.

There are three separate ways to prove that any one of the Defendants knowingly created or obtained false evidence, and Mr. Trulove only needs to prove one: (A) That Defendant deliberately reported something he or she knew not to be true, such as deliberately mischaracterizing a witness statement in an investigative report; (B) That Defendant continued his or her investigation even though he or she should have known that Mr. Trulove was innocent;

---

[3] Plaintiff has, throughout these proposed instructions, attempted to insert factual bases for the various claims, but recognizes that these will change based on the Court's rulings leading up to trial.

OR (C) That Defendant used investigative techniques that were so coercive and/or abusive that he or she should have known that those techniques would yield false information.

Although Mr. Trulove alleges multiple instances of fabrication, to find in his favor you must only find that some evidence was deliberately fabricated and that that fabrication caused his imprisonment. To determine whether fabricated evidence caused Mr. Trulove to be imprisoned, you must consider all of the evidence that you find to be fabricated together, as a group, rather than piece by piece.

Finally, an officer's subjective, or personal, belief in an individual's guilt is not a defense to fabrication. It is equally unlawful for a law enforcement officer to fabricate evidence against a suspect he believes to be guilty of a crime as it is for him to fabricate evidence against a suspect he believes to be innocent. Each person who has been accused of a crime has the right to have his innocence or guilt determined in court on the basis of true evidence, not evidence that has been made up by the officers in charge of the investigation.

**Sources:** Spencer v. Peters, 857 F.3d 789, 798 (9th Cir. 2017) ("To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty."); (Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (recognizing the "clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government" and that a plaintiff "must, at a minimum, point to evidence that supports at least one of the following two propositions: (1) Defendants continued their investigation of [the plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and

abusive that they knew or should have known that those techniques would yield false information."); Costanich v. Dep't of Soc. & Health Servs., 627 F.3d 1101, 1111-12 (9th Cir. 2010) (holding that reporting information known to be false is deliberate fabrication and "an interviewer who deliberately mischaracterizes witness statements in her investigative report…commits a constitutional violation"); Gantt v. City of Los Angeles, 717 F.3d 702, 707-09 (9th Cir. 2013) (holding that either intent-to-injure or deliberate-indifference standards of liability would satisfy the "shocks the conscience" standard for fabrication of evidence violative of due process); Spencer v. Peters, 857 F.3d 789, 793 (9th Cir. 2017) ("Deliberate fabrication can be established by circumstantial evidence.") Plaintiff can allege facts showing the relevant defendants continued their investigation of him "even though [they] knew or should have known that [he] was innocent", or showing that the relevant defendants "used investigative techniques that were so coercive and abusive that [they] knew or should have known that those techniques would yield false information." Bradford v. Scherschligt, 803 F.3d 382, 386 (9th Cir. 2015). In cases involving direct evidence of deliberate fabrication, the investigator's knowledge or reason to know of the plaintiff's innocence need not be proved. Spencer, 857 F.3d at 793. "[L]ack of probable cause to prosecute a defendant is not an element of a deliberate-fabrication claim." Id. at 801; Dang v. Cross, 422 F.3d 800, 804–05 (9th Cir. 2005) ("[A] party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence.")

**Defendants' Objection:** Plaintiff brings his fabrication of evidence claim under the 14th Amendment, which requires that plaintiff prove that each defendant engaged in egregious conduct that shocks the conscience.  Plaintiff claims that defendants fabricated evidence.

1   Deliberately fabricating evidence would shock the conscience.  Plaintiff's instruction however

2   does not mention this standard, and sets forth the standard differently in different ways.

3          Here, during the meet and confer regarding jury instructions, plaintiff identified three

4   statements that plaintiff asserts meet the necessary criteria:  A statement or statements by

5   Johnson, D'Amico and McMillan that the eye witness identification of plaintiff by both eye

6   witnesses were "positive" identifications, that Johnson, D'Amico and McMillan provided the

7   second eye witness (Meadows-Dickerson) with "certain non-public details about the shooting"

8   and therefore falsified their statements that she provided non-public details; and that D'Amico,

9   Johnson, Evans and Shouldice made a statement that the location of the shell casings found at the

10  scene were "consistent" with the eye witness testimony.

11         None of these alleged "statements" constitute a fabrication of evidence.  They are

12  opinions about what the evidence shows.  Plaintiff does not allege that, for example, the

13  Inspectors stated that they interviewed a witness that they did not interview, or manipulated the

14  crime scene evidence to show shell casings in locations different from where they were found.

15  Rather, these are opinions summarizing and analyzing the actual evidence of the taped interviews

16  of the eyewitnesses, or the meaning of truthfully reported evidence.  Because plaintiff (and the

17  prosecutor) had available to him the accurate underlying evidence, the officers' personal

18  opinions about the evidence cannot constitute "fabrication."  *See e.g., Gausvik v. Perez*, 345 F.3d

19  813, 817 (9th Cir.2003); *United States v. Aleman*, 832 F.2d 142 (11th Cir. 1987) (under Federal

20  Rule that allows challenge to "factual propositions" in pre-sentence report does not allow

21  challenge "merely to tone, form, or style of the report or that protest obvious recommendations,

22  opinions, or conclusions".)

23

24  JOINT PROPOSED JURY INSTRUCTIONS

1    Plaintiff's claim is more accurately one of that defendants did not properly disclose the

2    circumstances of the identification, which is a procedural due process claim under *Brady*.  See

3    *Wrice v. Burge*, 2015 WL 128176651 (Sept. 25, 2015) (noting differentiation between "genuine

4    fabrication of evidence" from "merely a complaint about coercive interrogation techniques");

5    *Patrick v. City of Chicago*, 213 F.Supp.3d 1033 (N.D. Ill. 2016) ("'coercively interrogating

6    witnesses, paying witnesses for testimony, and witness-shopping may be deplorable, and these

7    tactics may contribute to wrongful convictions, but they do not necessarily add up to a

8    constitutional violation even when their fruits are introduced at trial,' because 'evidence

9    collected with these kinds of suspect technique, unlike falsified evidence and perjured testimony,

10   may turn out to be true'"), *quoting Whitlock v. Brueggemann*, 682 F.3d 567, 584 (7th Cir. 2012);

11   *Spencer v. Peters*, 857 F.3d 789 (9th Cir. 2017) (citing *Whitlock*); *cf. Costanich v. Department of*

12   *Social and Health Services*, 627 F.3d 1101 (9th Cir. 2010) (differentiating deliberately stating a

13   witness said something the witness did not say from evidentiary issues concerning how witnesses

14   were interviewed); *see also Gantt v. City of Los Angeles*, 717 F.3d 702 (9th Cir. 2013) (dissent,

15   distinguishing between coerced testimony from witnesses and falsification of evidence).

16   The claims against Evans and Shouldice in particular raise an issue of whether absolute

17   immunity attaches to them, as the "falsification" occurred only during the preparation for their

18   testimony.  *See Lisker v. City of Los Angeles*, 780 F.3d 123 (2015) (absolute witness immunity

19   also extends to preparatory activities "inextricably tied" to testimony).  Shouldice did not even

20   speak to the prosecutor until the prosecutor sought him out a day or two before the second trial,

21   where the jury acquitted plaintiff.  It is difficult to determine how plaintiff can state a claim

22   against him that is not "inextricably tied" to his testimony, even if the court determines it could

23   fall within the definition of "false."

24

1    The instruction is otherwise improper in more specific ways.  Defendants will address the

2 issues paragraph by paragraph.

3    In plaintiff's first paragraph in this instruction, plaintiff states his claim as one for denial

4 of a fair trial.  That is not the claim here.  The accurate statement is this is a claim for violation of

5 the 14th Amendment right to substantive due process, by deliberate falsification of evidence.

6 The instruction should also have the basic standard of "shocks the conscience" which plaintiff

7 omits entirely.  The combination of failure to state the basic standard, and plaintiff attempt to

8 state a falsification claim based on opinion statements or testimony, fails to provide the

9 appropriate instruction to the jury about what plaintiff must prove to prevail on this claim.

10    In the second paragraph, as discussed above, plaintiff identifies only opinions, not false

11 evidence.[4]  It also fails to include plaintiff's claim regarding the identification procedures, which

12 plaintiff includes as a separate claim.  It is not.  His claim based on the suggestive identification

13 procedures properly would be included in his 14th Amendment substantive due process claim.

14 *Spencer v. Peters*, 857 F.3d 789, 801 (9th Cir. 2017) (discussing requirement of "shocks the

15 conscience" standard for fabrication of evidence claim).

16    In the third paragraph, plaintiff fails to include the requirement that he prove that the

17 evidence is false.  It should also require that plaintiff prove that the deliberate falsification caused

18 his harm, not his imprisonment, so as to follow the substantial cause instruction.  (This is also the

19 case for the fifth paragraph.)

20

21 [4] The statements made as alleged not only are not false, they did not cause plaintiff harm.
Among other things, the prosecutor had the underlying, truthful evidence, and could make his

22 own conclusions regarding whether the identifications were "positive" or included "non-public
information" or whether the shell casing evidence led to only one, unassailable conclusion.

23 However, those are issues for summary judgment, and presumably this instruction will be given
only if the claim survives that motion.

24 JOINT PROPOSED JURY INSTRUCTIONS

In the fourth paragraph, the statement that there are three separate ways to prove falsification is encompassed in the use of the word "or" between the three distinct method of proof.  Also, the statement that plaintiff can prove a violation simply through "deliberate mischaracterization" is an incorrect statement of the law.  Mistakes of tone, or "carelessness" are not alone enough to prove a violation, nor are mistakes regarding trivial matters.  *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010).  Review of the facts in *Costanich* show far more than a dispute regarding a mere mischaracterization or opinion.  Rather, the officer in *Costanich* who investigated child molestation charges "suggested" that she interviewed three therapists, and received a report from a 4th, when in fact she did not speak to any medical professionals."  *Id*. at 1112.  Plaintiff does not, and cannot, cite to any cases where a summary of evidence where the underlying evidence is actually reviewed by the decision makers, can support a 14th Amendment claim for deliberate falsification.  In *Peck v. Hinchey*, 2017 WL 2929464 (D. Az. July 10, 2017), a case decided after and citing *Spencer*, the court found that an investigator's statement that witnesses in time fraud case "fully admitted to leaving early," which in context indicated that they intentionally lied on their time sheets, when the witness in fact provided legitimate reasons for leaving early, was an "error of tone" that did not "rise to the high standard of deliberately fabricated evidence."  Similarly here, the supposed statements regarding the meaning of the evidence is opinion, not fabrication, which does not "shock the conscience."

This fourth paragraph also lumps all of the defendants together, which is contrary to the requirement that plaintiff prove individual liability, and could confuse the jury.

JOINT PROPOSED JURY INSTRUCTIONS
Case No. 16-cv-00050-YGR                                                                           Page 21

1          As to the fifth paragraph, this is argument, and implies that plaintiff need not prove that

2   the false evidence caused his harm.  Additionally, it uses the word "made up" instead of

3   "falsified" and thus could confuse the jury into believing there is more than one standard.

**<u>Defendants' Instruction No. 7 (Fabrication of Evidence Claim)</u>**

As previously explained, the plaintiff has the burden of proving that the acts or failure to act of each defendant Maureen D'Amico, Michael Johnson, Robert McMillan, Carla Lee, John Evans and Ronan Shouldice deprived the plaintiff of his particular rights under the United States Constitution.

The Fourteenth Amendment guarantees due process. Due process includes both procedural and substantive due process guarantees. Substantive due process protects against egregious government conduct that shocks the conscience.

Plaintiff alleges that each of the defendants violated his constitutional right to substantive due process by deliberately fabricating evidence that was used to convict him. Specifically, plaintiff alleges that:

- Defendants Johnson and D'Amico falsely reported that Priscilla Lualamaga, an eye witness, positively identified plaintiff as to the shooter prior to his arrest;

- Defendants Johnson, D'Amico and McMillan falsely reported that Latisha Meadows-Dickerson, an eyewitness, positively identified plaintiff as the shooter prior to his arrest;

- Defendants Johnson, D'Amico and McMillan falsely reported that Meadows-Dickerson provided certain non-public details about the shooting that corroborated her account;

- Defendants Johnson, D'Amico, Evans and Shouldice falsely reported that the location of the shell casings found at the scene was consistent with Lualamaga's statement regarding the shooting.

- Defendants Johnson, D'Amico, Lee and McMillan engaged in coercive or abusive suggestive identification procedures, resulting in a false identification of plaintiff as the shooter.

To prove this claim, plaintiff must prove:

1. That the evidence was false;

2. That the defendant deliberately falsified the evidence;

3. That plaintiff was harmed; and

4. That the falsification caused his harm.

A plaintiff may prove deliberate falsification through:

1. Direct evidence of intentional falsification;

2. The defendant used techniques that were so coercive and abusive that the defendant knew, or was deliberately indifferent, that those techniques would yield false information; or

3. The defendant knew or should have known plaintiff to be innocent, yet continued the investigation.

"Deliberate indifference" is the conscious or reckless disregard of the consequences of one's acts or omissions.

If you find that plaintiff has proven each of these elements against a defendant, you should find that that defendant violated plaintiff's constitutional rights.  If you find that plaintiff did not prove each of these elements as to any defendant, then you should find that that defendant did not violate the plaintiff's constitutional rights.

**Sources:** Spencer v. Peters, 857 F.3d 789 (9th Cir. 2017); Ninth Circuit Model Jury Instruction, as modified

**Plaintiff's Objection:** Defendants' instruction is confusing and contains extraneous information irrelevant to the jury's determination of the fabrication of evidence claim. This instruction does not require a discussion of the Fourteenth Amendment, which has nothing to do with the findings the jury must make, and will be confusing to the jury.

Defendants' recitation of the elements of the claim is duplicative and confusing. Plaintiff's clear statement of the elements comes directly from Spencer v. Peters. 857 F.3d 789, 798 (9th Cir. 2017) ("To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty.").

Defendants' statements regarding ways to prove a fabrication of evidence claim are unclear, and will lack significance for the jury. Plaintiff's articulation of ways to prove a deliberate fabrication claim come straight from the Ninth Circuit's language in Devereux , Spencer, and Costanich. See Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (recognizing the "clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government" and that a plaintiff "must, at a minimum, point to evidence that supports at least one of the following two propositions: (1) Defendants continued their investigation of [the plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information."); Costanich v. Dep't of Soc. & Health Servs., 627 F.3d 1101, 1111-12 (9th Cir. 2010) (holding that reporting

1   information known to be false is deliberate fabrication and "an interviewer who deliberately

2   mischaracterizes witness statements in her investigative report…commits a constitutional

3   violation"). Defendants are also misleading in their statement that a plaintiff may prove

4   deliberate fabrication through "direct evidence of intentional falsification". "Deliberate

5   fabrication can be established by circumstantial evidence." Spencer v. Peters, 857 F.3d 789, 793

6   (9th Cir. 2017). Plaintiff need not present direct evidence going to Defendants' intent to

7   fabricate.

8        Defendants' instruction on deliberate indifference is insufficient. Plaintiff's instruction

9   properly defines both deliberate indifference and reckless disregard, pursuant to the Ninth

10  Circuit's holding in Gantt, and its review of jury instructions in light of the Gantt holding, in

11  Tatum. Tatum v. Moody, 768 F.3d 806, 821 (9th Cir. 2014) ("The jury here received an

12  instruction fully consistent with the holding in Gantt… The instructions…[defined] 'deliberate

13  indifference' as 'a conscious choice to disregard the consequences of one's acts or omissions,'

14  and 'reckless disregard' as 'complete indifference to the plaintiff's rights' or action 'in the face

15  of a perceived risk' that the plaintiff's rights will be violated."). The phrase "shocks the

16  conscience" is meaningless on its own, and confusing to the jury. The Ninth Circuit has provided

17  guidance that in the specific context of a fabrication of evidence claim, the shocks the conscience

18  intent standard can be satisfied by either intent-to-injury or deliberate-indifference standards of

19  liability. Gantt v. City of Los Angeles, 717 F.3d 702, 707-09 (9th Cir. 2013).

20       Including suggestive identification as part of the fabrication of evidence instruction

21  would be confusing to the jury. There are specific legal requirements about unnecessarily

22  suggestive identification procedures, which are clearer to a jury if articulated separately from the

23  general phrase, "techniques that were so coercive and abusive," which is meaningless to a jury.

24

1    **Plaintiff's Instruction No. 8 (Suggestive Identification)[5]**

2        Next, I will address Mr. Trulove's claim that Defendants Johnson, D'Amico, McMillan

3    and Lee subjected Ms. Lualemaga and/or Ms. Meadows-Dickerson to intentionally suggestive

4    identification procedures, knowing that this would result in an improper identification.

5        To establish a claim for suggestive identification, Mr. Trulove must establish that

6    Defendants (1) created one or more suggestive identification procedures, with the intention of

7    obtaining an identification of Mr. Trulove whether or not he was in fact guilty; (2) that this

8    procedure resulted in an identification of Mr. Trulove, even though he was innocent; (3) that the

9    false identification was used against Mr. Trulove; and that (4) as a result, Mr. Trulove was

10   deprived of his liberty.

11       **Sources**: <u>Brewster v. Shasta County</u>, 27 Fed. Appx. 908, 912–13 (9th Cir. 2001) ("It is

12           clearly established that a suggestive procedure intended to produce a false identification

13           would violate [an individual's] constitutional rights" and "intentionally engag[ing] in

14           suggestive behavior prior to and during [a] photo array and [a] live lineup, leading to a

15           false identification" constitutes such a suggestive procedure). <u>Brewster</u> applied the

16           <u>Devereaux</u> standard to find a constitutional violation where "the detectives used

17           suggestive procedures with the intent of obtaining an identification of [the plaintiff],

18           irrespective of whether he was in fact guilty." <u>See Good v. Curtis</u>, 601 F.3d 393, 399 (5th

19           Cir. 2010) (finding sufficient allegation of unlawful suggestive identification procedures

20           where officer artificially manipulated plaintiff's photograph to conform to the composite

21           sketch and description of assailant, and then obtained a false identification that was used

22

23   _____

[5] Defendants do not propose any instruction on the suggestive identification claim

24   JOINT PROPOSED JURY INSTRUCTIONS

1    to wrongfully convict the plaintiff); Dang v. Cross, 422 F.3d 800, 804–05 (9th Cir. 2005)

2    ("[A] party is entitled to an instruction about his or her theory of the case if it is supported

3    by law and has foundation in the evidence.")

4    **Defendants' Objection:** Alleging a "suggestive identification" is not a separate

5    constitutional claim, but rather one theory of liability under the 14th Amendment, and thus

6    should be included in that instruction.  It also does not accurately state the law, and/or states the

7    law differently from the prior 14th Amendment instruction.

8    Again, the fundamental requirement for proving a 14th Amendment claim is that

9    defendant engaged in egregious conduct that shocks the conscience.

10   Notably, all identification procedures are suggestive.  *See, e.g., Neil v. Biggers*, 409 U.S.

11   188 (1972); *Perry v. New Hampshire*, 565 U.S. 228, 262 (2012).  To find civil liability, however,

12   plaintiff must prove much more than that the identification procedures were suggestive, or

13   identified the wrong perpetrator.  As stated in *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir.

14   2001) and its progeny, plaintiff must prove that the techniques used by officers was so abusive or

15   coercive that it proves that the officers intentionally tried to frame an innocent suspect, or were

16   deliberately indifferent to obtaining a false identification.  *See e.g., Walker v. County of Santa*

17   *Clara*, 2007 WL 1201789 (N.D. Cal. April 23, 2007) ("aggressively suggesting" a suspect does

18   not create liability for fabrication of evidence); *Rodriguez Hidalgo v. Ricardo Perez*, 128

19   Fed.Appx. 577 (9th Cir. 2005) (not error to list in jury instructions investigative techniques that

20   were not sufficiently abusive or coercive so as to meet standard, such as failing to believe initial

21   denial of abuse, and continued aggressive questioning).

22   The cases cited by plaintiff do not support plaintiff's proposed jury instruction language.

23   In *Brewster v. Shasta Co.,* 27 Fed. Appx. 908, 912-13 (9th Cir. 2001), the court held that a

24

JOINT PROPOSED JURY INSTRUCTIONS

plaintiff could prove a violation of due process if plaintiff proved that the officers engaged in an identification procedure "intending to produce a false identification," not, as plaintiff states "with the intention of obtaining an identification of Mr. Trulove whether or not he was in fact guilty." The issue is not the intent to obtain an identification, what is prohibited is the intent to falsify the identification.  These are different standards.

*Good v. Curtis*, 601 F.3d 393, 399 (5th Cir. 2010) was not a suggestive identification case, but a direct evidence of fabrication case - the defendant officer modified a photo to make it appear more like the suspect, and specifically said that he intended to frame the suspect.  It does not address instructions for an overly suggestive identification case such as this one.

The Court should use the language defendants incorporated into their 14th Amendment instruction.

1    **Plaintiff's Instruction No. 9 (*Brady* Claim – Suppression of Evidence)**

2         Next, I will address Mr. Trulove's claim that he was deprived of liberty without due

3    process and deprived of his right to a fair trial because Defendants deliberately withheld certain

4    evidence from the prosecutor in the criminal proceeding.

5         Specifically, Mr. Trulove alleges that Defendants Johnson, D'Amico, McMillan and Lee

6    hid unduly suggestive identification procedures and other improper means they used to obtain

7    false identifications from Ms. Lualemaga and/or Ms. Meadows-Dickerson. Mr. Trulove also

8    alleges that Defendants Johnson, D'Amico, Evans and Shouldice withheld evidence

9    contradicting Ms. Lualemaga's testimony and Ms. Meadows-Dickerson's statement, specifically,

10   shell casing evidence and an SFPD ballistic study. Mr. Trulove also alleges that Defendants

11   Johnson and D'Amico hid other evidence that challenged the reliability of their investigation,

12   including that they were aware of evidence that Lorenzo Otis was the shooter, but failed to

13   investigate it.

14        To prove suppression of evidence, Mr. Trulove must show (1) that the Defendants

15   suppressed, or withheld from the prosecutor, material evidence that was favorable to Mr.

16   Trulove; (2) that this suppression prejudiced Mr. Trulove; and (3) that the Defendants acted with

17   deliberate indifference to or reckless disregard for the consequences of suppressing the favorable

18   evidence. Evidence is not suppressed if Mr. Trulove or his defense counsel were otherwise aware

19   of the evidence.

20        The Constitution requires police officers to disclose to the prosecutor any evidence that is

21   both *favorable* and *material* to a criminal defendant.

22        Information is *favorable* to a criminal defendant if it tends to indicate that criminal

23   defendant's innocence, also known as "exculpatory" evidence. Information is also favorable if it

24   JOINT PROPOSED JURY INSTRUCTIONS

1    cuts against evidence of guilt, also known as "impeaching" evidence. For example, evidence is

2    favorable if it undermines the credibility of a prosecution witness, or if it would undermine the

3    reliability of the evidence gathered in the investigation as a whole.

4         Evidence that is favorable to a criminal defendant is *material* when there is a reasonable

5    probability that, had the evidence been disclosed, the result of the trial would have been

6    different. A reasonable probability means the chances are high enough to undermine confidence

7    in the outcome of the trial. If the original verdict is already of questionable validity, withheld

8    evidence of relatively minor importance might be enough to create the reasonable probability of

9    a different outcome. To determine whether there is a reasonable probability that the result of the

10   trial would have been different, consider all of the withheld favorable evidence together, as a

11   group, rather than piece by piece.

12        **Sources:** Brady v. Maryland, 373 U.S. 83, 87 (1963) ("The suppression by the

13   prosecution of evidence favorable to an accused upon request violates due process where

14   the evidence is material either to guilt or to punishment, irrespective of the good faith or

15   bad faith of the prosecution."); Kyles v. Whitley, 514 U.S. 419, 434 (1995) ("Bagley's

16   touchstone of materiality is a 'reasonable probability' of a different result…The question

17   is not whether the defendant would more likely than not have received a different verdict

18   with the evidence, but whether in its absence he received a fair trial, understood as a trial

19   resulting in a verdict worthy of confidence. A 'reasonable probability' of a different

20   result is accordingly shown when the government's evidentiary suppression undermines

21   confidence in the outcome of the trial.");  Amado v. Gonzalez, 758 F.3d 1119, 1134–35

22   (9th Cir. 2014) ("[A] Brady claim of prosecutorial misconduct requires a petitioner to

23   show that the evidence suppressed by the prosecutor satisfies three elements: The

24   JOINT PROPOSED JURY INSTRUCTIONS

evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."); Carrillo v. Cnty of Los Angeles, 798 F.3d 1210, 1220 (9th Cir. 2015) ("Requiring police officers as well as prosecutors to disclose material and exculpatory evidence follows logically from Brady's rationale. As far as the Constitution is concerned, a criminal defendant is equally deprived of his or her due process rights when the police rather than the prosecutor suppresses exculpatory evidence because, in either case, the impact on the fundamental fairness of the defendant's trial is the same" and "Brady defines the type of material the government is obligated to disclose concretely and specifically as favorable to the accused, either because it is exculpatory, or because it is impeaching"); Tennison v. City and Cnty. of San Francisco, 570 F.3d 1078, 1087 (9th Cir. 2009) ("[A] § 1983 plaintiff must show that police officers acted with deliberate indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence from prosecutors."); Dang v. Cross, 422 F.3d 800, 804–05 (9th Cir. 2005) ("[A] party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence.")

**Defendants' Objection:** Plaintiff's proposed instruction on suppression of evidence does not accurately describe the law, and uses varying phrases to do so.  It makes no mention of a constitutional violation, and changes the manner in which certain concepts, such as due process, are referenced, creating potential inconsistency and confusion.

The rule enunciated in *Brady* is that an officer must disclose to the prosecutor information that is either exculpatory or impeachment evidence.  To prove liability, that evidence

1    must be "material." And, instead of clearly stating the elements of this claim, plaintiff uses the

2    word "favorable," a much broader term that "exculpatory," or "impeaching."  Plaintiff also

3    incorrectly states that all that plaintiff must do is prove that the failure to disclose the evidence

4    "prejudiced" him, but *Brady* specifically used the word "material," which courts have defined

5    over time, such that it means the evidence could reasonably be taken to put the whole case in

6    such a different light as to undermine confidence in verdict and would have altered the outcome.

7    *See Kyles v. Whitley*, 514 U.S. 419 (1995).  The Ninth Circuit in *Smith v. Almada*, 640 F.3d 931

8    (9th Cir. 2011) set forth the proper elements for this claim.

9          Moreover, this instruction again groups all of the defendants (and all of the allegedly

10   hidden evidence) together, creating a possibility of a finding of vicarious liability.

**Defendants' Instruction No. 10 (*Brady* Claim – Suppression of Evidence)**

Due process provides a procedural right to a fair trial.  Plaintiff alleges that each of the defendants violated his constitutional right to procedural due process by failing to disclose evidence to the prosecutor the defendant knew was exculpatory or could be used for impeachment, causing him to be deprived of his liberty.  Specifically, plaintiff alleges that:

Sgt. Lee and/or Inspectors Maureen D'Amico and Michael Johnson intentionally or recklessly failed to disclose to the prosecutor that an officer attempted to coerce the eyewitness to identify plaintiff as the murderer by pointing to a clipboard and saying "isn't it J Trulove."

Inspectors Maureen D'Amico, Michael Johnson, Ronan Shouldice and/or Officer John Evans intentionally or recklessly failed to disclose a 2001 memo reflecting an informal study regarding the landing location of shell casings;

Inspectors Maureen D'Amico and Michael Johnson intentionally or recklessly failed to disclose that a day or two after the shooting that the victim's brother told the officers that he had heard a rumor from an unidentified source that a person other than plaintiff committed the murder.

DEFENDANTS CANNOT DETERMINE WHAT PLAINTIFFS ALLEGE THAT MCMILLAN FAILED TO DISCLOSE.

To prove this claim, plaintiff must prove that each defendant intentionally or recklessly failed to disclose information known to the defendant that was:

1. Exculpatory or impeaching;

2. Material;

3. Not available to plaintiff if exercising due diligence.

JOINT PROPOSED JURY INSTRUCTIONS

"Exculpatory" means evidence that tends to show that the accused is not guilty of the crime.

 "Impeachment" evidence is information that tends to show a defect in the witness's perception, memory, narration, or truthfulness; evidence which suggests a motive to testify falsely; or evidence which demonstrates that the witness had an interest in the outcome.

Evidence is "material" if the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in verdict and would have altered the outcome.

If you find that plaintiff has proven each of these elements against a defendant, you should find that that defendant violated plaintiff's constitutional rights.  If you find that plaintiff did not prove each of these elements as to any defendant, then you should find that that defendant did not violate the plaintiff's constitutional rights.

**Sources:** *Kyles v. Whitley*, 514 U.S. 419 (1995); *Brady v. Maryland*, 373 U.S. 83 (1963); *Albright v. Oliver*, 510 U.S. 266 (1994); *Smith v. Almada*, 640 F.3d 931, 939 (9th Cir. 2011) (citing *Strickler v. Greene*, 527 U.S. 263 (1999))*; Rhoades v. Henry*, 598 F.3d 495, 502 (9th Cir. 2010) (evidence must be unavailable to plaintiff)

**Plaintiff's Objection:** Here, Defendants appear to acknowledge that due process guarantees a right to a fair trial, in spite of repeated objections to Plaintiff's use of the term "fair trial". Plaintiff has explained his alleged constitutional violations in terms of their impact on his ability to obtain a fair trial, because this language is more accessible and meaningful to the jury than references to "due process" alone. This is by no means a misstatement of the law. Violating an individual's due process rights through a <u>Brady</u> violation or a fabrication of evidence can cause them to be deprived of a fair trial, and the Ninth Circuit has used the language of a "fair

1  trial" in describing <u>Brady</u> and fabrication claims. <u>See, e.g.</u> <u>Atkins v. County of Riverside</u>, 151

2  Fed. Appx. 501, 503-04 ("The prosecution's failure to disclose material evidence favorable to the

3  accused can violate the accused's due process right to a fair trial.")

4          Defendants' proposed instruction misstates the basis for Plaintiff's claims, construing

5  them more narrowly than Plaintiff alleges. Plaintiff is challenging all the suggestive means and

6  procedures used to obtain the improper identifications from Lualemaga and Meadows-

7  Dickerson, not merely the action Defendants describe. Plaintiff's claim also extends beyond

8  mere failure to disclose the 2001 Shouldice memo, but rather encompasses the exculpatory

9  forensic analysis of the shell casings in this case. Defendants attempt to improperly narrow

10  Plaintiff's claims through their descriptions, and the Court should utilize Plaintiff's descriptions

11  of the allegations he is seeking to prove.

12          In stating the elements of a <u>Brady</u> claim, Defendants are incorrect in their instruction that

13  Plaintiff must prove that the undisclosed information was "not available to plaintiff if exercising

14  due diligence." As the Ninth Circuit held in <u>Amado v. Gonzalez</u>, a requirement that a plaintiff

15  exercise due diligence "would flip [the prosecutor's] obligation, and enable a prosecutor to

16  excuse his failure by arguing that defense counsel could have found the information himself" and

17  is contrary to federal law. 758 F.3d 1119, 1136–37 (9th Cir. 2014).

18          Plaintiff has utilized the term "favorable", as utilized in the <u>Brady</u> opinion, rather than

19  simply referencing the terms "exculpatory" and "impeaching", which will be confusing to the

20  jury on their own.  <u>See</u> <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963) ("The suppression by the

21  prosecution of evidence *favorable* to an accused upon request violates due process where the

22  evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of

23  the prosecution.") (emphasis added). Furthermore, Defendants' articulation of the definitions of

24

"impeachment" and "material" are too limiting, and confusing. Their statement regarding

material evidence, that it "would have altered the outcome", is an incorrect statement. Rather,

"Bagley's touchstone of materiality is a 'reasonable probability' of a different result…The

question is not whether the defendant would more likely than not have received a different

verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial

resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is

accordingly shown when the government's evidentiary suppression undermines confidence in the

outcome of the trial." Kyles v. Whitley, 514 U.S. 419, 434 (1995). The Court should utilize

Plaintiff's articulation of the elements, which is a clear and accurate statement of the law.

1    **Plaintiff's Instruction No. 11 (*Tatum v. Moody* – Failure to Disclose)[6]**

2          Mr. Trulove also brings a separate claim that Defendants' failed to turn over certain

3    highly significant exculpatory evidence led to Mr. Trulove's prolonged detention. Specifically,

4    Mr. Trulove alleges that Defendants Johnson, D'Amico, McMillan and Lee hid the improper

5    means they used to obtain false identifications from Ms. Lualemaga and/or Ms. Meadows-

6    Dickerson. Mr. Trulove also alleges that Defendants Johnson, D'Amico, Evans and Shouldice

7    suppressed evidence inconsistent with the account of the shooting in Ms. Lualemaga's testimony

8    and Ms. Meadows-Dickerson's statement, specifically, shell casing evidence and an SFPD

9    ballistic study.

10         In order to establish such a claim, Mr. Trulove must prove he was subjected to a

11   detention of unusual length, and that this detention was a result of Defendants' failure to disclose

12   highly significant exculpatory evidence to prosecutors. Mr. Trulove must also prove that the

13   officers acted with deliberate indifference or reckless disregard, as I described to you previously.

14         **Sources**: <u>Tatum v. Moody</u>, 768 F.3d 806, 819-20 (9th Cir. 2014) (establishing a "narrow"

15         constitutional rule for detentions of (1) unusual length, (2) caused by the investigating

16         officers' failure to disclose highly significant exculpatory evidence to prosecutors, and

17         (3) due to conduct that is culpable in that the officers understood the risks to the

18         plaintiff's rights from withholding the information or were completely indifferent to

19         those risks."); <u>Dang v. Cross</u>, 422 F.3d 800, 804–05 (9th Cir. 2005) ("[A] party is entitled

20         to an instruction about his or her theory of the case if it is supported by law and has

21         foundation in the evidence.").

22

23   _____
     [6] Defendants do not propose any instruction on the *Tatum* claim.

24   JOINT PROPOSED JURY INSTRUCTIONS
     Case No. 16-cv-00050-YGR                                                      Page 38

**Defendants' Objection:** A claim under *Tatum v. Moody* is the same as a *Brady* procedural due process claim under the 14th Amendment.  It is therefore not a "separate" claim, but rather an alternative means of proving harm from failure to disclose exculpatory or impeachment evidence.  Instructing the jury on both a *Tatum* claim and a *Brady* claim will serve only to confuse the issues.

This is not a case, like in *Tatum*, where an officer obtained information after the initial arrest that negated probable cause, and failed to disclose it, and the prosecutor dismissed the case once the prosecutor obtained the information.  Here, plaintiff was tried (twice).  The evidence that plaintiff alleges the officers failed to disclose existed at the time of the arrest.  Although a question exists as to *when* defendants' alleged obligation arose to provide the 2001 Shouldice memo, which plaintiff claims is Brady material, that is not the type of "highly exculpatory evidence" that resulted in his release.

This instruction also fails to give any guidance to the jury regarding what a detention "of unusual length" may be.  Also, the court should re-use the same definition of deliberate indifference.

1   **Plaintiff's Instruction No. 12 (Malicious Prosecution)**

2       Next, I will address Mr. Trulove's claim that Defendants wrongfully caused a criminal

3   prosecution to be brought against him. This claim is also known as "malicious prosecution."

4       In order to establish such a claim, Mr. Trulove must prove (1) that Defendants wrongfully

5   caused criminal charges to be filed against him; (2) that he was seized or detained against his

6   will; (3) that the criminal proceeding ended in his favor; (4) that the action was brought without

7   probable cause; and (5) that Defendants' actions were brought with bad faith.

8       As to the first element of this claim, although there is a presumption that prosecutors

9   make independent decisions to file criminal charges, Mr. Trulove may prove Defendant officers

10  are responsible for causing the charges to be filed if they improperly exerted pressure on the

11  prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or

12  otherwise engaged in wrongful or bad faith conduct that caused the charges to be filed.

13      As to the second element of this claim, if you find that Defendants' actions caused Mr.

14  Trulove to be held in jail or prison, I instruct you that this element has been proven.

15      As to the third element of this claim, here, where the conviction was reversed and then

16  Mr. Trulove was acquitted of all charges, I instruct you that the criminal proceeding ended in his

17  favor; I instruct you that this element has been proven.

18      As to the fourth element of this claim: Probable cause exists when, under all of the

19  circumstances known to the officers at the time, it is reasonable for an officer to conclude that

20  there is a fair probability that the plaintiff had committed a crime. The defendant's subjective

21  state of mind is irrelevant to determining whether probable cause existed; you must look at all of

22  the facts known to the officer and determine whether it was objectively reasonable to conclude

23  Mr. Trulove was probably responsible for the murder. If you find that, under all of the

24  JOINT PROPOSED JURY INSTRUCTIONS

circumstances known to the officers at the time, a reasonable police officer would not have concluded that there was a fair probability Mr. Trulove was responsible for Seu Kuka's homicide, this element is satisfied.

As to the fifth element of this claim: Mr. Trulove must prove that Defendants' actions in causing the criminal action to be wrongfully pursued against Mr. Trulove were initiated with malice, or in bad faith. Malice is not limited to actual hostility or ill will toward the plaintiff. If the defendant had no substantial grounds for believing in the plaintiff's guilt, but, nevertheless, began proceedings against the plaintiff, it is logical to infer that the defendant's motive was improper or malicious. Also, if you find that a defendant deliberately lied, fabricated evidence, or suppressed material evidence, that may establish malice.

**Sources:** <u>Awabdy v. City of Adelanto</u>, 368 F.3d 1062, 1066-67 (9th Cir. 2004) ("Malicious prosecution actions are not limited to suits against prosecutors but may be brought…against other persons who have wrongfully caused the charges to be filed… Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings. However, the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings.") (internal citations and quotation marks omitted); <u>Yousefian v. City of Glendale</u>, 779 F.3d 1010, 1015 (9th Cir. 2015) (To prove a § 1983 malicious prosecution claim, "in addition to showing that the

defendants prosecuted him with malice and without probable cause, a plaintiff must demonstrate a Fourth Amendment seizure (or the violation of another such "explicit textual source of constitutional protection")) (citing Albright v. Oliver, 510 U.S. 266, 271–75 (1994); Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995)); Manuel v. City of Joliet, 137 S.Ct. 911, 918 (2017) (that pretrial detention resulting from legal process unsupported by probable cause violates the Fourth Amendment and can form the basis for a § 1983 claim); see also Humbert v. Mayor & City Council of Baltimore City, 866 F.3d 546, 555–61 (4th Cir. 2017) (relying on Manuel, 137 S. Ct. 911, to hold that evidence that officers caused plaintiff to be detained pretrial and prosecuted without probable cause, and that the charges were ultimately terminated in plaintiff's favor, establishes a § 1983 malicious prosecution claim); Karam v. City of Burbank, 352 F.3d 1188, 1193 (9th Cir. 2003) ("[A] Fourth Amendment seizure occurs when a person is held in custody by arresting officers."); Kelley v. City of Henderson, No. 215CV02204APGVCF, 2017 WL 2802732, at *2 (D. Nev. June 27, 2017) ("For a § 1983 malicious prosecution claim, a plaintiff must allege that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right. Where, as here, claims are based on (1) a challenge to an arrest for lack of probable cause and (2) continued pre-trial incarceration without probable cause, the Fourth Amendment governs." (citing Manuel, 137 S. Ct. at 919–20 and Freeman, 68 F.3d at 1189)); Willis v. City of Los Angeles, 57 Fed.Appx. 283, 286–87 (9th Cir. 2002); Greene v. Bank of America, 216 Cal.App.4th 454, 464-65 (2013).

1   *See* Ninth Circuit Model Civil Jury Instructions, Sections 9.16, 9.23, on probable cause

2   definition, *available at* http://www3.ce9.uscourts.gov/jury-

3   instructions/sites/default/files/WPD/Civil_Instructions_2017_7.pdf.

4   **Defendants' Objection:** Plaintiff's instruction fails to inform the jury that this is a

5   constitutional claim under the 4th Amendment.  As the prior instructions reference constitutional

6   claims, the failure to state the basis of the claim will confuse the jury.

7   The instruction is also overly-wordy, and hides the instruction regarding the presumption

8   of independent prosecutorial discretion.  The elements should simply be listed, and then defined,

9   such as defendants proposed.

10   More specifically, the first paragraph is unnecessary, as the jury should already have been

11   informed of the three claims.

12   The elements in the second paragraph do not accurate set forth the proof of the necessary

13   elements.  *See Allen v. County of Sonoma*, 2017 WL 3593340 (N.D. Cal. August 18, 2017).

14   Plaintiff's wordy statement about "improperly exerted pressure" is overly vague and does not

15   assist the jury.  The wrongfulness issue is addressed if plaintiff can prove facts sufficient to

16   overcome the independence of the prosecutor, as set forth in defendants' separate instruction.  As

17   the parties do not dispute that plaintiff was arrested, charged, and convicted, then retried, there is

18   no reason to instruct on the issue of whether he was seized or detained, or whether the criminal

19   proceedings ended in his favor.

20   As to probable cause, that is a legal issue for the court.  *Moore v. City of Oakland*, 242

21   F.Supp.3d 891 (N.D. Cal. 2017) (probable cause question of law for court; jury to decide

22   questions of fact).  To the extent that the court decides to submit the probable cause issue to the

23   jury, the Ninth Circuit Model Jury Instruction 9.23 defines probable cause, and the court should

24   JOINT PROPOSED JURY INSTRUCTIONS

use that instruction rather than the overly wordy confusing definition proposed by plaintiff.  The Ninth Circuit instruction reads:  "Probable cause" exists when, under all of the circumstances known to the officer[s] at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.  Although the facts known to the officer are relevant to your inquiry, the officer's intent or motive is not relevant to your inquiry."

Plaintiff's paragraph regarding bad faith fails to accurately define malice for this purpose, and includes significant argument.  It does not even include a definition of malice, but rather states what is not malice.

Also, as noted in *Manuel v. City of Joliet*, 137 S.Ct. 911 (2017), a 4th Amendment claim arises at the time of the initial detention.  The statute of limitations would run two years from the time of the arrest.  *See Wallace v. Kato*, 549 U.S. 384 (2007).  The statute of limitations should thus bar this claim.  However, that would be an issue for the court, and not the jury, and therefore the City has not included a specific instruction regarding the statute of limitations.  The jury should also be made aware in the damages instructions that once a trial occurs, plaintiff no longer has a 4th Amendment claim.

Lastly, plaintiff includes the presumption regarding independent prosecutorial discretion only here, in malicious prosecution.  But it is a general presumption, not limited to malicious prosecution.  *See, e.g., Christensen v. Armstrong*, 473 Fed.Appx. 652, 653 (9th Cir. 2012).

1   **Defendants' Instruction No. 13 (Malicious Prosecution)**

2        Plaintiff also claims that the defendants violated his rights under the Fourth Amendment

3   of the United States Constitution to be free from malicious prosecution.  To prove his Fourth

4   Amendment claim, plaintiff must prove by a preponderance of the evidence:

5        1.  That no probable cause existed;

6        2.  That the defendant caused plaintiff to be prosecuted or convicted;

7        3.  That the defendant acted with malice; and

8        4.  That the defendant did so to deprive plaintiff of his rights to equal protection [or

9   another specific constitutional right].

10       "Probable cause" exists when, under all of the circumstances known to the defendant or

11  defendants at the time, an objectively reasonable police officer would conclude there is a fair

12  probability that the plaintiff has committed or was committing a crime.  It is for the court to

13  decide whether defendants had probable cause.  If there is a dispute of facts concerning this

14  issue, you will be asked to decide what facts are true.

15       "Malice" means the doing of a wrongful act intentionally, without just cause or excuse,

16  and with knowledge that it was wrong, and for the purpose of causing injury to another person.

17       If you find that plaintiff has proven each of these elements against a defendant, you

18  should find that that defendant violated plaintiff's constitutional rights. If you find that plaintiff

19  did not prove each of these elements as to any defendant, then you should find that that

20  defendant did not violate the plaintiff's constitutional rights.

21       **Sources:** *Allen v. County of Sonoma*, 2017 WL 3593340 (N.D. Cal. August 18, 2017);

22       Ninth Circuit Model Jury Instruction 9.23 (definition of probable cause); CACI

23       Instruction No. 1500; *Moore v. City of Oakland*, 242 F.Supp.3d 891 (N.D. Cal. 2017)

24  JOINT PROPOSED JURY INSTRUCTIONS

1   (probable cause question of law for court; jury to decide questions of fact); *Manuel v.*

2   *City of Joliet*, 137 S.Ct. 911 (2017)

3   **Plaintiff's Objection:** Plaintiff again disputes the unnecessary and confusing reference to

4   the Fourth Amendment. Furthermore, Defendants' instruction does not explain how the

5   malicious prosecution claim applies to the conduct of the police officer defendants in this case.

6   Plaintiff's instruction clearly explains how a police officer can be held liable for wrongfully

7   causing charges to be filed, based on the elements articulated by the Ninth Circuit in Awabdy.

8   The reference, in Defendants' articulation of the elements of a malicious prosecution

9   claim, to "equal protection [or another specific constitutional right]" is incorrect. Plaintiff does

10  not bring his claim on an equal protection basis. Plaintiff's claim is brought on the basis of his

11  involuntary seizure, as articulated in his proposed instruction. Where, as here, there is proof of a

12  Fourth Amendment seizure, there is no need to prove intent to violate a different constitutional

13  amendment. Furthermore, Defendants' statement, that "[i]t is for the court to decide whether

14  defendants had probable cause," is an incorrect statement of the law. The case on which

15  Defendants rely, Moore v. City of Oakland, cites to California state law in discussing that

16  probable cause is a question for the court; this case is not controlling authority on the issue, and

17  was decided in the context of a motion for summary judgment. 242 F. Supp. 3d 891, 905 (N.D.

18  Cal. March 16, 2017) (citing Sheldon Appel Co. v. Albert & Oliker, 47 Cal. 3d 863, 875 (1989)).

19  In Torres v. City of Los Angeles, the Ninth Circuit determined that whether detectives had

20  probable cause for an arrest in a § 1983 suit was a question for the jury, overturning a

21  determination on summary judgment for improperly determining that a reasonable jury could not

22  have concluded that detectives lacked probable cause to arrest Torres. 548 F.3d 1197, 1207 (9th

23  Cir. 2008); see also Halsey v. Pfeiffer, 750 F.3d 273, 300 (3d Cir. 2014) ("It certainly is

24  JOINT PROPOSED JURY INSTRUCTIONS

1   inappropriate for a court to grant a defendant officer's motion for summary judgment in a

2   malicious prosecution case if there are underlying factual disputes bearing on the issue or if

3   'reasonable minds could differ' on whether he had probable cause for the institution of the

4   criminal proceedings based on the information available to him."); Murphy v. Lynn, 118 F.3d

5   938, 947 (2d Cir. 1997) ("Where the question of whether an arresting officer had probable cause

6   is predominantly factual in nature, as where there is a dispute as to the pertinent events, the

7   existence *vel non* of probable cause is to be decided by the jury."); Shafer v. Cty. of Santa

8   Barbara, 868 F.3d 1110, 1115 (9th Cir. 2017) (approving an underlying jury's finding regarding

9   probable cause). This is consistent with the general role of the jury at trial: the Court instructs the

10  jury on the law, and the jury finds the facts, and applies the law to the facts.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**Defendants' Instruction No. 14 (Malicious Prosecution Presumption of Independence)[7]**

The prosecutor is presumed to have exercised independent judgment in determining that probable cause exists.  To rebut this presumption plaintiff must prove by a preponderance of the evidence that the defendant intentionally or recklessly made material omissions or gave false information to the prosecutor that caused the prosecutor to seek the arrest warrant and/or prosecute plaintiff.  Plaintiff must present more evidence than his own testimony that the representations made by the defendants is false.

**Sources:** *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir.1981), cert. denied, 459 U.S. 829; *Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir. 2004) ; *Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994) (must present more than plaintiff's own testimony that the representations are false).

**Plaintiff's Objection:** Plaintiff objects to Defendants' statement that he "must present more evidence than his own testimony that the representations made by the defendants is false." Plaintiff does not principally rely on his own testimony in proving the malicious prosecution claim in this case, and this instruction is therefore irrelevant and unnecessary. Furthermore, it is much clearer and more meaningful to the jury to provide this instruction in the context of the broader instruction on malicious prosecution, as it relates directly to the first causal element of the claim. Therefore, Plaintiff's instructions have placed a description of the presumption of independence, derived from the Ninth Circuit's language in Awabdy, within his malicious prosecution instruction.

---

[7] Plaintiff has included an instruction on the presumption of independence within his proposed malicious prosecution instruction.

1   **Plaintiff's Instruction No. 15 (Conspiracy)**

2       Next, I will instruct you on the law governing Mr. Trulove's claim that Defendants are

3   liable for conspiracy.

4       A conspiracy is an agreement between two or more people to do something illegal. Mr.

5   Trulove contends that the police officer Defendants agreed amongst themselves to deprive him

6   of his constitutional rights to due process and a fair trial. An officer who conspired to deprive

7   Mr. Trulove of his rights is liable for the acts of the people he conspired with.

8       To find a Defendant liable for conspiracy, you must find that Mr. Trulove has proved

9   each of the following elements by a preponderance of the evidence:

10      (1) The Defendant agreed with one or more other Defendants to deprive Mr. Trulove of

11          his constitutional rights.

12      (2) The Defendant or a co-conspirator engaged in at least one act in furtherance of the

13          agreement to deprive Mr. Trulove of his right to due process and a fair trial.

14      (3) The act or acts taken in furtherance of the agreement caused a deprivation of Mr.

15          Trulove's constitutional rights, such as a malicious prosecution, or fabrication of

16          evidence, as previously discussed.

17      To prove the conspiracy, Mr. Trulove must show that the members of the conspiracy

18  came to a mutual understanding to act in violation of his rights. Mr. Trulove need not show that

19  the Defendants came to an explicit, oral or written, agreement to violate his rights. An implied

20  agreement—an unspoken understanding among the co-conspirators—is sufficient. Mr. Trulove

21  does not need to show direct evidence of the conspiracy, but can prove the existence of the

22  conspiracy and Defendant's participation in it by circumstantial evidence.

23

24  JOINT PROPOSED JURY INSTRUCTIONS

1     In addition to the existence of an agreement, Mr. Trulove must show that one of the

2 members of the conspiracy engaged in at least one act in furtherance of the conspiracy. In this

3 case, this requirement is satisfied if you find that one or more of the Defendants fabricated

4 evidence against Mr. Trulove, or suppressed favorable, material evidence from Mr. Trulove, or

5 conducted an impermissibly suggestive identification procedure.

6     **Sources:** "To establish the defendants' liability for a conspiracy, a plaintiff must

7     demonstrate the existence of an agreement or 'meeting of the minds' to violate

8     constitutional rights. The defendants must have, by some concerted action, intended to

9     accomplish some unlawful objective for the purpose of harming another which results in

10    damage. Such an agreement need not be overt, and may be inferred on the basis of

11    circumstantial evidence such as the actions of the defendants. For example, a showing

12    that the alleged conspirators have committed acts that are unlikely to have been

13    undertaken without an agreement may allow a jury to infer the existence of a conspiracy.

14    Whether defendants were involved in an unlawful conspiracy is generally a factual issue

15    and should be resolved by the jury, so long as there is a possibility that the jury can infer

16    from the circumstances that the alleged conspirators had a meeting of the minds and thus

17    reached an understanding to achieve the conspiracy's objectives. To be liable, each

18    participant in the conspiracy need not know the exact details of the plan, but each

19    participant must at least share the common objective of the conspiracy." Mendocino

20    Environmental Center v. Mendocino County ,192 F.3d 1283, 1301 (9th Cir. 1999)

21    (internal citations and quotation marks omitted). "To be actionable, the conspiracy must

22    result in overt acts, done in furtherance of the conspiracy, that are both the cause in fact

23    and proximate cause of plaintiffs' injuries." Sanchez v. City of Santa Ana, 936 F.2d

24 JOINT PROPOSED JURY INSTRUCTIONS

1027, 1039 (9th Cir. 1990). An instruction that "In order to establish that a conspiracy existed, the plaintiffs must show that members of the conspiracy in some way or manner, or through some contrivance, positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan," was sufficient, especially in light of a cautionary wording that the "mere similarity of conduct among various persons and the fact that they may have associated with each other and may have assembled together and may have discussed some common aims and interests, is not necessarily proof of the existence of a conspiracy." Gilbrook v. City of Westminster, 177 F.3d 839, 860 (9th Cir. 1999).

**Defendants' Objection:** Plaintiff again uses the phrase "due process and a fair trial," which does not accurately state the constitutional provisions at issue.  Plaintiff also uses different words to describe the same concept, for example in his listing of elements, in one place he refers to "constitutional rights" while in another he refers to "right to due process and a fair trial." Lastly, the requirement of an act in furtherance of the conspiracy requires an "overt" act.

Plaintiff's statement regarding what plaintiff does not need to show, or that can be shown by circumstantial evidence, is argument.  Additionally, plaintiff separates his claims (fabrication, suppression, or suggestive ID procedure), when those are not separate claims.  Lastly, because plaintiff's *Brady* claim does not require any intent, it is incorrect to state that that if a *Brady* violation occurred, it is necessarily proof of an act in furtherance of the conspiracy.

Plaintiff's instruction also is missing the paragraph that sets forth the requirement of individual liability.

**Defendants' Instruction No. 16 (Conspiracy)**

To prove a conspiracy, plaintiff first must prove that:

1.  He was deprived of a constitutional right, as defined above;

2.  That a defendant came to an agreement with one or more other defendants to cause the constitutional violation;

3.  That the defendant engaged in overt acts in furtherance of the conspiracy that resulted in the violation.

If you find that plaintiff has proven each of these elements against a defendant, you should find that that defendant violated plaintiff's constitutional rights. I f you find that plaintiff did not prove each of these elements as to any defendant, then you should find that that defendant did not violate the plaintiff's constitutional rights.

**Source:** *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012)

**Plaintiff's Objection:** Plaintiff objects to this instruction, which misstates the law, is unclear, and is incomplete. It does not provide sufficient guidance on what it takes to prove an agreement, as explained in Plaintiff's proposed instruction. As stated, it suggests the requirement of an explicit written statement, which is not the law.  "To establish the defendants' liability for a conspiracy, a plaintiff must demonstrate the existence of an agreement or 'meeting of the minds' to violate constitutional rights. The defendants must have, by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage. Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999) (internal citations and quotation marks omitted). The third element is misstated. In a conspiracy claim, one or more acts, completed by any of the

members of the conspiracy, is sufficient to satisfy the overt act requirement. Defendants' instruction makes two errors: it suggests that each defendant must have committed multiple overt acts in furtherance of the conspiracy. <u>See</u> <u>U.S. v. Avila</u>, No. 88-5420, 894 F.2d 410 (table) (9th Cir. 1990) ("The essential elements of conspiracy are an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose…"). Furthermore, the use of the term overt is confusing and unnecessary.

**Plaintiff's Instruction No. 17 (Supervisory Liability)**

Mr. Trulove brings § 1983 claims against Defendants Johnson and D'Amico based on their actions as supervisors of any officers working on the Kuka investigation, including Officer Lee, and any other officers involved in conducting identification procedures with Ms. Lualemaga. In order to prevail on these claims, Mr. Trulove must prove each of the following elements by a preponderance of the evidence:

(1) That someone under Defendant Johnson and/or D'Amico's supervision violated the constitutional rights of Mr. Trulove. If you find that someone under Johnson or D'Amico's supervision violated Plaintiff's rights by fabricating evidence, suppressing exculpatory evidence, failing to disclose exculpatory evidence, or conducting a suggestive identification, as described above, then this element is met.

(2) That Defendant Johnson and/or Defendant D'Amico directed that person to commit the unconstitutional act or failure to act; OR that they initiated the unconstitutional action, or knowingly refused to put an end to it; OR that they reasonably should have known about the unconstitutional act and did nothing to prevent it; OR that they did something to show they were recklessly indifferent to the constitutional violation by their subordinate; and

(3) The supervisory defendant's conduct was the moving force that caused the ultimate violation of his right to a due process and a fair trial.

Sources: *See* Ninth Circuit Model Civil Jury Instructions, Sections 9.4, *available at* http://www3.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2017_7.pdf . A supervisor can be held liable in his or her individual capacity under § 1983 only if (1) he or she personally participated in the constitutional violation, or (2) there is a

"sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989). A supervisor is liable for the acts of his subordinates if the supervisor directed the violations. Preschooler II v. Clark Cnty. Sch. Bd. Of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007). In Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir. 1991), the court approved the district court's instruction that the jury could find a police chief liable in his individual capacity if he "set[ ] in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he kn[e]w or reasonably should [have] know[n] would cause others to inflict the constitutional injury." Id. at 646 (citations omitted). A plaintiff may also state a claim based on conduct by the supervisor "that showed a reckless or callous indifference to the rights of others." Id. at 646. A plaintiff "may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011). A plaintiff seeking to establish liability of a supervisory defendant must demonstrate that the supervisor's conduct was so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury. See Oviatt v. Pearce, 954 F.2d 1470, 1481 (9th Cir. 1992). "To meet this requirement, the plaintiff must show both causation in fact and proximate causation." Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1096 (9th Cir. 2013).

**Defendant's Objection:** Supervisory liability generally attaches when a defendant is actually responsible for the actions of the alleged tort feasor, and personally participated in the

1   unconstitutional acts by instigating the act, or by knowing that his or her subordinates regularly

2   violate constitutional rights, yet do not act to stop them.  Because no vicarious liability exists

3   under federal constitutional law, a plaintiff must prove more than the act of a person within an

4   organization that violates a constitutional right of which the defendant is aware.  Rather, the

5   supervisor must have both the responsibility to correct the problem and the opportunity to do so.

6   See, e.g., *Larez v. City of Los Angeles*, 946 F.3d 630 (9th Cir. 1991) (chief of police failed to

7   address use of excessive force by his subordinates).  Most of the cases addressing this issue

8   involve on-going constitutional violations that a Sheriff of Chief of Police fails to address.  None

9   of the cases cited by plaintiff address a situation such as here, where the homicide inspectors are

10  not responsible for the training or discipline or supervision of the uniformed officers.

11          The Ninth Circuit Model jury instructions include the necessary elements for finding a

12  supervisor liable that balances the need for personal participation in a violation of a

13  constitutional right with the concern about vicarious liability.  The Court should use the

14  approved instruction.

15          Moreover, plaintiff's instruction again summarizes his claims in language different from

16  earlier instructions, creating the possibility of confusion and inconsistency.  For example,

17  plaintiff's first element discusses "supervision" rather than "subordinate" and then summarizes

18  his claims instead of simply stating that plaintiff must prove a constitutional violation.  In the

19  second element, the "or phrases overlap and are confusing.  In the third element, plaintiff once

20  again uses a different phrase for his claims.

21          This instruction is made even more difficult in that it rests on events that occurred the

22  night of the murder, and at that time, the eye witness had not yet identified plaintiff as the

23  murder.  It would therefore be impossible for any officer to know of a violation of a

24  JOINT PROPOSED JURY INSTRUCTIONS

constitutional right, as no one would have any idea that such an identification would be made, or would be used against plaintiff, or that there would come a time when any disclosure about the events that evening would have to be made to a criminal defendant.  Plaintiff through this instruction implies that the defendant officers could be held liable for the actions of an unidentified person, who defendants cannot even question regarding his or her alleged activities, much less whether the person was a "subordinate."

**<u>Defendants' Instruction No. 18 (Supervisory Liability)</u>**

In order to prevail on his § 1983 claim against the supervisory defendants Inspectors Michael Johnson or Maureen D'Amico, the plaintiff must prove each of the following elements by a preponderance of the evidence:

1. the supervisory defendant acted under color of state law;

2. that Inspectors Johnson or D'Amico were supervisors of [Names to be Identified by Plaintiff];

3. the act or failure to act of the supervisory defendant's subordinates [Names to be Identified by Plaintiff] deprived the plaintiff of his particular rights under the United States Constitution as explained in later instructions; and either:

3. the supervisory defendants directed his or her subordinates in the acts or failure to act that deprived the plaintiff of these rights;

or

3.       (a)  (1) the supervisory defendant knew that his or her subordinates were engaging in these acts and knew or reasonably should have known that the subordinate's conduct would deprive the plaintiff of these rights; and

                 (2) the supervisory defendant failed to act to prevent his or her subordinates from engaging in such conduct;

and

                 (b) that deficiency or omission actually caused his or her subordinates to deprive the plaintiff of his or her constitutional rights.

Plaintiff must also prove that the supervisory defendant's conduct was so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation. The parties have stipulated that the defendants acted under color of state law.

If you find the plaintiff has proved each of these elements, and if you find that the plaintiff has proved all the elements he is required to prove under Instructions _____[specify the instructions that deal with the particular rights], your verdict should be for the plaintiff.  If, on the other hand, you find that the plaintiff has failed to prove any one or more of these elements as to either or any defendant, your verdict should be for that or those defendant.

**Source:**  Ninth Circuit Model Jury Instruction

**Plaintiff's Objection:** Plaintiff once again objects to use of the term "under color of state law", as it is not disputed that defendants in this case were acting under color of state law, and as this term is unnecessarily confusing to the jury. Plaintiff further objects to this instruction as confusing and unclear. Plaintiff's proposed instruction states the elements of supervisory liability in an accessible manner, based on the Ninth Circuit precedent Plaintiff has cited.

Furthermore, the nature of Defendants' supervisory relationships, and the specific individuals involved in the identification procedures at issue in this case, will be fact questions for the jury to determine.

1    **Defendants' Instruction No. 19 (Qualified Immunity)**

2        This instruction will depend on what facts are in dispute and how they would affect the

3    defendants' entitlement to qualified immunity.

4        **Source:** See *Morales v. Fry*, 2017 WL 4582732 (9th Cir. Oct. 16, 2017) (qualified

5        immunity a legal question for the court, although factual questions should be submitted to

6        the jury).

7        **Plaintiff's Objection:** Plaintiff objects to any instruction on the issue of qualified

8    immunity. Whether qualified immunity applies to any of the Defendants in this case is a question

9    for the Court. <u>Morales</u>, to which Defendants cite, itself states "the importance of deciding

10   qualified immunity at the earliest possible stage in litigation…[which is] often possible because

11   qualified immunity most often turns on legal determinations, not disputed facts." <u>Morales v. Fry</u>,

12   2017 WL 4582732 (9th Cir. Oct. 16, 2017). <u>Morales</u> was a use of force case, where there may

13   more often be disputes of fact which must first be determined before the court can rule on

14   qualified immunity. This is not the issue here. "Most issues of qualified immunity are resolved

15   before trial, or the ultimate question of qualified immunity is reserved for the judge to be decided

16   after trial based on the jury's resolution of the disputed facts." <u>Id.</u>  at *5 (citing <u>Ninth Circuit</u>

17   <u>Model Civil Jury Instruction</u> 9.34 (2017)). The Ninth Circuit has specifically held that the acts

18   alleged in this case are not entitled to qualified immunity. <u>See</u> <u>Carrillo v. County of Los Angeles</u>,

19   798 F.3d 1210, 1225 (9th Cir. 2015) (holding that officers could not assert qualified immunity

20   against allegations of the withholding of <u>Brady</u> evidence); <u>see also</u> <u>Spencer v. Peters</u>, No. C11-

21   5424 BHS, 2014 WL 5652357 at *6-*7 (W.D. Wash. Oct. 15, 2013) (declining qualified

22   immunity on claims of deliberately fabricated evidence).

23

24

1

2

3     DATED: October 27, 2017

Respectfully submitted,

NEUFELD SCHECK & BRUSTIN, LLP

4                                    By: /s/Anna Benvenutti Hoffmann
                                     Anna Benvenutti Hoffmann, NY Bar No. 4412011

5                                    (pro hac vice)
                                     *One of Plaintiff Jamal Trulove's Attorneys*

6     DATED: October 27, 2017        SAN FRANCISCO CITY ATTORNEY'S OFFICE

7                                    By: /s/Margaret Baumgartner

8                                         Margaret Baumgartner, Deputy City Attorney
                                          State Bar #151762

9                                         Attorney for Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   JOINT PROPOSED JURY INSTRUCTIONS