DENNIS J. HERRERA, City Attorney
CHERYL ADAMS, State Bar #164194
Chief Trial Deputy
MARGARET W. BAUMGARTNER, State Bar #151762
RENÉE L. ROSENBLIT, State Bar #304983
KELLY COLLINS, State Bar #277988
Deputy City Attorneys
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:    (415) 554-3859 [Baumgartner]
Telephone:    (415) 554-3853 [Rosenblit]
Telephone:    (415) 554-3914 [Collins]
Facsimile:    (415) 554-3837
E-Mail:       margaret.baumgartner@sfcityatty.org
E-Mail:       renee.rosenblit@sfcityatty.org
E-Mail:       kelly.collins@sfcityatty.org

Attorneys for Defendants
MAUREEN D'AMICO, JOHN EVANS,
MICHAEL JOHNSON, CARLA LEE,
ROBERT MCMILLAN and RONAN SHOULDICE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMAL RASHID TRULOVE, <br><br> Plaintiff, <br><br> vs. <br><br> THE CITY AND COUNTY OF SAN FRANCISCO, ET AL., <br><br> Defendants. | Case No. 16-cv-00050-YGR <br><br> **DECLARATION OF LINDA ALLEN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> Hearing Date:   February 27, 2018 <br> Time:           2:00 p.m. <br> Place:          Courtroom 1, 4th Floor <br>                 1301 Clay Street <br>                 Oakland, CA <br><br> Trial Date:     March 5, 2018 |

I, Linda Allen, declare as follows:

1. I am an Assistant District Attorney with the San Francisco District Attorney's Office. I have personal knowledge of the facts contained herein, and if called upon to testify, would testify competently hereto.

2. I was assigned to the prosecution of Jamal Trulove for the murder of Seu Kuka shortly before the first trial in 2010. When assigned the case, I reviewed all of the evidence, and made an independent determination that the evidence supported the prosecution. I did not rely on any representation by any officer regarding the meaning of the evidence, but rather made my own independent determination.

3. I was aware of the circumstances regarding Ms. Lualeamaga's identification of Joshua Bradley from the wall of photos at Ingleside station the night of the murder, and her failure to pick out the photo of Jamal or David Trulove that night. I considered the circumstances of her subsequent identification of Trulove during the photo array procedure. I considered that choice of photos for the procedure, in addition the words that Ms. Lualemaga used when picking out both Bradley and Trulove. I made an independent determination that the identification procedures were lawful, fair, competent, admissible and otherwise supported the prosecution of Trulove for the murder.

4. I was also aware of the circumstances of the identification by the second eyewitness, Latisha Meadows-Dickerson. I chose not to call Ms. Meadows-Dickerson at trial, but I believed that her identification of Trulove could corroborate Ms. Lualemaga's identification of Trulove as the murderer.

5. I did not rely on any representation by any officer concerning their interpretation of any of the statements made by the witnesses, or the forensic evidence. I do not believe that any officer ever represented to me that Ms. Lualemaga's identification of plaintiff was either "positive" or "tentative." Even if they had, however, I made my own, independent evaluation to determine whether it was lawful and competent and fair to use at trial. I determined that it was.

6. I spent time speaking to Ms. Lualemaga regarding her testimony prior to the first trial. I believed her then, and I continue to believe her now, that she observed Trulove shoot Kuka.

7. After the jury convicted Trulove of the murder, I learned of the statement of Oliver Barcenas. In summary, he stated that he observed two officers with a Somoan woman, pointing to a clip board, saying something about Trulove, and Jeremiah or Jerome, and the woman saying "no" and crying, on the night of the murder. I decided that Barcenas was not credible, and opposed Trulove's

motion for a new trial based on this statement. The Court agreed that Barcenas was not credible. The Court of Appeal affirmed the denial of the new trial motion on that ground.

8. After the Court reversed Trulove's conviction, I personally made the decision to retry plaintiff, even knowing of Barcenas' statement. I did not receive any pressure from any officer to retry Trulove. I do not believe that I even spoke with any officer when making my determination. Rather, I relied on the evidence, including the audio recordings of the identifications, and determined that the lawful, fair, competent evidence supported a conviction. I did not rely on any representations regarding the evidence; I made my own independent evaluation.

9. I was aware of the location of the shell casings found at the scene. Even prior to this case, I was aware that shell casing evidence rarely, if ever, definitively proves the location of the person doing the shooting – there are too many other factors that can affect the final resting place of shell casings, including the arm position and grip of the shooter. I did not believe that the shell casing evidence provided sufficient information in this case to make any determination of specifically where the shooter was standing, or movements of the shooter.

10. I do not believe that any officer made a specific representation to me regarding the evidentiary value, or lack thereof, of the shell casings evidence prior to either trial. I made my own independent evaluation. I determined that the shell casing evidence is not inconsistent with the statements of the witnesses.

11. I did not ask Officer John Evans any questions at the first trial regarding the meaning of the shell casing evidence. I do not believe that I even prepared him for those questions prior to the first trial.

12. I knew during the second trial that Jim Norris, the former head of the San Francisco Crime Lab, would be testifying concerning his interpretation of where the shooter must have been standing based on the final location of the shell casings. I did not then, nor do I now, believe that his opinion had sufficient evidentiary foundation to be reliable, must less the only conclusion that could be drawn from the forensic evidence. I believe that too many unknown variables affect that determination.

13. I do not believe that either Officer Evans or Ronan Shouldice ever represented to me that the shell casing evidence was either consistent with or inconsistent with the eyewitness testimony. I certainly do not recall them telling me prior to trial that the final resting place of shell casings is "random" and even if they had I believe that opinion to be valid, particularly here where the crime scene had many people present at and after the shooting. Their opinions about the forensic evidence did not change my belief regarding the strength of the merits of this case. In any case, I did not rely on their expert knowledge regarding shell casing evidence, including any representation they made about the meaning of such evidence in this case, to prosecute this matter. Rather, I made my own independent interpretation of the meaning of the evidence.

I declare under penalty of perjury under the laws of the State of California that the preceding declaration is true and correct.

Dated:

_____
LINDA ALLEN

I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/S/) within this e-filed document.

   */s/ Margaret W. Baumgartner*
MARGARET W. BAUMGARTNER