DENNIS J. HERRERA, City Attorney
CHERYL ADAMS, State Bar #164194
Chief Trial Deputy
MARGARET W. BAUMGARTNER, State Bar #151762
RENÉE L. ROSENBLIT, State Bar #304983
KELLY COLLINS, State Bar #277988
Deputy City Attorneys
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:    (415) 554-3859 [Baumgartner]
Telephone:    (415) 554-3853 [Rosenblit]
Telephone:    (415) 554-3914 [Collins]
Facsimile:    (415) 554-3837
E-Mail:       margaret.baumgartner@sfcityatty.org
E-Mail:       renee.rosenblit@sfcityatty.org
E-Mail:       kelly.collins@sfcityatty.org

Attorneys for Defendants
MAUREEN D'AMICO, JOHN EVANS,
MICHAEL JOHNSON, CARLA LEE,
ROBERT MCMILLAN and RONAN SHOULDICE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMAL RASHID TRULOVE, <br><br> Plaintiff, <br><br> vs. <br><br> THE CITY AND COUNTY OF SAN FRANCISCO, ET AL., <br><br> Defendants. | Case No. 16-cv-00050-YGR <br><br> **DECLARATION OF ERIC FLEMING IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> Hearing Date:   February 27, 2018 <br> Time:           2:00 p.m. <br> Place:          Courtroom 1, 4th Floor <br>                 1301 Clay Street <br>                 Oakland, CA <br><br> Trial Date:     March 5, 2018 |

I, Eric Fleming, declare as follows:

1. I was an Assistant District Attorney with the San Francisco District Attorney's office. I was assigned to the criminal prosecution of Jamal Trulove for murder after his arrest in

2008, and handled the matter until I turned it over to ADA Linda Allen shortly before trial in 2010.

2. I made an independent evaluation of the evidence in this case to determine whether the evidence support the prosecution of plaintiff. I understood that there would be some question regarding the identification procedures used in this matter, including the fact that Priscilla Lualemaga did not initially pick out the picture of Jamal Trulove that was on the wall of the station the night of the murder, even though she picked out Joshua Bradley. I was also aware that Inspector Johnson had included Bradley's photo in the lineup, and had chosen other people who looked similar to plaintiff who also were from the neighborhood. I reviewed the evidence, including the photos of the wall at the station, and the photos in the photo array, and spoke with Ms. Lualemaga to determine whether any of the identification procedures were so suggestive as to make them inadmissible or otherwise unbelievable or I thought it would be unfair to use them. I determined that Ms. Lualemaga's identification was fair, lawful and competent, and with the other evidence supported the prosecution of Trulove for murder. I also made an independent determination that Ms. Lualemaga was telling the truth and that she had seen Trulove shoot Kuka. I believed that there was sufficient corroboration of the identification, including Ms. Lualemaga's description of the shooter and the car, prior to her transport to the police station, to make her identification legal, fair and competent.

3. No officer made any specific representation to me that Ms. Lualemaga's identification of plaintiff was either "positive" or tentative" or misrepresented the circumstances of the photo array. Even if an officer made such a representation, I relied on my own review of the tape recorded identification procedure and the other evidence related to the identification to determine that Ms. Lualemaga' identification of Trulove supported the murder prosecution in this case.

4. I also reviewed the tape of the identification made by the second eyewitness, Latisha Meadows-Dickerson. I had some concerns about presenting her testimony to a jury because of the situation in which she provided the information, and because of some

inconsistencies regarding timing, and the exact location where she was standing. She provided her identification more than a year later, and I would not expect a witness reciting events that she had observed a year before to be completely accurate about the details. I believed, however, that her identification was fair, competent and lawful, and corroborated the testimony of Ms. Lualemaga in key aspects, and supported the conclusion that Jamal Trulove shot Mr. Kuka. Among other things, she provided details that lined up with those provided by Ms. Lualemaga, including that Kuka ran into or knocked down the shooter just before the shooting, that Kuka was shot in the back, and gave the same location and direction of Kuka and the shooter.

5. I was aware of the location of the shell casing evidence found at the scene. I had sufficient experience with shell casings found at crime scenes to know that many factors effect where they come to final rest. Those factors include how the shooter is holding the gun, including the arm angle of the shooter, and the possibility that the large number of people at the scene kicked or moved the shell casings. Nothing about this forensic evidence in this case made me question the truthfulness of Ms. Lualemaga's or Ms. Meadows-Dickerson's statements.

6. No officer made any representations to me regarding the evidentiary value of the shell casing evidence. Even if any officer made some representation regarding it, I would not have relied on any such representation, but would have made an independent evaluation to determine whether I believed that the forensic evidence was consistent or inconsistent with the eyewitness testimony. I also had independent knowledge from other cases regarding the limited evidentiary value of shell casing evidence to precisely locate the shooter when so many variables were unknown, such as in this case. However, the presence of the shell casings at the scene corroborated the statements that the shooting occurred at that location and that numerous shots were fired.

7. I was not responsible for and did not participate in the decision to retry this case after the court of appeal overturned the verdict based on ineffective assistance of counsel.

8. Just before the preliminary hearing in this matter, I showed Ms. Lualemaga a photo of the pictures on the gang wall at Ingleside Station. She noticed that there was a photo of Jamal Trulove just above or below the photo of Bradley. She expressed surprise that his photo was on the same wall. I believed her surprise, and that she had not previously seen his photo on the wall.

I declare under penalty of perjury under the laws of the State of California that the preceding declaration is true and correct.

DATED: January 4, 2018

_____
ERIC FLEMING

Case No. 16-cv-00050-YGR

4

n:\lit\li2016\160675\01238251.doc