DENNIS J. HERRERA, City Attorney
CHERYL ADAMS, State Bar #164194
Chief Trial Deputy
MARGARET W. BAUMGARTNER, State Bar #151762
RENÉE E. ROSENBLIT, State Bar #304983
KELLY COLLINS, State Bar #277988
Deputy City Attorneys
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-3859 [Baumgartner]
Telephone:     (415) 554-3853 [Rosenblit]
Telephone:     (415) 554-3914 [Collins]
Facsimile:     (415) 554-3837
E-Mail:        margaret.baumgartner@sfcityatty.org
E-Mail:        renee.rosenblit@sfcityatty.org
E-Mail:        kelly.collins@sfcityatty.org


Attorneys for Defendants
MAUREEN D'AMICO, JOHN EVANS,
MICHAEL JOHNSON, CARLA LEE,
ROBERT MCMILLAN and RONAN SHOULDICE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMAL RASHID TRULOVE,<br><br>        Plaintiff,<br><br>    vs.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO, ET AL.,<br><br>        Defendants. | Case No. 16-cv-00050-YGR<br><br>**DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:     February 27, 2018<br>Time:             2:00 p.m.<br>Place:            Courtroom 1, 4th Floor<br>                  1301 Clay Street<br>                  Oakland, CA<br><br>Trial Date:       March 5, 2018 |

| Issue No. | Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|---|
| Issue 1 (plaintiff cannot establish intentional falsification of evidence causing plaintiff's conviction)<br><br>Issue 2 (no malicious prosecution because probable cause existed to arrest plaintiff and officers did not act with malice) | **Fact 1**:  On July 23, 2007, Seu Kuka was shot nine times, including shots to his back.<br><br>Baumgartner Dec. Ex. Z (Autopsy Report) at 2. | |
| Issue 1a (plaintiff cannot establish abusive or coercive identification techniques used with Lualemaga resulting in plaintiff's conviction)<br><br>Issue 2 (probable cause) | **Fact 2:**  Just after the shooting, Priscilla Lualemaga, whose window looked out at the location of the shooting, told Officer Carla Lee that she saw the shooting.<br><br>Baumgartner Dec. Ex. S (Lee Depo.) 55:3-5, 57:11-13. | |
| Issue 1a (Lualemaga ID techniques)<br><br>Issue 2 (probable cause)<br><br>Issue 3 (qualified immunity) | **Fact 3:**  Approximately 10 minutes after the shooting, Lualemaga gave Officer Lee a description of the suspect as a black male "in his thirties, he's wearing a black hooded sweatshirt, black jeans, possibly drove away in a light blue four-door American style car. The car is distinctive in that is has shiny chrome rims and the tires are way too large for the vehicle."<br><br>Lee Dec. ¶6(a). | |
| Issue 1a (Lualemaga ID techniques)<br><br>Issue 2 (probable cause)<br><br>Issue 3 (qualified immunity) | **Fact 4:**  Before she got to the station, Lualemaga further described the driver for the suspect as "wearing a black sweatshirt with a white tee-shirt hanging out, black jeans" and that he is "always with" a black male "six-two, skinny, with red hair and it's short.  Both of them have short . . ."<br><br>Lee Dec. ¶6(e). | |

| | |
|---|---|
| Issue 1a (Lualemaga ID techniques)<br><br>Issue 2 (probable cause)<br><br>Issue 3 (qualified immunity)<br><br>Issue 4 (supervisory liability) | **Fact 5**:  When she got to the police station, an officer asked Lualemaga to look at the gang photo wall, and she identified a photo of Joshua Bradley as the person Kuka was chasing when he was shot.<br><br>Baumgartner Dec. Ex. J (Written Statement); Ex. I (Lualemaga Depo. 81:9-82:5). |
| Issue 1a (Lualemaga ID techniques)<br><br>Issue 2 (probable cause) | **Fact 6**:  There was a photo of David Trulove and Jamal Trulove near the photo of Bradley on the gang wall at the station, but Lualemaga did not notice Jamal Trulove's photo that evening.<br><br>Fleming Dec. ¶8; Dkt. 117 (2nd Amd. Comp. pg. 8, 9). |
| Issue 1a (Lualemaga ID techniques)<br><br>Issue 2 (probable cause)<br><br>Issue 3 (qualified immunity)<br><br>Issue 4 (supervisory liability) | **Fact 7**:  Lualemaga did not notify any defendant that she recognized anyone other than Bradley on the wall the night of the murder.<br><br>Baumgartner Dec. Ex. I (Lualemaga Depo.) 80:11-19, 82:6-83:4; Ex. P (Johnson Depo). 226:24-227:17; Johnson Dec. ¶4. |
| Issue 1a (Lualemaga ID techniques)<br><br>Issue 1b (Barcenas' testimony re night of murder does not create dispute of material fact)<br><br>Issue 2 (probable cause)<br><br>Issue 3 (qualified immunity) | **Fact 8**:  Lualemaga gave a taped statement at about 1:00 a.m. in which she told the officers about seeing Bradley on the wall, said she had seen the suspect in the neighborhood, and further described the suspect as hanging out with Joshua and Seu, being "lanky, skinny," "darker than Joshua," about the same age as Joshua, and having a "fade" haircut."  She did not mention the name Trulove.<br><br>Baumgartner Dec. Ex. K (7/24/07 Lualemaga audio). |

| | | |
|---|---|---|
| Issue 1a (Lualemaga ID techniques)<br><br>Issue 2 (probable cause)<br><br>Issue 3 (qualified immunity) | **Fact 9:** Trulove is Bradley's brother, was lanky and skinny, darker than Joshua, was about his same age and was about 6'1" tall.<br><br>Baumgartner Dec. Ex. F at 1; Ex. M pg. 6. | |
| Issue 2 (probable cause) | **Fact 10:** Johnson and D'Amico learned that the day after the murder Bradley, plaintiff, plaintiff's brother David Trulove, ███████ ███ and Jerome Bardell were detained together in Vallejo.<br><br>Baumgartner Dec. Ex. P (Johnson Depo.) 280:22-281:11; Ex. D (D'Amico Depo.) 193:10-21; Baumgartner Dec. Ex. G (D'Amico notes). | |
| Issue 1a (Lualemaga ID techniques)<br><br>Issue 2 (probable cause) | **Fact 11:** Johnson and D'Amico also learned that the group in Vallejo was associated with a green Buick Riviera with shiny rims and big tires that Bradley had recently purchased.<br><br>Baumgartner Dec. Ex. G (D'Amico chronology). | |
| Issue 1c (no falsification because did not continue investigation believing plaintiff was innocent) | **Fact 12:** The officers knew that ███████████ did not match the physical description Lualemaga provided.<br><br>Johnson Dec. ¶9. | |

| | |
|---|---|
| Issue 1a (Lualemaga ID techniques)<br><br>Issue 1b (Barcenas)<br><br>Issue 1d (defendants did not misrepresentation of certainty of Lualemaga's identification)<br><br>Issue 2 (probable cause)<br><br>Issue 3 (qualified immunity) | **Fact 13:**  On July 25, 2007, Lualemaga picked the photo of Jamal Trulove out of a six person photo line up after being informed that she was not obligated to pick anyone, and the perpetrator might not be in the array.  She immediately asked whether his name was Jamal.<br><br>Baumgartner Dec. Ex. L (7/25/07 audio); Ex. I (Lualemaga Depo.) 407:17-25. |
| Issue 1a (Lualemaga ID techniques)<br><br>Issue 2 (probable cause) | **Fact 14:**  The six photos in the lineup included photos of Bradley, Jamal Trulove and other people Johnson believed were from the neighborhood.<br><br>Baumgartner Dec. Ex. P (Johnson Depo.) 349:14-350:5. |
| Issue 1a (Lualemaga ID techniques)<br><br>Issue 1b (Barcenas)<br><br>Issue 2 (probable cause)<br><br>Issue 3 (qualified immunity) | **Fact 15:**  Johnson chose the photos to include in the array so that Lualemaga would not pick out Trulove only because he looked familiar.<br><br>Baumgartner Dec. Ex. P (Johnson Depo.) 208:3-209:1. |
| Issue 1d (no misrepresentation of Lualemaga certainty)<br><br>Issue 3 (qualified immunity) | **Fact 16:**  The arrest affidavit did not say that Lualemaga "positively" identified plaintiff but rather said she chose him out of a lineup.<br><br>Baumgartner Dec. Ex. F (Arrest Warrant Affidavit). |
| Issue 1b (Barcenas) | **Fact 17:**  On the night of the murder, Johnson was aged 55, kept his star in his pocket, wore a suit, was 5'9" and weighed 170 lbs.<br><br>Johnson Dec. ¶2. |

| | | |
|---|---|---|
| Issue 1b (Barcenas) | **Fact 18:** Carla Lee is Asian, and on the night of the murder had dark hair.<br><br>Lee Dec. ¶2. | |
| Issue 1b (Barcenas)<br><br>Issue 3 (qualfied immunity) | **Fact 19:** Carla Lee left the station at 12:30 a.m. on the night of the murder and had no further interaction with Lualemaga or this case.<br><br>Lee Dec. ¶6(k); Baumgartner Dec. Ex. S (Lee Depo.) 43:25-44:2. | |
| Issue 1a (Lualemaga ID techniques)<br><br>Issue 1b (Barcenas)<br><br>Issue 2 (probable cause)<br><br>Issue 3 (qualified immunity)<br><br>Issue 4 (supervisory liability) | **Fact 20:** No defendant showed Lualemaga anything while using the name Trulove on the night of the murder.<br><br>Baumgartner Dec. Ex. I (Lualemaga Depo.) 83:5-84:11, 349:10-20. | |
| Issue 1e (plaintiff cannot establish misrepresentation of Meadows' statement)<br><br>Issue 2 (probable cause) | **Fact 21:** In June 2008, Inspector Robert McMillan detained Latisha Meadows-Dickerson, who was carrying her husband's gun.<br><br>Baumgartner Dec. Ex. V (Meadows Incident Report). | |
| Issue 1e (Meadows' statement)<br><br>Issue 2 (probable cause)<br><br>Issue 3 (qualified immunity) | **Fact 22:** Meadows volunteered that she had information about the murder of Seu Kuka.<br><br>McMillan Dec. ¶2; Meadows Dec. ¶5; Johnson Dec. ¶6. | |
| Issue 1e (Meadows' statement)<br><br>Issue 2 (probable cause) | **Fact 23:** Johnson and McMillan recorded a statement from Meadows in which she said that she saw Jamal Trulove shoot Kuka in the back after Kuka knocked into him.<br><br>Baumgartner Dec. Ex. W (Meadows Statement). | |

| | | |
|---|---|---|
| Issue 1e (Meadows' statement)<br><br>Issue 2 (probable cause) | **Fact 24:**  During her statement, Meadows provided specific details about the shooting that matched those provided by Lualemaga, including that Kuka knocked into the shooter just before the shooting, that Kuka was shot in the back, and accurately identified the location of the shooting.<br><br>Baumgartner Dec. Ex. W (Meadows Statement); Fleming Dec. ¶4. | |
| Issue 1a (Lualemaga ID techniques)<br>Issue 1e (Meadows' statement)<br><br>Issue 2 (probable cause)<br><br>Issue 3 (qualified immunity) | **Fact 25:**  Meadows chose plaintiff out of the same photo lineup used with Lualemaga after she identified him by name.<br><br>Baumgartner Dec. Ex. W (Meadows Statement); Baumgartner Dec. Ex. P (Johnson Depo.) 210:11-18. | |
| Issue 1e (Meadows' statement)<br><br>Issue 2 (probable cause) | **Fact 26:**  No officer attempted to coerce Meadows into identifying plaintiff.<br><br>Johnson Dec. ¶6; McMillan Dec ¶¶2, 3; Meadows Dec. ¶5. | |
| Issue 1e (Meadows' statement)<br><br>Issue 2 (probable cause) | **Fact 27:**  No officer provided Meadows with information about the murder before she gave her statement.<br><br>Meadows Dec. ¶5. | |
| Issue 1e (Meadows statement)<br><br>Issue 3 (qualified immunity) | **Fact 28:**  Meadows' statement was not used at either trial.<br><br>Baumgartner Dec. ¶37. | |

| | | |
|---|---|---|
| Issue 1 (falsification)<br><br>Issue 1a (Lualemaga ID techniques)<br><br>Issue 1d (Lualemaga certainty)<br><br>Issue 1e (Meadows' statement)<br><br>Issue 5 (DAs used independent prosecutorial discretion) | **Fact 29:**  None of the Assistant District Attorneys relied on any representation by any defendant concerning the strength of any eyewitness identification.<br><br>Butterworth Dec. ¶¶11, 13, 14, 17; Allen Dec. ¶¶1, 4, 5; Baumgartner Dec. Ex. A (Allen Depo.) 191:25-193:1; Fleming Dec. ¶¶2, 4; Baumgartner Dec. Ex. N (Fleming Depo.) 23:18-24:4. | |
| Issue 1f (plaintiff cannot establish falsification of shell casing evidence)<br><br>Issue 5 (prosecutorial discretion) | **Fact 30:**  None of the ADAs relied on any representation by any defendant concerning the conclusions that could or could not be drawn from shell casing evidence.<br><br>Allen Dec. ¶¶5, 9; Fleming Dec. ¶¶5, 6; Butterworth Dec. ¶¶15, 16. | |
| Issue 1 (falsification)<br><br>Issue 3 (qualified immunity)<br><br>Issue 4 (supervisory liability) | **Fact 31:**  Neither Johnson nor D'Amico asked any officer to have Lualemaga look at the gang photo wall.<br><br>Baumgartner Dec. Ex. D (D'Amico Depo.) 323:6-8. | |
| Issue 1a (Lualemaga ID techniques)<br><br>Issue 1b (Barcenas)<br><br>Issue 2 (probable cause)<br><br>Issue 3 (qualified immunity)<br><br>Issue 4 (supervisory liability) | **Fact 32:**  D'Amico did not have knowledge of an interaction between Lualemaga and any officer where the name "Trulove" was used on the night of the murder.<br><br>D'Amico Dec. ¶4. | |

| | | |
|---|---|---|
| Issue 5 (prosecutorial discretion) | **Fact 33:** Both ADA Fleming and ADA Allen met with Lualemaga to independently assess the strength of her identification of Trulove as the murderer, and believed her. Butterworth listened the tape and reviewed the other evidence in the file.<br><br>Allen Dec. ¶6; Fleming Dec. ¶2. | |
| Issue 5 (prosecutorial discretion) | **Fact 34:** Before approving the arrest warrant, ADA Butterworth independently evaluated the evidence, and went to the scene.<br><br>Butterworth Dec. ¶¶3, 4. | |
| Issue 1e (Meadows Statement)<br><br>Issue 2 (probable cause)<br><br>Issue 5 (prosecutorial discretion) | **Fact 35:** ADA Butterworth believed that Meadows could see the shooting from her apartment sufficiently to identify Trulove.<br><br>Butterworth Dec. ¶5. | |
| Issue 1d (Lualemaga certainty) | **Fact 36:** Neither Johnson nor D'Amico intentionally misrepresented Lualemaga's identification of plaintiff.<br><br>Johnson Dec. ¶5; D'Amico Dec. ¶8. | |
| Issue 1e (Meadows Statement) | **Fact 37:** Neither Johnson nor McMillan intentionally misrepresented Meadows statement.<br><br>Johnson Dec. ¶5; McMillan Dec. ¶6. | |
| Issue 1c (No belief plaintiff innocent) | **Fact 38:** Johnson, D'Amico and McMillan all did not believe that Trulove was innocent.<br><br>Baumgartner Dec. Ex. P (Johnson Depo.) 5:17-20; D'Amico Dec. ¶7; McMillan Dec. ¶3. | |

| | | |
|---|---|---|
| Issue 6a (plaintiff cannot establish that any defendant failed to disclose the Shouldice memo knowing that it was material, nor that it caused plaintiff's conviction)<br><br>Issue 3 (qualified immunity) | **Fact 39:** Of the defendant officers, only Evans spoke to the District Attorney about the shell casing evidence before the first trial. He did not make any representations that the shell casing evidence could pinpoint the location of the shooter.<br><br>Baumgartner Dec. ¶37; Baumgartner Dec. Ex. H (Evans Depo.) 202:2-10; Baumgartner Dec. Ex. 32 (Shouldice Depo.) 108:1-12; RJN Ex. 33 at 1028:28-1029:12. | |
| Issue 6b (Shouldice Memo) | **Fact 40:** Ronan Shouldice did not become involved in this matter until the rebuttal case in the second trial.<br><br>Baumgartner Dec. ¶37; Baumgartner Dec. Ex. 32 (Shouldice Depo.) 108:1-12; RJN Ex. 33 at 1028:28-1029:12. | |
| Issue 6b (Shouldice Memo) | **Fact 41:** No defendant intentionally withheld from disclosure Shouldice's 2001 memo with the intent to deprive plaintiff of his constitutional rights.<br><br>D'Amico Dec. ¶¶10, 11, 12; Johnson Dec. ¶¶7, 11; Lee Dec. ¶9; McMillan Dec. ¶7; Baumgartner Dec. ¶37; RJN Ex. 33 at 1028:28-1029:12. | |
| Issue 1c (no belief plaintiff innocent)<br><br>Issue 6c (plaintiff cannot establish that any defendant failed to disclose evidence regarding ████████ nor that such information was material) | **Fact 42:** Johnson and D'Amico learned of a rumor that the shooter could ████████, but did not believe that they had sufficient details to follow up on that rumor.<br><br>D'Amico Dec. ¶16; Johnson Dec. ¶9. | |

| | |
|---|---|
| Issue 7 (plaintiff cannot establish that any defendant entered into an agreement to deprives plaintiff of his constitutional rights) | **Fact 43:** No defendant entered into an agreement, express or implied, to deprive plaintiff of his constitutional rights.<br><br>Lee Dec. ¶9; McMillan Dec. ¶7; Johnson Dec. ¶11; D'Amico Dec. ¶12. |
| Issue 6a (plaintiff cannot establish that any defendant failed to disclose identification procedures knowing that they were material, nor did failure to disclose cause plaintiff's conviction) | **Fact 44:** D'Amico did not show Lualemaga a photo of a suspect the day after the murder.<br><br>Baumgartner Dec. Ex. I (Lualemaga Depo.) 235:14-21; D'Amico Dec. ¶¶14, 15. |
| Issue 1b (Barcenas)<br><br>Issue 1 (falsity) | **Fact 45:** The DA re - tried plaintiff after learning of Oliver Barcenas' observations in Ingleside Station on the night of the murder.<br><br>Allen Dec. ¶5. |
| Issue 1b (Barcenas) | **Fact 46:** Barcenas' statement did not sufficiently undermine Lualemaga's identification of plaintiff to preclude introduction of Lualemaga's statement at trial.<br><br>Allen Dec. ¶4. |
| Issue 1c (plaintiff not innocent)<br><br>Issue 6c (█ information) | **Fact 48:** ADA Allen was aware that the homicide inspectors had looked into █ as a person of interest in the homicide investigation. Even after another witness mentioned █ as the shooter, ADA Allen continued to prosecute plaintiff.<br><br>Baumgartner Dec. Ex. A (Allen Depo.) 7:8-21, 228:12-19. |

1       I attest that the evidence cited herein fairly and accurately supports the facts as asserted.

2

3  Dated:  January 5, 2018

4                            DENNIS J. HERRERA

5                            City Attorney

                              CHERYL ADAMS

6                            Chief Trial Deputy

7                            MARGARET W. BAUMGARTNER

                            RENÉE E. ROSENBLIT

8                            KELLY COLLINS

9                            Deputy City Attorneys

10                     By: _/s/  Margaret W. Baumgartner_____

11                        MARGARET W. BAUMGARTNER

12                        Attorneys for Defendants

13                        MAUREEN D'AMICO, JOHN EVANS,

                        MICHAEL JOHNSON, CARLA LEE,

14                        ROBERT MCMILLAN and RONAN SHOULDICE

15

16

17

18

19

20

21

22

23

24

25

26

27

28