# EXHIBIT H

**DECLARATION OF MARGARET W. BAUMGARTNER**

**IN SUPPORT OF DEFENDANTS'**

**MOTION FOR SUMMARY JUDGMENT**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

--oOo--

```
JAMAL RASHID TRULOVE,                  )
                                       )
                   Plaintiff,          )Case No.
                                       )16-cv-00050-YGR
         vs.                           )
                                       )
THE CITY AND COUNTY OF SAN             )
FRANCISCO, ET AL.,                     )
                                       )
                   Defendants.         )
_____)
```

VIDEOTAPED DEPOSITION OF

JOHN EVANS

June 7, 2017

9:01 a.m.

44 Montgomery Street, Suite 1100

San Francisco, California

Reported by:  Michelle L. Archuletta, CSR No. 11028



```
 1              APPEARANCES OF COUNSEL

 2   For the Plaintiff:

 3           NEUFELD, SCHECK & BRUSTIN, LLP
             BY:  NICK J. BRUSTIN, ESQ.
 4           VISHAL AGRAHARKAR, ESQ.(Telephonically)
             99 Hudson Street, 8th Floor
 5           New York, New York  10013
             212.965.9081
 6           nick@nsbcivilrights.com

 7


 8   -and-

 9           BY:  KATE CHATFIELD, ESQ.
             2130 Fulton Avenue, KN 211
10           San Francisco, California  94117
             415.422.4385
11           klchatfield@usfca.edu

12

13   -and-

14           BY:  ALEX REISMAN, ESQ.
             P.O. Box 10
15           Brisbane, California  94005
             415.608.0240
16           areisman@msn.com

17

18   For the Defendants:

19           OFFICE OF THE CITY ATTORNEY
             BY:  MARGARET BAUMGARTNER, ESQ.
20           1390 Market Street, 7th Floor
             San Francisco, California  94102
21           415.554.3800
             margaret.baumgartner@sfgov.org
22

23   Also Present:   Jamal R. Trulove.

24                   Cutler Andress, Videographer.

25                         ***
```



```
 1  BY MR. BRUSTIN:
 2      Q.   So you had no idea whether they were
 3  suggesting it was a 44 caliber or a 9mm or some
 4  other kind of weapon, right?
 5           MS. BAUMGARTNER:  Objection.  Argument- --
 6  argumentative.  Vague.
 7           THE WITNESS:  I didn't know what the theory
 8  was.  I didn't know prior to being subpoenaed that
 9  there was even a suspect.  I didn't know if there
10  was a witness.  What I knew about the case is what I
11  saw and documented at the scene.
12  BY MR. BRUSTIN:
13      Q.   All right.  The only shell casings that you
14  analyzed were 9mm shell casings, correct?
15           MS. BAUMGARTNER:  Objection.  Vague.
16           THE WITNESS:  So it might be a bit much to
17  say that I analyzed them.
18  BY MR. BRUSTIN:
19      Q.   I'll change the word.  I'll make it easier
20  for you.  The only shell casings you collected from
21  the scene where you put your little yellow cones up
22  there and took pictures of them and drew diagrams,
23  were 9mm shell casings, right?
24      A.   That is correct.
25      Q.   Okay. And so was it your working theory
```



1  THE WITNESS: As I've said, yes.
2  BY MR. BRUSTIN:
3  Q. You've also told us that typically you
4  would meet with a prosecutor before you testified at
5  trial, correct?
6  MS. BAUMGARTNER: Objection. Been asked
7  and answered.
8  THE WITNESS: I think what I said was I --
9  something close to this -- I typically meet with
10  district -- assistant district attorney prior to
11  homicide -- or testimony in a homicide case.
12  BY MR. BRUSTIN:
13  Q. All right. And you had, in this case, you
14  had a number of interactions with the DA's office
15  before trial, including going to the scene and
16  taking photographs, correct?
17  MS. BAUMGARTNER: Objection. Compound.
18  Assumes facts.
19  THE WITNESS: So a few different things in
20  a few different places. I spoke to district --
21  assistant district attorneys who were assigned to
22  the case at points -- well, I spoke to assistant
23  district attorney Linda Allen immediately prior to
24  the initial trial, and then again immediately prior
25  to the retrial.



```
 1  BY MR. BRUSTIN:
 2      Q.   Okay.  Did you speak to Linda Allen about
 3  the location of the shell casings and what it meant,
 4  if anything, in relation to the shooter before the
 5  first trial?
 6           MS. BAUMGARTNER:  Objection.  Compound.
 7  Vague.
 8           THE WITNESS:  I don't recall a specific
 9  discussion with Linda Allen prior to the first trial
10  about the meaning or lack thereof of the presence
11  and location of casings.
12  BY MR. BRUSTIN:
13      Q.   All right.  Would it be fair to say though
14  that, in substance, to the extent that you talked
15  about 3151, you would have expressed to Linda Allen
16  that this diagram does not indicate anything about
17  the location of the shooter, correct?
18           MS. BAUMGARTNER:  Objection.
19  Argumentative.  Assumes facts.  Compound.
20           THE WITNESS:  I don't, as a general rule,
21  point out all the things that don't indicate
22  something when talking to an ADA.
23  BY MR. BRUSTIN:
24      Q.   I'm sorry, I'll be more specific.
25           If -- if you reviewed your report with her,
```



1    A.   And, I'm sorry, there was also a number of
2  questions at trial about lighting.
3    Q.   You had no idea why she was asking, though?
4         MS. BAUMGARTNER:  Objection.
5  Argumentative.  Vague.
6         THE WITNESS:  My guess was that when she
7  did ask me about lighting, it was because she wanted
8  to know what someone could have seen or not seen.
9  BY MR. BRUSTIN:
10   Q.   Okay.  But you never discussed the fact
11 with her before trial, to the best of your
12 recollection, that there was an accusation -- there
13 was an allegation that the lighting wasn't good
14 enough for the eyewitness to see?
15        MS. BAUMGARTNER:  Objection.  Vague.
16 Assumes facts.  Argumentative.
17        THE WITNESS:  I don't remember
18 specifically, but the questions that she gave me
19 about lighting tended to make me think that she was
20 trying to make sure whether or not things could or
21 could not be seen.
22 BY MR. BRUSTIN:
23   Q.   All right.  You testified just now that
24 the -- you didn't know until just before trial that
25 there was even an eyewitness.



1    A.   That is correct.
2    Q.   All right.  But you knew certainly when you
3  went to the scene of the crime to take pictures from
4  the window that there was an eyewitness, correct?
5         MS. BAUMGARTNER:  Objection.  Been asked
6  and answered.  Argumentative.  Assumes -- vague.
7         THE WITNESS:  When I was asked to take
8  pictures from a window at 140 Blythedale, I was told
9  that there was a witness, and I assumed on my own
10 part that the witness would have looked through the
11 window that I was being asked to take pictures
12 through.  I don't currently have an independent
13 recollection about specific information about
14 what -- I definitely did not get told what the
15 witness saw, and I don't recall if I was told much
16 of anything about the witness looking through the
17 window, other than go to this location, look through
18 this window, take pictures of these locations.
19 BY MR. BRUSTIN:
20   Q.   It's your testimony that you were not told
21 that information before the first trial or the
22 second trial, correct?
23        MS. BAUMGARTNER:  Objection.  Vague.  What
24 information?
25



```
 1  BY MR. BRUSTIN:
 2      Q.   Any information about what the witness saw
 3  or where she saw it from.
 4      A.   Prior to the first trial -- prior to --
 5  immediately before the first trial, I had no
 6  information on a suspect, on a witness.  I didn't
 7  have any information like that.  Immediately before
 8  the first trial, I was told that there was a
 9  witness.
10      Q.   But no other information about that
11  witness?
12      A.   Definitely not a witness story, who the
13  witness was, what the witness saw.  Nothing like
14  that.
15      Q.   Who told you there was a witness?
16      A.   Linda Allen.
17      Q.   All right.  How about before the second
18  trial, did you receive any additional information
19  about that witness before the second trial?
20      A.   I got a little bit more information.  I
21  believe Linda Allen may have said that the witness
22  lived at some point at 140 Blythedale, the apartment
23  at 140 Blythedale, that she had spent some time in
24  witness protection, but I didn't have a name.  I
25  heard the word she, so I assumed she was female.
```



1   Q.   Okay.  You had no idea prior to your
2   testimony at the second trial what she was -- what
3   she was claiming to have seen; is that correct?
4   A.   I did not have a story about what the
5   witness had or had not seen, other than -- I'm
6   sorry, are we talking about the second trial?
7   Q.   Yes.
8   A.   The information that I received prior to
9   the second trial was that the defense had a problem
10  with the witness's story, having no information
11  about that story, based on where casings were found
12  at the scene.
13  Q.   Okay.  But prior to testifying, you had no
14  information about what the witness claimed to have
15  seen and from where, correct?
16       MS. BAUMGARTNER:  Objection.  Compound.
17  Vague.
18       THE WITNESS:  Other than having
19  witnessed -- now I'm assuming that she witnessed a
20  shooting.  I didn't know at all really anything
21  about the witness's story.
22  BY MR. BRUSTIN:
23  Q.   Let me be more specific.  Prior to your
24  testimony at the second trial, you had no
25  information about what the -- what the witness



1  claimed to have seen in regard to the shooting,
2  correct?
3      A.   That's a reasonably fair statement.
4      Q.   And up through today, you have not received
5  any information about what the witness claims to
6  have seen in regards to the shooting, correct?
7           MS. BAUMGARTNER:  As phrased, that question
8  may call for attorney-client privileged information.
9  You can't answer it in the way that it was phrased.
10 You can rephrase it.
11 BY MR. BRUSTIN:
12     Q.   Well, as you sit here today, do you have
13 any information from any source about what the
14 witness claims to have seen in regard to the
15 shooting?
16          MS. BAUMGARTNER:  Okay.  You can't answer
17 that question as phrased, because it calls for
18 information protected by the attorney-client
19 privilege.  If you want to exclude any conversations
20 he's had with anybody from the city attorney's
21 office, you can answer the question.
22 BY MR. BRUSTIN:
23     Q.   Other than conversations with any attorney
24 for the City, have you ever received any information
25 about what the victim claims to have seen?



1    A.   The most information I have received about
2    what the witness, not victim, may or may have not
3    seen came in the complaint that I received for this
4    case.
5    Q.   Okay.
6    A.   That's the first time I received any kind
7    of story.
8    Q.   Now, during the --
9         MS. BAUMGARTNER:  Are you doing okay or do
10   you need a break?
11   BY MR. BRUSTIN:
12   Q.   This is from Linda Allen's closing in the
13   second -- in the second trial, page 1145, line 26:
14        "So he went up to the window and he
15        looked, just to give you an idea of
16        whether or not there's obstructions,
17        and he took some measurements as well
18        to give you an idea of how far things
19        were.
20        But the point of going up to the
21        window is to show you that -- to show
22        you what Priscilla's vantage point was,
23        because if there is some giant pillar
24        in the way or building in the way and
25        she couldn't have seen what she saw,



1  BY MR. BRUSTIN:
2     Q.   Okay.  And at that meeting you had no
3  discussion about what the eyewitness said she saw
4  and from where she saw it?
5     A.   I didn't get any idea of what the witness
6  said she saw or didn't see really until receiving
7  your complaint.
8          MR. BRUSTIN:  Okay.  Let's mark this please
9  as exhibit?
10         THE REPORTER:  131.
11         MR. BRUSTIN:  131.
12            (Exhibit 131 marked)
13 BY MR. BRUSTIN:
14    Q.   Mr. Evans, I'm showing you a single-paged
15 document that's Bates stamped 3201.  This was also
16 part of another exhibit, but I'm showing it to you
17 separately.  I'll represent to you that these are
18 Michael Johnson's notes, according to his testimony,
19 from July 24th, '07, the day of after the murder.
20 Okay?
21    A.   I'm looking at what was handed to me.
22    Q.   Okay.  And you see the first line it says
23 "CSI," right?
24    A.   I see handwritten notes "CSI."
25    Q.   And that's where you worked, right?

```
 1              CERTIFICATE OF REPORTER
 2              I, MICHELLE L. ARCHULETTA, a Shorthand
 3   Reporter, State of California, do hereby certify
 4   that the witness in the foregoing deposition was
 5   present and by me sworn as a witness in the
 6   above-entitled action at the time and place therein
 7   specified;
 8              That said deposition was taken before me
 9   at said time and place, and was taken down in
10   shorthand by me, a Certified Shorthand Reporter of
11   the State of California, and was thereafter
12   transcribed into typewriting, and that the foregoing
13   transcript constitutes a full, true, and correct
14   report of said deposition and of the proceedings
15   that took place;
16              That before completion of the proceedings,
17   the witness has requested review pursuant to Rule
18   30(e)(2).
19              IN WITNESS WHEREOF, I have subscribed my
20   name.
21
22              DATED:  June 16, 2017.
23
24                      
                        _____
25                      MICHELLE L. ARCHULETTA
                        CSR No. 11028
```