DENNIS J. HERRERA, City Attorney
CHERYL ADAMS, State Bar #164194
Chief Trial Deputy
MARGARET W. BAUMGARTNER, State Bar #151762
RENÉE L. ROSENBLIT, State Bar #304983
KELLY COLLINS, State Bar #277988
Deputy City Attorneys
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:  (415) 554-3859 [Baumgartner]
Telephone:  (415) 554-3853 [Rosenblit]
Telephone:  (415) 554-3914 [Collins]
Facsimile:  (415) 554-3837
E-Mail:  margaret.baumgartner@sfcityatty.org
E-Mail:  renee.rosenblit@sfcityatty.org
E-Mail:  kelly.collins@sfcityatty.org

Attorneys for Defendants
MAUREEN D'AMICO, JOHN EVANS,
MICHAEL JOHNSON, CARLA LEE,
ROBERT MCMILLAN and RONAN SHOULDICE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMAL RASHID TRULOVE,<br><br>    Plaintiff,<br><br>vs.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO, ET AL.,<br><br>    Defendants. | Case No. 16-cv-00050-YGR<br><br>**DECLARATION OF MICHAEL JOHNSON IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:  February 27, 2018<br>Time:  2:00 p.m.<br>Place:  Courtroom 1, 4th Floor<br>  1301 Clay Street<br>  Oakland, CA<br><br>Trial Date:  March 5, 2018 |

I, Michael Johnson, declare as follows:

1. I am a retired homicide inspector from the San Francisco Police Department. I, along with my partner Maureen D'Amico, investigated the July 2007 murder of Seu Kuka. I have personal knowledge of the facts contained herein, except for those facts stated on information and belief,

1. and as to those facts I believe them to be true. If called upon to testify, I could and would testify competently hereto.

2. In July 2007, I was 5'9" and weighed about 170 lbs. I was 55 years old. When I responded to homicide scenes, even in the middle of the night, I always wore a suit. I carried my star in my coat pocket, not around my neck. I do not believe that the word "scruffy" would apply to me.

3. On the night of the murder I did not walk through Ingleside Station with a clipboard. I did not walk through Ingleside Station with Officer Carla Lee. When I walked through Ingleside Station with the homicide witness Priscilla Lualemaga, I did not say the word "Trulove" or otherwise suggest to the witness the name of a person who might be involved in the Kuka murder. The only time that I remember walking through the station with Ms. Lualemaga, I was with Inspector D'Amico.

4. Until I learned about the statement made by Oliver Barcenas, I never heard that on the night of the murder that anyone had questioned Ms. Lualemaga about a person named Trulove, or that she denied knowing the name Trulove. She never informed me of any interaction with any other plain-clothes police officer. I believed that when she picked Jamal Trulove out of the photo lineup, she did so honestly and competently. I certainly never engaged in any identification process that I believed could be abusive or coercive or lead to a false identification.

5. I do not believe that I misrepresented any of Ms. Lualemaga's statements, but if I did, I did not do so intentionally.

6. When I interviewed Latisha Meadows-Dickerson, I did not give her information about the Kuka murder before I took her recorded statement. I had no intention of engaging in an identification procedure that would lead to a false identification, nor do I believe that I engaged in any identification procedure that was abusive or coercive. Ms. Meadows-Dickerson had identified Jamal Trulove by name before I showed her the photo array. I believed Ms. Meadows-Dickerson when she said that she saw Jamal Trulove shoot Seu Kuka. I do not believe that I ever misrepresented Ms. Meadows-Dickerson's statement, but if I did, I did not do so intentionally.

7. I turned over to the District Attorney's office all of my files, notes and documents related to this matter. I did not intentionally hide any information I thought could be pertinent to the investigation or prosecution of the Kuka murder.

8. The crime scene log shows that I arrived at the homicide scene at 12:13 a.m. on the morning of July 24, 2007, and that I left at 12:53 a.m. That is consistent with my memory. Maureen D'Amico and I went directly the Ingleside Station from the homicide scene, which is less than a 10 minute drive. We were at Ingleside Station for approximately 60 to 90 minutes.

9. I have seen a photograph of ▓▓▓▓▓▓▓. He did not match the description given by Ms. Lualemaga. He has much darker skin than Jamal Trulove and is about 5'10" tall, which is shorter than Joshua Bradley, and his DMV photo indicates that he was 22 years old at the time of the murder.

10. Attached hereto as **Exhibit A** is the audio recording of my interview with David Trulove on August 9, 2007 and **Exhibit B** is a transcript of that interview. In it, David Trulove denies having been present in the Sunnydale at the time of the Seu Kuka murder, and did not know the name of the shooter, simply saying he had heard it was a black guy who came around the corner and started shooting.

11. I never entered into any agreement, express or implied, to violate the constitutional rights of any suspect in this case, including Jamal Trulove. I certainly never intended to enter into any such agreement.

I declare under penalty of perjury under the laws of the State of California that the preceding declaration is true and correct.

Dated: January __, 2018 in San Francisco, California.

_____
MICHAEL JOHNSON

**<u>ATTESTATION LANGUAGE</u>**

I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/S/) within this e-filed document.


                                      */s/ Margaret W. Baumgartner*
                                      MARGARET W. BAUMGARTNER