Nick J. Brustin, NY Bar No. 2844405
  Email:  nick@nsbcivilrights.com
Anna Benvenutti Hoffmann, NY Bar No. 4412011
  Email:  anna@nsbcivilrights.com
Meghna Philip, NY Bar No. 5527148
  Email: meghna@nsbcivilrights.com
NEUFELD SCHECK AND BRUSTIN, LLP
99 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 965-9081
Facsimile: (212) 965-9084

Kate Chatfield, State Bar No. 245403
  Email:  klchatfield@usfca.edu
  Telephone: 415-422-4385
Alex Reisman, State Bar No. 45813
  Email: areisman@msn.com
  Telephone: 415-608-0240
P.O. Box 10
Brisbane, CA 94005

Attorneys for Plaintiff
JAMAL RASHID TRULOVE


DENNIS J. HERRERA, City Attorney
CHERYL ADAMS, State Bar #164194
Chief Trial Deputy
MARGARET W. BAUMGARTNER, State Bar #151762
RENÉE E. ROSENBLIT, State Bar #304983
KELLY COLLINS, State Bar #277988
Deputy City Attorneys
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-3859 [Baumgartner]
Telephone: (415) 554-3853 [Rosenblit]
Telephone:     (415) 554-3914 [Collins]
Facsimile:     (415) 554-3837
E-Mail:     margaret.baumgartner@sfcityatty.org
E-Mail:     renee.rosenblit@sfcityatty.org
E-Mail:     kelly.collins@sfcityatty.org


Attorneys for Defendants
MAUREEN D'AMICO, JOHN EVANS,
MICHAEL JOHNSON, CARLA LEE,
ROBERT MCMILLAN, and
RONAN SHOULDICE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMAL RASHID TRULOVE, | Case No. 16-cv-00050-YGR |
| Plaintiff, | **PROPOSED JOINT JURY INSTRUCTIONS** |
| vs. | |
| THE CITY AND COUNTY OF SAN FRANCISCO, ET AL., | Trial Date:        March 12, 2018 |
| Defendants. | |

### INDEX

| JURY INSTRUCTION | STIPULATION OR OBJECT TO INSTRUCTION | COMPETING INSTRUCTION(S) PREFERRED ON GIVEN TOPIC |
|---|---|---|
| 1.1B Cover Sheet | Stipulation | |
| 1.2 Duty Of Jury (Court Reads and Provides Written Instructions at The Beginning Of Trial) | Stipulation | |
| 1.3 Duty of Jury (Court Reads Instructions at The Beginning of Trial But Does Not Provide Written Copies) | Stipulation | |
| 1.4 Duty of Jury (Court Reads and Provides Written Instructions at End Of Case) | Stipulation | |
| 1.5 Claims And Defenses | Disputed | |
| 1.6 Burden of Proof—Preponderance of the Evidence | Stipulation | |
| 1.8 Two Or More Parties—Different Legal Rights | Stipulation | |
| 1.9 What is Evidence | Stipulation | |
| 1.10 What is Not Evidence | Stipulation | |
| 1.11 Evidence for Limited Purpose | Stipulation | |
| 1.12 Direct and Circumstantial Evidence | Stipulation | |

| | | |
|---|---|---|
| 1.13 Ruling on Objections | Stipulation | |
| 1.14 Credibility of Witnesses | Disputed | |
| 1.15 Conduct of the Jury | Stipulation | |
| 1.16 Publicity During Trial | Stipulation | |
| 1.17 No Transcript Available to Jury | Stipulation | |
| 1.18 Taking Notes | Stipulation | |
| 1.19 Questions to Witnesses By Jurors | Stipulation | |
| 1.20 Bench Conferences and Recesses | Stipulation | |
| 1.21  Outline of Trial | Stipulation | |
| 2.2  Stipulations of Fact | Stipulation | |
| 2.3  Judicial Notice | Stipulation | |
| 2.4  Deposition in Lieu of Live Testimony | Stipulation | |
| 2.9  Impeachment Evidence—Witness | Stipulation | |
| 2.12 Use of Requests for Admission | Defendants Objects | |
| 2.13  Expert Opinion | Stipulation | |
| 2.14  Charts and Summaries Not Received in Evidence | Stipulation | |
| 2.15  Charts and Summaries Received in Evidence | Stipulation | |
| 2.16  Evidence in Electronic Format | Stipulation | |
| 3.1 Duty to Deliberate | Stipulation | |
| 3.2 Consideration Of Evidence—Conduct Of The Jury | Stipulation | |
| 3.3 Communication With Court | Stipulation | |
| Plaintiff's Instruction 5.1 And 5.2 - Damages—Proof | Defendants Object | Defendants' Instruction (Model Instruction) |
| Defendants' Instruction 5.1 And 5.2 - Damages—Proof | | Plaintiff's Instruction |
| 5.5  Punitive Damages | Stipulation, subject to ruling on bifurcation | |
| 5.6  Nominal Damages | Plaintiff Objects | |

| | | |
|---|---|---|
| Plaintiff's Instruction No. 1 (Overview And Section 1983 Claim Introductory Instruction) | Defendants Object | Defendants' Instruction No. 2 |
| Defendants' Instruction No. 2 (Overview and Section 1983 Claim Introductory Instruction) | Plaintiff Objects | Plaintiff's Instruction No. 1 |
| Plaintiff's Instruction No. 3 (Overview Of Specific Claims And Intent Standard) | Defendants Object | None |
| Agreed Instruction No. 4 (Causation) | Stipulated | |
| Plaintiff's Instruction No. 5 (General Introduction To Constitutional Claims) | Defendants Object | None |
| Revised Instruction 9.33 Particular Rights—Fourteenth Amendment—Due Process —Deliberate Fabrication Of Evidence | Based on Court's Order, Dkt. 218. Plaintiff requests modification; disputed. | None |
| Revised Instruction 9.33 Particular Rights—Fourteenth Amendment—Due Process —Failure To Disclose Exculpatory Or Impeachment Evidence | Based on Court's Order, Dkt. 218 | None |
| Plaintiff's Instruction No. 11 (*Tatum v. Moody* – Failure To Disclose) | Defendants Object | None |
| Plaintiff's Instruction No. 12 (Malicious Prosecution) | Defendants Object | Defendants' Instruction No. 13 (Malicious Prosecution) |
| Revised Instruction Defendants' Instruction No. 13 (Malicious Prosecution) | Plaintiff Objects | Plaintiff's Instruction No. 12 (Malicious Prosecution) |
| Defendants' Instruction No. 14 (Malicious Prosecution Presumption Of Independence) | Plaintiff Objects | None |

| Plaintiff's Instruction No. 15 (Conspiracy) | Defendants Object | Defendants' Instruction No. 16 (Conspiracy) |
|---|---|---|
| Defendants' Instruction No. 16 (Conspiracy) | Plaintiff Objects | Plaintiff's Instruction No. 15 (Conspiracy) |
| Defendants' Instruction No. 19 (Qualified Immunity) | Plaintiff Objects | None |
| Plaintiff's Instruction (5th Amendment) | Defendants Object | None |

# I.        Instructions on Substantive Claims

The parties submitted Joint Proposed Jury Instructions on October 27, 2017. DE 200. The Court ruled on a limited portion of the proposed jury instructions and arguments related to the elements of two of the claims: fabrication and *Brady*. DE 218.  The parties' remaining arguments on the following substantive instructions remain to be resolved: Overview and § 1983 Claim Introductory Instruction, Overview of Specific Claims and Intent Standard, General Introduction to Constitutional Claims, *Tatum* Failure to Disclose Claim, Malicious Prosecution, Conspiracy, and Qualified Immunity.

In addition, the parties reserve the right to propose additional instructions tailored to the Court's rulings, such as, for example, particular limiting instructions based on the Court's rulings on motions *in limine* or, if applicable, following the Court's ruling on defendants' motion for summary judgment.

## a.  Plaintiff's Requested Modification to Fabrication of Evidence Instruction

In addition, Plaintiff proposes the following clarifications/modifications to the Court's fabrication of evidence instruction, which Plaintiff contends is necessary to "fairly and adequately cover the issues presented" and not "mislead" the jury about the governing law. *See Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th Cir. 2001).

**First:**

Plaintiff suggests the addition of the following line: "Intentionally engaging in suggestive behavior prior to or during an identification procedure is an example of an investigative technique that is so coercive and/or abusive that a defendant should have known it would yield false information."

**Sources**:  *Brewster v. Shasta County*, 27 Fed. Appx. 908, 912–13 (9th Cir. 2001) ("It is clearly established that a suggestive procedure intended to produce a false identification would violate [an individual's] constitutional rights" and "intentionally engag[ing] in suggestive

behavior prior to and during [a] photo array and [a] live lineup, leading to a false identification" constitutes such a suggestive procedure). *Brewster* applied the *Devereaux* standard to find a constitutional violation where "the detectives used suggestive procedures with the intent of obtaining an identification of [the plaintiff], irrespective of whether he was in fact guilty." *See Good v. Curtis*, 601 F.3d 393, 399 (5th Cir. 2010) (finding sufficient allegation of unlawful suggestive identification procedures where officer artificially manipulated plaintiff's photograph to conform to the composite sketch and description of assailant, and then obtained a false identification that was used to wrongfully convict the plaintiff); *Simmons v. United States*, 390 U.S. 377, 384 (1968) (holding that a single photo show-up procedure can be "so impermissibly suggestive" that the use of the resulting identification would violate due process); *Grant v. City of Long Beach*, 315 F.3d 1081, 1086 (9th Cir. 2002), *opinion amended on denial of reh'g,* 334 F.3d 795 (9th Cir. 2003); *Dang v. Cross*, 422 F.3d 800, 804–06 (9th Cir. 2005) ("[A] party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence."; "Incomplete instructions are treated as legal errors and reviewed de novo as well." *Gantt v. City of Los Angeles*, 717 F.3d 702, 706 (9th Cir. 2013) ("[J]ury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading.") (internal quotation omitted). *Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th Cir. 2001) ("In evaluating jury instructions, prejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was [not] fairly and correctly covered.") (alteration in original; internal quotation marks and citations omitted).

**Second:**

In the Court's proposed instruction, the second element is that "[t]he deliberately fabricated false evidence caused Jamal Trulove to be *convicted*." DE 218 at 2 (emphasis added). Plaintiff

believes the correct construction is that "[t]he deliberately fabricated false evidence caused Jamal

Trulove to be *detained*" or "[t]he deliberately fabricated false evidence caused Jamal Trulove to be

*deprived of his liberty*."

**Sources:** Plaintiff's proposed language stems directly from *Spencer v. Peters*, 857 F.3d 789,

798 (9th Cir. 2017) ("To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that

(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the

plaintiff's *deprivation of liberty*.") (emphasis added). Moreover, the distinction is significant, as the

Court's construction suggests Mr. Trulove's damages would only begin at the time of his wrongful

conviction, whereas Plaintiff has evidence the fabrication caused his wrongful pretrial detention as

well. *See, e.g., Black v. Montgomery Cty.*, 835 F.3d 358, 369–72 (3d Cir. 2016), as amended (Sept. 16,

2016) ("Consistent with other Courts of Appeals that have considered this question, as well as our

reasoning in *Halsey*, we now hold that such a stand-alone fabrication of evidence claim can proceed if

there is no conviction.") (collecting cases); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000); *Ricciuti v.*

*N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997).

### b.    Plaintiff's Proposed Fifth Amendment Right Instruction

Plaintiff also proposes the following instruction, based on the Ninth Circuit Model Criminal

Instructions 1.2, 3.3, and 3.4:

During Mr. Trulove's criminal case, he had a constitutional right not to testify. In arriving at

your verdict, the law prohibits you from considering in any manner than Mr. Trulove did not testify in

his criminal case. *See* Ninth Circuit Model Criminal Instruction 3.3, 3.4. Mr. Trulove had the right, in

his criminal case, to remain silent, and never had to prove innocence or to present any evidence. *See*

Ninth Circuit Model Criminal Instruction 1.2.

**Defendants' Objections:**

Plaintiff did not provide these jury instructions to defendants until late Wednesday night, did not properly meet and confer, and submitted them at a time when defendants do not have a sufficient opportunity to research them. Plaintiff could have, and should have, raised these issues during the procedure for deciding the jury instructions. The parties have already litigated the issue of the jury instructions, and preserved their objections regarding them.

As to the first: Defendants object that this additional sentence is unnecessary, confusing, misleading, and unfairly prejudicial to the defendants, and it invades the province of the jury. The jury instruction already reads that using "investigative techniques that were so coercive and abusive that he or she knew, or was deliberately indifferent, that those techniques would yield false information" is one of the ways to prove fabrication. The addition of this new sentence is unnecessary and confusing. Plaintiff may introduce evidence through expert witness(es) about what constitutes an abusive or coercive investigative technique, and may argue to the jury, but it is up to the jury to determine whether the defendants engaged in such misconduct. Further, "suggestive behavior" is not defined, and therefore, this statement is confusing, misleading, and unfairly prejudicial.

As to the second: The Court already ruled on this language. Plaintiff did not propose this new language to the defendants until February 7, 2018.

With regard to plaintiff's Fifth Amendment instruction, to the extent that the Court decides to give one, it should read:

The Fifth Amendment gives plaintiff the right not to testify at his criminal proceeding. You cannot infer guilt from plaintiff's decision to exercise of his Fifth Amendment right.

*See e.g., U.S. v. Walker*, 508 Fed.Appx. 687, 698 (9th Cir. 2013) (approving instruction that exercise of Fifth Amendment right could not be used to infer guilt.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiff's Response**: Plaintiff's counsel has discussed the substance of these proposed modifications with defense counsel on several occasions over the last several weeks. Defense counsel has always indicated Defendants would object to any proposed modifications to the jury instructions at this point. Given the flurry of activity caused by the simultaneous briefing of summary judgment and pretrial filings, both sides have exchanged drafts of some of their portions of the trial readiness binder shortly before the deadline to submit them to the Court.

## 1.20 BENCH CONFERENCES AND RECESSES

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.


*Source*:  9th Circuit Model Jury Instructions.

*Date submitted*:  February 8, 2018

**1.21  OUTLINE OF TRIAL**

Trials proceed in the following way:  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine.  Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

*Source*:  9th Circuit Model Jury Instructions.

*Date submitted*:  February 8, 2018

## 2.2  STIPULATIONS OF FACT

The parties have agreed to certain facts that will be read to you.  You must therefore treat these facts as having been proved.

*Source*:  9th Circuit Model Jury Instructions.

*Date submitted*:  February 8, 2018

## 2.3  JUDICIAL NOTICE

The court has decided to accept as proved the fact that [*state fact*].  You must accept this fact as true.

*Source*:  9th Circuit Model Jury Instructions.

*Date submitted*:  February 8, 2018

## 2.4  DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

You have heard deposition testimony.  Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

*Source*:  9th Circuit Model Jury Instructions, as modified.

*Date submitted*:  February 8, 2018

1

## 2.9  IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness has been convicted of a crime or lied under oath on a prior

occasion may be considered, along with all other evidence, in deciding whether or not to believe the

witness and how much weight to give to the testimony of the witness and for no other purpose.


*Source*:  9th Circuit Model Jury Instructions.

*Date submitted*:  February 8, 2018

## 2.12 USE OF REQUESTS FOR ADMISSION

Evidence [will now be] [was] presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

**Defendants' Objection:**  Plaintiff did not list in his discovery response designations a request for admission, and therefore this instruction is inapplicable.

## 2.13  EXPERT OPINION

You have heard testimony from experts who testified to opinions and the reasons for his or her opinions. This opinion testimony is allowed, because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

*Source*:  9th Circuit Model Jury Instructions.

*Date submitted*:  February 8, 2018

## 2.14  CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.


*Source*:  9th Circuit Model Jury Instructions.

*Date submitted*:  February 8, 2018

## 2.15  CHARTS AND SUMMARIES RECEIVED IN EVIDENCE

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the testimony or other admitted evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.


*Source*:  9th Circuit Model Jury Instructions.

*Date submitted*:  February 8, 2018

## 2.16  EVIDENCE IN ELECTRONIC FORMAT

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room.  A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits.  You will also be provided with a paper list of all exhibits received in evidence.  You may request a paper copy of any exhibit received in evidence by sending a note through the bailiff.  If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the bailiff, signed by your foreperson or by one or more members of the jury.  Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the bailiff present for the sole purpose of assuring that the only matter that is discussed is the technical problem.  When the court technician or any nonjuror is in the jury room, the jury shall not deliberate.  No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment.  Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case.  You may not use the computer for any other purpose.  At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material.  Do not attempt to alter the computer to obtain access to such materials.  If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such

materials.  Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.

*Source*:  9th Circuit Model Jury Instructions.

*Date submitted*:  February 8, 2018

**Plaintiff's Proposed Instruction**
**5.1 DAMAGES—PROOF**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff, you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. This does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the physical and mental aspects of injury, even if they are not easy to measure. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. You should consider the following:

Loss of liberty, for the period spent in wrongful confinement;

The loss of enjoyment of life experienced, and that with reasonable probability will be experienced in the future;

Physical harm or discomfort;

The mental and emotional pain and suffering experienced, and that with reasonable probability will be experienced in the future.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture. No evidence of the dollar value of these injuries has been or needs to be introduced. There is no exact standard for setting the damages to be awarded on account of such injuries. You are to determine an amount that will fairly compensate the Plaintiff for the injury he has sustained.

Date submitted:  February 8, 2018

*Source:* Ninth Circuit Model Instruction 5.2; *Kerman v. City of New York*, 374 F.3d 93, 125 (2d Cir. 2004); Federal Civil Jury Instructions for the Seventh Circuit § 7.26

**Defendants' Objection:** Defendants object to the addition of the following sentence:  "This does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the physical and mental aspects of injury, even if they are not easy to measure."  This sentence is not included in the Ninth Circuit Model Jury Instruction, and only one sentence later, the model instruction specifically lists what the jury may consider when awarding damages.  This additional sentence is unnecessary, redundant, and unfairly prejudicial to the defendants.

Defendants also object to plaintiff's proposed list of items to consider when awarding damages.  Several items are redundant and therefore are confusing, misleading, and unfairly prejudicial.  For example, "loss of liberty" and "loss of enjoyment of life" are redundant.  Listing it twice overemphasizes it, which is confusing, misleading, and unfairly prejudicial.  Defendants propose the language from the model instruction.

**Defendants' Instruction**
**5.1 AND 5.2 - DAMAGES—PROOF**

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff, you must determine the plaintiff's damages.  The plaintiff has the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant.  You should consider the following:

The nature and extent of the injuries;

The loss of enjoyment of life experienced;

The mental, physical, emotional pain and suffering experienced and that with reasonable probability will be experienced in the future;

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

*Source*:  9th Circuit Model Jury Instructions, as modified.

*Date submitted*:  February 8, 2018

### 5.5  PUNITIVE DAMAGES

If you find for the plaintiff, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff.

The plaintiff has the burden of proving by a preponderance of the evidence that punitive damages should be awarded and, if so, the amount of any such damages.

You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct, including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case. You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case.

In addition, you may consider the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff.

Punitive damages may not be awarded against [*specify defendant*.]  You may impose punitive damages against one or more of the defendants and not others, and may award different amounts against different defendants.  Punitive damages may be awarded even if you award plaintiff only nominal, and not compensatory, damages.

*Source*:  9th Circuit Model Jury Instructions.

*Date submitted*:  February 8, 2018

**Defendants' position**:  Defendants submit this jury instruction subject to their motion in *limine* to bifurcate liability and punitive damages.

## 5.6  NOMINAL DAMAGES

The law that applies to this case authorizes an award of nominal damages.  If you find for the plaintiff but you find that the plaintiff has failed to prove damages as defined in these instructions, you must award nominal damages.  Nominal damages may not exceed one dollar.

*Source*:  9th Circuit Model Jury Instructions.

*Date submitted*:  February 8, 2018

**Plaintiff's Objection:** An instruction on nominal damages is inappropriate and unnecessary in this case. *See* Smith v. Wade, 461 U.S. 30, 52 (1983) (In a § 1983 case, "compensatory damages … are mandatory; once liability is found, the jury is required to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss."); Hazle v. Crofoot, 727 F.3d 983, 992–93 (9th Cir. 2013) ("[W]here the plaintiff was indisputably deprived of his liberty, and the conduct of the defendant responsible for the deprivation was found to be unlawful…the plaintiff is entitled to compensatory, not merely nominal, damages.") (citing Kerman v. City of New York, 374 F.3d 93, 124–25 (2d Cir. 2004)).

**Plaintiff's Instruction No. 1 (Overview and Section 1983 Claim Introductory Instruction)**

The claims in this case arise out of the prosecution and conviction of Plaintiff Jamal Trulove for the 2007 murder of Seu Kuka.

Mr. Trulove was charged with the Kuka murder on October 29, 2008. He was convicted on February 9, 2010. On October 15, 2010, he was sentenced to 50 years-to-life in prison. He spent over six years imprisoned.

The California Court of Appeal ultimately reversed Mr. Trulove's conviction. At his retrial in March 2015, the jury acquitted Mr. Trulove of all charges against him.

Mr. Trulove now brings this suit alleging that Defendants Inspectors Maureen D'Amico, Michael Johnson, and Robert McMillian, and Sgt. Carla Hurley and Officer John Evans have violated his constitutional rights, causing his wrongful imprisonment.

Mr. Trulove's brings his claims under a federal statute, 42 U.S.C. § 1983, which protects the civil rights of all people within the United States. Specifically, § 1983 permits an individual to sue a government official who violates his or her constitutional rights. Mr. Trulove claims that while Defendants were acting as San Francisco Police Department officers, they deprived him of his rights to due process, to a fair trial, and to not be wrongly prosecuted. Defendants deny these claims.

*Date submitted*:  October 27, 2018

*Sources: See* Ninth Circuit Model Civil Jury Instructions, Sections 9.1-9.2, available at http://www3.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2017_7.pdf; Long v. Cnty. of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006) ("To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of

State law.") (citing West v. Atkins, 487, U.S. 42, 48 (1988)). In order to be individually liable under § 1983, an individual must personally participate in an alleged rights deprivation. Avalos v. Baca, 596 F.3d 583, 587 (9th Cir. 2010).

**Defendants' Objection**: An overview of claims should be a neutral, non-argumentative statement regarding the legal positions of the parties. Defendants' statement also uses the active, rather than the passive, voice, which more accurately describes the source of liability as to these defendants. The statement provided by defendants states simply what plaintiff claims and the names of the parties. Plaintiff's statement, on the other hand, includes facts designed to sway the jury, such as the length of his sentence and time of imprisonment, which arguments relate to damages. The fact of his conviction already is included in the overview.

Moreover, if the court includes additional facts other than the conviction, reversal and new trial, the court should include the basis that the Court of Appeal overturned the verdict: ineffective assistance of counsel. Otherwise, the fact of the reversal implies that the Appellate Court based its decision on the same claims as plaintiff brings here, which is not correct.

Additionally, plaintiff's overview uses the phrase "due process" and "fair trial" separately, yet excludes the actual constitutional provisions at issue in this case: The 14th Amendment's right to substantive due process, the right to procedural due process, and the 4th Amendment right against unreasonable searches and seizures. Whether or not the trial was "fair" is a Fifth Amendment right, and plaintiff do not bring a fair trial claim here.

To the extent that the court is inclined to set forth plaintiff claims in more detail, the court should instruct the jury that the claims are: a 14th Amendment substantive due process claim, a 14th Amendment procedural due process claim, and a 4th Amendment malicious prosecution claim.

Lastly, the instructions should be consistent with regard to reference to the parties. Either they should consistently reference "plaintiff" and "defendants" or they should reference the parties by name.

**Defendants' Instruction No. 2 (Overview and Section 1983 Claim Introductory Instruction)**

Plaintiff Jamal Trulove's claims arise out of his prosecution and conviction for the 2007 murder of Seu Kuka. In October 2010, a jury convicted him of the murder. In 2013, the Court of Appeal granted him a new trial. At his retrial in March 2015, a jury acquitted him of all charges against him.

Plaintiff claims that defendants Inspectors Maureen D'Amico, Michael Johnson, and Robert McMillian, and Sgt. Carla Hurley and Officer John Evans all violated his constitutional rights causing him to be wrongfully imprisoned. Defendants deny these claims.

The plaintiff brings his claims under the federal statute, 42 U.S.C. § 1983, which provides that any person or persons who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party. Plaintiff makes three separate constitutional claims, two under the 14th Amendment and one under the 4th Amendment, as explained in later instructions.

*Date submitted*:  October 27, 2018

*Source*: Ninth Circuit Model Jury Instruction

**Plaintiff's Objection**: In general, Plaintiff's following proposed instructions attempt to communicate to the jury, in the clearest and plainest terms possible, the findings it must make as based on the governing law. Plaintiff seeks to eliminate concepts and terminology that are immaterial to the issues before the jury, and would be extraneous or confusing to laypeople. Defendants' proposed instructions are littered with such language. Defendants have also used their jury instruction objections as a preview of their summary judgment arguments. Plaintiff understood the Court's order requesting joint submissions of jury instructions to pertain to the elements of each of the jury charges in this case. Plaintiff does not understand this filing to be the proper forum to litigate arguments going to the merits of his claim, or whether the facts alleged in this case meet the threshold for these claims. Plaintiff

therefore does not respond to Defendants' substantive arguments regarding, for example, absolute immunity, statutes of limitation, and whether Plaintiff has sufficiently made out particular claims. However, Plaintiff in no way concedes any of these points. If we misunderstood the Court's request, we would be happy to provide additional briefing on these issues.

Plaintiff objects to Defendants' overview instruction on the basis that its description of Section 1983 claims uses unnecessarily legalistic language, which will confuse the jury. Plaintiff wishes to refer to Defendants' actions as violative of his constitutional rights, which is simpler and easier to understand than a "depriv[ation]…of any rights, privileges, or immunities secured by the Constitution or laws of the United States."

Furthermore, Plaintiff wishes to remove unnecessary references to elements which are not in dispute. It is not in dispute that Defendants in this case were acting under color of state law. The term "under color of state law" may also misleadingly imply, to a layperson, that the defendant had to have been acting lawfully. Therefore, Plaintiff has not included this element in his proposed instruction.

Finally, identifying the constitutional amendments to which Plaintiff's claims pertain is not necessary for the jury to decide the elements of a Section 1983 claim, and will be confusing to the jury. Plaintiff has explained his alleged constitutional violations in terms of their impact on his due process rights and his ability to obtain a fair trial, because this language is more accessible and meaningful to the jury than references to constitutional amendments. This is both reasonable and a correct statement of the law. Violating an individual's due process rights through a *Brady* violation or a fabrication of evidence can cause them to be deprived of a fair trial, and the Ninth Circuit has used the language of a "fair trial" in describing *Brady* and fabrication claims. See, e.g. Atkins v. County of Riverside, 151 Fed. Appx. 501, 503-04 ("The prosecution's failure to disclose material evidence favorable to the accused can violate the accused's due process right to a fair trial.").

**REVISED INSTRUCTION**

**Plaintiff's Instruction No. 3 (Overview of Specific Claims and Intent Standard)**

In this case, Mr. Trulove alleges that Defendants violated his constitutional rights in several ways. First, Mr. Trulove claims that Defendants Johnson, D'Amico, and McMillan, violated his right to due process and a fair trial by fabricating evidence against him, including by intentionally conducting unduly suggestive identification procedures that resulted in a false identification of Mr. Trulove.

Second, Mr. Trulove claims that Defendants Johnson, D'Amico, Evans, and McMillan suppressed exculpatory, or favorable, evidence, thereby depriving him of a fair trial.

Third, Mr. Trulove also brings a separate claim that Defendants Johnson, D'Amico, Evans, and McMillan, failed to disclose certain highly significant exculpatory evidence which led to Mr. Trulove's prolonged pretrial detention.

Fourth, Mr. Trulove claims that Defendants Johnson, D'Amico and McMillan maliciously caused claims to be prosecuted against him.

Fifth, Mr. Trulove claims that Defendants Johnson, D'Amico, Evans, McMillan, and Lee, conspired together to violate Mr. Trulove's constitutional rights to due process and a fair trial.

For each of Mr. Trulove's claims, he must show that the Defendants acted with at least deliberate indifference or reckless disregard for Mr. Trulove's rights. Deliberate indifference is a conscious choice to disregard the consequences of one's acts or omissions. Reckless disregard is a complete indifference to the plaintiff's rights, or action in the face of a perceived risk that the plaintiff's rights will be violated. Mr. Trulove does not need to show that Defendants intended to cause him harm or even that they knew harm would result.

*Date submitted*:  October 27, 2018; *modified* February 8, 2018.

*Sources:* Rosales-Martinez v. Palmer, 753 F.3d 890, 897 (9th Cir. 2014) ("A § 1983 plaintiff must show that police officers acted with deliberate indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence from prosecutors." (citing Tennison v. City and County of San Francisco, 570 F.3d 1078, 1089 (9th Cir. 2009)); Gantt v. City of Los Angeles, 717 F.3d 702, 707-09 (9th Cir. 2013) (approving jury instruction: "Deliberate indifference is the conscious or reckless disregard of the consequences of one's acts or omissions. It entails something more than negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." (internal citations omitted)); *Tatum v. Moody*, 768 F.3d 806, 821 (9th Cir. 2014) ("The jury here received an instruction fully consistent with the holding in Gantt… The instructions…[defined] 'deliberate indifference' as 'a conscious choice to disregard the consequences of one's acts or omissions,' and 'reckless disregard' as 'complete indifference to the plaintiff's rights' or action 'in the face of a perceived risk' that the plaintiff's rights will be violated.")

**Defendants' Objection**: Plaintiff's instruction setting forth his specific claims fails entirely to state the constitutional provisions that apply. Plaintiff's summary fails to include all of the elements of his claims, and this incomplete summary of the claim could confuse the jury. For example, plaintiff states that he claims that he sues certain defendants for "intentionally conducting unduly suggestive identification procedures" while the standard is actually that of a 14th Amendment substantive due process claim (egregious conduct that shocks the conscience), which could include utilizing identification procedures that are so abusive or coercive that the defendants intentionally or in reckless disregard of the possibility of a false identification. *Spencer v. Peters*, 857 F.3d 789, 801 (9th Cir. 2017) (discussing requirement of "shocks the conscience" standard for fabrication of evidence claim),

citing *Crowe v. County of San Diego*, 608 F.3d 406, 432–37 (9th Cir. 2010) (differentiating 4th Amendment and 14th Amendment claims); *Gantt v. City of L.A.*, 717 F.3d 702, 707 (9th Cir. 2013).

Plaintiff also states that he brings a "separate" claim under *Tatum v. Moody*, 768 F.3d 806 (9th Cir. 2014). Again, this is not a "separate" constitutional claim, but rather a means of proving a substantive due process claim under the 14th Amendment. *See Tatum*, 768 F.3d at 820 (setting forth "shocks the conscience" standard).

Also, by using the phrase "due process and a fair trial" plaintiff implies that these are separate claims and would include a Fifth Amendment claim. The instruction should accurately convey to the jury the constitutional claims at issue: A 14th Amendment substantive due process claim, a 14th Amendment procedural due process claim, and a 4th Amendment malicious prosecution claim.

This statement also fails to include the requirement that plaintiff prove causation as to each defendant.

Defendants include a separate instruction defining deliberate indifference, defining it as "the conscious or reckless disregard of the consequences of one's acts or omissions." This is the definition used by the Ninth Circuit Model Jury Instruction for fabrication of evidence. It is the first sentence in the instruction explicitly approved by the Ninth Circuit for a fabrication of evidence claim. The instruction approved by the Ninth Circuit read in its totality: "Deliberate indifference is the conscious or reckless disregard of the consequences of one's acts or omissions. It entails something more than negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Gantt v. County of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013).

Plaintiff's definition, which he includes in this introductory instruction, implies that there are two different standards, one for deliberate indifference and one for reckless disregard. But there is only one standard: that of deliberate indifference, which courts state includes the idea of "reckless

disregard." *See Gantt*, 717 F.3d at 707 (there is only one standard for a 14th Amendment claim, which is conduct that shocks the conscience, which can be satisfied with conduct that is deliberately indifferent to constitutional rights); *Tennison v. City and County of Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009) (interchanging "reckless indifference" with "reckless disregard.")

Plaintiff cites to *Tatum v. Moody*, 768 F.3d 806, 821 (9th Cir. 2014) as a basis for their proposed instruction. But *Tatum* was not a jury instruction case, unlike *Gantt*, and does not specifically analyze the language regarding deliberate indifference.

Lastly, plaintiff includes in their instruction the argument that "Mr. Trulove does not need to show that Defendants intended to cause him harm, or even that they knew harm would result." This sentence does not define deliberate indifference, and is merely argument not a necessary description of the standard. If the Court is inclined to include what is not deliberate indifference, the Court should also then include the second sentence of the instruction approved in *Gantt*, that "It entails something more than negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."

**Agreed[1] Instruction No. 4 (Causation)**

To find any defendant liable, plaintiff must prove by a preponderance of the evidence that that particular defendant's acts or failure to act was a substantial factor in depriving plaintiff of his particular rights under the United States Constitution, as explained in later instructions.  A substantial factor is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

*Date submitted*:  October 27, 2018

*Sources:* CACI 430, *Drumgold v. Callahan*, 707 F.3d 28, 49-51 (1st Cir. 2013), Ninth Circuit Model Jury Instruction 9.3, Section 1983 Claim Against Defendant in Individual Capacity

---

[1] Plaintiff agrees with Defendants on this instruction, but proposes referring to Mr. Trulove by name, rather than as "plaintiff".

**Plaintiff's Instruction No. 5 (General Introduction to Constitutional Claims)**

I will now instruct you on the law for Mr. Trulove's claims that Defendants violated his rights to due process and a fair trial. Mr. Trulove has asserted a number of theories of how Defendants violated these rights. He need not prove all of these theories. If you find that Mr. Trulove has proven any one of these theories, then he has established that his rights were violated, and you must determine the amount of damages he receives, as I will describe to you in the instruction on damages.

*Date submitted*:  October 27, 2018

**Defendant's Objection**: This instruction is duplicative of the introductory overview of claims instruction, and deletes the language the Ninth Circuit Model Instructions include that plaintiff must prove each element. Also, it implies to the jury that the damages under any of plaintiff's theories of liability are the same, but those damages depend on the particular harm.

To the extent that the court is inclined to give an introductory instruction, it should be included in the overview instruction, not as a separate instruction.

Also, as argued earlier, plaintiff misstates the actual claim and the source of his rights. He sues for violations of the 14th and 4th Amendment, not for "due process and a fair trial."

**REVISED INSTRUCTION**

**9.33 PARTICULAR RIGHTS—FOURTEENTH AMENDMENT—DUE PROCESS**
**—DELIBERATE FABRICATION OF EVIDENCE**

To prove his fabrication of evidence claim against Inspectors D'Amico, Johnson, and McMillian, Jamal Trulove must prove, by a preponderance of the evidence, the following two elements:

(1) That the defendant deliberately fabricated evidence, by any one of the following three bases:

(A) That the defendant deliberately reported something he or she knew not to be true, or deliberately mischaracterized a witness statement, that caused Jamal Trulove to be convicted;

OR

(B) That the defendant continued the investigation of Jamal Trulove even though he or she knew that Jamal Trulove was innocent, or was deliberately indifferent to his innocence;

OR

(C) That the defendant used investigative techniques that were so coercive and abusive that he or she knew, or was deliberately indifferent, that those techniques would yield false information.

"Deliberate indifference" is the conscious or reckless disregard of the consequences of one's acts or omissions.

(2) The deliberately fabricated false evidence caused Jamal Trulove to be convicted.

*Date submitted*:  October 27, 2017, ECF No. 200.

*Date revised:*  February 8, 2018.

*Source*:  ECF No. 218.

**REVISED INSTRUCTION**

**9.33 PARTICULAR RIGHTS—FOURTEENTH AMENDMENT—DUE PROCESS —FAILURE TO DISCLOSE EXCULPATORY OR IMPEACHMENT EVIDENCE**

Due process provides a procedural right to a fair trial.  Plaintiff alleges that Inspectors Johnson, D'Amico, McMillan, and Evans violated his constitutional right to procedural due process by failing to disclose evidence to the prosecutor that the defendant knew was exculpatory or could be used for impeachment, causing plaintiff to be deprived of his liberty.  Specifically, plaintiff alleges that:

Inspectors Maureen D'Amico and Michael Johnson intentionally or recklessly failed to disclose to the prosecutor that an officer attempted to coerce the eyewitness to identify plaintiff as the murderer by pointing to a clipboard and saying "isn't it J Trulove."

Inspectors D'Amico and Johnson intentionally or recklessly failed to disclose to the prosecutor that they showed the eyewitness a single photograph of Jamal Trulove the day after the murder.

Inspectors Maureen D'Amico, Michael Johnson, and/or Officer John Evans intentionally or recklessly failed to disclose forensic evidence and failed to disclose a 2001 memo reflecting an informal study regarding the landing location of shell casings.

Inspectors D'Amico, Johnson, and/or McMillan intentionally or recklessly failed to disclose that the statement by Meadows was fabricated.

Inspectors D'Amico and Johnson intentionally or recklessly failed to disclose that a day or two after the shooting that the victim's brother told the officers that he had heard a rumor from an unidentified source that a person other than plaintiff committed the murder.

To prove this claim, plaintiff must prove that each defendant intentionally or recklessly failed to disclose information known to the defendant that was:

1.  Exculpatory or impeaching; and

2.  Material.

Evidence is not suppressed if Jamal Trulove or his defense counsel were otherwise aware of the evidence.

"Exculpatory" means evidence that tends to show that the accused is not guilty of the crime.

"Impeachment" evidence is information that tends to show a defect in the witness's perception, memory, narration, or truthfulness; evidence which suggests a motive to testify falsely; or evidence which demonstrates that the witness had an interest in the outcome.

Evidence is "material" if the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in verdict and would have altered the outcome.

If you find that plaintiff has proven each of these elements against a defendant, you should find that that defendant violated plaintiff's constitutional rights.  If you find that plaintiff did not prove each of these elements as to any defendant, then you should find that that defendant did not violate the plaintiff's constitutional rights.

*Date submitted*:  October 27, 2017, ECF No. 200.

*Date revised:* February 8, 2018.

*Source*:  ECF No. 218.  *See also, Kyles v. Whitley*, 514 U.S. 419 (1995); *Brady v. Maryland*, 373 U.S. 83 (1963); *Albright v. Oliver*, 510 U.S. 266 (1994); *Smith v. Almada*, 640 F.3d 931, 939 (9th Cir. 2011) (citing *Strickler v. Greene*, 527 U.S. 263 (1999)); *Rhoades v. Henry*, 598 F.3d 495, 502 (9th Cir. 2010) (evidence must be unavailable to plaintiff).

### Plaintiff's Instruction No. 11 (*Tatum v. Moody* – Failure to Disclose)[2]

Mr. Trulove also brings a separate claim that Defendants' failed to turn over certain highly significant exculpatory evidence led to Mr. Trulove's prolonged detention. Specifically, Mr. Trulove alleges that Defendants Johnson, D'Amico, and McMillan hid the improper means they used to obtain false identifications from Ms. Lualemaga and/or Ms. Meadows-Dickerson. Mr. Trulove also alleges that Defendants Johnson, D'Amico, and Evans suppressed evidence inconsistent with the account of the shooting in Ms. Lualemaga's testimony and Ms. Meadows-Dickerson's statement, specifically, shell casing evidence and an SFPD ballistic study.

In order to establish such a claim, Mr. Trulove must prove he was subjected to a detention of unusual length, and that this detention was a result of Defendants' failure to disclose highly significant exculpatory evidence to prosecutors. Mr. Trulove must also prove that the officers acted with deliberate indifference or reckless disregard, as I described to you previously.

*Date submitted:* October 27, 2017.

*Sources*: *Tatum v. Moody*, 768 F.3d 806, 819-20 (9th Cir. 2014) (establishing a "narrow" constitutional rule for detentions of (1) unusual length, (2) caused by the investigating officers' failure to disclose highly significant exculpatory evidence to prosecutors, and (3) due to conduct that is culpable in that the officers understood the risks to the plaintiff's rights from withholding the information or were completely indifferent to those risks."); Dang v. Cross, 422 F.3d 800, 804–05 (9th Cir. 2005) ("[A] party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence.").

**Defendants' Objection**: A claim under *Tatum v. Moody* is the same as a *Brady* procedural due process claim under the 14th Amendment.  It is therefore not a "separate" claim, but rather an

---

[2] Defendants do not propose any instruction on the *Tatum* claim.

alternative means of proving harm from failure to disclose exculpatory or impeachment evidence. Instructing the jury on both a *Tatum* claim and a *Brady* claim will serve only to confuse the issues.

This is not a case, like in *Tatum*, where an officer obtained information after the initial arrest that negated probable cause, and failed to disclose it, and the prosecutor dismissed the case once the prosecutor obtained the information. Here, plaintiff was tried (twice). The evidence that plaintiff alleges the officers failed to disclose existed at the time of the arrest. Although a question exists as to when defendants' alleged obligation arose to provide the 2001 Shouldice memo, which plaintiff claims is *Brady* material, that is not the type of "highly exculpatory evidence" that resulted in his release.

This instruction also fails to give any guidance to the jury regarding what a detention "of unusual length" may be. Also, the Court should re-use the same definition of deliberate indifference.

**Plaintiff's Instruction No. 12 (Malicious Prosecution)**

Next, I will address Mr. Trulove's claim that Defendants wrongfully caused a criminal prosecution to be brought against him. This claim is also known as "malicious prosecution."

In order to establish such a claim, Mr. Trulove must prove (1) that Defendants wrongfully caused criminal charges to be filed against him; (2) that he was seized or detained against his will; (3) that the criminal proceeding ended in his favor; (4) that the action was brought without probable cause; and (5) that Defendants' actions were brought with bad faith.

As to the first element of this claim, although there is a presumption that prosecutors make independent decisions to file criminal charges, Mr. Trulove may prove Defendant officers are responsible for causing the charges to be filed if they improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that caused the charges to be filed.

As to the second element of this claim, if you find that Defendants' actions caused Mr. Trulove to be held in jail or prison, I instruct you that this element has been proven.

As to the third element of this claim, here, where the conviction was reversed and then Mr. Trulove was acquitted of all charges, I instruct you that the criminal proceeding ended in his favor; I instruct you that this element has been proven.

As to the fourth element of this claim: Probable cause exists when, under all of the circumstances known to the officers at the time, it is reasonable for an officer to conclude that there is a fair probability that the plaintiff had committed a crime. The defendant's subjective state of mind is irrelevant to determining whether probable cause existed; you must look at all the facts known to the officer and determine whether it was objectively reasonable to conclude Mr. Trulove was probably responsible for the murder. If you find that, under all of the known to the officers at the time, a reasonable police officer would not have concluded that there was a fair probability Mr. Trulove was responsible for Seu Kuka's homicide, this element is satisfied.

As to the fifth element of this claim: Mr. Trulove must prove that Defendants' actions in causing the criminal action to be wrongfully pursued against Mr. Trulove were initiated with malice, or in bad faith. Malice is not limited to actual hostility or ill will toward the plaintiff. If the defendant

had no substantial grounds for believing in the plaintiff's guilt, but, nevertheless, began proceedings against the plaintiff, it is logical to infer that the defendant's motive was improper or malicious. Also, if you find that a defendant deliberately lied, fabricated evidence, or suppressed material evidence, that may establish malice.

*Date submitted:* October 27, 2017.

*Sources*: *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066-67 (9th Cir. 2004) ("Malicious prosecution actions are not limited to suits against prosecutors but may be brought…against other persons who have wrongfully caused the charges to be filed… Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings. However, the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings.") (internal citations and quotation marks omitted); *Yousefian v. City of Glendale*, 779 F.3d 1010, 1015 (9th Cir. 2015) (To prove a § 1983 malicious prosecution claim, "in addition to showing that the defendants prosecuted him with malice and without probable cause, a plaintiff must demonstrate a Fourth Amendment seizure (or the violation of another such "explicit textual source of constitutional protection")) (citing *Albright v. Oliver*, 510 U.S. 266, 271–75 (1994); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)); *Manuel v. City of Joliet*, 137 S.Ct. 911, 918 (2017) (that pretrial detention resulting from legal process unsupported by probable cause violates the Fourth Amendment and can form the basis for a § 1983 claim); *see also Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 555–61 (4th Cir.

2017) (relying on *Manuel*, 137 S. Ct. 911, to hold that evidence that officers caused plaintiff to be detained pretrial and prosecuted without probable cause, and that the charges were ultimately terminated in plaintiff's favor, establishes a § 1983 malicious prosecution claim); *Karam v. City of Burbank*, 352 F.3d 1188, 1193 (9th Cir. 2003) ("[A] Fourth Amendment seizure occurs when a person is held in custody by arresting officers."); *Kelley v. City of Henderson*, No. 215CV02204APGVCF, 2017 WL 2802732, at *2 (D. Nev. June 27, 2017) ("For a § 1983 malicious prosecution claim, a plaintiff must allege that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right. Where, as here, claims are based on (1) a challenge to an arrest for lack of probable cause and (2) continued pre-trial incarceration without probable cause, the Fourth Amendment governs." (citing *Manuel*, 137 S. Ct. at 919–20 and *Freeman*, 68 F.3d at 1189)); *Willis v. City of Los Angeles*, 57 Fed.Appx. 283, 286–87 (9th Cir. 2002); *Greene v. Bank of America*, 216 Cal.App.4th 454, 464-65 (2013).

*See* Ninth Circuit Model Civil Jury Instructions, Sections 9.16, 9.23, on probable cause definition, available at http://www3.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2017_7.pdf.

**Defendants' Objection**: Plaintiff's instruction fails to inform the jury that this is a constitutional claim under the 4th Amendment. As the prior instructions reference constitutional claims, the failure to state the basis of the claim will confuse the jury.

The instruction is also overly-wordy, and hides the instruction regarding the presumption of independent prosecutorial discretion. The elements should simply be listed, and then defined, such as defendants proposed.

More specifically, the first paragraph is unnecessary, as the jury should already have been informed of the three claims.

The elements in the second paragraph do not accurate set forth the proof of the necessary elements. *See Allen v. County of Sonoma*, 2017 WL 3593340 (N.D. Cal. August 18, 2017). Plaintiff's

wordy statement about "improperly exerted pressure" is overly vague and does not assist the jury. The wrongfulness issue is addressed if plaintiff can prove facts sufficient to overcome the independence of the prosecutor, as set forth in defendants' separate instruction. As the parties do not dispute that plaintiff was arrested, charged, and convicted, then retried, there is no reason to instruct on the issue of whether he was seized or detained, or whether the criminal proceedings ended in his favor.

As to probable cause, that is a legal issue for the court. *Moore v. City of Oakland*, 242 F.Supp.3d 891 (N.D. Cal. 2017) (probable cause question of law for court; jury to decide questions of fact). To the extent that the court decides to submit the probable cause issue to the jury, the Ninth Circuit Model Jury Instruction 9.23 defines probable cause, and the court should use that instruction rather than the overly wordy confusing definition proposed by plaintiff. The Ninth Circuit instruction reads: "Probable cause" exists when, under all of the circumstances known to the officer[s] at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime. Although the facts known to the officer are relevant to your inquiry, the officer's intent or motive is not relevant to your inquiry."

Plaintiff's paragraph regarding bad faith fails to accurately define malice for this purpose, and includes significant argument. It does not even include a definition of malice, but rather states what is not malice.

Also, as noted in *Manuel v. City of Joliet*, 137 S.Ct. 911 (2017), a 4th Amendment claim arises at the time of the initial detention. The statute of limitations would run two years from the time of the arrest. *See Wallace v. Kato*, 549 U.S. 384 (2007). The statute of limitations should thus bar this claim. However, that would be an issue for the court, and not the jury, and therefore the City has not included a specific instruction regarding the statute of limitations. The jury should also be made aware in the damages instructions that once a trial occurs, plaintiff no longer has a 4th Amendment claim.

Lastly, plaintiff includes the presumption regarding independent prosecutorial discretion only here, in malicious prosecution. But it is a general presumption, not limited to malicious prosecution. *See, e.g., Christensen v. Armstrong*, 473 Fed.Appx. 652, 653 (9th Cir. 2012).

**REVISED INSTRUCTION**

**Defendants' Instruction No. 13 (Malicious Prosecution)**

Plaintiff also claims that Inspectors Maureen D'Amico, Michael Johnson, and Robert McMillan violated his rights under the Fourth Amendment of the United States Constitution to be free from malicious prosecution. To prove his Fourth Amendment claim, plaintiff must prove by a preponderance of the evidence:

1. That no probable cause existed;

2. That the defendant caused plaintiff to be prosecuted or convicted;

3. That the defendant acted with malice; and

4. That the defendant did so to deprive plaintiff of his rights to equal protection [or another specific constitutional right].

"Probable cause" exists when, under all of the circumstances known to the defendant or defendants at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime. It is for the court to decide whether defendants had probable cause.  If there is a dispute of facts concerning this issue, you will be asked to decide what facts are true.

"Malice" means the doing of a wrongful act intentionally, without just cause or excuse, and with knowledge that it was wrong, and for the purpose of causing injury to another person.

If you find that plaintiff has proven each of these elements against a defendant, you should find that that defendant violated plaintiff's constitutional rights. If you find that plaintiff did not prove each of these elements as to any defendant, then you should find that that defendant did not violate the plaintiff's constitutional rights.

*Date submitted:* October 27, 2017.

*Date revised*:  February 8, 2018

*Sources: Allen v. County of Sonoma*, 2017 WL 3593340 (N.D. Cal. August 18, 2017); Ninth Circuit Model Jury Instruction 9.23 (definition of probable cause); CACI Instruction No. 1500;

*Moore v. City of Oakland*, 242 F.Supp.3d 891 (N.D. Cal. 2017) (probable cause question of law for court; jury to decide questions of fact); *Manuel v. City of Joliet*, 137 S.Ct. 911 (2017)

**Plaintiff's Objection**: Plaintiff again disputes the unnecessary and confusing reference to the Fourth Amendment. Furthermore, Defendants' instruction does not explain how the malicious prosecution claim applies to the conduct of the police officer defendants in this case. Plaintiff's instruction clearly explains how a police officer can be held liable for wrongfully causing charges to be filed, based on the elements articulated by the Ninth Circuit in *Awabdy*.

The reference, in Defendants' articulation of the elements of a malicious prosecution claim, to "equal protection [or another specific constitutional right]" is incorrect. Plaintiff does not bring his claim on an equal protection basis. Plaintiff's claim is brought on the basis of his involuntary seizure, as articulated in his proposed instruction. Where, as here, there is proof of a Fourth Amendment seizure, there is no need to prove intent to violate a different constitutional amendment. Furthermore, Defendants' statement, that "[i]t is for the court to decide whether defendants had probable cause," is an incorrect statement of the law. The case on which Defendants rely, *Moore v. City of Oakland*, cites to California state law in discussing that probable cause is a question for the court; this case is not controlling authority on the issue, and was decided in the context of a motion for summary judgment. 242 F. Supp. 3d 891, 905 (N.D. Cal. March 16, 2017) (citing *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 875 (1989)). In *Torres v. City of Los Angeles*, the Ninth Circuit determined that whether detectives had probable cause for an arrest in a § 1983 suit was a question for the jury, overturning a determination on summary judgment for improperly determining that a reasonable jury could not have concluded that detectives lacked probable cause to arrest Torres. 548 F.3d 1197, 1207 (9th Cir. 2008); *see also Halsey v. Pfeiffer*, 750 F.3d 273, 300 (3d Cir. 2014) ("It certainly is inappropriate for a court to grant a defendant officer's motion for summary judgment in a malicious prosecution case if there are underlying factual disputes bearing on the issue or if 'reasonable minds could differ' on whether he had probable cause for the institution of the criminal proceedings based on the information available to him."); *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) ("Where the question of whether an arresting officer had probable cause is predominantly factual in nature, as where there is a dispute as to

the pertinent events, the existence vel non of probable cause is to be decided by the jury."); *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017) (approving an underlying jury's finding regarding probable cause). This is consistent with the general role of the jury at trial: the Court instructs the jury on the law, and the jury finds the facts, and applies the law to the facts.

**Defendants' Instruction No. 14 (Malicious Prosecution Presumption of Independence)**[3]

The prosecutor is presumed to have exercised independent judgment in determining that probable cause exists. To rebut this presumption plaintiff must prove by a preponderance of the evidence that the defendant intentionally or recklessly made material omissions or gave false information to the prosecutor that caused the prosecutor to seek the arrest warrant and/or prosecute plaintiff. Plaintiff must present more evidence than his own testimony that the representations made by the defendants is false.

*Date submitted:* October 27, 2017.

*Sources*: *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir.1981), *cert. denied*, 459 U.S. 829; *Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir. 2004); *Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994) (must present more than plaintiff's own testimony that the representations are false).

**Plaintiff's Objection**: Plaintiff objects to Defendants' statement that he "must present more evidence than his own testimony that the representations made by the defendants is false." Plaintiff does not principally rely on his own testimony in proving the malicious prosecution claim in this case, and this instruction is therefore irrelevant and unnecessary. Furthermore, it is much clearer and more meaningful to the jury to provide this instruction in the context of the broader instruction on malicious prosecution, as it relates directly to the first causal element of the claim. Therefore, Plaintiff's instructions have placed a description of the presumption of independence, derived from the Ninth Circuit's language in Awabdy, within his malicious prosecution instruction.

---

[3] Plaintiff has included an instruction on the presumption of independence within his proposed malicious prosecution instruction.

**Plaintiff's Instruction No. 15 (Conspiracy)**

Next, I will instruct you on the law governing Mr. Trulove's claim that Defendants are liable for conspiracy.

A conspiracy is an agreement between two or more people to do something illegal. Mr. Trulove contends that the police officer Defendants agreed amongst themselves to deprive him of his constitutional rights to due process and a fair trial. An officer who conspired to deprive Mr. Trulove of his rights is liable for the acts of the people he conspired with.

To find a Defendant liable for conspiracy, you must find that Mr. Trulove has proved each of the following elements by a preponderance of the evidence:

(1) The Defendant agreed with one or more other Defendants to deprive Mr. Trulove of his constitutional rights.

(2) The Defendant or a co-conspirator engaged in at least one act in furtherance of the agreement to deprive Mr. Trulove of his right to due process and a fair trial.

(3) The act or acts taken in furtherance of the agreement caused a deprivation of Mr. Trulove's constitutional rights, such as a malicious prosecution, or fabrication of evidence, as previously discussed.

To prove the conspiracy, Mr. Trulove must show that the members of the conspiracy came to a mutual understanding to act in violation of his rights. Mr. Trulove need not show that the Defendants came to an explicit, oral or written, agreement to violate his rights. An implied agreement—an unspoken understanding among the co-conspirators—is sufficient. Mr. Trulove does not need to show direct evidence of the conspiracy, but can prove the existence of the conspiracy and Defendant's participation in it by circumstantial evidence.

In addition to the existence of an agreement, Mr. Trulove must show that one of the members of the conspiracy engaged in at least one act in furtherance of the conspiracy. In this case, this requirement is satisfied if you find that one or more of the Defendants fabricated evidence against Mr. Trulove, or suppressed favorable, material evidence from Mr. Trulove, or conducted an impermissibly suggestive identification procedure.

*Date submitted:* October 27, 2017.

*Sources*: "To establish the defendants' liability for a conspiracy, a plaintiff must demonstrate the existence of an agreement or 'meeting of the minds' to violate constitutional rights. The defendants must have, by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage. Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants. For example, a showing that the alleged conspirators have committed acts that are unlikely to have been undertaken without an agreement may allow a jury to infer the existence of a conspiracy. Whether defendants were involved in an unlawful conspiracy is generally a factual issue and should be resolved by the jury, so long as there is a possibility that the jury can infer from the circumstances that the alleged conspirators had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives. To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999) (internal citations and quotation marks omitted). "To be actionable, the conspiracy must result in overt acts, done in furtherance of the conspiracy, that are both the cause in fact and proximate cause of plaintiffs' injuries." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1990). An instruction that "In order to establish that a conspiracy existed, the plaintiffs must show that members of the conspiracy in some way or manner, or through some contrivance, positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan," was sufficient, especially in light of a cautionary wording that the "mere similarity of conduct among various persons and the fact that they may have associated with each other and may have assembled together and may have discussed some common aims and interests, is not

necessarily proof of the existence of a conspiracy." *Gilbrook v. City of Westminster*, 177 F.3d 839, 860 (9th Cir. 1999).

**Defendants' Objection**: Plaintiff again uses the phrase "due process and a fair trial," which does not accurately state the constitutional provisions at issue. Plaintiff also uses different words to describe the same concept, for example in his listing of elements, in one place he refers to "constitutional rights" while in another he refers to "right to due process and a fair trial." Lastly, the requirement of an act in furtherance of the conspiracy requires an "overt" act.

Plaintiff's statement regarding what plaintiff does not need to show, or that can be shown by circumstantial evidence, is argument. Additionally, plaintiff separates his claims (fabrication, suppression, or suggestive ID procedure), when those are not separate claims. Lastly, because plaintiff's *Brady* claim does not require any intent, it is incorrect to state that that if a *Brady* violation occurred, it is necessarily proof of an act in furtherance of the conspiracy.

Plaintiff's instruction also is missing the paragraph that sets forth the requirement of individual liability.

**Defendants' Instruction No. 16 (Conspiracy)**

To prove a conspiracy, plaintiff first must prove that:

1. He was deprived of a constitutional right, as defined above;

2. That a defendant came to an agreement with one or more other defendants to cause the constitutional violation;

3. That the defendant engaged in overt acts in furtherance of the conspiracy that resulted in the violation.

If you find that plaintiff has proven each of these elements against a defendant, you should find that that defendant violated plaintiff's constitutional rights. If you find that plaintiff did not prove each of these elements as to any defendant, then you should find that that defendant did not violate the plaintiff's constitutional rights.

*Date submitted:* October 27, 2017.

*Source: Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012)

**Plaintiff's Objection**: Plaintiff objects to this instruction, which misstates the law, is unclear, and is incomplete. It does not provide sufficient guidance on what it takes to prove an agreement, as explained in Plaintiff's proposed instruction. As stated, it suggests the requirement of an explicit written statement, which is not the law. "To establish the defendants' liability for a conspiracy, a plaintiff must demonstrate the existence of an agreement or 'meeting of the minds' to violate constitutional rights. The defendants must have, by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage. Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999) (internal citations and quotation marks omitted). The third element is misstated. In a conspiracy claim, one or more acts, completed by any of the members of the conspiracy, is sufficient to satisfy the overt act requirement. Defendants' instruction makes two errors: it suggests that each defendant must have committed multiple overt acts in furtherance of the conspiracy. See *U.S.*

1    *v. Avila*, No. 88-5420, 894 F.2d 410 (table) (9th Cir. 1990) ("The essential elements of conspiracy are

2    an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of

3    the illegal purpose…"). Furthermore, the use of the term overt is confusing and unnecessary.

**Defendants' Instruction No. 19 (Qualified Immunity)**

This instruction will depend on what facts are in dispute and how they would affect the defendants' entitlement to qualified immunity.

*Date submitted:* October 27, 2017.

*Source: See Morales v. Fry*, 2017 WL 4582732 (9th Cir. Oct. 16, 2017) (qualified immunity a legal question for the court, although factual questions should be submitted to the jury).

**Plaintiff's Objection**: Plaintiff objects to any instruction on the issue of qualified immunity. Whether qualified immunity applies to any of the Defendants in this case is a question for the Court. Morales, to which Defendants cite, itself states "the importance of deciding qualified immunity at the earliest possible stage in litigation…[which is] often possible because qualified immunity most often turns on legal determinations, not disputed facts." *Morales v.* Fry, 2017 WL 4582732 (9th Cir. Oct. 16, 2017). Morales was a use of force case, where there may more often be disputes of fact which must first be determined before the court can rule on qualified immunity. This is not the issue here. "Most issues of qualified immunity are resolved before trial, or the ultimate question of qualified immunity is reserved for the judge to be decided after trial based on the jury's resolution of the disputed facts." Id. at *5 (citing Ninth Circuit Model Civil Jury Instruction 9.34 (2017)). The Ninth Circuit has specifically held that the acts alleged in this case are not entitled to qualified immunity. *See Carrillo v. County of Los Angeles*, 798 F.3d 1210, 1225 (9th Cir. 2015) (holding that officers could not assert qualified immunity against allegations of the withholding of *Brady* evidence); *see also Spencer v. Peters*, No. C11-5424 BHS, 2014 WL 5652357 at *6-*7 (W.D. Wash. Oct. 15, 2013) (declining qualified immunity on claims of deliberately fabricated evidence).

**Plaintiff's Proposed Fifth Amendment Right Instruction**

Plaintiff also proposes the following instruction, based on the Ninth Circuit Model Criminal Instructions 1.2, 3.3, and 3.4:

During Mr. Trulove's criminal case, he had a constitutional right not to testify. In arriving at your verdict, the law prohibits you from considering in any manner than Mr. Trulove did not testify in his criminal case. *See* Ninth Circuit Model Criminal Instruction 3.3, 3.4. Mr. Trulove had the right, in his criminal case, to remain silent, and never had to prove innocence or to present any evidence. *See* Ninth Circuit Model Criminal Instruction 1.2.

**Defendants' Objection**:

Plaintiff did not provide these jury instructions to defendants until late Wednesday night, did not properly meet and confer, and submitted them at a time when defendants do not have a sufficient opportunity to research them.  Plaintiff could have, and should have, raised these issues during the procedure for deciding the jury instructions.  The parties have already litigated the issue of the jury instructions, and preserved their objections regarding them.

With regard to plaintiff's Fifth Amendment instruction, to the extent that the Court decides to give one, it should read:

The Fifth Amendment gives plaintiff the right not to testify at his criminal proceeding.  You cannot infer guilt from plaintiff's decision to exercise of his Fifth Amendment right.

*See e.g., U.S. v. Walker*, 508 Fed.Appx. 687, 698 (9th Cir. 2013) (approving instruction that exercise of Fifth Amendment right could not be used to infer guilt.)