UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAMAL RASHID TRULOVE**, <br> Plaintiff, <br> v. <br> **MAUREEN D'AMICO, MICHAEL JOHNSON, ROBERT MCMILLAN, JOHN EVANS, AND CARLA LEE,** *ET AL*, <br> Defendants. | **Case No. 16-cv-050 YGR** <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> Dkt. No. 233, 256 |

Plaintiff Jamal Trulove ("Trulove") brings this action against defendants Maureen D'Amico, Michael E. Johnson, Carla Lee, Robert T. McMillan, and John Evans (collectively, "defendants") for denial of his constitutional rights under 42 U.S.C. section 1983, alleging fabrication of evidence; failure to disclose exculpatory evidence resulting in his prosecution, conviction, and prolonged detention; malicious prosecution; and conspiracy. Defendants move for summary judgment on all claims on the grounds that Trulove lacks evidence to support one or more elements of each claim, that defendants are entitled to qualified immunity on each claims, and that the claim for malicious prosecution is barred by the applicable statute of limitations.

The Court has considered the papers and pleadings submitted in support of and in opposition to the motion, the admissible evidence,[1] and the arguments of the parties at the hearing on February 16, 2018. Based thereon, defendants' motion for summary judgment is **GRANTED IN PART** in favor of defendant Carla Lee, and **DENIED IN PART** as to all other defendants, for the reasons stated herein.

---

[1] Defendants object to the transcripts of unsworn statements of Latisha Meadows. Plaintiff objects to the reply evidence submitted by defendants in the form of excerpts of the deposition of Meadows, conducted after plaintiff's reply was filed and pursuant to this Court's Orders. (Dkt. No. 289, 293.) The Court **SUSTAINS** both objections, and has not considered either set of transcripts in connection with this motion. Defendants' request for judicial notice in connection with the motion (Dkt. No. 234) is **GRANTED**.

## I. BACKGROUND[2]

Shortly before 11:00 p.m. on July 23, 2007, Seu Kuka was shot from behind and killed on a sidewalk in front of 140 Blythedale Avenue in San Francisco's Sunnydale housing projects. Although there were as many as 25 people present at the scene of the crime, only one witness came forward at the time: Priscilla Lualemaga. Lualemaga gave defendant Carla Lee a description of the suspect as a black male in his thirties, wearing a black hooded sweat shirt and black jeans. Just after the shooting, Lualemaga was transported to Ingleside Police Station by officers Lee and Phillips. Lee placed Lualemaga in a room for two hours, and directed her to look over a bulletin board of photos of dozens of mugshots and identify anyone she recognized. While there was a photo of plaintiff Trulove on the wall, she did not identify him. She was able to identify one person as Joshua Bradley, the person Kuka was chasing when he was shot. There is conflicting evidence as to whether Lualemaga identified additional people, including plaintiff's brother David Trulove, from the photographs on the wall. It is undisputed that she did not identify Jamal Trulove's photo, which was directly adjacent to Joshua Bradley's.

Sometime around 1:00 a.m. on the night of the shooting, defendants Inspectors Johnson and D'Amico, took an audio-recorded statement from Lualemaga in which she told the inspectors about seeing Bradley's photo on the wall, and seeing the shooter in the neighborhood. She stated that she did not really get a look at the shooter, was "not sure" if the shooter hung around with Bradley, and she "[didn't] know [Bradley] at all…[didn't] even know his name." She described the shooter "lanky, skinny," "a little bit darker than Joshua," about the same age as Joshua, and having a "fade" haircut." Defendant D'Amico asked then Lualemaga "if we were able to identify the shooter, and . . . put his picture in a line up for you do you think you'd be able to pick him out?," to which Lualemaga replied, "I think so." She did not mention the name Trulove at that time.

The following afternoon of July 24, 2007, D'Amico went door-to-door in the Sunnydale neighborhood. She came to Lualemaga's door. The evidence is conflicting as to what D'Amico

---

[2] The facts stated in this section are undisputed unless otherwise noted.

2

showed Lualemaga. Luelemaga recalls D'Amico showing her a single photo of someone she did not recognize. D'Amico testified that she does not recall the photograph, but believes it would have been a photo of the victim, not a suspect.

On July 25, 2007, D'Amico and Johnson met Lualemaga and presented her with a six-person photo array. To create that photo array, Johnson had used a computer program to generate random arrays based on photos for Jamal Trulove, Joshua Bradley, David Trulove, and Israel Benson, and then selected photos from those to create his own array. The six photos in the array shown to Lualemaga included Joshua Bradley (who she had already identified from the photo wall), David Trulove, Jamal Trulove, and two others from the Sunnydale neighborhood. Johnson and D'Amico recorded some, but not all, of their conversation with Lualemaga. Lualemaga identified Joshua Bradley's photo as the person chased by Kuka, and then picked out Jamal Trulove's photo, stating that "he looks like the person that could have shot Seu [Kuka]" and "the shooter, I want to say it's him."

Trulove offers evidence, denied by defendants, that on the night of the murder a third party, Oliver Barcenas, witnessed an interaction in Ingleside Police Station in which an unidentified plainclothes police officer questioned a Samoan woman about the murder in his presence, while he was handcuffed to a bench in the police station. According Barcenas, with a second uniformed, female police officer standing by, the plainclothes officer pointed to a clipboard and asked the Samoan woman, "Are you sure it wasn't J__ Trulove?" Barcenas wasn't sure about the first name, but knew it started with a J. The Samoan woman responded, "No, I don't know," and plainclothes officer appeared frustrated.

On the night of the murder, defendant Evans, of the Crime Scene Investigations Unit, took photographs of the location of the shell casings at the scene. Evans created a report thereafter including a diagram of the casings relative to Kuka's body. The diagram showed the shell casings in a relatively straight line to the east and downhill of where Kuka's body was found.

Nearly ten months later, in June 2008, two officers, including defendant McMillan conducted a traffic stop. Latisha Meadows was a passenger in the car, and her husband was the driver. Also in the car were Meadows' father and her seven-year-old son. The officers found that Meadows had a stolen 9mm handgun in her pants, along with cocaine and heroin in the car.

3

Meadows' husband was on probation and had an active gun possession case. Meadows and her husband were handcuffed and taken to Bayview Police Station. Meadows stated that she witnessed a murder in the Sunnydale projects and that she could give a statement to the homicide detectives. While still in custody, several hours later, she gave a statement to defendants Johnson and McMillan. Some of the details of the statement matched those provided by Lualemaga, including that that Kuka knocked into the shooter just before the shooting happened, that Kuka was shot in the back, and the location of the shooter. However, the statement contradicted facts known to the officers about the shooting, including the time of day and how light it was outside. Meadows chose the same photo of Jamal Trulove out of the same six-photo array that Lualemaga had been shown. She was released from custody thereafter and not charged for any crimes in connection with the detention. Her husband was not prosecuted.

After this second identification, in August 2008, Johnson prepared an affidavit for an arrest warrant for Jamal Trulove. Trulove was arrested on October 27, 2008, and the prosecution then proceeded against him. At Trulove's preliminary hearing and trial, the prosecution based its entire case on Lualemaga's identification of him as the shooter and never called Meadows to testify at any proceeding against Trulove.

In 2010, a San Francisco Superior Court jury convicted Trulove of the murder of Seu Kuka. He was sentenced to a term of 50 years to life in prison. Trulove's conviction was reversed on appeal. The San Francisco District Attorney elected to retry the case in 2015. That second jury acquitted Trulove. Trulove spent six years in prison prior to his acquittal.

## II.   APPLICABLE LEGAL STANDARDS

### A.   Standards Applicable to Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

*Id.* 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A moving party defendant bears the burden of specifying the basis for the motion and the elements of the causes of action upon which the plaintiff will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the plaintiff to establish the existence of material fact. *Id.* A material fact is any factual issue that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In the summary judgment context, the court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If the plaintiff "produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by" defendants. *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1277 (9th Cir. 2017). "[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge." *George v. Edholm*, 752 F.3d 1206, 1214 (9th Cir. 2014) (alteration in original) (quotation omitted). Thus "where evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that issue is inappropriate for resolution on summary judgment." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (internal quotation mark omitted); *Santos v. Gates*, 287 F.3d 846, 852 (9th Cir. 2002) (same).

### B. Qualified Immunity Standard

Qualified immunity shields government officials from civil liability under section 1983. United States Supreme Court authority has established a two-part test to determine if a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). First, the court must determine "whether the facts, '[t]aken in the light most favorable to the party asserting the injury,' show that the officers violated a constitutional right." *George*, 752 F.3d at 1214 (quoting *Saucier,* 533 U.S. at 201). Second, the court must determine "whether federal rights asserted by [the] plaintiff were clearly established at the time of the alleged violation." *Id.* (internal quotation marks omitted). A

5

right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right" at the time of the events. *Sialoi v. City of San Diego*, 823 F.3d 1223, 1231 (9th Cir. 2016) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The qualified immunity inquiry "must be undertaken in [the] light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 201. Thus, a violation of clearly established law occurs when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1211 (9th Cir. 2008). The Supreme Court has cautioned courts "not to define clearly established law at a high level of generality." *Ashcroft v. al–Kidd,* 563 U.S. 731, 742 (2011). At the same time, "[f]or a legal principle to be clearly established, it is not necessary that 'the very action in question has previously been held unlawful,'" but rather that "'in the light of pre-existing law the unlawfulness [is] apparent.'" *Fogel v. Collins,* 531 F.3d 824, 833 (9th Cir.2008) (quoting *Anderson,* 483 U.S. at 640). Instead, at the time of the conduct, the "contours" of the constitutional right must be "sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al–Kidd,* 653 U.S. at 741 (quoting *Anderson,* 483 U.S. at 640); *see also Carrillo v. Cty. of Los Angeles*, 798 F.3d 1210, 1223–24 (9th Cir. 2015) (same).

On summary judgment as to qualified immunity, as in other contexts, the evidence is viewed in the light most favorable to the non-moving party. *See KRL v. Estate of Moore*, 512 F.3d 1184, 1189 (9th Cir. 2008) ("[w]here disputed facts exist, we assume that the version of the material facts asserted by Plaintiffs, as the non-moving party, is correct.") (citing *Jeffers v. Gomez,* 267 F.3d 895, 903 (9th Cir.2001)). "If a genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial." *Serrano v. Francis,* 345 F.3d 1071, 1077 (9th Cir. 2003); *see also Torres*, 548 F.3d at 1210. Where "unresolved issues of fact are also material to a proper determination of the reasonableness of the officers' belief in the legality of their actions," summary judgment should be denied. *Espinosa v. City & Cty. of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010).

## III. DISCUSSION

### A. Defendant Carla Lee

Having previously dismissed other claims, plaintiff now asserts a single claim for conspiracy against Lee. Based upon the evidence submitted by plaintiff, a reasonable jury could find that Lee: spoke to eyewitness Priscilla Lualemaga on the night of the murder; relayed a description of the shooter that Lualemaga provided; brought Lualemaga to the station to sit in the report writing room; asked Lualemaga if she could identify anyone, including the shooter, from the wall of photos of purported gang members in the room; did not document this interaction with Lualemaga; and was with defendant Johnson in the police station when he pointed to a photograph and asked Lualemaga "are you sure it wasn't Jamal Trulove?" Even assuming a jury were to find all these matters to be true, they are not sufficient to give rise to a plausible inference of Lee's knowledge and participation in an agreement to coerce Lualemaga to provide evidence about the identity of the shooter that was false or with reckless disregard of its falsity, or to suppress evidence regarding the falsity of her identification. Consequently, motion for summary judgment is **GRANTED** in favor Lee.

### B. Defendants Evans, McMillan, D'Amico, and Johnson

#### 1. *Fabrication of Evidence*

As to the claim for fabrication of evidence, there are triable issues of fact that preclude judgment in favor of defendants McMillan, D'Amico, and Johnson. A claim for fabrication of evidence requires plaintiff to show that the defendant deliberately fabricated evidence, and that this fabricated evidence caused plaintiff to be deprived of his liberty. *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017).[3] Deliberate fabrication of evidence may be shown by any of the

---

[3] The Court previously issued an order regarding the elements of a fabrication of evidence claim in connection with proposed jury instructions. (Dkt. No. 218.) The Court's formulation of the elements stated this second element as "[t]he deliberately fabricated evidence caused [plaintiff] to be ***convicted***." (*Id.*, emphasis supplied.) The proper formulation of this element, as reflected in the Ninth Circuit's decision in *Spencer,* 857 F.3d at 798 (9th Cir. 2017) and Ninth Circuit Model Jury Instruction 9.33 is that the "deliberate fabrication caused the plaintiff's ***deprivation of liberty***." (emphasis supplied). Deprivation of liberty includes include criminally charging, prosecuting, or convicting. *See* Model Jury Instruction 9.33; *Devereaux*, 263 F.3d at 1074-75 (*cont'd . . .*)

following: (1) the defendant deliberately reporting something the defendant knew to be untrue, or deliberately mischaracterizing a witness statement; (2) continuing the investigation of the plaintiff despite knowing plaintiff was innocent or being deliberately indifferent to his innocence; or (3) using investigative techniques that were so coercive and abusive that defendant knew, or was deliberately indifferent, that those techniques would yield false information. *Id.* While trivial inaccuracies, "mistakes of tone," or mere carelessness are not sufficient to give rise to a constitutional claim, intentional conduct, such as purposefully mischaracterizing witness statements in an investigative report, establishes a constitutional claim based on fabrication. *Id.* (misquotations of witness statement contrary to witness's disavowal that any crime occurred were deliberate fabrication). Likewise, use of impermissibly suggestive procedures that the officer knew or should have known would yield false information establishes a constitutional violation. *See Devereaux v. Abbey,* 263 F.3d 1070, 1074–75 (9th Cir.2001) (en banc); *see also Simmons v. United States*, 390 U.S. 377, 384 (1968) (where photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, constitutional violation requires setting aside conviction); *Grant v. City of Long Beach*, 315 F.3d 1081, 1086 (9th Cir. 2002), *opinion amended on denial of reh'g,* 334 F.3d 795 (9th Cir. 2003) (use of suggestive identification procedures, along with lack of indicia of reliability of identification, established lack of probable cause in support of false arrest and false imprisonment claims); *see also*, *Carrillo v. Cty. of Los Angeles*, No. 211CV10310SVWAGR, 2012 WL 12850128, at *5 n.5 (C.D. Cal. Nov. 14, 2012), *aff'd,* 798 F.3d 1210 (9th Cir. 2015) (impermissibly suggestive identification techniques under *Simmons* are "[b]y definition . . . 'so coercive and abusive' that officers know or should know that they yield false information . . . [and use of] such techniques to procure a conviction violates the requirements of due process.")

---

( . . . *cont'd*)
('there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."). The Court's prior order regarding the jury instruction was too narrowly drafted. The jury instruction will be amended to encompass criminally charging, prosecuting, or convicting.

Plaintiff has offered evidence from which a reasonable jury could conclude that defendants McMillan, D'Amico, and Johnson misrepresented evidence in the investigation, and used investigative techniques that were so coercive that defendants knew, or were deliberately indifferent to the risk that, they were likely to yield false information. Because plaintiff offers a number of theories for this claim, and evidence in support of each, the Court need not address every disputed issue to find that summary judgment must be denied. A few examples suffice.

For one, a reasonable jury could find that defendants D'Amico and Johnson used techniques that were so coercive in obtaining an identification of plaintiff from Priscilla Lualemaga that they knew, or recklessly disregarded, the unreliability of that identification. Plaintiff submits evidence which a jury could find: (1) based on Barcenas's testimony, that Johnson knowingly pressured Lualemaga to identify plaintiff the night of the murder and D'Amico was aware of or participated in that identification; (2) defendant D'Amico presented Lualemaga with a single photo the day after the murder, in an interaction that was undocumented in the investigative file and unacceptably suggestive; and (3) defendant Johnson deliberately varied from SFPD policy and practice to present an unduly suggestive six-person photo array, which included persons already identified by Lualemaga as not being the shooter rather than including a sufficient number of non-suspect, unknown "fillers." (*See* Facts 6, 7, 13, 14, 15 and response thereto and evidence cited therein; Facts 59, 63, 65-75, 78-81, and evidence cited therein.)

Further, a reasonable jury could find that officers McMillan and Johnson knew, or recklessly disregarded, the falsity of Latisha Meadows' identification of plaintiff as the shooter. (*See* Facts 21, 22, 23, 24, and response thereto and admissible evidence cited therein; Facts 113-115, and evidence cited therein.) The evidence of coercive circumstances and reckless disregard of the falsity of Meadows' statement—the circumstances under which it was obtained, the inconsistencies with the known facts, and the details omitted from the officers' reports—is, standing on its own, sufficient to permit a reasonable jury to find that McMillan and Johnson knew, or were deliberately indifferent to those circumstances yielding false information. *Cf. Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013) (triable issues of fact as to fabrication

9

claim where record indicated officers threatened criminal charges against drug-addicted witness, witness was high at the time of the identification, and officers showed him materials they asked him not to say he had seen).[4]

While defendants argue that plaintiff cannot show causation because the prosecutor's independent decision to bring charges breaks the causal chain, a reasonable jury could find that the prosecutors here were not aware of all the evidence plaintiff submits regarding the investigators' coercive and suggestive conduct. *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067–68 (9th Cir. 2004) (where officers "knowingly provided misinformation to [prosecutors or] concealed exculpatory evidence," the prosecutor's actions cannot be considered independent, and do not break the causal chain). (*See* Exh. 22 (Fleming Depo.) at 120-21, 127, 142-43, 150, 191-92, 197, 230; Exh. 21 (Allen Depo.) at 41-42, 218-219; 22-229; Facts 29, 32, 33, 34, 36, 38,45, 46 and response thereto and admissible evidence cited therein; Facts 57, 58, 59, 60, 73, 74, 75, 76, 84, 86, 96, 97, 106, and admissible evidence cited therein.)

Defendants are not entitled to qualified immunity. There are triable issues of material fact on the underlying constitutional violations. Depending upon the jury's determination of the disputed issues of fact, defendants would not be entitled to qualified immunity, since the determination of those facts is necessary to establish whether a reasonable officer at the time would have known that such conduct violated clearly established constitutional rights. *See White v. Pauly*, 137 S.Ct. 548 (2017); *Devereaux*, 263 F.3d at 1074–75 ("virtually self-evident" that there is a "clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government").

       2.     *Failure to Disclose Exculpatory Evidence (*Brady *and* Tatum *Claims)*

As to the claim for failure to disclose exculpatory evidence,[5] there are triable issues of

---

[4] Plaintiff's complaint fairly encompasses any of the three theories of fabrication of evidence and he need not have alleged specifically that the defendants continued their investigation despite knowing or being deliberately indifferent to his innocence. To the extent defendants seek to dismiss this theory, that request is denied.

[5] Plaintiff's operative complaint pleaded both *Tatum* and *Brady* claims in his operative (*cont'd . . .*)

material fact that preclude judgment in favor of defendants Evans, McMillan, D'Amico, and Johnson. A claim for a constitutional violation based upon failure to disclose exculpatory evidence under *Brady* and *Tatum* requires plaintiff to establish that: (1) defendants withheld material evidence that was favorable to plaintiff; (2) that this withholding prejudiced plaintiff; and (3) that defendants acted with deliberate indifference or reckless disregard of the consequences in withholding the material, favorable evidence. *Brady v. Maryland*, 373 U.S. 83 (1963); *Tatum v. Moody*, 768 F.3d 806, 816 (9th Cir. 2014).[6] Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bailey v. Rae*, 339 F.3d 1107, 1115 (9th Cir. 2003) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). In order to show that the failure to disclose prejudiced plaintiff, he need not show that it is more likely than not that the withheld evidence would have resulted in his acquittal, but only that the withheld evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).

Again, plaintiff offers a number of theories for this claim, and evidence in support of each. The Court notes a few examples of the triable issues of material fact on this claim. First, just as the Court finds that a reasonable jury could determine that the eyewitness identifications here were the result of coercive techniques or otherwise fabricated evidence as stated above, a reasonable jury could also determine that McMillan, D'Amico, and Johnson failed to disclose exculpatory evidence concerning the circumstances under which the eyewitness identifications and statements were obtained. *See Silva v. Brown*, 416 F.3d 980, 987 (9th Cir. 2005) ("Impeachment evidence is especially likely to be material when it impugns the testimony of a witness who is critical to the

---

( . . . *cont'd*)
complaint. (Dkt. No. 117, ¶¶ 253 *et seq*.) To the extent defendants' motion suggests that the *Brady* claim should be dismissed because it was not pleaded separately, the motion is **DENIED**.

[6] The *Tatum* claim includes the additional elements of being subjected to a detention of unusual length and that the exculpatory evidence was "highly significant." *Tatum*, 768 F.3d at 819-20. Neither of these additional elements changes the summary judgment analysis here.

11

prosecution's case."); *Shelton v. Marshall*, 796 F.3d 1075, 1087–88 (9th Cir. 2015) (holding impeachment of witness providing "only direct evidence" of key element was material); *Carrillo*, 798 F.3d at 1225 (failure to disclose evidence that undercut eyewitness's identification, and suggestive statements made in connection with identification, established *Brady* violation).

Second, based upon the evidence in the record, a reasonable jury could find that Evans failed to disclose exculpatory evidence favorable to defendant with respect to his forensic examination of the scene and its contradiction of Lualemaga's statement. The record contains evidence to support a finding that: (1) Evans was aware of the findings in the Shouldice Study when he testified at both the first and second trials, and that the findings were inconsistent with the eyewitness testimony of Lualemaga; (2) that Evans, D'Amico, and Johnson met with the prosecutor about the shell casing evidence just hours prior to the first trial, and prosecutor told him that the "defense had a problem with the location of the casings;" (3) that Evans, D'Amico, and Johnson never disclosed any inconsistencies between Lualemaga's account and the shell casing evidence to the prosecutor. Further, the evidence could support a finding that Evans testified during the second trial that the locations of casings is random, that casings go in all directions, that determining the location of a shooter from the casings is a fallacy, and that "a large percentage" of casings end up in front of the shooter—statements he knew could be impeached by the Shouldice Study. (*See* Plaintiff's Exh. 20, Evans Depo. at 27-29, 329-333; Facts 39, 40, 41, and response thereto and evidence cited therein; Facts 96, 98, 99, 100 and evidence cited therein.)

Evans relied on his understanding of the Shouldice Study for his opinions about the location of the shell casings in connection with what he told prosecutors and his testimony at the first and second trials. A jury reasonably could conclude that Evans was aware of the significance of the shell casings and communicated that significance to Johnson and D'Amico during the course of their investigation. A reasonable jury could further find that, at the second trial, Evans misrepresented the findings of the Shouldice Study in his testimony as to the significance of the shell casing locations at the scene of the crime. Based on that evidence, a jury could find that information not disclosed by Evans, D'Amico, and Johnson—their exculpatory knowledge of the significance of the shell casing evidence, including what was known to Evans based on the

12

Shouldice Study—establishes a *Brady/Tatum* violation. *See Paradis v. Arave*, 130 F.3d 385, 393 (9th Cir. 1997) (suppression of evidence that expert witness "initially . . . held an opinion in square conflict with his later in-court testimony" states a *Brady* violation); *Paradis v. Arave*, 240 F.3d 1169, 1179 (9th Cir. 2001) (on further review, *Brady* violation finding upheld where notes indicating forensic expert held contradictory or equivocal opinions could have permitted impeachment of opinions at trial); *see also Kyles v. Whitley,* 514 U.S. 419, 438 (1995) (knowledge of police investigators imputed to prosecutor); *United States v. Fort*, 478 F.3d 1099, 1103 (9th Cir. 2007) (same).

To the extent that defendants argue that there is no evidence of bad intent regarding any failure to disclose evidence, bad faith is irrelevant to establishing the claim. *See Brady*, 373 U.S. at 87 (suppression of evidence favorable to accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"); *Youngblood v. West Virginia,* 547 U.S. 867, 869–70 (2006) (per curiam) (quoting *Kyles,* 514 U.S. at 438) ("*Brady* suppression occurs when the government fails to turn over even evidence that is 'known only to police investigators and not to the prosecutor.'"); *Tennison v. City & Cty. of San Francisco*, 570 F.3d 1078, 1087-88 (9th Cir. 2009) (*citing Brady* and *Youngblood*).

Qualified immunity for defendants is denied because there are triable issues of material fact on the underlying constitutional violations. Depending upon the jury's determination of the disputed issues of fact, the defendants would not be entitled to qualified immunity, since a reasonable officer at the time would have known that such conduct violated clearly established constitutional rights. *See Carrillo*, 798 F.3d at 1224–25 ("the type of evidence allegedly withheld—including impeachment and alternative suspect evidence—fell within *Brady*'s scope" precluding a finding of qualified immunity); *White,* 137 S.Ct. 548; *Tennison*, 570 F.3d at 1087 (citing *Brady* and *Youngblood*, failure of police investigators to turn over exculpatory evidence to defense is a clearly established constitutional violation).

### 3. *Malicious Prosecution*

As to the claim for malicious prosecution, there are triable issues of fact that preclude judgment in favor of McMillan, D'Amico, and Johnson. To establish a claim for malicious

prosecution, plaintiff must show that the defendants wrongfully caused him to be prosecuted, with malice and without probable cause, and that they did so for the purpose of denying him a constitutional right. *See Awabdy*, 368 F.3d at 1066 (9th Cir. 2004); *Yousefian v. City of Glendale*, 779 F.3d 1010, 1015 (9th Cir. 2015) (citing *Albright v. Oliver,* 510 U.S. 266, 271–75 (1994); *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1189 (9th Cir.1995)).

For the same reasons that a reasonable jury could find that they deliberately fabricated evidence, the jury could reasonably find that they caused plaintiff to be prosecuted without probable cause. A finding of probable cause to proceed with a prosecution "obviously does not resolve whether the officers had probable cause based on the true set of facts known to them . . . . plaintiffs who can establish that an officer lied or fabricated evidence [may] relitigate the issue of probable cause with the falsified evidence removed from the equation or, in cases involving intentional concealment of exculpatory evidence, with the undisclosed evidence added back into the equation." *Wige v. City of Los Angeles*, 713 F.3d 1183, 1186 (9th Cir. 2013); *see also Beck v. City of Upland*, 527 F.3d 853, 870 (9th Cir. 2008) ("A rational jury could find that the officers had not met their burden to show that [the prosecutor's] judgment was sufficiently independent as to amount to an intervening cause shielding them from liability."); *Torres*, 548 F.3d at 1208–09 (an identification that is the product of impermissible suggestion does not provide probable cause); *see also Grant*, 315 F.3d at 1087. The argument that causation is cutoff by the time of the second trial fails. Although the DA prosecuting the second trial knew of Barcenas' statement at that time, the DA did not know of other evidence offered by plaintiff concerning the fabrication of both Lualemaga's and Meadows' identification of plaintiff, the Shouldice Report, or the evidence that defendants were aware of a possible alternate suspect that was never investigated.

There are disputed issues of material fact as to malice, since malice is not limited to hostility or ill will, but encompasses improper motive, which can be inferred from continued prosecution despite a lack of substantial grounds for believing in plaintiff's guilt. *See Greene v. Bank of Am.*, 216 Cal. App. 4th 454, 464–65 (2013); *see also Pitt v. District of Columbia,* 491 F.3d 494, 503–04 (D.C. Cir. 2007) (where officers withheld exculpatory evidence and misrepresented facts in their affidavit, finding of malice supported).

Defendants argue that the section 1983 malicious prosecution claim is subject to a two-year statute of limitations because it is most analogous to a common law false arrest claim. Thus, defendants contend the statute of limitations began to run on the date of plaintiff's arrest in 2008 and is time barred. The Court finds this argument to be without merit. Ninth Circuit authority holds that a section 1983 malicious prosecution claim is most similar to a common law claim for malicious prosecution, which involves the right to be free from the use of legal process that is motivated by malice and unsupported by probable cause. *Bradford v. Scherschligt*, 803 F.3d 382, 388 (9th Cir. 2015). The statute of limitations does not begin to run until a favorable termination or acquittal. *Id.* The Supreme Court's decision in *Manuel v. City of Joliet*, 137 S. Ct. 911, 921 (2017), expressly did not reach the accrual date of the section 1983 claim.[7]

### 4. *Conspiracy*

As to the claim for conspiracy against Evans, McMillan, D'Amico, and Johnson, there are triable issues of fact on the underlying constitutional violations alleged against them, as well as their knowledge of the violations by other defendants. Therefore, summary judgment must be denied on this claim as well.

**IV. CONCLUSION**

Based upon the foregoing, the motion for summary judgment is **GRANTED** as to defendant Carla Lee only, and is otherwise **DENIED** as to all other defendants.

**IT IS SO ORDERED.**

This terminates Docket No. 233.

Dated: February 27, 2018

*[signature]*

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[7] Defendants did not assert qualified immunity as to the malicious prosecution claim. (*See* Notice of Motion, Dkt. No. 233, at 3-4, ¶ 2.)