UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAMAL RASHID TRULOVE**, <br> Plaintiff, <br> v. <br> **MAUREEN D'AMICO, MICHAEL JOHNSON, ROBERT MCMILLAN, AND JOHN EVANS,** *ET AL*, <br> Defendants. | **Case No. 16-cv-050 YGR** <br><br> **PRETRIAL ORDER NO. 4 GRANTING IN PART PLAINTIFF'S MOTIONS *IN LIMINE* NOS. 1 AND 4; DETERMINING PRE-INSTRUCTIONS; AND GRANTING MOTION FOR ADDITIONAL TRIAL TIME** <br><br> **DKT. NO. 319, 323, 401** |

The Court, having carefully reviewed the parties' submissions, **ORDERS** as follows:

**1.    Plaintiff's Motions *In Limine* Nos. 1 and 4 -- Scope of Prosecutor Testimony:**

Plaintiff's Motion *in Limine* No. 1 is styled as single motion but contains two broad-based requests: (a) to preclude prosecutor witnesses from testifying as to legal conclusions; (b) to preclude all witnesses from opining on the credibility of other witnesses pursuant to Ninth Circuit law or Rule 403. Plaintiff's Motion *in Limine* No. 4 seeks to preclude witnesses, in particular the former prosecutors, who have not been disclosed as experts, from offering expert opinions on such matters as the meaning of shell casing or cell phone record evidence.

Motion *in Limine* No. 1 is **GRANTED IN PART.** Witnesses are precluded from testifying as to the following:(i) the witness's belief that there was probable cause to charge or prosecute, (ii) whether the witness made an independent determination to prosecute the case; and (iii) whether any evidence was credible, admissible, material, or exculpatory. Such testimony would be irrelevant to the matters at issue in the case, and, to the extent marginally probative of any issue, would be unduly prejudicial. However, the prosecutor witnesses are not precluded from testifying

as to the information they reviewed to make their decision to authorize the arrest warrant or to take the criminal complaint to trial. Said differently, the witnesses can testify as to the information they considered but cannot provide opinions regarding the evaluation of such information, the ultimate conclusions regarding the significance (legal or factual) of the information, or provide testimony as to what they presumably would have done with different information.

Further, no witness is permitted to testify to an ultimate conclusion. *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1214 n.11 (9th Cir. 2008) (district court abused its discretion in permitting witnesses to testify as to their opinions about whether there was probable cause); *United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015) ("an expert cannot testify to a matter of law amounting to a legal conclusion.") Likewise, witnesses are precluded from testifying as to the credibility of other witnesses unless such evidence would be admissible under FRE 608(a) (character for truthfulness after reputation for truthfulness put at issue); *see United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989) (expert witness not permitted to testify to credibility or in a manner to buttress credibility).

Here, the matter at issue is whether defendants' conduct caused plaintiff's alleged constitutional injury, notably under the Fourteenth Amendment, not the Fourth Amendment.[1] Plaintiff is not required to prove probable cause was lacking in order to establish fabrication of evidence, only that the fabricated evidence caused his constitutional injury. *Spencer v. Peters*, 857 F.3d 789, 802 (9th Cir. 2017). In the context of a Fourth Amendment violation for including false information in a warrant affidavit, probable cause is a necessary element of the claim, and the

---

[1] Note, for instance, the difference in First Amendment cases where the Supreme Court has developed a "bright-line, objective standard as a substitute for inquiries into the prosecutor's subjective state of mind." *Beck v. City of Upland*, 527 F.3d 853, 863 (9th Cir. 2008) (citing *Hartman v. Moore*, 547 U.S. 250 (2006)). Further, the court outlined the issues related to introducing "an inquiry into the prosecutor's actual mental processes," preferring instead a more objective approach. *Id.* at 865. Unlike this case, in Fourth Amendment cases, where a "prosecutor has instigated a prosecution, it is necessary, if not sufficient, that a plaintiff seeking to sue non-prosecutorial officials alleged to be responsible post-complaint for the arrest or prosecution show the absence of probable cause." *Id.* In cases not based upon violation of the Fourth Amendment, the case law indicates that the inquiry ends at probable cause and should not "separately inquire, through application of a presumption or otherwise, into the prosecutor's actual state of mind" in order to establish causation. *Id.* (*citing Hartman,* 547 U.S. at 265).

2

"probable-cause inquiry collapses into the causation inquiry." *Id.* However, "the existence of probable cause does not resolve Plaintiff's Fourteenth Amendment claim for deliberate fabrication of evidence." In such a claim "whether probable cause existed is entirely beside the point . . . . [and] the only causation question for the jury [is] whether the fabricated evidence did, in fact, cause [plaintiff's] imprisonment." *Id.*; *see also Crowe v. County of San Diego*, 608 F.3d 406, 432–37 (9th Cir. 2010) (upholding claim for violation of Fourteenth Amendment based upon coercive interrogation of minor suspects, but rejecting Fourth Amendment violation because there was sufficient evidence of probable cause to arrest minor suspects). As the parties' recognize, to establish causation, plaintiff must show that defendants' conduct was a "substantial factor in depriving plaintiff of his particular rights under the United States Constitution." Ninth Circuit Model July Instructions, Civil, Number 9.3

To be more explicit in the contours of what is and is not permissible: Prosecutor witnesses will be permitted to testify to:

- the fact of the arrest and prosecution;
- the facts they considered in deciding to arrest and prosecute plaintiff; and
- the sources of those facts.

Prosecutor witnesses will *not* be permitted to testify as to conclusions or analysis of those facts. For example, they will not be permitted to testify that:

- they "acted independently" or "made an independent determination" or "independently assessed the strength" of evidence provided by the defendants' investigation;
- the evidence obtained in the defendants' investigation was lawful, fair, competent, admissible, or supported the prosecution;
- the actions of the defendants or other officers in their investigation were lawful, fair, or competent;
- any evidence or witness was or was not credible or believable;
- they would have proceeded with or without the evidence alleged to have been fabricated; or
- they believed that plaintiff, or anyone else, was guilty or innocent.

3

Similarly, Motion *in Limine* No. 4 is **GRANTED IN PART**. Again, prosecutor witnesses may testify as to what facts they considered in deciding to arrest and prosecute plaintiff, and the sources of those facts. They will not be permitted to testify as to their analysis of the meaning or significance of those facts, nor will they be permitted to offer opinions on matters that would require scientific, technical, or specialized knowledge. Thus, for example, they may testify that they considered the evidence of the location of the shell casings but may not testify as to the relevance of those shell casings, *i.e.* whether they indicated a location of the shooter, or alternatively, that they lacked any significance on the location of the shooter.

Defendants contend that the prosecutor witnesses should be permitted to testify as to their evaluation of the evidence and how it "fit into their conclusion that they could prove beyond a reasonable doubt that plaintiff murdered Seu Kuka in 2007." (Oppo. to MIL No. 4 at 2:1-3.) Such testimony is not permissible since it offers an expert legal opinion on their analysis of the evidence.

Beyond the prosecutor witnesses, as the Court previously ruled in connection with defendants' Motion *in Limine* No. 3, witnesses may testify as to their own personal conduct, knowledge, and experience, but are precluded from testifying about their opinions as to other officers' conduct. (Dkt. No. 403.) Defendants have not been identified as expert witnesses and cannot testify in such a capacity. Defendants have argued that they themselves should be able to testify as to how their actions fit "within the context of their knowledge of the police department, other investigations, and the criminal justice system as a whole." (Oppo. to MIL No. 4 at 2:10-11.) The Court is unclear as to what defendants intend by this assertion. The Court has set forth limitations on appropriate subjects of testimony herein. To the extent the defense (or plaintiff) is unclear as to the boundaries, counsel are cautioned to seek clarification rather than risk sanctions for violation of this Order.

**2.      Pre-Instructions And Statement of the Case (Dkt. Nos. 388, 390, and 410)**

The Court has considered the parties' filings at docket numbers 388, 390, and 410 and will pre-instruct the jury with 9th Circuit standard civil instructions 1.3, 1.5, 1.6 as amended by the parties, and 1.8 through 1.21. After those instructions, the Court will invite the parties to make an

4

opening statement and then anticipates providing the jury with the following stipulations, instructions, and statement of the case:

**[STATEMENT OF THE CASE]**

At 10:47 p.m. on July 23, 2007, Seu Kuka was shot and killed on Blythedale Avenue in the Sunnydale Housing Projects in San Francisco. On October 27, 2008, plaintiff Jamal Trulove was arrested outside of San Francisco for Kuka's murder and then prosecuted. On February 9, 2010, Mr. Trulove was convicted. The parties stipulate to these facts.

San Francisco Police Department Officer Defendants Michael Johnson and Maureen D'Amico were the lead investigators working on the case. SFPD Inspector Robert McMillan and Officer John Evans also worked on the case.

Mr. Trulove appealed his conviction and the Court of Appeal held as follows:

"We conclude the prosecutor committed highly prejudicial misconduct. The People's case turned on whether the jury believed Lualemaga's testimony that defendant was the shooter, despite her changing account. To persuade the jury, the prosecutor argued not only that Lualemaga had courageously testified despite not only her fears, which was a fair comment on admissible evidence, but also despite the danger of retaliation from defendant's friends and family, which caused her and family members to enter an onerous witness protection program.

Reading her statements as a whole, the prosecutor argued that only a witness sure of what she saw would risk her life and others, and endure such hardships, to testify against a defendant whose friends and family could kill her for doing so; the prosecutor urged the jury to follow Lualemaga's brave example and find defendant guilty. These arguments, which were unsupported by any evidence, were highly prejudicial because they indicated defendant had a consciousness of guilt. Also, when combined with Lualemaga's testimony that the district attorney's office arranged for her and family members to enter the witness protection program, they suggested the prosecutor knew more than the information disclosed at trial. Therefore, they infected the trial with a fundamental unfairness. Although defendant has forfeited this claim because of his trial counsel's inaction, we conclude he received ineffective assistance of counsel, requiring reversal."

At a retrial in 2015, Mr. Trulove was then found not guilty.

**[WITNESS IDENTIFIED AS JOHN DOE]**

In this case, there will be a reference to a person in testimony from various witnesses as John Doe. The fact that this person is identified in this way is not evidence, and you should not consider it for

5

any purpose. Further, the true identity of this person is not relevant and you should not speculate as to the person's true identity or conduct any research or investigation relative to that issue.

**[REDACTED DOCUMENTS]**

In this case, some documents admitted into evidence will contain redactions or will substitute the name "John Doe" for another name. "Redaction" means portions of the documents will be blacked out. The redactions and substitutions are not evidence of anything, and should not be considered for any purpose.

**[INNOCENCE]**

As I have mentioned, this is a civil trial, not a criminal trial.

However, because this is a civil matter, at the end of the trial your verdict will require you to find whether plaintiff proved the elements of this civil case against the defendants. Defendants are not required to prove that Mr. Trulove is guilty and you will not be asked to render a verdict of whether Mr. Trulove was guilty or not guilty of the 2007 murder.

Nevertheless, Mr. Trulove claims that he is innocent, and to prove his case he will put on evidence concerning his innocence as circumstantial evidence of his claims. At the end of the case, I will instruct you on each element of each of Mr. Trulove's claims and you will then decide whether he proved, by a preponderance of the evidence, that defendants Ms. D'Amico, and Mssrs. Johnson, McMillian, and Evans caused Mr. Trulove to be wrongly charged, prosecuted or convicted by: (1) fabricating evidence; (2) failing to disclose material exculpatory or impeachment evidence; and (3) entering into a conspiracy to deprive him of his constitutional rights.

**3.      Plaintiff's Motion for Additional Trial Time (Dkt. No. 401)**

With respect to plaintiff's request for additional trial time, the Court has considered the motion, including the respective burdens, reviewed the parties' estimates in light of the Court's pretrial orders (including the instant one), and checked counsel's references. Based thereon, good cause exists to allow plaintiff an additional 15 hours of trial time. Defendants' time limit will remain as previously ordered and appears more than sufficient given the Court has ruled that much of the defendants' anticipated testimony is not admissible. Should compelling circumstances exist, counsel may request further reconsideration. However, to maintain the Court's calendar,

trial days will be revised to extend from 8:30 a.m. to 3:00 p.m. with a fifteen-minute break at 10:15 a.m. and a lunch break from 12:15 p.m. to 1:00 p.m. The Court will delay all standing calendars to accommodate this change.[2]

**IT IS SO ORDERED.**

This terminates Docket Nos. 319, 323, and 401.

Dated: March 6, 2018

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[2] In light of this change in the schedule, if the parties wish to revisit whether they would prefer to be in session on Friday, March 16, 2018, they should meet and confer and notify the Court.