```
                                              Volume 18

                                              Pages 4140 - 4152

              UNITED STATES DISTRICT COURT

            NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonne Gonzalez Rogers, Judge


JAMAL RASHID TRULOVE,           )
                                )
          Plaintiff,            )
                                )
    vs.                         )  No. CV 16-0050 YGR
                                )
MAUREEN D'AMICO, MICHAEL        )
JOHNSON, ROBERT McMILLAN, and   )
JOHN EVANS, et al.,             )
                                )  Jury Trial
          Defendants.           )
                                )  Oakland, California
_____)  Thursday, April 5, 2018
                                   8:45 a.m.

              **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:        NEUFELD SCHECK & BRUSTIN LLP
                      99 Hudson Street, 8th Floor
                      New York, New York 10013
                BY:   **ANNA B. HOFFMANN, ATTORNEY AT LAW**
                      **NICK J. BRUSTIN, ATTORNEY AT LAW**
                      **MEGHNA PHILIP, ATTORNEY AT LAW**

                      UNIVERSITY OF SAN FRANCISCO
                      2130 Fulton Avenue, KN 211
                      San Francisco, California 94117
                BY:   **KATE CHATFIELD, ATTORNEY AT LAW**
                      **ALEXANDER B. REISMAN, ATTORNEY AT LAW**

        (APPEARANCES CONTINUED ON FOLLOWING PAGE)

Reported by:  Sarah Goekler, CSR No. 13446, RMR, CRR, CCRR
              Official Reporter
  *Proceedings recorded by mechanical stenography; transcript
          produced by computer-aided transcription*
```

| | | |
|---|---|---|
| 1 | **APPEARANCES:** (CONTINUED) | |
| 2 | For Defendants: | CITY ATTORNEY'S OFFICE |
| | | City & County of San Francisco |
| 3 | | Fox Plaza |
| | | 1390 Market Street, 6th Floor |
| 4 | | San Francisco, California 94102 |
| | **BY:** | **MARGARET BAUMGARTNER, ATTORNEY AT LAW** |
| 5 | | **RENEE ROSENBLIT, ATTORNEY AT LAW** |
| | | **KELLY COLLINS, ATTORNEY AT LAW** |

```
 1   Thursday, April 5, 2018                              8:45 a.m.
 2                        P R O C E E D I N G S
 3                              ---o0o---
 4        (The following proceedings were heard out of the presence
 5   of the jury:)
 6           THE CLERK:  Calling civil action 16-0050, Trulove v.
 7   D'Amico, et al.
 8        Counsel, please state your appearances.
 9           MS. HOFFMANN:  Anna Benvenutti Hoffmann for the
10   plaintiff, Mr. Trulove, with all of the lawyers.
11           THE COURT:  So the whole legal team is here on the
12   plaintiff but not the plaintiff himself?
13           MS. HOFFMANN:  Not Mr. Trulove, yes.
14           MS. BAUMGARTNER:  And Margaret Baumgartner for
15   defendant.  I'm here with Kelly Collins.
16           THE COURT:  Good morning.  I hope everybody got a
17   decent night sleep.  I know it's always anxious that the jury
18   is out.  It's the first night that you didn't have something to
19   do the next morning, so I hope everybody feels a little rested.
20        I wanted to talk to you about a couple of things.  First
21   of all, I do want the plaintiffs to respond to the defense
22   motion in writing on Evans.
23           MS. HOFFMANN:  Okay.
24           THE COURT:  And I went back and I looked at the
25   summary judgment briefing on this issue.  And the plaintiffs in
```

1   the summary judgment relied on Trainum, who did not testify.
2   Not exactly sure why he didn't, but he didn't.  And you relied
3   on the deposition of Gerald Smith, who also did not testify.
4       You also indicated to the Court in your summary judgment
5   that Evans had continuing involvement in the case, including
6   photographs of -- taken from Ms. Lualemaga's window to document
7   that view.
8       So I think the timing is important, in part, with respect
9   to your argument.  I haven't gone back to check my notes about
10  how all of these timing issues work.  I can tell you -- and I
11  think I have told you in the past -- that a generic memo on a
12  shelf -- it concerns me to claim that somehow that's a *Brady*
13  issue, unless there's a connection, unless it is material.  And
14  facts matter to that determination.
15      So this isn't as if the Shouldice memo was -- the study
16  was done for this case.  It had been done years in advance.  I
17  don't know whether the argument is that, you know, police
18  officers or DAs would have to produce the Lewinski study,
19  produce Haag and Haag.  I don't think that's the argument that
20  you're making.  I don't think that one could make that
21  argument.
22      So the question is, what makes this different?  And I
23  don't think you've actually -- now that we have the evidence,
24  which is a very different posture from summary judgment, I
25  don't know -- or let me say it this way:  I want it in writing

1  in terms of what your argument is.
2          **MS. HOFFMANN:**  Okay.
3          **THE COURT:**  It does concern me that it wasn't
4  disclosed, at least at some point closer to the trials.
5      It directly contradicted Evans' testimony on the stand.
6  He clearly had a view of what that memo said, what it meant.
7  He testified that he had talked many times to Shouldice even
8  though he -- Shouldice denies that.
9      Now, Shouldice being the author of the memo, both of those
10 things could be true.  He may have talked to hundreds of people
11 and doesn't remember.  But if you're the person who's seeking
12 the information as opposed to the one who's giving it out, it
13 wouldn't be uncommon that one would remember and one wouldn't.
14     So I think it is important to have a clear record on this
15 particular issue, and I suspect that I will be writing
16 something up with respect to it as well.  All right?
17     In terms of the balance of the motion.  As I indicated
18 yesterday and the day before, I'm -- was not intending to rule
19 in advance and to take this away from the jury.  It is not
20 prudent, especially after a month-long trial or a
21 three-plus-week trial to do that.
22     And so to the extent that I need to resolve issues after
23 the fact, I will.  But I want the jury to weigh in on all of
24 this.  And I have some case authority that I'll put on the
25 record, but my computer has to wake up.

1  So while it's waking up, let me just pivot here to the
2  note that we received from the jury in terms of their schedule.
3  They've indicated to us that, in a very methodical way, they're
4  take a break at 10:15 to 10:30. They are taking their lunch
5  from 12:00 to 12:45. They're taking another break from 2:30 to
6  2:45. And they're going to end their day at 4:00. And they
7  anticipate resuming tomorrow at 8:30.
8  So with that in mind, you're welcome to go out for lunch
9  between 12:00 and 12:45. We still have your cell phone
10 numbers, I believe, so that would be fine.
11         **MS. BAUMGARTNER:** May I mention one other thing while
12 you're booting up, Your Honor?
13         **THE COURT:** Sure.
14         **MS. BAUMGARTNER:** Which is Sean Connolly from our
15 office will be representing Sergeant Hurley, formerly Officer
16 Lee, and has -- she has agreed to allow him to accept service
17 of the summons.
18         **THE COURT:** Okay. Terrific. Thanks for letting me
19 know.
20  And the other lawyer who was here, is that a supervisor or
21 who was here?
22         **MS. BAUMGARTNER:** Karen Kirby? Yeah. Karen Kirby is
23 one of the supervisors on my team.
24         **THE COURT:** I see. Is she -- was she also involved
25 in all the settlement discussions or that's a separate -- I'm

1  trying to understand how the San Francisco office works,
2  but ...
3              **MS. BAUMGARTNER:**  I can give it to you in detail if
4  you'd like.  So I'm a deputy city attorney.  There's a bunch of
5  deputy city attorneys.  Then on my team we have three team
6  leaders.  Then we have Karen Kirby, who's sort of the assistant
7  major team leader and Cheryl Adams, who's the team leader.
8  Above her is Ron Flynn, who you did meet.  And then it's
9  Dennis.
10             **THE COURT:**  Because Cheryl Adams, she was involved in
11 the settlement discussions, I think.
12             **MS. BAUMGARTNER:**  I believe she at one point talked
13 to Judge Spero, yes.
14             **THE COURT:**  Okay.  So the treatise on Federal
15 Practice and Procedure from my former law school, Charles
16 Wright, Mr. Miller.
17             **MS. BAUMGARTNER:**  Oh.  That's why you cite Wright &
18 Miller.  Now I get it.
19             **THE COURT:**  What's that?
20             **MS. BAUMGARTNER:**  I said that's why you cite Wright &
21 Miller.  I get it.  I know it's the overwhelming treatise.  I
22 look at it all the time.
23             **THE COURT:**  So it's Wright, Miller, and a professor
24 from Michigan.
25             **MS. BAUMGARTNER:**  Ah.  I still call it Wright &

```
 1  Miller.
 2              THE COURT:  I know.  Everybody calls it Wright &
 3  Miller, but there's one other professor there, and now I'm --
 4  now it's bugging me that I am blanking, and I don't have my ...
 5       You know the thing about Charlie Wright.  He used to teach
 6  class without a single note.  And if a student had a question,
 7  he could direct that student to the page number in his book
 8  that stood for the proposition that he was talking about
 9  without reference to the book.
10       Unfortunately, Professor Wright did not treat women in, I
11  think, the way that was appropriate, and he stopped using the
12  Socratic method when women started going to law school because
13  he didn't think it was appropriate, so -- and then he got in
14  trouble.  So he didn't do it for anybody.  So he totally
15  changed his pattern.
16       But he -- when I was in law school, he had a football
17  team.  And he asked -- all the big guys in the law school were
18  on Charlie Wright's football team.  You had to apply for his
19  class the fall of first year to get in.  And I actually got
20  married after my first year, so I took a year off and I worked
21  for a law firm in New Haven, Connecticut, for the year while my
22  husband was finishing his business degree at Yale.  So when I
23  went back -- so I couldn't ever apply.
24       So I never took his fed courts class because you had to be
25  there to apply to get in.  And then my third year I spent here
```

```
 1  at Boalt.  But he was quite the character.  And he's very
 2  involved in the ALI where -- the American Law Institute where
 3  I'm a member, where he was.
 4       So in any event, I cite to those cases all the -- to that
 5  book all the time.  And Ed Cooper, who I'm now remembering.  So
 6  Cooper is the last name on that treatise.
 7       And by huge contrast, equally smart, but the most nicest
 8  gentle person that I have ever come across.  And when I --
 9  because I did primarily state law, not federal law, when I
10  first became a fall judge, I'd call Cooper all the time and
11  say, "Okay. where can I find the answer to this obscure rule?"
12  And he'd laugh or he'd give me the whole history of a
13  particular rule so that I could understand, you know, what and
14  where it was coming from.  So Cooper is a terrific person.
15       So, yes, I cite to Wright & Miller a lot, and I cite to
16  the ALI a lot.  Both of those.  And I believe very strongly --
17  especially in the ALI's function, which is, you know, you leave
18  your clients at the door, and we try to figure out what is the
19  most best neutral way of thinking about topics.  And so no one
20  can argue with, you know, at least the process.  I guess plenty
21  of people could argue, but in any event ...
22       So we digress.  But from Wright & Miller, Section 2533
23  says, stating that, quote, "Even at the close of all the
24  evidence, it may be desirable to refrain from directing a
25  verdict, though, it would be possible to do so," closed quote.
```

1       The reason that this rule is the one that district judges
2  do is to avoid a retrial if a JNOV is reversed.  That's the
3  primary reason that we do it.
4       There's also some Fifth Circuit authority which I don't
5  always cite, M-C-P-H-I-L-L-A-M-Y, *McPhillamy v. Brown & Root*,
6  Fifth Circuit, 1987, 810 F.2d 529 at 533, indicating that many
7  courts follow the salutary and highly desirable practice of
8  refraining from granting the motion at the close of evidence
9  and, instead, submit the case to the jury.  The jury's verdict
10 may render moot the issue of sufficiency, and the party can
11 always renew its motion afterwards.
12      There's also an Eleventh Circuit case.  Therrell v.
13 Georgia Marble Holdings Corp., Eleventh Circuit, 1992, 960 F.2d
14 at 1555, 1568, indicating that the most desirable is to take a
15 verdict and pass on sufficiency of evidence on post-verdict
16 motions.
17      Again, primary purpose is to avoid a reversal and having
18 to do it all over again.
19      All right.  That said, I do want something in writing on
20 that particular issue for the reasons that I've indicated.
21           **MS. HOFFMANN:**  I understand.
22      When were you hoping to get that?
23           **THE COURT:**  Well, sooner rather than later.  You're
24 not doing anything right now other than waiting.  You should
25 try to figure out, you know, what evidence you might need.

1    I don't know what transcripts have been ordered, what
2  hasn't been ordered. I think everyone is always tired after
3  trial, so the -- we start to begin to shut down. But the
4  reality is, is that all the evidence is most fresh now, so
5  delay actually doesn't help us. It's hard, but it doesn't help
6  us. I'm doing it myself right now.
7    So when can you get it to me?
8        **MS. HOFFMANN:** What about tomorrow?
9        **THE COURT:** That's fine.
10   And then, once you get it, you can let me know whether you
11 want to respond.
12       **MS. BAUMGARTNER:** Thank you, Your Honor.
13       **MS. HOFFMANN:** And you just -- just to be clear, you
14 only want me to respond in writing about Evans?
15       **THE COURT:** Right. I think the rest is -- mirrors
16 a lot of what we've seen. If you should go back and check your
17 own briefing, the one that concerns me is Evans, and that's the
18 one that I'd like to have briefing on.
19   But I think there was a second issue that Ms. Baumgartner
20 raised yesterday related to Meadows. I actually think that the
21 Meadows issue is really much more of a who is the jury going to
22 believe on that one. So that's less of a legal issue for me, I
23 think.
24   Okay. We have a juror who is leaving the country on
25 Saturday, as a reminder. I need to know from you when you want

1  me to talk to her and/or the jury about that issue.  I don't
2  want them to necessarily feel pressured.  I don't know,
3  frankly, if they know or not because I never told her she
4  couldn't talk to them about her travel plans.
5      So I need to know what it is you want me to do about that
6  topic.  I won't hold you to it, but any initial thoughts.
7           **MR. BRUSTIN:**  I thought -- maybe I misunderstood.
8  But I thought you told her in open court that she would be able
9  to honor her trip.
10          **THE COURT:**  Correct.  But the question is whether you
11 think that impacts the deliberations and whether you want me to
12 say anything or not?  That is, whether they think they must get
13 something done by tomorrow, whether or not they're -- and
14 whether or not they have to, because they don't have to.  They
15 may want to and she may want them to as well.  But it is not
16 clear to me that they know that they don't have to.
17          **MS. BAUMGARTNER:**  My thought, Your Honor, is tomorrow
18 morning, rather than today, indicate that if they do not reach
19 a verdict on Friday, that she will be excused and they will
20 continue their deliberations on Monday.
21          **MR. BRUSTIN:**  I'm fine with that.
22          **THE COURT:**  Okay.  So perhaps Monday before their
23 first break.
24          **MS. BAUMGARTNER:**  Friday.
25          **THE COURT:**  I mean -- what's today?

1        **MS. BAUMGARTNER:**  Thursday.
2        **THE COURT:**  Tomorrow.  That's what I meant.
3   Tomorrow.  Okay.
4        **MS. BAUMGARTNER:**  Yes.  I think that's probably the
5   best plan.
6        **MR. BRUSTIN:**  I agree.
7        **THE COURT:**  Okay.  All right.  Those are the only
8   things I had.
9      Anything else that you all want to talk about?
10       **MR. BRUSTIN:**  No, Your Honor.
11       **MS. BAUMGARTNER:**  No, Your Honor.
12       **THE COURT:**  Okay.  Thank you.
13     We'll let you know if we hear anything.
14            (Proceedings adjourned at 9:04 a.m.)
15                        ---o0o---
16
17
18  I certify that the foregoing is a correct transcript from the
19  record of proceedings in the above-entitled matter.
20
21  Dated:  May 23, 2018
22
23  _____
24       Sarah L. Goekler, CSR 13446, RMR, CRR, CCRR
25                  U.S. Court Reporter