Volume 19

Pages 4153 - 4197

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonne Gonzalez Rogers, Judge

JAMAL RASHID TRULOVE,               )
                                    )
          Plaintiff,                )
                                    )
     vs.                            )   **No. CV 16-0050 YGR**
                                    )
MAUREEN D'AMICO, MICHAEL            )
JOHNSON, ROBERT McMILLAN, and       )
JOHN EVANS, et al.,                 )
                                    )   Jury Trial
          Defendants.               )
                                    )
_____     )   Oakland, California
                                        Friday, April 6, 2018
                                        8:15 a.m.

### TRANSCRIPT OF PROCEEDINGS

**APPEARANCES**:

For Plaintiff:              NEUFELD SCHECK & BRUSTIN LLP
                           99 Hudson Street, 8th Floor
                           New York, New York 10013
                    BY:    **ANNA B. HOFFMANN, ATTORNEY AT LAW**
                           **NICK J. BRUSTIN, ATTORNEY AT LAW**
                           **MEGHNA PHILIP, ATTORNEY AT LAW**

                           UNIVERSITY OF SAN FRANCISCO
                           2130 Fulton Avenue, KN 211
                           San Francisco, California 94117
                    BY:    **KATE CHATFIELD, ATTORNEY AT LAW**
                           **ALEXANDER B. REISMAN, ATTORNEY AT LAW**

          (APPEARANCES CONTINUED ON FOLLOWING PAGE)

Reported by:  Sarah Goekler, CSR No. 13446, RMR, CRR, CCRR
              Official Reporter
    *Proceedings recorded by mechanical stenography; transcript*
         *produced by computer-aided transcription*

1  <u>**APPEARANCES:**</u>  (CONTINUED)

2  For Defendants:          CITY ATTORNEY'S OFFICE
                           City & County of San Francisco
3                          Fox Plaza
                           1390 Market Street, 6th Floor
4                          San Francisco, California 94102
                      BY:  **MARGARET BAUMGARTNER, ATTORNEY AT LAW**
5                          **RENEE ROSENBLIT, ATTORNEY AT LAW**
                           **KELLY COLLINS, ATTORNEY AT LAW**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **I N D E X**

2

3    Friday, April 6, 2018

4                                              **PAGE** **VOL.**

5    Verdict                                   4185   19

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | **Friday, April 6, 2018**                                    **8:15 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---o0o--- |
| 4 | (The following proceedings were heard out of the presence |
| 5 | of the jury:) |
| 6 | **THE CLERK:**  Calling civil action 16-0050, Trulove v. |
| 7 | D'Amico, et al. |
| 8 | Counsel, please state your appearances. |
| 9 | **MS. HOFFMANN:**  Anna Benvenutti Hoffmann for the |
| 10 | plaintiff Jamal Trulove.  We've got Mr. Brustin, Kate |
| 11 | Chatfield, and Alex Reisman here right now. |
| 12 | **MS. BAUMGARTNER:**  Margaret Baumgartner for |
| 13 | defendants.  I'm here with Kelly Collins and Renee Rosenblit. |
| 14 | **THE COURT:**  Okay.  Good morning. |
| 15 | **MS. BAUMGARTNER:**  Good morning. |
| 16 | **MS. HOFFMANN:**  Good morning. |
| 17 | **THE COURT:**  Let's go ahead and start with 3.4 of the |
| 18 | Ninth Circuit model instructions. |
| 19 | I sent that to you, in the event that you hadn't found it |
| 20 | on your owns, yesterday before I left the office.  It seems to |
| 21 | indicate to me the proper procedure for dealing with this |
| 22 | request. |
| 23 | I went back and reminded myself that I did, in fact, |
| 24 | instruct the jury that the transcript would not be available to |
| 25 | them, and that is why they should take notes. |

```
 1        Can we -- comments.  We'll start with plaintiffs, given
 2   that this was not your inclination.
 3            MS. HOFFMANN:  Although we would be happy to send the
 4   entirety of D'Amico's transcript back, if defendants agreed to
 5   that.  We agree, if they do not stipulate to that, that 3.4
 6   provides the appropriate procedure.
 7            MS. BAUMGARTNER:  And, again, given that D'Amico's
 8   testimony -- I don't remember how many hours it is -- but
 9   rather than read back the whole thing, I think it makes sense
10   to ask them what it is that they're looking for so that we
11   don't have to spend five hours, six hours, whatever it is,
12   reading back the entire testimony.
13            THE COURT:  I meant to check and I forgot how much
14   time we spent on D'Amico.
15        Do we have that handy?
16            THE CLERK:  I forgot what date.
17            MS. HOFFMANN:  I believe it was 3/19 and 3/20.
18            THE CLERK:  It'll take me a couple minutes.
19            THE COURT:  Hold on.
20                    (Pause in the proceedings.)
21            THE CLERK:  She started at 10:28 a.m. on 3/19.
22        I have she started at 10:28 a.m. on 3/19.
23            MR. BRUSTIN:  There's also 3/20.
24            THE COURT:  So she's -- I'm sorry.
25            THE CLERK:  So on March 19th, 10:28 a.m. she was
```

```
 1  called.
 2          THE COURT:  And then she went all day?
 3          MR. BRUSTIN:  There's 175 pages on 3/19.
 4          THE CLERK:  Yes.  I have that she went all day on
 5  3/19.
 6          THE COURT:  And then I have her continuing --
 7          THE CLERK:  Yes.
 8          THE COURT:  -- on 3/20.
 9          THE CLERK:  And I have until 11:58 on 3/20.
10          THE COURT:  I have until 11:57.
11      Actually, I just looked at my spreadsheet.  It's a nice
12  quick -- so we started with her at 10:28, went all day or for
13  the rest of that day, which was -- okay.  All right.
14      The way I read this instruction is that -- and I was
15  recalling that I've actually had to give it before.  I told the
16  jury that they had to sit in here and hear the whole thing.
17  And as soon as I told them that -- I told them to go back and
18  talk about it -- they came back said, "We don't want it."
19      So the question is, do you want me to offer something less
20  than that?
21                      (Counsel confer.)
22          MS. BAUMGARTNER:  Right.  They can talk about --
23          THE COURT:  They can, but you would have to -- it's
24  still not -- I guess the question is whether you would
25  stipulate to that.
```

1      **MR. BRUSTIN:**  To what?

2      **THE COURT:**  To a limited portion.

3    The only way I will do that is if there is a stipulation;

4  otherwise, I won't allow it.  And if you're not going to

5  stipulate to it, I'm not even going to offer it.

6                    (Counsel confer.)

7      **MS. BAUMGARTNER:**  The way I've done this in the past,

8  Your Honor, is I've had questions from juries about certain

9  subject matters to be read back from a particular person.  And

10  then I go through the entire transcript with opposing counsel,

11  and we agree on the portions that are going to be read.  That's

12  what I've done before, so ...

13      **THE COURT:**  And I've done that before too, primarily

14  in state court, not federal court.

15      **MS. BAUMGARTNER:**  Yeah, that's true.

16      **THE COURT:**  But -- and we don't have this instruction

17  in state court, that I recall, this 3.4, because we did it all

18  the time.

19    That being said, you know -- and I went and I read the

20  case -- it's not particularly -- you know, the circuit doesn't

21  particularly like it.  So that's why I've indicated that if you

22  aren't going to agree to that process, I am not going to offer

23  it as an option.

24      **MS. HOFFMANN:**  We would agree to identifying portions

25  that the jury requests on certain subject matters.

1          **MS. BAUMGARTNER:** We'd agree to that.

2          **THE COURT:** Okay. All right. Then I will offer it.

3          **MS. BAUMGARTNER:** If I may, Your Honor. If you could

4    let them know that it will --

5          **THE COURT:** Take time.

6          **MS. BAUMGARTNER:** -- it'll take time, and they'll

7    have to come back into the courtroom to have it read to them,

8    that they don't actually get the transcript. I think that

9    would be useful.

10          **THE COURT:** All right. I will do that. And they may

11    decide it's not that important. I don't know. I don't know

12    what's driving it.

13        The second, at some point today, if they do not come to a

14    verdict, I'm going to have to release Ms. Yang from her

15    service. And I will admonish her that she cannot communicate

16    with the deliberating jurors once she's released.

17        Do you want to be here for that?

18          **MS. BAUMGARTNER:** I don't care one way or the other.

19          **MR. BRUSTIN:** We have no position on that either.

20    Whatever you prefer, Your Honor.

21          **THE COURT:** Okay. All right. Are they all here yet?

22    I know some of them have come in.

23          **THE CLERK:** No, they're not.

24          **THE COURT:** Okay. Why don't we then just stand in

25    recess. Don't leave the room. They'll be here soon. I'll

```
 1   call them in first thing.

 2           MS. BAUMGARTNER:  Thank you, Your Honor.

 3                   (Pause in proceedings.)

 4       THE COURT:  I see that the defendants filed the email

 5   communication to me before John Evans' testimony, which is fine

 6   so that it's now part of the record.

 7       Is there anything in particular you wanted or is it just

 8   for appellate purposes?

 9           MS. BAUMGARTNER:  Just to keep the record clear that

10   we had sent that.  That's all.

11           THE COURT:  All right.  Great.  Thank you.

12           MS. HOFFMANN:  Mr. Trulove is downstairs.  He forgot

13   his ID, and the court won't let him in the building without a

14   court employee saying that he could come in.  Is it possible

15   for someone to -- they wouldn't let an attorney sign him in

16   downstairs.

17           THE CLERK:  I can do it after we go off --

18           THE COURT:  Go bail him out, Frances.

19           THE CLERK:  After we go off the record.

20           MS. HOFFMANN:  Thank you.

21           THE COURT:  Yeah, let's go off the record.

22                   (Recess taken at 8:26 a.m.)

23                (Proceedings resumed at 8:32 a.m.)

24       (The following proceedings were heard in the presence of

25   the jury:)
```

1          **THE COURT:**  Good morning, everyone.

2          **THE JURY:**  Good morning.

3          **THE COURT:**  You all look dry.  You may be seated.

4  We're on the record.  And the jury is with us.

5      So I called you in because of your request at the end of

6  the day yesterday that you would like D'Amico's transcript in

7  this trial.  You can't have it.  But there is some things you

8  can have.

9      So you may not remember, but I instructed you at the very

10  beginning of this trial that you would not have a transcript of

11  the proceedings.  That's why I urged you to pay close

12  attention.  I said something to the effect of, you know, we

13  talked about all these things in voir dire.  Did you remember

14  anything from last week?  You all shook your head no, and then

15  you -- I said, "Okay.  That's why you want to take notes."

16      But here's the issue.  So read-backs -- trial judges are

17  cautioned against doing read-backs because they run the risk of

18  distorting the trial because they overemphasize one particular

19  portion.  Therefore, in general, if we have to do them, then

20  the first option is that you have to come back and listen to

21  the entire thing.  That's seven hours of testimony.  So that

22  would be the first option.

23      If there is some very specific thing that you have a

24  question about that you can articulate, then perhaps we could

25  figure out what portions address that particular issue, the

1  parties would have to go through the seven hours of the

2  transcript to try to figure it out, pull it together, and then

3  you would come back into the courtroom.  And I have a specific

4  admonition that I have to give you, and then we would do the

5  read-back.  That's how it works.  But the parties would have to

6  agree.  And that whole process also takes time.

7       So that's the way it works.  I give you that information

8  to think about.  You can go and collaborate and see what you

9  want to do with it.  But you don't just get the transcript.

10 Okay?

11      The other thing -- I don't know whether or not Ms. Yang or

12 if you remember Ms. Yang's got this trip to China, and I

13 promised her that she could go and that I was not going to keep

14 her here.

15      The law requires that I have a certain number of jurors

16 unanimously agree on the verdict.  So if you do not reach a

17 verdict today, then I'm going to release her at the end of the

18 day, and the seven of you will continue to deliberate on Monday

19 until we have a unanimous verdict.  I know that that's -- might

20 be frustrating, but it is -- you need to make sure.  A lot of

21 people put a lot of time and energy into this, so you need to

22 make sure that you give it your due attention and come to a

23 verdict.  But if you can't, that's okay.  I'm going to release

24 you.  And then you guys will continue on.

25      And I have a specific instruction for you, so make sure

1   you don't leave until I talk to you.

2          **THE JUROR:**  Okay.

3          **THE COURT:**  Okay?  Any questions that I can address

4   while you're out here?  I'm happy to -- yes?  No?

5      No.  Okay.  Why don't you all go talk about it, think

6   about it, send me another note.  Otherwise, we're not going to

7   do anything until we hear from you.

8      All right?  Thank you.

9      (The following proceedings were heard out of the presence

10  of the jury:)

11         **THE COURT:**  Okay.  The record will reflect that the

12  jury has left.

13     You're welcome to hang out here for five, ten minutes if

14  you want to see if they send something back and then leave.  I

15  don't know what you want to do.

16         **MS. BAUMGARTNER:**  We'll just go back to the

17  conference room.  And if Ms. Stone could call us and we'll

18  either come get the question or she can tell us what the

19  question is and we can start looking through the transcript.

20     As I said, Ms. Rosenblit is going to have it printed right

21  now.  So --

22         **THE COURT:**  Okay.

23         **MR. BRUSTIN:**  We'll do the same, Your Honor.

24         **THE COURT:**  Okay.  We'll let you know when you have

25  something.

```
 1              (Recess taken at 8:38 a.m.)

 2           (Proceedings resumed at 1:32 p.m.)

 3      (The following proceedings were heard out of the presence

 4   of the jury:)

 5           THE COURT:  The record will reflect that the parties

 6   are present and all the lawyers.

 7      So we have a note from the jury that reads as follows:  To

 8   fulfill Element Two of the third claim, does the defendant need

 9   to have knowledge that their actions or inactions cause a

10   constitutional violation?

11      So the third claim is the conspiracy claim.  The second

12   element reads that a particular defendant agreed with a

13   co-conspirator to cause the constitutional violation.

14      I guess I'm a little -- not exactly sure what the question

15   is.

16           MS. BAUMGARTNER:  Right.  It doesn't make sense,

17   given the second element there.

18      I think -- I'm sorry, Your Honor.  I don't have it in

19   front of me.  Will you read the second element again.

20           THE COURT:  Yeah.  Does someone have a copy of the

21   jury instructions?

22      Frances, do you?  And then I can put those on, if you

23   will.

24      Try to show both.  So the three elements.  And then maybe

25   you guys can help.
```

1    So let's get the three elements up there and then the

2    question.  Push that up so we have -- we don't need the title.

3        **MS. HOFFMANN:**  Like that?

4        **THE COURT:**  Yeah, that's fine.  And then the

5    question.  You can fold it so we can see it together.  Push it

6    up a bit more.  We don't need that last paragraph -- no, no.

7    The question.

8    Okay.  So there it is for you.

9        **MS. BAUMGARTNER:**  The problem is this isn't really

10   asking about Question Three, I think -- or Element three.

11       **THE COURT:**  Well, I don't know that it is.

12       **MS. HOFFMANN:**  So I think the answer is -- or I would

13   say the answer is --

14       **THE COURT:**  Well, what's the question?

15       **MS. HOFFMANN:**  What I understand the question to be

16   is, if you reach an agreement, do you have to know that the

17   actions that you agreed to take, someone actually took an

18   action in furtherance of the conspiracy.  And I think the

19   answer is no.

20   If you reach an agreement with a common objective and

21   someone who's a co-conspirator actually -- at least one person

22   does take an action, and that action does cause the

23   constitutional violation, I don't think that the co-conspirator

24   needs to know whether that action was actually taken at any

25   point -- completed.

1    **THE COURT:**  No, because -- well, the -- it says the

2    agreement is to cause the violation.  That's the agreement.

3    **MS. BAUMGARTNER:**  Right.  The agreement is to cause

4    the violation.

5    **THE COURT:**  The agreement is to cause the violation.

6    **MS. HOFFMANN:**  Right.  You have to have an agreement.

7    You have to reach an agreement with the objective of causing a

8    constitutional violation.  And someone has to take -- one of

9    the co-conspirators has to take an action, and --

10    **THE COURT:**  In furtherance of that agreement.

11    **MS. HOFFMANN:**  In furtherance of that agreement.  And

12    that has to actually cause a constitutional violation.  But it

13    doesn't have to be the co-conspirator who takes an act, and it

14    doesn't have to be the co-conspirator -- I don't think.

15    **THE COURT:**  I need to get some clarity.

16    Let's call the jury in.

17    **THE CLERK:**  Okay.

18    Do you want that displayed?

19    **THE COURT:**  Yes.  I want that there.

20    (The following proceedings were heard in the presence of

21    the jury:)

22    **THE COURT:**  You may all be seated.  The record will

23    reflect that the jury is with us.

24    Okay.  I want to get clarity on your question before I can

25    answer it, and I want us to be very careful because I don't

want to know anything about your deliberations.  Okay?  I just
need to make sure I understand your question.

So you have up here the three elements, which are in your
book.  And then I've put your question there also so that
everybody can see it.

So, first of all, as you can see, we've -- in these
instructions, we refer to a particular defendant because you
have to always decide as to each defendant and co-conspirators.

So I want to make sure when your question is, to fulfill
Element Two, does the defendant -- and do you mean, does the
particular defendant, first of all?

Is that right?  Yes.  Okay.

So does the particular defendant need to have knowledge
that their actions -- and you mean his or her actions?

**THE JUROR:**  Yes.

**THE COURT:**  Okay.  So does the particular defendant
need to have knowledge that his or her actions cause a
constitutional violation.

The point of Number 2 is that a particular defendant
agrees.  That's the point of Number 2, is that there has to be
an agreement.  So the particular defendant has to agree with a
co-conspirator to cause the constitutional violation.

The point of Element Two is that we have to establish an
agreement.  And then the point of Three is that either that
defendant or the co-conspirator engaged in an act, at least one

 1    act, in furtherance of that agreement.

 2         So, first, you have to find that there's an agreement to

 3    cause the constitutional violation.  Once you find that

 4    agreement to cause the constitutional violation, then you have

 5    to find that either the defendant -- that particular defendant

 6    or the co-conspirator engaged in at least one act to further

 7    that agreement.

 8         Does that make sense?

 9         Do you want to go and talk about it?  Because I'm not

10    exactly sure -- it may be the foreperson could explain to me --

11    or anyone else.  It doesn't have to be that person.

12         Juror 8, if you want to do it, that's fine too.

13              THE JUROR:  I think our question was also, does

14    action or inaction -- wait.  What did you say?

15         Oh, yeah.  Is action itself an agreement or inaction?  You

16    know what I'm saying?

17              THE JUROR:  By the defendant and co-conspirator.

18              THE COURT:  Is action --

19              THE JUROR:  Is taking an action -- by taking action,

20    are you agreeing -- is that an agreement if it's not --

21              THE COURT:  Let's go to the follow-up paragraphs that

22    try to explain this.  Right?

23         So an agreement doesn't have to be -- is not required to

24    be explicitly stated or written.  That is, we don't have to

25    have, like, a written contract.  So it's not -- it does not

1   have to be explicitly stated or written.

2        And then the very last paragraph tells you that plaintiff

3   can show the particular defendant's knowledge of or

4   participation in the conspiracy by way of circumstantial

5   evidence.  But you do have to find an agreement.

6              THE JUROR:  I think also what the other thing was --

7   the first two claims have the caveats of, like, explaining the

8   claims, and this one doesn't have that.  You know, like the

9   second page in which it -- the bases.

10             THE COURT:  Oh, I see.

11             THE JUROR:  I think that's where we were getting a

12  little caught up.

13             THE COURT:  I see.  I was explicit in terms of

14  that -- well, I mean, the attorneys -- what I can tell you is

15  that the attorneys made their argument to you about what they

16  thought the evidence was that showed the agreement and the

17  conspiracy.  But I don't have anything more specific than that

18  for you other than to refer you back to what the lawyers

19  argued.

20             THE JUROR:  The third, I guess, piece of that is in

21  the first two claims, there's a talk of the difference between

22  deliberate or deliberate inference --

23             THE COURT:  Right.  Because that's an element.

24             THE JUROR:  Right.  Which has to do with intent.  So

25  I think that's where we were trying to find the role of those

1   things.   Do those things have a role in the third claim?

2           **THE COURT:**   The only elements are the ones that are

3   here.

4           **THE JUROR:**   Okay.

5           **THE COURT:**   So -- so the agreement to cause the

6   violation and that there was an act in furtherance.   Those are

7   the elements.   Those -- plus, that he was deprived of a

8   constitutional right.   But you don't seem to be asking about

9   that one.

10       So if you want to go talk -- if maybe there's something

11   more specific.   I don't -- and let me just talk to the lawyers

12   at sidebar before you leave.

13           (Sidebar conference heard but not reported.)

14           **THE COURT:**   Okay.

15           **THE JUROR:**   There's another question.

16           **THE COURT:**   All right.

17           **THE JUROR:**   So does the co-conspirator have to be

18   another defendant?

19           **THE COURT:**   Okay.   Let me -- let me.   All right.   Let

20   me talk to the lawyers.   I have my view of the answer to that

21   question, but let me make sure.

22           (Sidebar conference heard but not reported.)

23           **THE COURT:**   Okay.   Let me do this.   I'm going to send

24   you back in.   I'm going to talk more with the lawyers.

25       And on that question, which is, does the co-conspirator

1  have to be another defendant?  If I can, I'll just send you
2  that answer in writing.
3      I think I've done all I can do to explain the question you
4  sent me.  So if you want something else, then write it down.
5  Let me know.  But, otherwise, I'm going to talk to them about
6  this last question and then send you the answer that I can in
7  writing.  Okay?
8      Anything else?  No.  Okay.  Great.
9          **THE JUROR:**  Sorry.  We have another question.
10         **THE JUROR:**  I think the other thing we wanted to try
11  to figure out here is, did one of the defendants or a couple of
12  the defendants --
13         **THE COURT:**  Did one or more of the defendants?
14         **THE JUROR:**  In the conspiracy potentially know they
15  were doing something bad?  Is that a requirement to -- or ...
16         **THE COURT:**  So look.  The very first thing that you
17  have to find is the plaintiff was deprived of a constitutional
18  right.  That's the very first thing you have to find.
19      And it's not a question of whether they knew something was
20  bad or not.  The question was whether there was an agreement to
21  cause a constitutional violation.  That is what the agreement
22  needs to be.  The agreement needs to be an agreement to violate
23  someone's constitutional right.
24         **THE JUROR:**  And you're saying they didn't need to --
25  they could have thought that was the right thing to do, even

1   though we think it violated a constitutional right potentially?

2           THE COURT:  Well, the other claims talk about the

3   state of mind of a defendant.  And those instructions you have

4   to follow.

5       But with respect to conspiracy, again, conspiracy is a

6   different kind of claim.  It's a claim of -- effectively of

7   agreements; right?  It's -- let me see what else I can get you,

8   but the fundamental notion of a conspiracy is that someone

9   agrees.  And, here, it's that they agreed to the violation, to

10  a -- to cause a constitutional violation.  That's the nature of

11  that claim.

12      I'm not sure I can get -- go think about that.  And let me

13  get back to you at least on this question.  Okay?

14      (The following proceedings were heard out of the presence

15  of the jury:)

16          THE COURT:  Okay.  The record will reflect that the

17  jury has left.  You may be seated.

18      Mr. Brustin, do you want to dismiss that claim?

19          MR. BRUSTIN:  The entire conspiracy claim?

20          THE COURT:  Yes.

21          MR. BRUSTIN:  No.

22          THE COURT:  I'm just asking.

23          MR. BRUSTIN:  No, I hear you.  And we might want to

24  talk about that.  I think that's a little premature.  But I do

25  want to be very careful what information we give them.

```
1       Can we discuss it for a minute or do you want to discuss
2   it first?
3               THE COURT:  Are you ready to discuss or do you want a
4   few minutes?
5               MS. BAUMGARTNER:  What I would actually like,
6   Your Honor, is an opportunity to look into this --
7               THE COURT:  You aren't going to get it.  I need to
8   respond.
9       So according to Mendocino Environmental Center v. -- let
10  me take a look.  There are two Ninth Circuit cases that I want
11  to take a look at -- or maybe three.  This instruction comes
12  from Lacey v. Maricopa County.
13      Let's just take five minutes here.  You all have
14  computers, don't you?
15              MR. BRUSTIN:  Yeah.
16              MS. BAUMGARTNER:  We left ours in the room.
17              THE COURT:  Okay.  Grab them.
18              MS. BAUMGARTNER:  Yep.
19              MR. BRUSTIN:  One thing I would throw in the mix,
20  Your Honor, the last question I heard is a question I think is
21  more straightforward, which was, do they have to know it was a
22  constitutional violation?  The answer to that is no.  But they
23  have to know the conduct they're engaging in.  I thought he
24  asked if they know what they're doing is a constitutional
25  violation.
```

1    **THE COURT:**  The agreement is they have to have --

2  they must be agreeing to cause the constitutional violation.

3    **MR. BRUSTIN:**  They have to agree to the act.

4    **THE COURT:**  That's not what I told them.  I told them

5  they have to agree to the constitutional violation.

6    You can't have a conspiracy to violate someone's

7  constitutional rights without an agreement to violate the

8  constitutional right.  It doesn't make sense, Mr. Brustin.

9    **MR. BRUSTIN:**  I just meant it's an agreement to

10  commit the act.  It's an agreement to withhold exculpatory

11  evidence.  It's an agreement to --

12    **THE COURT:**  That's not what it says.

13    **MR. BRUSTIN:**  Okay.  Let us discuss it.  That's fine.

14    **THE COURT:**  Do I have my lawyers here on the 2:00?

15    **MR. JASZCZUK:**  Yes, Your Honor.

16    **THE COURT:**  Oh, geez.

17    Okay.  Well, I kind of have to deal with this, folks.

18    **MS. TERRELL:**  I understand, Your Honor.

19    **THE COURT:**  We should go off the record, Sarah.

20    Come on forward for a minute.

21    (Recess taken at 1:56 p.m.)

22    (Proceedings resumed at 2:04 p.m.)

23    **THE COURT:**  You came back.

24    **MR. BRUSTIN:**  So we are not willing to drop at this

25  point the conspiracy claims.  We don't think that's a good

1  course at this point.

2      All I was saying, Your Honor, by the way, is that they

3  have to understand that they engaged in the conduct, but a

4  police officer doesn't have to understand the contours of the

5  constitution.  I thought that's what he was asking.  The police

6  officer needs to know if they're -- if somebody is withholding

7  exculpatory evidence.  They don't need to know that that --

8  that is actually a constitutional violation.  Qualified

9  immunity is an objective standard.

10         **THE COURT:**  We're not dealing with qualified

11  immunity.

12         **MR. BRUSTIN:**  Right.  But ...

13         **MS. BAUMGARTNER:**  *Mendocino* specifically states that

14  the intent has to be to accomplish an unlawful objective for

15  the purpose of harming another.  That is what *Mendocino* says.

16      And in this case, since the only harm is a constitutional

17  violation, that's what they have to have specifically intended.

18         **MR. BRUSTIN:**  Intended to accomplish some unlawful

19  objective for the purpose of harming another.

20         **THE COURT:**  Where are you reading from?

21         **MS. BAUMGARTNER:**  I didn't write down the page.  It's

22  from *Mendocino*.

23         **MS. HOFFMANN:**  1301.

24         **MR. BRUSTIN:**  I think, though, the alternative,

25  Your Honor, is to wait for a more specific question.

 1          THE COURT:  Well, I told them I would respond.

 2          MR. BRUSTIN:  I'm sorry.  What specifically,

 3     Your Honor, are you -- do you think you need to respond on?

 4          THE COURT:  I'm trying to pull up *Lacey*.  Hold on.

 5          MR. BRUSTIN:  Okay.

 6               (Pause in the proceedings.)

 7          THE COURT:  So part of *Lacey* says, with respect to

 8     the question of -- they asked about the defendant versus

 9     something else, anyone else.  And I'm not going to reference

10     these cites.  But if you go to page 935, it says:

11               "Conspiracy is not itself a constitutional tort

12          under 1983.  It does not enlarge the nature of the

13          claims asserted by the plaintiff as there must always

14          be an underlying constitutional violation.  Conspiracy

15          may, however, enlarge the pool of responsible

16          defendants by demonstrating their causal connections

17          to the violation.  The fact of the conspiracy may make

18          a party liable for the unconstitutional acts of the

19          party with whom he conspired.  Conspiracy in 1983

20          actions usually alleged by plaintiffs to draw in

21          private parties who would not otherwise be susceptible

22          to a 1983 action because of the state action

23          doctrine."

24          Now, it says to me on first blush that it has to be a

25     defendant or a party; you can't just be bringing in other

1  people in terms of the constitutional violation.  That's one

2  thing.

3      And then later -- I mean, I can read to them the

4  following, which is -- this is from *Gilbrook*, in terms of what

5  they're dealing with, like I did with at least one of the

6  others:

7          "A civil conspiracy is a combination of two or

8      more persons who, by some concerted action, intend to

9      accomplish some unlawful objective for the purpose of

10      harming another which results in damage.  To prove a

11      civil conspiracy, the plaintiff must show that the

12      conspiring parties reached a unity of purpose or a

13      common desire and understanding or a meeting of the

14      minds in an unlawful arrangement.  To be liable, each

15      participant in the conspiracy need not know the exact

16      details of the plan, but each participant must at

17      least share the common objective of the conspiracy."

18          **MR. BRUSTIN:**  Yeah.  I think, Your Honor, that the

19  best approach is what you're suggesting, which is to read

20  another accurate description of the law that's slightly

21  differently worded.  I think that's the most we should do.

22          **MS. BAUMGARTNER:**  But I do think that we should

23  simply read the language from *Mendocino*.  And, again, I think

24  that that will answer their question.

25          **THE COURT:**  Well, I didn't read *Mendocino*.

1        **MS. BAUMGARTNER:**  Well, the language, again, is "The

2   defendant has to have intended to accomplish some unlawful

3   objective for the purpose of harming another."

4        **MS. HOFFMANN:**  We would be fine with reading from

5   *Mendocino* but we would request more of what's in *Mendocino*.

6        If you look at 1301, there's also an example of how it is

7   you can show agreement.

8        **THE COURT:**  So the sentence before in *Mendocino* at

9   jump cite 1301 starts:

10        "To establish the defendant's liability for

11        conspiracy, a plaintiff must demonstrate the existence

12        of an agreement or meeting of the minds to violate

13        constitutional rights.  The defendants must have, by

14        some concerted action, intended to accomplish some

15        unlawful objective for the purpose of harming another,

16        which results in damage."

17        **MS. HOFFMANN:**  We would request the next two

18   sentences as well.

19        **THE COURT:**

20        "Such an agreement need not be overt and may be

21        inferred on the basis of circumstantial evidence, such

22        as the actions of the defendants."

23   I could read those three sentences.

24        **MS. HOFFMANN:**  We would request the next sentence as

25   well because they seem to have some confusion as to how they

1  would figure out what agreement means or what could support a

2  finding for agreement.

3          **MS. BAUMGARTNER:**  I actually think that that latter

4  part is not the question that they have.  It was -- they have

5  an instruction that talks about the fact that it can be shown

6  by circumstantial evidence.  But it requires, as you said, more

7  than an action.  It requires that they actually have an

8  agreement.  And I don't think that it's appropriate to read

9  those second two sentences given their question.

10          **THE COURT:**  So I don't know what you mean -- so I

11  don't have that one up in front of me.

12      What I read to you was actually in the briefing on that

13  particular instruction, and that's what I was reading it from.

14  So I have to get up -- I have to get a copy of that case.  I

15  don't have a copy of that case.

16          **MS. HOFFMANN:**  Yeah.  We were reading from our

17  submission on jury instructions, 366, at page 54, which is a

18  long quote from *Mendocino*.

19          **THE COURT:**  So I was on page 56.  Hold on.

20          **MS. BAUMGARTNER:**  I need to go find that briefing.  I

21  don't have that in front of me.

22          **THE COURT:**  So I'm not inclined to read a "for

23  example" sentence.

24                          (Counsel confer.)

25          **THE COURT:**  Docket 366.

```
 1              MS. BAUMGARTNER:  Yes.  Oh, 366.  Oh, I see.
 2    Page 54.
 3              MS. HOFFMANN:  It's 54 of the --
 4              MS. BAUMGARTNER:  Yeah, I got it.
 5         Yeah, I think the first two sentences here would be the
 6    appropriate sentences.
 7              THE COURT:  What about the question of whether or not
 8    a co-conspirator can be a nondefendant?
 9         At sidebar, Ms. -- and you should fill in the record as
10    you want.  Ms. Baumgartner made a good point that that's not --
11    there's no theory that was litigated here that this alleged
12    conspiracy happened with or between anyone other than the
13    parties to this litigation.
14              MS. HOFFMANN:  I would say, although that wasn't our
15    explicit argument to the jury, I think you can certainly find,
16    based on the evidence that we put on, for example, that
17    Ms. Meadows was a co-conspirator to a -- she testified that she
18    agreed to lie.
19              THE COURT:  Do you have any other argument?
20              MS. HOFFMANN:  And there's also the unidentified
21    uniformed officer who was present for the identification
22    procedure witnessed by Oliver Barcenas.  And potentially
23    Ms. Lualemaga.
24         We did not argue explicitly that anybody else was a member
25    of the conspiracy, but I think the jury could find that based
```

1   on the evidence that was presented.  Any of those three.

2         **THE COURT:**  Well, I don't know that -- if you had

3   attempted to argue that with respect to Ms. Lualemaga, I would

4   have sustained an objection because there is no evidence from

5   which any reasonable person could infer that, as far as I'm

6   concerned.

7         With respect to Meadows, I don't know that they could ever

8   get there without having found one of the other defendants.  So

9   with respect to her, I don't think that the argument flies.

10        **MS. HOFFMANN:**  Well, you could, for example, find

11  that Johnson was liable, that he reached an agreement with

12  Ms. Meadows.  And if you didn't find that McMillan was also

13  liable, then you could find a conspiracy with Johnson and

14  another party.

15        **THE COURT:**  What?

16        **MS. HOFFMANN:**  If you found that Ms. Meadows reached

17  an agreement with Johnson that he's the one who gave her the

18  evidence, he's the one that fed her the details, she reached an

19  agreement --

20        **THE COURT:**  She was never with -- she was never alone

21  with Johnson.

22        **MS. HOFFMANN:**  I think that's a question of fact.

23        **THE COURT:**  No, it's not.  When was she alone with

24  Johnson?

25        **MS. HOFFMANN:**  There was testimony that people left

1   the room.  There's Hagan, who's not a party to the -- and

2   McMillan and Johnson.

3       I think there's evidence that -- I think legally, it could

4   be -- it is not required that the co-conspirators be --

5           THE COURT:  Sure, if it was litigated.  You didn't

6   litigate it here.

7           MS. HOFFMANN:  I think under the circumstances we're

8   fine instructing them that it would have to be another

9   defendant.

10          THE COURT:  I have to tell you, I thought about it,

11  but I don't think it's been litigated.  And so I am not

12  inclined to indicate that they can make a finding of conspiracy

13  with a person who is not a defendant.

14          MS. HOFFMANN:  That's fine.

15          THE COURT:  Any objection?

16          MS. BAUMGARTNER:  No, Your Honor.

17          THE COURT:  The third sentence is just a repeat -- in

18  going back to *Mendocino*, it's just a repeat what's already been

19  told to them in a different way.  So I don't see what's wrong

20  in finishing off the thought.

21          MS. HOFFMANN:  I agree.  I think that makes sense.

22          MS. BAUMGARTNER:  Well, I think the word "overt" is

23  not a commonly used word.  And I'm not sure that that's

24  actually going to serve the purpose of trying to clarify.  I

25  think that it could, in fact, confuse the issues further.

1          **THE COURT:**  Any other objections?

2          **MS. BAUMGARTNER:**  No, Your Honor.

3          **THE COURT:**  All right.  So noted.

4     Let's call them out.

5     (The following proceedings were heard in the presence of

6  the jury:)

7          **THE COURT:**  Okay.  You may all be seated.

8     Okay.  So in answer to your question, does the

9  co-conspirator have to be another defendant, my answer to you

10 is, in this case, yes.  Okay?

11    On the other topic, what we've agreed to do is for me to

12 read you an instruction from another case, and maybe the

13 rewording of it will help.  Okay?  We'll see if it does.

14         "To establish defendant's liability for a

15    conspiracy, a plaintiff must demonstrate the existence

16    of an agreement or meeting of the minds to violate

17    constitutional rights.  The defendants must have, by

18    some concerted action, intended to accomplish some

19    unlawful objective for the purpose of harming another,

20    which results in damage.  Such an agreement need not

21    be overt and may be inferred on the basis of

22    circumstantial evidence, such as the actions of the

23    defendants."

24    Now, I'll write that down and send it in so you can have

25 it in writing.  But maybe that'll give you a start.  Okay?

VERDICT

1    Okay.  Great.

2    (The following proceedings were heard out of the presence

3  of the jury:)

4        THE COURT:  Okay.  We'll stand in recess until we

5  hear back from them.

6        MR. BRUSTIN:  Thank you, Your Honor.

7              (Recess taken at 2:27 p.m.)

8              (Proceedings resumed at 3:38 p.m.)

9        THE COURT:  Okay.  I understand we have a verdict.

10  Let's bring in the jury.

11    (The following proceedings were heard in the presence of

12  the jury:)

13        THE COURT:  You may all be seated.  We are on the

14  record.  The record will reflect that the jury is present.

15    Madam spokesperson, I understand that you have a verdict;

16  is that correct?

17        THE JUROR:  Correct.

18        THE COURT:  All right.

19    Ms. Stone.  Will you read the verdict.

20                    **JURY VERDICT**

21        THE CLERK:  We, the jury in the above-entitled

22  action, unanimously render the following verdict:

23    First claim.  Did plaintiff Jamal Trulove prove by a

24  preponderance of the evidence of the evidence that any of the

25  following defendants deliberately fabricated evidence causing

**VERDICT**

1  plaintiff Jamal Trulove to be deprived of his constitutional

2  right to liberty without due process?

3     Maureen D'Amico:  Yes.

4     Michael Johnson:  Yes.

5     Robert McMillan:  No.

6     Second claim.  Did plaintiff Jamal Trulove prove by a

7  preponderance of the evidence that any of the following

8  defendants failed to disclose material exculpatory or

9  impeachment evidence known to the defendant with deliberate

10 indifference to plaintiff's constitutional rights or the truth?

11    Maureen D'Amico:  Yes.

12    Michael Johnson:  Yes.

13    Robert McMillan:  No.

14    John Evans:  No.

15    Third claim.  Did plaintiff Jamal Trulove prove by a

16 preponderance of the evidence that any of the following

17 defendants engaged in a conspiracy to violate his

18 constitutional rights?

19    Maureen D'Amico:  No.

20    Michael Johnson:  No.

21    Robert McMillan:  No.

22    John Evans:  No.

23    And the damages the amount of damages proven in accordance

24 with the Court's damages instructions:  $10 million.

25    The verdict is dated today, April 6, 2018, and signed.

VERDICT

```
1          THE COURT:  Are you going to ask the jury?
2      Ladies and gentlemen, are the verdicts as just read your
3  true and correct verdicts?
4          THE JURY:  Yes.
5          THE COURT:  Would you like them polled?
6          MR. BRUSTIN:  No, Your Honor.
7          MS. BAUMGARTNER:  Yes, Your Honor.
8          THE COURT:  If the courtroom deputy will poll the
9  jury.
10         THE CLERK:  Okay.  Juror No. 1, is this your verdict
11 as read?
12         THE JUROR:  Yes.
13         THE CLERK:  Juror No. 3, is this your verdict as
14 read?
15         THE JUROR:  Yes.
16         THE CLERK:  Juror No. 4, is this your verdict as
17 read?
18         THE JUROR:  Yes.
19         THE CLERK:  Juror No. 5, is this your verdict as
20 read?
21         THE JUROR:  Yes.
22         THE CLERK:  Juror No. 6, is this your verdict as
23 read?
24         THE JUROR:  Yes.
25         THE CLERK:  Juror No. 7, is this your verdict as
```

VERDICT

```
 1   read?
 2              THE JUROR:  Yes.
 3              THE CLERK:  Juror No. 8, is this your verdict as
 4   read?
 5              THE JUROR:  Yes.
 6              THE CLERK:  Juror No. 9, is this your verdict as
 7   read?
 8              THE JUROR:  Yes.
 9              THE COURT:  All right.   The courtroom deputy may
10   record the verdict.
11              THE CLERK:  Okay.
12              THE COURT:  Do you want it re-read now that it is
13   recorded?
14              MS. BAUMGARTNER:  No, Your Honor.
15              MR. BRUSTIN:  No, Your Honor.
16              THE COURT:  Okay.
17         Ladies and gentlemen, now that you have completed your
18   service in this case, on behalf of all of the judges on this
19   court and on behalf of the parties, please accept my thanks for
20   your time and your effort.
21         Now that the case is over, you may choose whether or not
22   to discuss this case with anyone, with the lawyers, the
23   parties, their representatives.  They may now talk to you about
24   this case, including your deliberations.  However, I hereby
25   order that those discussions must occur at a reasonable time
```

1    and a reasonable place and with your explicit consent.

2    Immediately report to me any unreasonable contact made without

3    your consent.  A lawyer or a party or one of their

4    representatives who violates this rule now violates a Court

5    order and may be fined.

6        Before I discharge you, I would like to leave you with a

7    quote from former United States Supreme Court Justice William

8    O. Douglas.  And he was more poetic than I, so this is why I

9    use his words.  He commented on the jury system as follows.  He

10   stated:

11           "A jury reflects the attitudes and mores of the

12       community from which it is drawn.  It lives only for

13       the day, and does justice according to its limits.

14       The group who were drawn to hear a case make a

15       decision and then melt away.  It is not present the

16       next day to be criticized.  It is the one governmental

17       agency that has no ambition.  It is as human as the

18       people who make it up.  And while it is sometimes

19       persuaded by emotion, effete, or that at times it

20       takes the sharp edges off of the law and uses

21       conscious to soften some of the hardships within the

22       law.  And since it is of and from the community, the

23       jury gives the law an acceptance in a way that

24       verdicts by judges such as myself cannot."

25       So with that, you are discharged.  I'm happy to talk with

1  you if you'd like.  Let Frances know.  I have for you a copy of

2  the constitution to thank you for your service.  It's from the

3  Supreme Court.  It only cost me 75 cents, so I think I won't

4  get in trouble.  And either I or Frances will bring these into

5  you.

6       But, again, I really appreciate your devotion.  You were

7  always here on time, and you clearly worked incredibly hard.

8       Enjoy your trip to China.

9       I hope this has been a good experience for you.

10      Now, you're welcome to go back and let Frances know.  And

11 then I wish you well.  Thank you.

12      (The following proceedings were heard out of the presence

13 of the jury:)

14           THE COURT:  Okay.  The jury has left the room.

15      I have your email about post-trial briefing did not

16 anticipate a split verdict.

17      If the jury wants to talk, then I will be gone for a few

18 minutes, and then I can talk to you.  We can take just a short

19 recess if you want so that you can digest what you just heard.

20 Why don't we do that.

21           MS. BAUMGARTNER:  Thank you, Your Honor.

22                (Recess taken at 3:50 p.m.)

23                (Proceedings resumed at 4:07 p.m.)

24           THE COURT:  The record will reflect that the parties

25 are present with the exception of the defense clients -- or the

```
 1  defendants themselves.
 2      Okay.  So there was a split verdict here.  Is anyone
 3  anticipating bringing post-trial motions?
 4          MS. HOFFMANN:  We are only anticipating bringing a
 5  motion for attorneys' fees.
 6          THE COURT:  Okay.  Do you remember under our local
 7  rules you must meet and confer before filing that motion?
 8          MS. HOFFMANN:  Okay.
 9          MS. BAUMGARTNER:  We very well may bring new trial
10  and JNOV motion based on the timing that we previously
11  negotiated.
12          THE COURT:  But only as to the D'Amico and --
13          MS. BAUMGARTNER:  Johnson.
14          THE COURT:  -- Johnson?
15          MS. BAUMGARTNER:  Correct.
16          THE COURT:  So with respect to -- then what I have is
17  that you want to file your motion May 17th?
18          MS. BAUMGARTNER:  Correct, Your Honor.
19          THE COURT:  And oppositions would be due June 7th.
20          MS. HOFFMANN:  Yes.
21          THE COURT:  With a reply June 21st and a hearing
22  sometime in July.
23      Can someone tell me why it's so elongated?
24          MS. BAUMGARTNER:  Well, I'm leaving next week, and
25  I'm going to be gone for a while.  And then -- so I need a
```

```
 1   couple weeks after I come back.  And then one of their counsel

 2   is going to be out during the period of time their opposition

 3   would be due, so that added another week or so.

 4           MS. HOFFMANN:  The date that Ms. Baumgartner

 5   requested for the briefing to be submitted, the two weeks

 6   following, Ms. Philip is out of the country for one of those

 7   weeks.  That's why we requested an additional week.

 8           THE COURT:  It is really -- my preference would be to

 9   hear this in mid-June, which I think is plenty of time.  It is

10   two and a half months.  Actually, my preference would be to

11   hear it in May, but I'll at least give you until mid-June.

12           MS. HOFFMANN:  So if -- the original -- I can do the

13   week of -- let me get my calendar.  I think it's June 16th for

14   a hearing.

15           THE COURT:  I can't do the week -- it needs to be

16   done before June 15th.

17           MS. BAUMGARTNER:  And I'm sorry, what day are we

18   looking at?  What day of a week?  Do you have a particular day

19   of the week that you would prefer?

20           THE COURT:  Typically, I would do these on a Tuesday,

21   but I can move this one.  I could hear it, for instance, on the

22   15th.  That gives you a little extra time, but ...

23           MS. HOFFMANN:  Let me just pull up my calendar.  I'm

24   sorry.  I had my phone off.

25           THE COURT:  How long are you going to be gone,
```

```
 1    Ms. Baumgartner?

 2           MS. BAUMGARTNER:  12 days, Your Honor.  So I'm going

 3    to be back on -- let's see.

 4           THE COURT:  You're pretty senior.  I would expect

 5    Ms. Collins and Rosenblit to write it and you to supervise

 6    their analysis at the end.

 7           MS. BAUMGARTNER:  That's not actually the way the

 8    City Attorney's Office works.  I tend to do all my own work,

 9    except for trial when we bring other people along.  That

10    doesn't necessarily mean I will.  I have to talk to, obviously,

11    the office and figure out all of this.  So -- but I'm assuming

12    at the moment that I'm actually writing it.

13           THE COURT:  Well, but if you're gone, you won't be

14    able to write it, and they certainly know it.

15           MS. BAUMGARTNER:  Yeah, I believe -- I think one of

16    them even has another trial at the beginning of May.

17           MS. HOFFMANN:  In terms of scheduling, I have a

18    Ninth Circuit argument in Pasadena on June 8th.  I could do

19    either the beginning of that week or I could do any time the

20    week of June 11th.

21           MS. BAUMGARTNER:  I actually have a Ninth Circuit

22    argument on June 12th.

23           THE COURT:  You only get ten minutes.  Seriously.

24           MS. BAUMGARTNER:  I know I do.  And, actually,

25    that's --
```

1    THE COURT:  And not only that, they've already

2    decided.

3                        (Laughter)

4    MS. BAUMGARTNER:  I know.

5    That one's not a huge one, but I obviously need to be

6    prepared.

7    THE COURT:  You do.  You do.  It depends on your

8    panel, in terms of how much preparation you need.

9    Okay.  So if she's filing -- if she's filing, let's say,

10   mid-May -- if Ms. Baumgartner files by May 15th, can you get me

11   your opposition by May 31st?

12   MS. HOFFMANN:  So the problem with that is

13   Ms. Philip -- so I've got another Ninth Circuit argument

14   May 18th.  And Ms. Phillips is out of the country the week of

15   the 21st and the 25th.

16   THE COURT:  Hold on.

17   MS. HOFFMANN:  That's why we didn't want our two

18   weeks to follow -- to fall over that week.

19   THE COURT:  Under this -- that's what you --

20   MS. HOFFMANN:  That's why we had three weeks for our

21   response, if they were going to file on May 17th, to give two

22   actual weeks to work on it.  That was the idea.  If they filed

23   earlier, we could do it in two weeks, but if it's covering the

24   week of the 21st to the 25th, that's hard for us.

25   THE COURT:  Why is that again?

```
 1          MS. HOFFMANN:   I have a Ninth Circuit argument on

 2   May 18th, and Ms. Phillips is out of the country the 21st

 3   through the 28th.  So that would -- it would just be me, except

 4   for a few days of support from her.  And during part of that

 5   time, I've got a Ninth Circuit argument that I've got to travel

 6   to and prepare for.

 7          THE COURT:   Well, you can work it out.  I want to

 8   hear this on the 15th.  Seriously.  It's -- either that or I

 9   take it under submission and I don't allow oral argument, which

10   is fine with me too; you can rest on your papers.

11          MS. BAUMGARTNER:   Your Honor, can we get back to you

12   on Tuesday?  Because then I can talk to my people in my office,

13   find out what staff I have, whether it can be worked on when

14   I'm gone, what the other calendaring stuff is for my co-counsel

15   because I know they've been backing stuff up -- we all have --

16   for this trial.  And I don't know if -- I just don't know about

17   the staffing.

18       So I can check into that on Monday and meet and confer

19   with my opposing counsel and get back to you on Tuesday if that

20   works with them.  Because I understand -- you know, I

21   understand it has to work with their schedule too.

22          MS. HOFFMANN:   I'm sorry.  I just realized -- it

23   would be Friday in the afternoon or Friday in the morning?

24          THE COURT:   Friday in the morning.

25          MS. HOFFMANN:   Okay.  My daughter has a performance
```

1    Saturday morning I'd like to be able to get back to -- for.

2              THE COURT:  Like I said, you can just rest on your

3    papers.  I mean, I sat through three and a half weeks of trial.

4    I don't know what the grounds would be for a new trial motion.

5              MS. BAUMGARTNER:  Again, I may not bring one, but I

6    have to --

7              THE COURT:  I understand.  I understand.  I'm just

8    saying I'm not going to put this off until July.  I think June

9    is more than reasonable.

10          And if I enter judgment tomorrow, then it's going to be

11   a lot quicker than that.  I'm not going to do that to you.

12   There are federal judges who would.

13             MS. HOFFMANN:  Why don't we set a hearing date for

14   the morning of June 15th.  And then we can discuss and maybe it

15   doesn't need argument.

16             MS. BAUMGARTNER:  Right.

17             MS. HOFFMANN:  And we can set a briefing schedule

18   that would be complete in time for argument on that day,

19   according to the Court's rules.

20             THE COURT:  Well, and I would even -- again, because

21   I know this record, I need at least a week.  But I can carve

22   out a week.  So that gives you lots of flexibility, I think.

23          June 15th, 9:00 a.m.

24          Okay.  So let me know by email.

25             MS. BAUMGARTNER:  Is that also for the attorney's

1    fees motion?

2            THE COURT:  Yes.  Although, I think -- I can't

3    remember whether one tees off of something else.

4        The attorney's fees is not --

5            MS. BAUMGARTNER:  It's not jurisdictional, but I just

6    don't know what the Court expects.

7            THE COURT:  On attorneys' fees -- well, you have to

8    meet and confer with respect to attorneys' fees.  And I don't

9    think I've ever had argument on attorneys' fees motions because

10   I have to go through the records.  And if you don't have some

11   measure of agreement, I'm going to need the specifics.  Generic

12   categories don't work for me.  Okay?

13       Comments?  Questions?

14           MS. BAUMGARTNER:  No, Your Honor.

15           THE COURT:  No?  Okay.

16       All right.  Well, thank you all very much.  Thanks for

17   treating my staff well, except for my court reporter, who's

18   fingers almost fell off during this trial.  And have good

19   flights.

20           MR. BRUSTIN:  Thank you, Your Honor.

21           MS. BAUMGARTNER:  Thank you, Your Honor.

22               (Proceedings adjourned at 4:18 p.m.)

23                       ---o0o---

24

25

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


Dated:  May 23, 2018


_____

Sarah L. Goekler, CSR 13446, RMR, CRR, CCRR

U.S. Court Reporter