**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JAMAL RASHID TRULOVE**, <br><br> Plaintiff, <br><br> Vs. <br><br> **THE CITY AND COUNTY OF SAN FRANCISCO,** *ET AL***,** <br><br> Defendants. | **Case No.: 16-CV-050 YGR** <br><br> **ORDER DENYING MOTION OF DEFENDANTS D'AMICO AND JOHNSON FOR JUDGMENT AS A MATTER OF LAW, FOR A NEW TRIAL, OR IN THE ALTERNATIVE, FOR REMITTITUR** <br><br> **DKT. NO. 574** |

Following the jury trial in this action entering a verdict in favor of plaintiff Jamal Trulove, defendants Maureen D'Amico and Michael Johnson move for judgment as a matter of law, for a new trial, or, in the alternative, for remittitur. (Dkt. No. 574.) The jury returned a verdict in favor of plaintiff and against D'Amico and Johnson on claims that they deliberately fabricated evidence and withheld exculpatory evidence. Defendants contend that the Court should order a new trial or, in the alternative, grant judgment in favor of defendants because: (1) the weight of the evidence does not support the jury's verdict that defendants fabricated evidence against plaintiff; (2) the weight of the evidence does not support the jury's verdict that defendants failed to disclose exculpatory evidence against plaintiff; (3) the jury was not instructed that the prosecutor's independent decision to prosecute plaintiff broke the causal chain as to defendants; (4) there is insufficient evidence that defendants' conduct caused plaintiff's damages; and (5) defendants are entitled to qualified immunity.

Having carefully considered the motion and opposition thereto, the verdict of the jury, the evidence admitted in the trial of this matter, and for the reasons set forth below, the Court **DENIES** the Motion.

**I.    APPLICABLE STANDARDS**

In order to grant a motion for new trial under Rule 59, the trial court must find that "the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or

to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods.,* 212 F.3d 493, 510 n. 15 (9th Cir. 2000). "Upon the Rule 59 motion of the party against whom a verdict has been returned, the district court has the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal quotation omitted). Thus, in connection with a motion for new trial, "[t]he judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Constr., Co., Inc. v. Royal Bank of Canada,* 833 F.2d 1365, 1371–72 (9th Cir. 1987) (quoting 11 Wright & Miller, *Fed. Prac. & Proc.* § 2806, at 48–49). While there is no set formula, the Ninth Circuit has held that the Court should grant the motion for new trial "[i]f, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.*; *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1075 (N.D. Cal. 2006) *aff'd,* 221 F. App'x 996 (Fed. Cir. 2007) (same). Where multiple theories could support the verdict, sufficient evidence as to any of one of them will defeat a motion for new trial. *See McCord v. Maguire*, 873 F.2d 1271, 1273–74 (9th Cir.), *opinion amended on denial of reh'g,* 885 F.2d 650 (9th Cir. 1989) ("When a general verdict may have rested on factual allegations unsupported by substantial evidence, we will uphold the verdict if the evidence is sufficient with respect to any of the allegations."); *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1121 (9th Cir. 2014) (same); *S.E.C. v. Todd*, 642 F.3d 1207, 1213 n.1 (9th Cir. 2011) (on motion for new trial, where four independent factual bases supported the jury verdict, review sufficiency of evidence for all four bases not necessary).

Similarly, a court must "allow substantial deference to a jury's finding of the appropriate amount of damages" and "must uphold the jury's finding unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996).

A more stringent standard applies to a motion for judgment as a matter of law after a verdict pursuant to Rule 50(b). In reviewing a renewed motion for judgment as a matter of law under Rule 50(b), the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Josephs v. Pacific Bell,* 443 F.3d 1050, 1062 (9th Cir. 2006). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Id.* "A jury's verdict must be upheld if it is supported by substantial evidence." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) (emphasis supplied) (further explaining that "[s]ubstantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence"). The court may not weigh evidence or order a result it finds more reasonable if substantial evidence supports the jury verdict. *Mosesian v. Peat, Marwick, Mitchell & Co.,* 727 F.2d 873, 877 (9th Cir. 1984). While the court should review the record as a whole, "it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151 (2000). A motion under Rule 50(b) cannot be granted unless "the evidence permits a reasonable jury to reach only one conclusion . . . and that conclusion is contrary to the jury's verdict." *Martin v. California Dep't of Veterans Affairs*, 560 F.3d 1042, 1046 (9th Cir. 2009) (internal citations and quotation marks omitted).

## II. DISCUSSION

### A. Fabrication of Evidence

Defendants first argue that they are entitled to judgment as a matter of law or a new trial on the grounds that the weight of the evidence does not support the jury's verdict that defendants fabricated evidence used to prosecute plaintiff. Despite couching their motion in terms of the evidence not supporting a finding of fabrication against D'Amico and Johnson, defendants do not cite to the evidentiary record at all.[1] Defendants essentially ask this Court to revise its prior determinations of the law, rather than determine that the evidence is contrary to the jury's verdict.

---

[1] Although defendants indicated in their motion that they would supplement their filing once the full trial transcript was available (Motion, Dkt. No. 574, at 1 n.1), they did not do so.

3

The Ninth Circuit has held that, to prove a claim of fabrication of evidence, a plaintiff must identify evidence that was deliberately fabricated by the defendant, either directly or using circumstantial methods. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). *Devereaux* held that a claim of deliberate fabrication by circumstantial evidence required a showing that: "(1) Defendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Id*. The Ninth Circuit's more recent decisions on fabrication of evidence reiterate that standard. *Spencer v. Peters*, 857 F.3d 789, 799 (9th Cir. 2017) ("if an investigator knowingly uses coercive and abusive techniques that likely will generate false information, then that circumstantial evidence suggests that the investigator is deliberately fabricating evidence"); *Caldwell v. City & Cty. of San Francisco*, 889 F.3d 1105, 1112 (9th Cir. 2018) (same, citing *Devereaux* and *Spencer*).

Plaintiff argued that defendants fabricated evidence based upon several theories: (1) Johnson knowingly pressured Lualamaga to identify plaintiff on the night of the murder (as observed by Oliver Barcenas); (2) D'Amico conducted a single photo identification procedure with Lualemaga at her apartment the day after the murder; (3) Johnson and D'Amico showed Lualemaga a six-photo array that included persons that they knew Lualemaga had identified already, and thereby impermissibly narrowed the number unknown persons or fillers; and (4) Johnson misrepresented the circumstances under which Meadows' statement and identification of plaintiff was obtained.

Defendants argue that the test for establishing fabrication of evidence under *Devereaux* is a stringent one, and merely showing that an identification technique was improper is not sufficient to show that it is a coercive and abusive investigation technique in violation of plaintiff's constitutional rights, citing *Devereaux*, 263 F.3d at 1075 ("interviewing techniques that were in some sense improper, or that violated state regulations, without more, cannot serve as the basis for a claim under § 1983") and *Gausvik v. Perez*, 345 F.3d 813, 816-17 (9th Cir. 2003) (use of "overbearing" tactics in interviewing children insufficient to establish a deliberate fabrication of

4

evidence). They contend that demonstrating fabrication by coercive and abusive investigation techniques requires a showing of more extreme conduct or aggressive behavior, citing *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111-12 (9th Cir. 2010) and *Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013). Defendants' authorities do not persuade.

First, *Costanich* concerned direct evidence of fabrication, not allegations of coercive and abusive investigation techniques. There, the defendant "deliberately misquoted and misrepresented witness statements, *i.e.*, deliberately falsified statements in her investigative report and declaration." *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010). In overturning the district court's decision, the Ninth Circuit held that the district court read *Devereaux* too narrowly. *Id.* "If, under *Devereaux,* an interviewer who uses *coercive interviewing techniques that are known to yield false evidence commits a constitutional violation*, then an interviewer who deliberately mischaracterizes witness statements in her investigative report also commits a constitutional violation." *Costanich*, 627 F.3d at 1111 (emphasis supplied).

As to the decision in *Gantt*, certainly the conduct described therein, including threatening to charge the witness with murder if he did not provide information, and interrogating him when he had been awake for two days straight on a crack binge, was dramatic. *Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013). However, the court in *Gantt* emphasized that abusive and coercive investigation techniques are not limited to torture or shocking conduct, but include conduct demonstrating "deliberate indifference to or reckless disregard for an accused's rights" not to be subjected to prosecution based upon false evidence. *Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013).

The Ninth Circuit's recent decision in *Caldwell* confirms that abusive and coercive investigation techniques need not involve extreme or aggressive conduct by police officers. There, the court held that fabrication of evidence could be established by an officer bringing the plaintiff to a witness's door purposely to arrange a "show-up" that would infect the witness's recollection and suggest that plaintiff was the person who had committed a murder. *Caldwell*, 889 F.3d at 1113; *see also Carrillo v. Cty. of Los Angeles*, No. 211CV10310SVWAGR, 2012 WL 12850128, at \*5 n.5 (C.D. Cal. Nov. 14, 2012), *aff'd,* 798 F.3d 1210 (9th Cir. 2015) (impermissibly suggestive

identification techniques under *Simmons* are "[b]y definition . . . 'so coercive and abusive' that officers know or should know that they yield false information . . . [and use of] such techniques to procure a conviction violates the requirements of due process.").

Here, the jury was instructed that a defendant deliberately fabricated evidence if the jury found that the evidence showed the defendant was: "[A.] deliberately reporting something he or she knew not to be true, or deliberately mischaracterizing a witness statement, that was used to criminally charge, prosecute, or convict Jamal Trulove; OR [B.] using investigative or identification techniques that were so coercive and abusive that the particular defendant knew, or was deliberately indifferent to the likelihood, that those techniques would yield false information used to criminally charge, prosecute, or convict Jamal Trulove." (Final Jury Instructions, Dkt. No. 508, at 18.) The Court finds no inconsistency between this instruction and the binding Ninth Circuit authorities on the fabrication of evidence.

To the extent defendants engage with the evidence at all, they do so in a conclusory way. First, defendants contend that the evidence does not support a finding that Johnson stated to Lualemaga that "it was Trulove" in the Ingleside station. Defendants offer no basis for finding that Barcenas' testimony could not be believed by the jury.[2] Barcenas gave a detailed description of the suggestive interview technique he witnessed in Ingleside station. He testified that he saw a

---

[2] In the instant motion, defendants do not attack the jury verdict to the extent it found Johnson liable based upon fabricating *Meadows'* testimony. Defendants suggest that the defense verdict for McMillan shows that jury rejected the claim against Johnson on the theory that he fabricated Meadows' eyewitness statement. The Court cannot agree that the only "logical and reasonable conclusion" is that the jury's verdict is not based upon Johnson's interactions with Meadows. Each defendant's liability was required to be determined separately, and the evidence differed as between Johnson and McMillian with respect to Meadows. There was evidence presented to the jury that Johnson wrote the "X" to mark the shooter's location on the diagram, not Meadows, though Johnson indicated the X was made by Meadows in his warrant report. (*See* Trial Transcript at 1051-54.) The X was in the same location as Lualemaga had indicated in her earlier statement to Johnson. By contrast, the evidence as to McMillan was that he was not aware of the location of the shooter Lualemaga had provided to Johnson, and that he denied any prior knowledge of or involvement in the murder investigation. Defendants' failure to move on the sufficiency of the evidence with regard to the Meadows fabrication theory is reason enough, on its own, to the deny the instant motion as to Johnson.

6

detective talking to "a heavyset Samoan woman" pointing to something on a clipboard and stating to "Are you sure it wasn't . . . Trulove?" and that the woman:

> was crying[, s]he was upset and she was saying, 'No, I don't know. No, I don't know.' And he was asking her -- he asked her more than once, like, 'Are you sure it wasn't this person? Are you sure it wasn't Trulove?' while the woman responded 'No, I don't know.'

(Trial Transcript at 866, 867:14-19.) Barcenas further testified that the inspector "was upset, a little frustrated" and made a physical display of being upset during his conversation with the Samoan woman. (Id. at 867-868.) A jury could reasonably have concluded, from this and other evidence, that Johnson was the detective and Lualemaga was the Samoan woman, and that Johnson had pressured Lualemaga to identify plaintiff as the shooter.

Next, defendants argue the evidence does not support a finding that D'Amico showed Lualemaga a single photograph on July 24, 2007, at Lualemaga's apartment. The jury heard testimony of Officer Androvich that he accompanied D'Amico to the Sunnydale housing project the day after the shooting because she wanted to "talk to somebody" and was "meeting with [a] witness at 140 Blythedale," Lualemaga's apartment. (Trial Transcript at 2415-2418.) The jury also heard testimony from Lualemaga that D'Amico: came to the door of her apartment on July 24; showed her a folder containing a single, full-page mug shot of a person that Lualemaga did not recognize;[3] and then went to the doors of other neighbors in the housing project to show them the same mugshot that day. (Trial Transcript at 3612-3615, 3616-17.) Based upon this and other evidence in the record, including evidence that the only full-page mugshot in the investigation file at the time was that of plaintiff, a jury reasonably could conclude that D'Amico showed Lualemaga a single photograph of plaintiff in an effort to suggest to Lualemaga that plaintiff was the shooter. *Cf. Caldwell*, 889 F.3d at 1113 (evidence that police officer created a "show-up" by walking plaintiff to witness's door to "infect her recollection and suggest [plaintiff] as the shooter").

In short, the Court cannot find that the evidence here is contrary to the verdict on the fabrication claim, or, more specifically, that the evidence does not show extreme or aggressive

---

[3] In light of the evidence presented, the jurors were not required to believe defendants' claim that D'Amico merely showed Lualemaga a flyer about contacting the department with information about the shooting.

7

enough conduct by defendants to establish fabrication by coercive and abusive investigation techniques.

### B. Failure to Disclose Exculpatory Evidence

Defendants next argue that the evidence does not support the jury's finding that Inspectors D'Amico and Johnson withheld exculpatory information. Defendants contend that Trulove's criminal trial attorney, Christopher Shea, was aware of the photos on the wall at the Ingleside station and the photo array, and brought a motion to dismiss the criminal case on the grounds that the photo wall and photo array were suggestive. Thus, the existence of the photo wall and the composition of the photo array cannot form the basis of a claim because plaintiff was equally aware of these facts at the time of his criminal trial.

Defendant's argument fails because, as outlined herein, the evidence showed that neither the prosecutors nor Shea was aware of additional facts concerning to the photo array. First, the jury was presented evidence from which it could find that the array was created by defendants using photo spreads that defendants knew were too suggestive, and that multiple suspects were included in the six-pack array shown to Lualemaga. Next, the jury heard evidence from which it could find that defendant Johnson pointed at a single photo of plaintiff and directly suggested to Lualemaga that plaintiff was the shooter. Finally, plaintiff presented evidence from the jury could find that defendant D'Amico came to Lualemaga's apartment the day after the shooting and showed her a single photo of plaintiff. Consequently, the Court cannot find that the evidence here is contrary to the verdict.

### C. Presumption of Prosecutorial Independence and Causation

Defendants contend that the jury should have been instructed differently on the law with respect to a prosecutor's independent judgment, namely that a prosecutor's independent judgment is presumed to break the chain of causation, which would thereby preclude Section 1983 liability for the investigating officers, citing *McSherry v. City of Long Beach*, 584 F.3d 1129, 1136-37 (9th Cir. 2009), *Smiddy v. Varney*, 665 F.2d 261 (9th Cir. 1981), and *Newman v. County of Orange*, 457 F.3d 991, 994 (9th Cir. 2006). Defendants argue that, had the Court permitted the criminal prosecutors to testify about their independent judgment of the evidence, defendants' conduct would

8

have been rendered irrelevant, since the evidence would have shown that the prosecutor was aware of all the circumstances known to defendants. Defendants argue that the prosecutors were "aware of the photo array" shown to Lualemaga, were aware that "Ms. Lualemaga was in a room in Ingleside station where these photos were displayed and [the prosecutors] asked Ms. Lualemaga questions about the photos, [as well as that] . . . [the prosecutors were] aware of the photo array and questioned Ms. Lualemaga about the array." (Motion, Dkt. No. 574, at 6.)

As stated above, there is ample evidence in the record to support the jury's determination that defendants fabricated evidence and suppressed exculpatory evidence. At trial, defendants were permitted to introduce evidence about what the prosecutors knew, and the jury was instructed on causation. The jury was presented evidence from which it could determine that prosecutors were unaware of the fabricated and suppressed evidence in making their decisions to prosecute plaintiff.

In order to establish a claim for fabrication of evidence, plaintiff was not required to prove probable cause to prosecute was lacking, only that the fabricated evidence caused his constitutional injury. *Spencer v. Peters*, 857 F.3d 789, 802 (9th Cir. 2017). If defendants knowingly provided fabricated evidence to the prosecutors or concealed exculpatory evidence, the prosecutor's actions cannot be considered independent, and do not break the causal chain. *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067–68 (9th Cir. 2004).

The Ninth Circuit's recent decision in *Caldwell* reiterates this point. *Caldwell*, 889 F.3d at 1116 ("A prosecutor's judgment cannot be said to be independent where the prosecutor considers potentially fabricated evidence without knowing that the evidence might be fundamentally compromised and misleading."). The Ninth Circuit noted in *Caldwell* that it has not applied a presumption of prosecutorial independence in the context of a fabrication case, but has followed a normal causation analysis. *Id.* at 1116 n.7; *see also Spencer*, 857 F.3d at 801 (9th Cir. 2017) (district court did not err by declining to instruct the jury that plaintiff was required to prove probable cause was lacking, setting aside the fabricated evidence, since lack of probable cause to prosecute a defendant is not an element of a deliberate-fabrication claim).[4] Moreover, the *Caldwell*

---

[4] Even in *McSherry v. City of Long Beach*, 584 F.3d 1129 (9th Cir. 2009), cited by defendants repeatedly, the *Caldwell* court noted that the presumption of prosecutorial independence was not applied:

9

court held that, even if such a presumption were appropriate in the context of a fabrication claim, a prosecutor's "consideration of potentially fabricated evidence rebuts any presumption of independent judgment." *Id.* at 1117.

Thus, defendant's motion does not engage with the sufficiency of the evidence, but essentially seeks reconsideration of the Court's legal rulings. The Court has considered the legal authorities, including the subsequent decision in *Caldwell*, and concludes that its instructions to the jury on normal causation principles, and not on a presumption of causation due to prosecutorial independence, are consistent with binding precedent.

### D. Remittitur Due to Break in Chain of Causation In June 2010

Defendants next argue that the causal chain was broken in June 2010, and damages should be reduced accordingly. In June 2010, Oliver Barcenas submitted a declaration in support of a motion for new criminal trial. Barcenas's statement was evaluated by the prosecutor, Linda Allen, and she decided to proceed with the second criminal trial. Thus, defendants argue that the causal chain was broken at this point and they cannot be liable for any harm to plaintiff thereafter. Defendants contend that, if they had been allowed to introduce testimony or argument regarding the impact of the prosecutor's decisions, or if the Court had instructed the jury on prosecutorial discretion, the jury would not have awarded damages for injuries after June 2010.

The Court again notes that defendants were permitted to, and did, introduce testimony concerning what factual information the prosecutors knew and when they knew it. The prosecutors were precluded only from providing legal opinions or evaluations of the credibility, admissibility, or significance of any evidence. (Dkt. No. 431, Pretrial Order No. 4 at 1-4.) As stated herein, the record at trial would support a finding that multiple pieces of evidence were fabricated or

---

> It is true that *McSherry* involved a deliberate fabrication of evidence claim and that this Court held that the allegedly fabricated evidence did not influence the prosecutor's independent decision. However, there is no discussion of a presumption of independence that automatically precludes a finding of causation. Instead, the Court held that McSherry had not presented sufficient evidence of causation. Thus, the *McSherry* court engaged in a normal causation analysis at the summary judgment stage, without reference to any presumption.

*Caldwell*, 889 F.3d at 1116 n.7 (internal citations omitted).

10

suppressed, not just the events to which Barcenas testified. The prosecutor's decision to proceed, even after June 2010, would have been affected not just by learning about the events to which Barcenas testified, but by the totality of the evidence against plaintiff. To the extent the jury determined that evidence was fabricated or suppressed, it could reasonably determine that causation was not cut off by Allen having had the opportunity to review and examine Barcenas's declaration in support of the motion for new criminal trial in June 2010. Thus, defendants fail to raise a persuasive basis for finding that the causal chain was broken by the prosecutor's knowledge of Barcenas's statement alone, or that a new trial or reduction of damages is warranted on these grounds.

### E. Qualified Immunity

Finally, defendants argue that they are entitled to qualified immunity from liability herein since, even if the evidence establishes constitutional violations for fabrication of evidence and suppression of evidence, it was not clearly established as of 2007 that their actions would result in a constitutional violation. The Court disagrees.

Ninth Circuit precedent in *Devereaux* in 2001 held that it was "virtually self-evident" that there is a "clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux*, 263 F.3d at 1074-75; *see also Caldwell*, 889 F.3d at 1112 (citing *Devereaux*). Likewise, the constitutional requirement to disclose exculpatory evidence was well established at the time of the events here. *See Brady v. Maryland,* 373 U.S. 83 (1963); *Youngblood v. West Virginia,* 547 U.S. 867, 869–70 (2006) (*"Brady suppression occurs when the government fails to turn over even evidence that is 'known only to police investigators and not to the prosecutor.'"*). The Ninth Circuit has held that *"Brady defines the type of material the government is obligated to disclose concretely and specifically as 'favorable to the accused, either because it is exculpatory, or because it is impeaching.'"* *Carrillo v. Cty. of Los Angeles*, 798 F.3d 1210, 1224 (9th Cir. 2015). This description of the right at issue is sufficiently specific to put a reasonable office on notice of the contours of the right. *Id*. Unlike the more abstract right to be free from unreasonable search and seizure, which requires that the case law define the contours of a specific violation, *"the*

11

*contours of a defendant's right to Brady material are focused and clear." Id.* "It is not necessary that 'the very action in question has previously been held unlawful.'" *Tennison v. City & Cty. of San Francisco*, 570 F.3d 1078, 1093-94 (9th Cir. 2009) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). Where the evidence withheld by police investigators would undermine confidence in the outcome of the trial, it should be clear to a reasonable investigator that such conduct is unlawful. *Id*. at 1094 (internal citation omitted).

Because the constitutional rights at issue here were clearly established at the time of defendants' actions, they are not entitled to qualified immunity.

## III. CONCLUSION

For the foregoing reasons, defendants' motion for judgment as a matter of law, for a new trial, or, in the alternative, for remittitur, is **DENIED**.

This terminates Docket No. 574.

**IT IS SO ORDERED**.

Date: July 16, 2018

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**